**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; and XTX MARKETS LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5, <br><br> Defendants. | Case No. 1:21-cv-06598 (LAK) |

**MEMORANDUM OF DEFENDANTS STATE STREET GLOBAL**
**MARKETS INTERNATIONAL LIMITED AND CURRENEX, INC.**
**IN SUPPORT OF THEIR JOINT MOTION TO DISMISS BASED ON**
*FORUM NON CONVENIENS* **AND LACK OF PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ........................................................................................................................... 5

I.   THE COURT SHOULD DISMISS XTX'S CLAIMS FOR *FORUM NON CONVENIENS* .................................................................................................................. 5

    A.   The English Forum Clause Is Presumptively Enforceable ........................................... 6

        1.   XTX Agreed To The English Forum Clause In The Agreement .................................................................................................... 6

        2.   English Forum Clause In The Agreement Is Mandatory ....................................... 6

        3.   XTX's Claims Against SS Global and Currenex Fall Within The Scope Of The English Forum Selection Clause In The Agreement .............................................................................................. 7

            (a)   Fraud and Conspiracy to Defraud ................................................. 9

            (b)   Unjust Enrichment ...................................................................... 10

            (c)   Tortious Interference with Prospective Economic Advantage .................... 10

            (d)   N.Y. General Business Law § 349 .............................................. 11

            (e)   Civil RICO, RICO Conspiracy, and Section 1 of the Sherman Act ............ 12

    B.   XTX Cannot Overcome The Presumption Of Enforceability ..................................... 14

        1.   The English Forum Clause Was Not A Result Of Fraud Or Overreaching ........................................................................................... 15

        2.   English Law Is Not Fundamentally Unfair .......................................................... 16

        3.   Enforcement Does Not Contravene New York Public Policy ................................................................................................... 16

        4.   Adjudication In England Will Not Be Difficult Or Inconvenient ..................................................................................... 17

II.  THE COURT LACKS PERSONAL JURISDICTION OVER NON-RESIDENT SS GLOBAL ................................................................................................................... 18

    A.   Plaintiffs Fail To Allege Facts Establishing Statutory Jurisdiction ........................... 19

        1.   Plaintiffs Fail To Allege Facts Supporting Jurisdiction Under New York's Long-Arm Statute.................................................... 19

        2.   Plaintiffs Fail To Allege Facts Supporting Jurisdiction Under Section 12 Of The Clayton Act (15 U.S.C. § 22) ..................................... 22

3.    Plaintiffs Fail To Allege Jurisdiction Under Federal Rule of
Civil Procedure 4(k)(2) ...................................................................................... 23

B.    Plaintiffs Fail To Allege Facts Sufficient To Establish Compliance With
Constitutional Due Process Protections For Non-Residents Like SS Global ............. 23

C.    Plaintiffs' Alternate Jurisdiction Theories Also Fail.................................................... 24

CONCLUSION ............................................................................................................................. 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abert Trading, Inc. v. Kipling Belgium N.V./S.A.*,
2002 WL 272408 (S.D.N.Y. Feb. 26, 2002)..............................................................16

*In re Aluminum Warehousing Antitrust Litig.*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015)........................................................................25

*Amto, LLC v. Bedford Asset Mgmt., LLC*,
168 F. Supp. 3d 556 (S.D.N.Y. 2016).....................................................................7, 9

*Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*,
2017 WL 4712422 (S.D.N.Y. Sept. 25, 2017)..........................................................13

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49, 134 S. Ct. 568 (2013)..........................................................................16

*Base Metal Trading SA v. Russian Aluminum*,
253 F. Supp. 2d 681 (S.D.N.Y. 2003), *aff'd sub nom. Base Metal Trading Ltd.
v. Russian Aluminum*, 98 F. App'x 47 (2d Cir. 2004) .............................................14

*Beach v. Citigroup Alt. Invs. LLC*,
2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ..............................................................18

*Berdeaux v. OneCoin Ltd.*,
2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021)..........................................................21

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007).....................................................................................20

*Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns*, *Ltd.*,
2009 WL 4907060 (S.D.N.Y. Dec. 21, 2009) ........................................7, 8, 15, 17

*Brodsky v. Match.com LLC*,
2009 WL 3490277 (S.D.N.Y. Oct. 28, 2009) ..........................................................16

*Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*,
155 F.3d 603 (2d Cir. 1998)......................................................................................14

*Cfirstclass Corp. v. Silverjet PLC*,
560 F. Supp. 2d 324 (S.D.N.Y. 2008).................................................................10, 11

*City of Long Beach v. Total Gas & Power N. Am., Inc.*,
465 F. Supp. 3d 416 (S.D.N.Y. 2020)...........................................................18, 24, 25

*Clean Coal Techs., Inc. v. Leidos, Inc.*,
377 F. Supp. 3d 303 (S.D.N.Y. 2019)..................................................................................20

*Commc'ns Partners Worldwide, Inc. v. Main Street Res.*,
2005 WL 1765712 (S.D.N.Y. July 26, 2005) ........................................................................23

*Donnay USA, Ltd. v. Donnay Intl. S.A.*,
705 F. App'x 21 (2d Cir. 2017) .............................................................................................5

*Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*,
2010 WL 3743826 (S.D.N.Y. Sept. 24, 2010).....................................................................18

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017)......................................................................25

*Grosser v. Commodity Exchange, Inc.*,
639 F. Supp. 1293 (S.D.N.Y. 1986).....................................................................................22

*Havlish v. Royal Dutch Shell PLC*,
2014 WL 4828654 (S.D.N.Y. Sept. 24, 2014)......................................................................23

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
907 N.E.2d 268 (N.Y. 2009).................................................................................................10

*Jones v. Ponant USA LLC*,
2020 WL 2489076 (S.D.N.Y. May 14, 2020), *reconsideration denied*, 2020
WL 3172778 (S.D.N.Y. June 15, 2020) .................................................................................8

*Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*,
2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021) .......................................................................13

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017) ...............................................................24, 25

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*,
337 F. Supp. 3d 274 (S.D.N.Y. 2018), *aff'd*, 785 F. App'x 18 (2d Cir. 2019)....................5, 16

*Madison Cap. Mkts., LLC v. Starneth Europe B.V.*,
2016 WL 4484251 (S.D.N.Y. Aug. 23, 2016)......................................................................21

*Martinez v. Bloomberg LP*,
740 F.3d 211 (2d Cir. 2014)............................................................................... *passim*

*Maurizio v. Goldsmith*,
230 F.3d 518 (2d Cir. 2000)..................................................................................................11

iv

*MBC Fin. Servs. Ltd. v. Bos. Merch. Fin., Ltd.*,
  2016 WL 5946709 (S.D.N.Y. Oct. 4, 2016), *aff'd*, 704 F. App'x 14 (2d Cir.
  2017) ..............................................................................................................................6

*Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*,
  2004 WL 421793 (S.D.N.Y. Mar. 5, 2004) ..................................................................8, 15

*Miller Inv. Trust v. Xiangchi Chen*,
  967 F. Supp. 2d 686 (S.D.N.Y. 2013)...............................................................................20

*In re N. Sea Brent Crude Oil Futures Litig.*,
  2017 WL 2535731 (S.D.N.Y. June 8, 2017) .....................................................................25

*Nimbus Therapeutics, LLC v. Celgene Corp.*,
  2021 WL 5171592 (S.D.N.Y. Nov. 8, 2021) .....................................................................17

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand,
  LLP*,
  322 F.3d 147 (2d Cir.2003)................................................................................................1

*Pence v. Gee Grp., Inc.*,
  236 F. Supp. 3d 843 (S.D.N.Y. 2017).................................................................................13

*Person v. Google Inc.*,
  456 F.Supp.2d 488 (S.D.N.Y.2006)....................................................................................15

*Phillips v. Audio Active, Ltd.*,
  494 F.3d 378 (2d Cir. 2007)...........................................................................................5, 6

*In re Platinum-Beechwood Litig.*,
  377 F. Supp. 3d 414 (S.D.N.Y. 2019)................................................................................10

*Pollux Holding Ltd. v. Chase Manhattan Bank.*
  329 F.3d 64 (2d Cir.2003).................................................................................................17

*Roby v. Corp. of Lloyd's*,
  996 F.2d 1353 (2d Cir.1993)..............................................................................................13

*S.K.I. Beer Corp. v. Baltika Brewery*,
  443 F. Supp. 2d 313 (E.D.N.Y. 2006) ...............................................................................16

*S.K.I. Beer Corp. v. Baltika Brewery*,
  612 F.3d 705 (2d Cir. 2010)........................................................................................13, 16

*Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*,
  81 F.3d 1224 (2d Cir.1996).................................................................................................17

*Seaton Ins. Co. v. Cavell USA, Inc.*,
  2008 WL 8943879 (S.D.N.Y. May 14, 2008) .........................................................................9

*In re SSA Bonds Antitrust Litig.*,
  420 F. Supp. 3d 219 (S.D.N.Y. 2019)........................................................................20, 22, 26

*Tamam v. Fransabank Sal*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010)................................................................................19

*Waraich v. Nat'l Australia Bank*,
  2022 WL 126014 (S.D.N.Y. Jan. 13, 2022) ..........................................................................24

*Whitaker v. Am. Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001)................................................................................................21

**Statutes**

15 U.S.C. § 1....................................................................................................................12, 13, 14

15 U.S.C. § 22....................................................................................................................19, 22

18 U.S.C. § 1962(c) ...........................................................................................................12, 13, 14

18 U.S.C. § 1962(d) ...........................................................................................................12, 13, 14

N.Y. Gen. Bus. Law § 349..................................................................................................11, 12

**Other Authorities**

Fed. R. Civ. P. 4(k)(2).........................................................................................................19, 23

Fed. R. Civ. P. 12(b)(2).......................................................................................................1, 19

N.Y. C.P.L.R. 302(a) ..........................................................................................................19, 20, 21, 22

`

Defendants State Street Global Markets International Limited ("SS Global") and Currenex, Inc. ("Currenex") respectfully submit this memorandum in support of their joint motion to dismiss for *forum non conveniens* with respect to claims filed against them by Plaintiff XTX Markets Limited ("XTX"). SS Global also submits this memorandum in support of its motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## PRELIMINARY STATEMENT

The claims by XTX, a sophisticated English corporation, against Currenex and SS Global, another English corporation offering the Currenex platform (the "Platform") in the European Economic Area, should be dismissed on *forum non conveniens* grounds. XTX's agreement with SS Global and Currenex, the "Agreement for Currenex Services" (hereinafter, the "Agreement"), contains a forum selection clause that states in clear terms that: (i) the "parties agree to submit to the *exclusive jurisdiction of the English courts* for the adjudication of *any case or controversy* arising under this Agreement," and (ii) the "Agreement will be governed by and construed in accordance with English law." *See* Ex. A § 23.[1] In the Amended Complaint ("AC"), XTX now seeks to disregard the Agreement in order to act as a putative class representative in this case, contending—at base—that it did not receive the services it contracted for under the Agreement because the Platform operated differently than it contends it was told. XTX was not a plaintiff when the case was originally filed and appears to have been added in response to the original defendants' defenses in their original motion to dismiss that would have been, and still are,

---

[1]     Unless indicated otherwise, all internal quotation marks and citations are omitted and all emphasis is added. Citations to "Ex." are to the exhibits attached to the Declaration of Alexander B. Simkin, filed herewith. This background statement is based on the Amended Complaint's allegations and the materials cited therein, which "are judicial admissions by which [Plaintiffs are] bound throughout the course of the proceeding." *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir.2003).

dispositive as to the Subclass Plaintiffs[2] (including because the Subclass Plaintiffs do not allege they actually traded on the Platform for the substantial majority of what Plaintiffs contend is the relevant period). Because it is clear under Second Circuit law that the forum selection clause must be enforced, and XTX cannot otherwise show that enforcement would be unjust or unreasonable, the Court must dismiss XTX's claims for *forum non conveniens*.

As a threshold matter, there is no dispute that XTX expressly agreed to the forum selection clause and that the clause is mandatory (*i.e.,* exclusive) on its face. In addition, most of XTX's claims against SS Global and Currenex (the Agreement counterparties) fall squarely within the scope of the forum selection clause pursuant to governing English law, which broadly and liberally construes jurisdictional clauses such as the one at issue here, and the few that do not (RICO and Sherman Act) are so factually interrelated with the rest of XTX's claims that they should also be dismissed, particularly because similar causes of action can be pursued in the English courts. *See* Expert Declaration of Jasbir Dhillon, Q.C., dated March 18, 2022 (hereinafter "Dhillon Decl.") ¶¶ 11, 52, 60.

The Second Circuit has a strong policy of honoring forum selection clauses made in arm's-length negotiations by sophisticated businessmen, such as here. XTX cannot overcome the strong presumptive enforceability of the mandatory forum selection clause because it cannot satisfy the heavy burden of establishing that the forum selection clause is fundamentally unfair or unreasonable. XTX does not (and cannot) allege that the forum selection clause's incorporation was the result of fraud or overreaching. Nor can it argue that the application of English law is fundamentally unfair, particularly because there is no question that XTX can seek to vindicate its

---

[2]    The Subclass Plaintiffs are Edmar Financial Company, LLC ("Edmar") and Irish Blue & Gold, Inc. ("IBG").

rights in English courts, which recognize similar causes of action to those presented in the AC. Nor would enforcing the forum selection clause contravene a strong public policy of New York; on the contrary, New York instead has a strong policy of upholding agreed-upon expectations and freedom of contract. Finally, there is no inconvenience caused by litigating in England (XTX's home court) and, even if there were, it would not be so difficult that XTX would effectively be deprived of adjudicating its claims.

For these reasons, the Court must dismiss XTX's claims against SS Global and Currenex for *forum non conveniens*.

In addition, the Court lacks personal jurisdiction over non-resident SS Global, a foreign corporation operating and existing under the laws of England that offers electronic trading platform services only in certain parts of Europe and does not offer its services in the United States. None of the Plaintiffs, including XTX, have alleged that they transacted any business with SS Global in New York or anywhere in the United States. The only allegation in the AC concerning SS Global is that it entered into an agreement with XTX in England to provide services in the "United Kingdom," which does not create personal jurisdiction over SS Global in this Court under any applicable jurisdictional statutes or the United States Constitution. Plaintiffs' alternative theories of jurisdiction (alter ego, agency, and conspiracy) are meritless.

For these reasons, the Court must dismiss all claims against SS Global.

## BACKGROUND

Plaintiff XTX is an algorithmic trading firm registered in England and Wales with its principal place of business in London, England. AC ¶ 29. On September 22, 2016, it signed the "Agreement for Currenex Services" with SS Global, an English corporation that offers the Currenex platform in the European Economic Area, *id*. ¶¶ 29, 38, and Currenex, a Delaware

corporation, *id*. ¶ 37. *See* Ex. A at 11 (Agreement signed on behalf of XTX by Andonis Sakatis, XTX's Head of Business Development, on September 22, 2016 in London, England). Section 23 of the Agreement contains an explicit selection of English governing law and a forum selection clause mandating that all cases or controversies arising under the Agreement be submitted to an English court (the "English Forum Clause"). Specifically, Section 23 of the Agreement provides:

> **23. Governing Law**: This Agreement will be governed by and construed in accordance with English law. The parties agree to submit to the *exclusive jurisdiction* of the English courts for the adjudication of *any case or controversy* arising under this Agreement and the parties hereby waive their right to a trial by jury in any such litigation.

Ex. A § 23.[3]

When this action was originally filed on August 4, 2021, neither XTX nor SS Global, the only non-U.S. entities to this action, were named as parties. In response to Defendants' motion to dismiss the original complaint—and seeking to try to cure the fatal defects in the Subclass Plaintiffs' claims—XTX and SS Global were added as parties to the AC filed on January 6, 2022. *See* Dkt. Nos. 1, 34, 41; *see also* AC Ex. A (alleging trading on the Platform by original plaintiff Edmar from only August 2014 to October 2015); AC Ex. B. (alleging trading on the Platform by original plaintiff IBG from only August 2014 to April 2016). XTX is the only Plaintiff that allegedly traded on the Platform after April 2016 and SS Global's only alleged involvement in the case is that it signed the Agreement with XTX through which XTX accessed the Platform from England. AC ¶¶ 29, 38. Despite its specific agreement to bring any claims in an English court, XTX now seeks to evade its agreement and pursue claims in this Court. *Id.* ¶¶ 19, 29–30.

---

[3]     The Agreement was amended to add two additional sections, neither of which revises the English Forum Clause. *See* Ex. B (Amendment to the Agreement signed by Sunil Samani, XTX's Co-Head of Legal, on February 23, 2017 in London, England) ("Amendment to the Agreement").

SS Global and Currenex refer to Defendants' joint motion to dismiss the AC for additional background, *see* Dkt. No. 54, and to the Expert Declaration of Jasbir Dhillon, Q.C, filed herewith.

**ARGUMENT**

*First*, the Court should dismiss XTX's claims against SS Global and Currenex for *forum non conveniens*. *Second*, in all events, the Court lacks personal jurisdiction over non-resident SS Global.

## I.    THE COURT SHOULD DISMISS XTX'S CLAIMS FOR *FORUM NON CONVENIENS*

The Second Circuit has a strong policy of honoring forum selection clauses, particularly ones, such as here, that were "made in an arm's-length negotiation by experienced and sophisticated businessmen." *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 288 (S.D.N.Y. 2018), *aff'd*, 785 F. App'x 18 (2d Cir. 2019). A forum selection clause is presumptively enforceable where: 1) "the clause was reasonably communicated to the party resisting enforcement"; 2) "the clause is mandatory"; 3) and "the claims and parties involved in the suit are subject to the forum selection clause." *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). This presumption of enforceability can only be overcome by a "strong showing that enforcement would be unreasonable or unjust." *Donnay USA, Ltd. v. Donnay Intl. S.A.*, 705 F. App'x 21, 23 (2d Cir. 2017).

Because the parties agreed to follow English law in the Agreement, the *scope* of the English Forum Clause (*i.e.,* whether the clause is mandatory and whether the claims are subject to the clause) is governed by English law. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 224 (2d Cir. 2014) ("[Q]uestions about the meaning and scope of a forum selection clause—are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause."). On the other hand, U.S. federal law governs the *enforceability* of the English Forum Clause (*i.e.* whether

5

the clause was reasonably communicated to XTX and whether enforcement would be unreasonable or unjust). *Id.* ("[Q]uestions of enforceability are resolved under federal law").

Here, the English Forum Clause (i) was specifically agreed to by XTX, (ii) is indisputably mandatory on its face, and (iii) under governing English law, is sufficiently broad to encompass most of XTX's claims against SS Global and Currenex, with the remaining claims sufficiently factually intertwined so as to also require dismissal. There is also no credible argument that it would be unfair or unreasonable to require XTX to litigate its English law claims in its home country before an English court, as it specifically agreed to do.

### A.    The English Forum Clause Is Presumptively Enforceable

#### 1.    XTX Agreed To The English Forum Clause In The Agreement

The English Forum Clause was not only communicated to XTX, it expressly agreed to it. *See* Ex. A §12(b) (XTX represents that "this Agreement has been duly authorized, executed and delivered on its behalf by persons authorized to do so"); *see also MBC Fin. Servs. Ltd. v. Bos. Merch. Fin., Ltd.*, 2016 WL 5946709, at *4 (S.D.N.Y. Oct. 4, 2016) (finding that the forum selection clause was reasonably communicated to Plaintiff because of "Plaintiff's [signed] acknowledgement that it received and read the Agreement"), *aff'd*, 704 F. App'x 14 (2d Cir. 2017).

#### 2.    English Forum Clause In The Agreement Is Mandatory

The English Forum Clause is "mandatory" in light of the express language in the Agreement stating that "[t]he parties agree to submit to the *exclusive jurisdiction* of the English courts." *See* Ex. A § 23; *see also MBC Fin. Servs. Ltd.*, 2016 WL 5946709, at *5 ("Under English Law, [w]here the parties have used unambiguous language, the court must apply it." (alteration in original)); *Phillips*, 494 F.3d at 386 ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language."). As explained in the declaration of English law expert Mr. Jasbir Dhillon, Q.C., the

6

forum selection clause "amounts to an agreement by XTX, SS Global and Currenex (as parties to the Agreement) to submit to the jurisdiction of the English Court in respect of any '*case*' or '*controversy*' between those parties that falls within the scope of this clause," and "contains a promise by XTX, SS Global and Currenex not to commence or pursue any proceedings in any jurisdiction except the English Court in respect of any '*case*' or '*controversy*' between those parties that falls within the scope of the clause." Dhillon Decl., ¶¶ 28–29; *see also id*. ¶ 10 ("[A]n English Court applying English law would be highly likely to find that Section 23 contains an agreement by XTX, SS Global and Currenex to submit to the jurisdiction of the English courts and that agreement precludes the commencement and pursuit of claims by those parties which fall within the scope of that agreement in any jurisdiction other than the courts of England.").

### 3.    XTX's Claims Against SS Global and Currenex Fall Within The Scope Of The English Forum Selection Clause In The Agreement

Under governing English law, jurisdiction-selecting contract provisions like the English Forum Clause are broadly interpreted and liberally enforced. *See* Dhillon Decl. ¶ 25 (citing *Fiona Trust & Holding Corp. v. Privalov* [2008] 1 Lloyd's Rep. 254 (hereinafter, "*Fiona Trust*")). In addition, since 2007, English law no longer draws "distinctions between various jurisdiction clause formulations (*e.g.*, "arising out of" or "arising under" or "in connection with")." *Amto, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 564 (S.D.N.Y. 2016) (citing English law). Instead, clauses such as "arising under" or "arising out of" are construed "widely and generously." *Id*. (citing English Law); *see also Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns*, *Ltd*., 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) ("The Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the policy favoring their use."). In addition, English courts follow the "one-stop shop" presumption, which interprets dispute resolution clauses from the assumption that "rational businessmen, are likely to have intended any

dispute arising out of the relationship into which they have entered or purported to enter to be decided in the same forum." Dhillon Decl. ¶ 25.

It is also well settled in the Second Circuit that "a forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the gist of those claims is a breach of that relationship." *Jones v. Ponant USA LLC*, 2020 WL 2489076, at *7 (S.D.N.Y. May 14, 2020), *reconsideration denied*, 2020 WL 3172778 (S.D.N.Y. June 15, 2020); *see also Martinez*, 740 F.3d at 226 ("The scope of a forum selection clause does not turn on whether an ingenious pleader could frame a cause of action without actually mentioning the . . . Agreement"); *Bluefire Wireless Inc.*, 2009 WL 4907060, at *3 ("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action."). Even though the AC is artfully crafted to try to evade the Agreement by, for example, selectively excluding XTX from Plaintiffs' breach of implied covenant claim, all of XTX's claims arise from its contractual use of the Platform and XTX would not have any alleged claims but-for the Agreement. *See Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 WL 421793, at *7 (S.D.N.Y. Mar. 5, 2004) (enforcing forum clause because "it is readily apparent that the causes of action are the products of the contractual relationship contemplated in and memorialized by the [Agreement]"). XTX's claims are all fundamentally premised on the assertion that XTX received different services than it believed it should have received pursuant to the Agreement. That is an unpled breach of contract claim and XTX's "artful pleading" should not be allowed to frustrate the purpose and benefit of the English Forum Clause. *See id.* ("Artful pleading should not be allowed to frustrate the purpose and benefit of a forum selection clause.").

8

#### (a)    Fraud and Conspiracy to Defraud

The crux of XTX's fraud claims are premised on the allegation that the services it received are different from what it contends Currenex represented with respect to the tiebreaking rules used on the Platform and user access to trading information. *See, e.g.*, AC ¶¶ 8–9, 12, 16–17, 117, 126. XTX's allegations flow directly from its Agreement regarding its use of the Platform and the services it received thereunder. Its fraud claim, therefore, is one that "arises under" the Agreement. *See Seaton Ins. Co. v. Cavell USA, Inc.*, 2008 WL 8943879, at *2 (S.D.N.Y. May 14, 2008) (forum selection clause covered fraud claims which "stem[med] from the parties' contractual relationship," and that "ultimately hinge on the rights and duties" set forth in the agreement); *Amto*, LLC, 168 F. Supp. 3d at 567–68 (dismissing fraud and conspiracy to commit fraud claims based on similar English forum selection clause because those claims arose out of plaintiff's expected rights under the agreement).

XTX's fraud claim is "clearly a claim arising out of the parties' contractual relationship," Dhillon Decl. ¶ 34. In particular, XTX complains that because of fraud, it "essentially pa[id] for a service that [it] never received because the Platform was not as advertised," AC ¶ 243, which is a contract-based allegation. Dhillon Decl. ¶ 35. Under well-established English precedent, "a claim alleging fraud committed in the course of a contractual relationship is clearly a claim arising out of that contractual relationship. . . ." *Id*. ¶ 37 (citing to *Fiona Trust* and *Public Institution for Social Security v. Al Rajaan*, [2020] EWHC 2979 (Comm)). XTX's conspiracy to defraud claim also falls within the scope of the English Forum Clause because "the substance of the dispute concerning the conspiracy to defraud claim is a fraudulent scheme which is based upon the same facts concerning the fraud claim." *Id*. ¶ 40. In addition, "an English Court . . . would intend that a claim between those parties alleging conspiracy to commit that fraud be resolved in the same chosen forum, *i.e.*, England." *Id*. Under English law, the conspiracy to defraud claim against SS Global

9

and Currenex falls within the scope of the English Forum clause even where certain alleged co-conspirators are not subject to the English Forum Clause. *See id.* ¶ 41 (citing *Egiazaryan v. OJSC OEK Finance* [2016] 1 Lloyd's Rep. 295, at para. 31 and *Mozambique v. Credit Suisse International* [2022] All E.R. (Comm) 235, at paras. 119-123).

### (b) Unjust Enrichment

XTX claims that SS Global and Currenex were enriched by "increased transaction fees" that it paid pursuant to the Agreement. AC ¶ 284. This quasi-contractual claim also "arises under" the Agreement, which explicitly covers transaction fees. *See* Ex. A § 8 (XTX "agrees to pay the fees set forth . . . for use of the Services")*; see also Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 328, 330 (S.D.N.Y. 2008) (finding that unjust enrichment claim, which relied on the terms of the agreements, fell within the scope of the English forum selection clause stating that "all disputes arising hereunder shall be submitted to the exclusive jurisdiction of the Courts of England and Wales"); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009) (dismissing unjust enrichment claim seeking return of transaction fees because such claim was governed by the contract); *In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d 414, 427 (S.D.N.Y. 2019) (finding that plaintiff's claim for the return of fees is an issue governed by contract and therefore precluded from recovery under quasi-contract). XTX itself states that it seeks a remedy under its unjust enrichment claim because it "paid for a service—participation in a fair auction—[which it] certainly did not receive." AC ¶ 285. Because XTX's unjust enrichment claim is one that "seek[s] restitution of fees paid under the Agreement, *i.e.*, contractual consideration," that claim clearly arises under the Agreement. Dhillon Decl. ¶ 45.

### (c) Tortious Interference with Prospective Economic Advantage

XTX's tortious interference with prospective economic advantage claim against SS Global and Currenex must also be dismissed for *forum non conveniens*, because this too is a claim that

10

arises under the Agreement. XTX's claim is based on its allegations that Defendants' tiebreaking rules "disrupted and interfered" with "business relations with other users of the Platform." AC ¶¶ 320, 322. The Agreement, however, addresses such claims in the section of the Agreement titled "Transactions with Counterparties," *see* Ex. A § 4, and therefore, XTX's claim falls within the scope of the English Forum Clause. *See* Ex. A § 4(a) ("The Client further acknowledges that it may not be able, for a variety of reasons, including the unwillingness of a Counterparty to enter into transactions generally with the Client, to enter into a transaction with any particular Counterparty . . . and the Client agrees that neither Currenex nor any of its affiliates will have any liability in respect thereof."); *see also Cfirstclass Corp.,* 560 F. Supp. at 330 (tortious interference with a prospective business relationship claims fell within the scope of the English forum selection clause). In addition, because the allegations underlying this claim are the same as those underlying the fraud claim, "it is likely that an English Court would conclude that XTX's Tortious Interference [with prospective economic advantage] claim against SS Global and Currenex falls within the scope of the Jurisdiction Agreement for similar reasons." Dhillon Decl. ¶ 65; *see also* Section I.A.3(a).

### (d)   N.Y. General Business Law § 349

XTX's N.Y. General Business Law § 349 claim, which is a statutory claim for deceptive trade practices, must also be dismissed. This claim for "deceptive trade practices" is based on SS Global and Currenex's alleged fraud, which as articulated above in Section I.A.3(a), is encompassed by the English Forum Clause. *See* Section I.A.3(a), *supra*; *see also Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (to state a claim under N.Y. General Business Law § 349, a plaintiff must prove that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."); *see also* Dhillon Decl. ¶ 46 ("The allegations underlying this claim are essentially the same as those

11

underlying the fraud claim which I have concluded falls within the [English Forum Clause]."). The fact that N.Y. General Business Law § 349 is a New York statutory claim does not change the conclusion. Indeed, the parties' agreement in the English Forum Clause to "waive their right to a trial by jury in any such litigation [in the English Court]," Ex. A § 23, evidences an intent for the English Forum Clause to extend to claims under New York or other non-English law because "the parties to any civil claim do not have any right to jury trial under English law and in practice all civil claims in the English Court are tried by judge alone." Dhillon Decl. ¶ 47.

(e)    **Civil RICO, RICO Conspiracy, and Section 1 of the Sherman Act**

XTX's claims for civil RICO (18 U.S.C. § 1962(c)), RICO conspiracy (18 U.S.C. § 1962(d)), and Section 1 of the Sherman Act (15 U.S.C. § 1) all stem from its fraud claim, which arises under the Agreement for the reasons set forth above. For example, the alleged predicate acts for XTX's civil RICO and RICO conspiracy claims are premised on the exact same fraud as is asserted in its fraud claim. *See, e.g.*, AC ¶ 298 (RICO claims are based on allegations that Currenex "made false representations and fraudulent omissions regarding the Platform, even while arriving at secret agreements with the Trading Defendants to give them secret advantages."); *see also* Dhillon Decl. ¶ 56 ("[T]he key constituent factual elements of [the RICO] claim – in particular the Alleged Jump-In-Line Rule and the Alleged Administrator Access allegations, and the misrepresentations said to have been made in light of that alleged conduct – fall squarely in my opinion within the scope of the [English Forum Clause]."). Likewise, XTX's Sherman Act claim is premised on its argument that it was competitively harmed because Defendants allegedly worked together to defraud XTX about the nature of the Platform. *See, e.g.*, AC ¶ 274 ("The Trading Defendants were each aware that they had been given secret bid-rigging benefits through their agreements with Currenex, none of which was disclosed to Plaintiffs or class members."); *see also*

12

Dhillon Decl. ¶ 53 ("[T]he factual allegations underlying [the Sherman Act claim] are essentially the same as, or at least overlap with and are intertwined with, those factual allegations underlying the other claims which do fall within the Jurisdiction Agreement."). Because these claims are factually interrelated with XTX's fraud claims, they should also be dismissed in favor of an English forum. *See, e.g., Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*, 2017 WL 4712422, at *3 (S.D.N.Y. Sept. 25, 2017) ("The fact that some claims are clearly subject to the clause can weigh strongly in favor of transfer of the entire action [to the agreed-upon forum under the forum selection clause], including the other claims—especially where all of the claims are factually interrelated."); *Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 854 (S.D.N.Y. 2017) (dismissing claims related to an indemnity claim that was subject to a forum selection clause); *Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, 2021 WL 5909976, at *12 (S.D.N.Y. Dec. 10, 2021) (dismissing claims factually intertwined with those that were encompassed by the forum selection clause).

The fact that XTX cannot assert claims under these precise U.S. statutes in an English court is of no moment, particularly given that (i) XTX is based in England and agreed to follow English law, and (ii) substantively similar claims exist under English law. *See Martinez*, 740 F.3d at 229 (finding that the inability to pursue U.S. anti-discrimination statutory cause of action in England did not overcome forum selection clause because plaintiff could pursue claims under English anti-discrimination laws); *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 711–12 (2d Cir. 2010) (enforcing Russian forum selection clause for N.Y. statutory claim). The Second Circuit has already held that fraud and conspiracy to defraud under English law are adequate alternatives to a RICO claim. *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1365–66 (2d Cir. 1993) (dismissing RICO claims in favor of English forum selection clause because plaintiffs had "adequate potential

remedies in England and there are significant disincentives to deter English issuers from unfairly exploiting American investors" through "fraud, misrepresentation or inadequate disclosure"); *see also Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 700 (S.D.N.Y. 2003) ("Although there is no exact equivalent of the RICO statute in Russia, the defendants' legal experts argue convincingly that the plaintiffs can bring a cause of action for fraud that would provide an adequate alternative remedy"), *aff'd sub nom. Base Metal Trading Ltd. v. Russian Aluminum*, 98 F. App'x 47 (2d Cir. 2004); Dhillon Decl. ¶ 60 ("English law does recognize broadly analogous civil remedies [to RICO] in the form of claims for damages for fraud, conspiracy to injure by unlawful means including fraud, negligent misrepresentation, negligent misrepresentation under the Misrepresentation Act, and unjust enrichment . . . ."). The Second Circuit has similarly found that English law provides an adequate alternative to the Sherman Act. *See Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 610 (2d Cir. 1998) (dismissing Sherman Act claim on *forum non conveniens* grounds because the court was "satisfied that plaintiffs may litigate the subject matter of their Sherman Act claims in England"); *see also* Dhillon Decl. ¶ 53 ("English law recognizes a claim for compensatory damages for breach of statutory duty in respect of infringements of sections 2 and 18 of the UK Competition Act 1998."); *id.* ("In addition, English law recognizes claims for compensatory damages for breach of statutory duty in respect of infringements of Article 101 and 102 of the Treaty on the Functioning of the E.U.").

### B.    XTX Cannot Overcome The Presumption Of Enforceability

To overcome the presumptive enforceability of the English Forum Clause, XTX must "satisfy the heavy burden" of establishing that (i) "its incorporation was the result of fraud or overreaching"; (ii) "the law to be applied in the selected forum is fundamentally unfair"; (iii) "enforcement contravenes a strong public policy of the forum in which suit is brought"; or (iv) "trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will

14

be deprived of his day in court." *Martinez,* 740 F.3d at 219, 228. Because it cannot satisfy this burden, the English Forum Clause must be enforced.

### 1. The English Forum Clause Was Not A Result Of Fraud Or Overreaching

XTX does not, and cannot, allege that the incorporation of the English Forum Clause was the result of fraud or overreaching; indeed, it has ignored the English Forum Clause altogether. XTX, a sophisticated algorithmic trading firm based in England, knowingly and intentionally signed the Agreement and agreed to the English Forum Clause. *See* Ex. A § 3(c) ("Client acknowledges and agrees that Currenex classifies Client as a Professional Client . . . Professional Clients are considered to possess the experience, knowledge and expertise to make their own investment decisions and assess the risks inherent in their decisions. . . ."); *see also* Ex. B (Amendment to the Agreement signed by Sunil Samani, XTX's Co-Head of Legal). The clause "was in no way hidden from [XTX] or buried in contract minutia. Rather, the clause was its own paragraph, set-off by a title clearly indicating its purpose." *Mercury W. A.G., Inc.*, 2004 WL 421793, at *5; *see also* Ex. A § 23. Nor do XTX's conclusory allegations that it was defrauded into entering into the Agreement (it was not), *see* AC ¶ 242, mean that the English Forum Clause was fraudulently incorporated, because "fraudulent actions capable of overcoming the presumption of validity for a forum selection clause must be directly related to that clause, not the contract more generally." *See Person v. Google Inc.*, 456 F.Supp.2d 488, 494 (S.D.N.Y.2006); *see also Bluefire Wireless, Inc.*, 2009 WL 4907060, at *3 ("[T]he case law in this Circuit is abundantly clear that an allegation of fraud in the inducement of a contract in general is insufficient to invalidate a forum selection provision; rather, the party must show that the forum selection clause itself was the product of fraud.").

15

### 2.      English Law Is Not Fundamentally Unfair

XTX cannot credibly argue that English law will be unjust in the adjudication of its claims. The core of XTX's claims all sound in fraud and English courts permit adjudication of claims sounding in fraud. *See* Dhillon Decl. ¶ 11. In addition, all of XTX's claims can be brought in England under analogous causes of action. *See id.* ¶¶ 11, 38, 43, 48, 53, 56, 60, 66. The English Forum Clause is enforceable even if the claims available in English courts are not precisely the same as the claims available in this Court. *See Martinez*, 740 F.3d at 229 (finding that inability to pursue U.S. statutory cause of action in England did not overcome forum selection clause); *Abert Trading, Inc. v. Kipling Belgium N.V./S.A.*, 2002 WL 272408, at *3 (S.D.N.Y. Feb. 26, 2002) ("An alternative jurisdiction is not rendered inappropriate simply because not all of the contemplated causes of action are available there, so long as the general subject matter of the litigation can be heard there."); *S.K.I. Beer Corp. v. Baltika Brewery,* 443 F. Supp. 2d 313, 324 (E.D.N.Y. 2006) ("[T]he mere identification of claims under laws not recognized by the forum selected in the agreement cannot suffice to defeat a forum selection clause."), *aff'd*, 612 F.3d 705 (2d Cir. 2010).

### 3.      Enforcement Does Not Contravene New York Public Policy

"Public policy concerns abrogate a contracted-for forum selection clause only in exceptional circumstances." *S.K.I. Beer Corp.*, 443 F. Supp. 2d at 324. Enforcing the English Forum Clause is consistent with—and certainly does not contravene—the strong public policy of New York. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63, 67, 134 S. Ct. 568, 581, 584 (2013) (enforcing contractual forum selection provisions "protects [parties'] legitimate expectations" and "the interest of justice is served by holding parties to their [contractual] bargain."); *see also Brodsky v. Match.com LLC*, 2009 WL 3490277, at *3 (S.D.N.Y. Oct. 28, 2009) ("As a threshold matter, New York has a strong public policy of enforcing forum selection clauses so that parties are able to rely on the terms of the contracts they make."); *Lazare*,

337 F. Supp. at 293 (same); *Nimbus Therapeutics, LLC v. Celgene Corp*., 2021 WL 5171592, at *10 (S.D.N.Y. Nov. 8, 2021) ("New York law is also clear that freedom of contract prevails in an arm's length transaction between sophisticated parties.").

Moreover, the Agreement contains a clear English choice-of-law clause. *See* Ex. A § 23 ("This Agreement will be governed by and construed in accordance with English law"). If XTX's claim against SS Global and Currenex were to proceed in New York, this Court would have to interpret XTX's claims pursuant to English law. The English choice-of-law clause therefore "strongly tip[s] in favor of litigation in England." *Pollux Holding Ltd. v. Chase Manhattan Bank.* 329 F.3d 64, 76 (2d Cir. 2003) (affirming dismissal on *forum non conveniens* grounds where agreement had an English choice of law clause); *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir.1996) ("[T]he public interest factors point towards dismissal where the court would be required to untangle problems in conflict of laws, and in law foreign to itself.").

### 4.    Adjudication In England Will Not Be Difficult Or Inconvenient

Adjudicating XTX's claims in England will not be so "difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Martinez,* 740 F.3d at 228. XTX and its documents and witnesses are located in England. SS Global is also located in England. While Currenex is located in the United States, it consented to jurisdiction in the English courts in the Agreement and any burden on Currenex associated with bringing witnesses or documents to England cannot prejudice XTX, let alone effectively deprive XTX of its day in court.

Moreover, even if XTX argues that New York is more convenient for particular witnesses, "these arguments alone are insufficient under the applicable standard to overcome the presumptive enforceability of the forum selection clause." *Bluefire Wireless, Inc*., 2009 WL 4907060, at *4. Nor does it matter that some of XTX's claims against non-signatories to the Agreement may

17

remain in this Court, as courts in the Second Circuit have made clear that "the existence of parallel proceedings in foreign (or domestic) fora is not sufficient to overcome the presumption of enforceability." *Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*, 2010 WL 3743826, at *11 (S.D.N.Y. Sept. 24, 2010) (citing *Indem. Ins. Co. of N. Am. v. K–Line Am., Inc.*, 2008 WL 4922327, at *8 (S.D.N.Y. Feb. 27, 2008) (rejecting argument that "having to litigate claims from the same casualty in two different fora would be unduly burdensome" because "efficiency and fairness concerns, without more, cannot generally justify the nonenforcement of a mandatory forum selection clause")).

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER NON-RESIDENT SS GLOBAL

The Court lacks personal jurisdiction over non-resident SS Global, a foreign corporation operating and existing under the laws of England. AC ¶ 38. SS Global's only connection to this case is that Plaintiffs allege it is a co-signatory to the Agreement with XTX, a foreign named Plaintiff registered in England and Wales with its principal place of business in London. *Id.* ¶¶ 29, 62. The Agreement expressly states that SS Global is offering services in the "jurisdiction" of the "United Kingdom" and is an English law agreement requiring disputes to be heard in English courts. Ex. A §§ 1, 23, "Exhibit C – Jurisdictions." Indeed, SS Global is addressed solely in a single paragraph of the 337-paragraph AC that obliquely references this Agreement, other than the paragraphs introducing the parties. AC ¶ 62.[4]

The Court lacks personal jurisdiction over non-resident SS Global unless Plaintiffs prove that "jurisdiction is authorized by statute" *and* "not prohibited by the Constitution." *City of Long*

---

[4]    The AC generically asserts that SS Global also signed agreements with other unnamed and unidentified putative class members, AC ¶ 62, but "[c]ontacts with unnamed class members may not be used as a jurisdictional basis." *Beach v. Citigroup Alt. Invs. LLC*, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014).

18

*Beach v. Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 432 (S.D.N.Y. 2020); *see also*

*Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) ("On a Rule 12(b)(2) motion

to dismiss, plaintiff bears the burden of establishing jurisdiction over a foreign defendant."). Here,

Plaintiffs can prove neither. Plaintiffs' apparent attempts to overcome these jurisdictional defects

via alternative theories of jurisdiction (alter ego, agency, and conspiracy) are also meritless.

### A. Plaintiffs Fail To Allege Facts Establishing Statutory Jurisdiction

Plaintiffs assert statutory jurisdiction over SS Global pursuant to (i) New York's long-arm

statute, N.Y. C.P.L.R. 302(a), (ii) Section 12 of the Clayton Act, and (iii) Federal Rule of Civil

Procedure 4(k)(2). None of these statutes apply here.

### 1. Plaintiffs Fail To Allege Facts Supporting Jurisdiction Under New York's Long-Arm Statute

New York's long-arm statute provides for personal jurisdiction over a non-resident

defendant like SS Global only where the alleged causes of action "aris[e] from" certain contacts

enumerated in the statute, including (i) transacting business within the state; (ii) committing a

tortious act within the state, (iii) committing a tortious act without the state causing injury within

the state,[5] and (iv) owning, using, or possessing any real property situated within the state. N.Y.

C.P.L.R. 302(a)(1)–(4). Plaintiffs fail to allege facts that, even if true, would establish jurisdiction

under any of these provisions.

*Transacting Business Within New York*. "A defendant transacts business within the

meaning of [N.Y. C.P.L.R.] 302(a)(1) when through volitional acts he avails himself of the

---

[5] In addition to causing injury within New York, N.Y. C.P.L.R. 302(a)(3) only serves as a basis for jurisdiction when the defendant either "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. 302(a)(3).

privilege of conducting business in New York, thus invoking its benefits and legal protections." *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 231 (S.D.N.Y. 2019). "[P]laintiffs must then show that the underlying lawsuit arose from the transacted business," *id.* at 232, which means that "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). Plaintiffs do not allege that SS Global did *anything* in New York. To the contrary, Plaintiffs admit that SS Global offers its services only in the "European Economic Area," AC ¶ 38, and the putative SS Global "marketing materials and disclosures" that Plaintiffs cite in the AC, *id.* ¶ 40, expressly state that SS Global is offering services "in the European Economic Area." Ex. C, April 1, 2015 "Description of Services and Conflicts of Interest," at 2; Ex. D, August 10, 2015 "Description of Services and Conflicts of Interest," at 5; Ex. E, July 27, 2017 "Description of Services and Conflicts of Interest," at 6; *see also* Ex. F, 2011 Product Profile, at 8 (SS Global offers products and services "within certain jurisdictions throughout Europe.").

   *Committing a Tortious Act Within New York*. This "section has been interpreted narrowly by the Second Circuit to require a defendant to be physically present in New York State when committing a tortious act." *Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 312 (S.D.N.Y. 2019). SS Global is organized in England, offers its services in the European Economic Area, and Plaintiffs do not allege that SS Global committed any acts, tortious or otherwise, while physically present in the state of New York. *See* AC ¶ 38.

   *Committing a Tortious Act that Causes Injury Within New York*. XTX is the only party to allege any interaction with SS Global at all and it—like SS Global—is based in England and its agreement with SS Global is limited to the United Kingdom. *Id.* ¶¶ 29, 38; Ex. A § 1, "Exhibit C – Jurisdictions." Thus SS Global cannot have caused any injury in New York. *See Miller Inv. Trust*

*v. Xiangchi Chen*, 967 F. Supp. 2d 686, 696 (S.D.N.Y. 2013) (explaining that plaintiffs suffer injury where they rely on purported misrepresentations; plaintiffs did not suffer injury in New York where their out-of-state investment advisor relied upon misrepresentations and executed the relevant transactions from its out-of-state headquarters). Plaintiffs also fail to allege facts that would satisfy the requirement that SS Global either (i) "regularly does or solicits business," engages in "persistent . . . conduct," or "derives substantial revenue from . . . services rendered" in New York, N.Y. C.P.L.R. 302(a)(3), or (ii) reasonably could have expected its agreement with XTX to provide services in the United Kingdom to "have consequences in New York." *See Berdeaux v. OneCoin Ltd.*, 2021 WL 4267693, at *16 (S.D.N.Y. Sept. 20, 2021) ("[A]bsent allegations of concrete facts known to the defendant that would have led [it] to foresee being sued in New York or tangible manifestations of [its] intent to target New York, a court may not exercise personal jurisdiction over a nondomiciliary under [N.Y. C.P.L.R.] 302(a)(3)."). Given that SS Global operates exclusively in the "European Economic Area," AC ¶ 38, and that the Agreement provides for services solely in the "United Kingdom" and contains a mandatory English Forum Clause, Ex. A §§ 1, 23, "Exhibit C – Jurisdictions," it cannot possibly be found to regularly do business in New York or to expect the services it provided XTX to have consequences in New York. In any event, "[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under [N.Y. C.P.L.R.] 302(a)(3) where the underlying events took place outside New York." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001).[6]

---

[6]    In addition, Plaintiffs' claims sounding in contract, such as tortious interference, and quasi-contract, such as unjust enrichment, cannot be used as a basis for exercising personal jurisdiction under N.Y. C.P.L.R. 302(a)(3) because, "[a]s a threshold matter . . . the cause of action must allege tortious conduct." *Madison Cap. Mkts., LLC v. Starneth Europe B.V.*, 2016 WL 4484251, at *5 (S.D.N.Y. Aug. 23, 2016) (explaining that plaintiff's tortious interference and unjust enrichment

21

*Owning Real Property in New York*. There is no allegation that SS Global owns, uses, or possesses real property in New York.

### 2. Plaintiffs Fail To Allege Facts Supporting Jurisdiction Under Section 12 Of The Clayton Act (15 U.S.C. § 22)

Plaintiffs can only bring their antitrust claim against a defendant who (i) is an inhabitant, (ii) transacts business, or (iii) may be found in the judicial district where the case is pending. *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d at 229–30. SS Global does not satisfy any element.

*First*, SS Global is not an inhabitant of this district. *See id.* at 230 n.4 ("For a corporation, 'inhabitant' means its place of incorporation."); AC ¶ 38 (SS Global "is a corporation organized and existing under the laws of England.").

*Second*, for the reasons stated in Section II.A.1, *supra*, Plaintiffs have not (and cannot) allege facts establishing that SS Global offered any services in New York, or anywhere else in the United States. *See Grosser v. Commodity Exchange, Inc.*, 639 F. Supp. 1293, 1313 (S.D.N.Y. 1986) ("[T]ransact business" under the Clayton Act "requires at least as much as the 'transacting business' prong of [N.Y. C.P.L.R.] 302(a)(1).").

*Third,* as SS Global does not "transact business" in New York, it plainly cannot "be found" in New York, which requires "more than 'transacting business' there"; it requires "proof of continuous local activities." *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d at 230 n.5 ("defining 'more' as 'proof of continuous local activities'" under Section 12 of the Clayton Act).

---

claims are essentially breach of contract actions meaning that the "out-of-state tort provision of the New York long-arm statute . . . is not available").

### 3. Plaintiffs Fail To Allege Jurisdiction Under Federal Rule of Civil Procedure 4(k)(2)

Plaintiffs alternatively claim that, if the Court determines that it does not have personal jurisdiction over any Defendant under New York law or the Clayton Act, it should exercise personal jurisdiction over their federal law claims under Federal Rule of Civil Procedure 4(k)(2). *See* AC ¶ 26. Rule 4(k)(2) only "permits federal courts to exercise personal jurisdiction over a defendant that lacks contacts with any single state if the complaint alleges federal claims and the defendant maintains sufficient contacts with the United States as a whole." *Havlish v. Royal Dutch Shell PLC*, 2014 WL 4828654, at *4 (S.D.N.Y. Sept. 24, 2014). Plaintiffs have not alleged that SS Global offers its services anywhere in the United States, or that it has any greater or different connection to the United States than it has to New York. Accordingly, Rule 4(k)(2) does not permit the exercise of personal jurisdiction over SS Global.

### B. Plaintiffs Fail To Allege Facts Sufficient To Establish Compliance With Constitutional Due Process Protections For Non-Residents Like SS Global

Plaintiffs' failure to establish that personal jurisdiction is authorized by statute means the Court need not reach the due process analysis. *See Commc'ns Partners Worldwide, Inc. v. Main Street Res.*, 2005 WL 1765712, at *7 n.4 (S.D.N.Y. July 26, 2005) ("Because the Court finds that the exercise of personal jurisdiction over defendants does not satisfy New York's statutory requirements, it need not address whether it comports with the constitutional guarantee of due process."). However, Plaintiffs also independently fail to allege facts sufficient to establish that exercising personal jurisdiction over SS Global would comport with due process guarantees under the Constitution because they fail to allege facts establishing specific jurisdiction over SS Global. "Specific jurisdiction considers whether a sufficient nexus exists between the forum and the defendant's conduct giving rise to the claims. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the

23

[forum]." *City of Long Beach*, 465 F. Supp. 3d at 435 (alteration in original). As explained in Section II.A.1, *supra*, Plaintiffs have not alleged that SS Global transacts *any* business in New York or the United States, let alone business giving rise to their claims. Because Plaintiffs have not alleged that SS Global offered its Platform services anywhere other than the "European Economic Area," AC ¶ 38, there is no "nexus" between New York (or the United States) and SS Global's services that purportedly give rise to Plaintiffs' claims. *See City of Long Beach*, 465 F. Supp. 3d at 436 (holding the "Constitution would forbid" exercising specific jurisdiction over foreign corporations where "[n]othing in the complaint permits an inference that the facts giving rise to this lawsuit arose in any significant sense from [foreign corporations'] sparse contacts with the United States").[7]

### C.    Plaintiffs' Alternate Jurisdiction Theories Also Fail

Plaintiffs' blunderbuss "alternate" jurisdiction arguments of alter ego, agency, and conspiracy also all fail.

*Alter Ego*. Plaintiffs conclusorily allege that SS Global is subject to personal jurisdiction through the acts of its alleged "alter-ego" parent corporation, State Street Bank and Trust Company ("State Street"). AC. ¶ 41. But this argument fails because Plaintiffs do not plead any of the facts necessary to establish alter ego jurisdiction, such as that State Street is "financial[ly] dependen[t]" on SS Global; SS Global "interferes in the selection and assignment of [State Street's] executive personnel"; or SS Global exercises any "degree of control" whatsoever over State Street's "marketing and operational policies." *See Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 2017

---

[7]    SS Global is plainly not subject to general jurisdiction in New York as it is well established that a "corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Waraich v. Nat'l Australia Bank*, 2022 WL 126014, at *2 (S.D.N.Y. Jan. 13, 2022).

WL 1113080, at *6 (S.D.N.Y. Mar. 10, 2017). That SS Global is alleged to be a wholly-owned subsidiary of State Street, AC ¶ 41, is wholly insufficient. *See Laydon*, 2017 WL 1113080, at *7 ("Allegations of common ownership, without more, are insufficient to establish jurisdiction through an alter ego theory."); *see also City of Long Beach*, 465 F. Supp. 3d at 438 (holding alter-ego theory of jurisdiction fails where "complaint offers little more than bare allegations of control," "says virtually nothing about the management of the defendants, explains only minimally their relationships with each other, and does not detail what role, if any, [the foreign corporations] played in [the domestic corporation's] operations").

*Agency*. Plaintiffs' argument that SS Global is subject to personal jurisdiction by way of the "acts and contacts of its agents" State Street and Currenex, AC ¶ 41, fails because Plaintiffs do not allege that SS Global exercised control over either State Street or Currenex. *See In re N. Sea Brent Crude Oil Futures Litig.*, 2017 WL 2535731, at *8 (S.D.N.Y. June 8, 2017) (agency requires "that the foreign defendant exerted control over the domestic entity"). To the contrary, Plaintiffs allege that State Street owns and controls both SS Global and Currenex. AC ¶¶ 37, 41.

*Conspiracy*. As a threshold matter, "[f]ederal courts have been increasingly reluctant to extend this theory of jurisdiction beyond the context of New York's long-arm statute." *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 3600425, at *8 (S.D.N.Y. Aug. 18, 2017); *see also In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (rejecting proposition that the "assertion of participation in a conspiracy generally can provide a standalone basis for jurisdiction" because the "rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine"). In the event conspiracy exists as an independent basis for jurisdiction, Plaintiffs failed to allege any facts demonstrating that SS Global participated in any

25

conspiracy. Indeed, SS Global is addressed in only a single paragraph of the 337-paragraph AC, other than the paragraphs introducing the parties, *see* AC ¶ 62, and there are no allegations sufficient to establish that SS Global, for example, committed "overt acts in furtherance of [a] conspiracy [that] had sufficient contacts with [New York] to subject [it] to jurisdiction in that state." *See In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d at 236.

## CONCLUSION

For these reasons, Defendants SS Global and Currenex respectfully request that the Court dismiss XTX's claims against SS Global and Currenex for *forum non conveniens* and dismiss all claims against SS Global for lack of personal jurisdiction.


Dated:  March 18, 2022                                    Respectfully submitted,



                                                         /s/ *Gregg L. Weiner*
                                                         Gregg L. Weiner
                                                         Alexander B. Simkin
                                                         ROPES & GRAY LLP
                                                         1211 Avenue of the Americas
                                                         New York, New York 10036
                                                         Telephone: (212) 596-5000
                                                         Facsimile: (212) 596-9090
                                                         Email: gregg.weiner@ropesgray.com
                                                         Email: alexander.simkin@ropesgray.com

                                                         Robert G. Jones (*pro hac vice*)
                                                         ROPES & GRAY LLP
                                                         800 Boylston Street
                                                         Boston, Massachusetts 02199
                                                         Telephone: (617) 951 7000
                                                         Facsimile: (617) 951 7050
                                                         Email: robert.jones@ropesgray.com

                                                         Samer Musallam (*pro hac vice*)
                                                         ROPES & GRAY LLP
                                                         2099 Pennsylvania Avenue NW

26

Washington, DC 20006
Telephone: (202) 508-4600
Facsimile: (202) 508-4650
Email: samer.musallam@ropesgray.com

*Counsel for Defendants State Street Global Markets International Limited and Currenex, Inc.*

27