UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CURRENEX, INC. et al.,<br><br>Defendants. | Case No. 21-cv-06598 |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants unconvincingly try to cram a square peg into a round hole by providing notice (ECF No. 76) of the "spoofing" case *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 2022 WL 2821504 (2d Cir. July 20, 2022).

Spoofing involves placing a large number of orders very quickly—even within fractions of a second. *See In re Merrill, BofA, and Morgan Stanley Spoofing Litig.*, 2021 WL 827190, at *13 (S.D.N.Y. Mar. 4, 2021). Given the unique nature of such wrongs, when spread out over a multi-year period "[e]ven thousands of fraudulent spoofs whose effect lasted only a matter of seconds would not necessarily impact specific trades or others." *Id.* And as the Second Circuit observed, spoofing can also move prices "in *either* direction," sometimes up and favoring sellers, sometimes down and favoring buyers. *Gamma*, 2022 WL 2821504, at *4. For many reasons inextricably tied to the nature of spoofing, then, even if the plaintiffs had alleged they were "regularly in the market"—which they did not—there would still be no plausible basis to think they were actually harmed. *Merrill*, 2021 WL 827190, at *13; *see also Gamma*, 2022 WL

1

2821504, at *6.  Indeed, the complaint did not explain "even in general terms" how the plaintiffs were harmed.  *Id.* at *5.

The contrast with the nature of this case could not be more stark.[1]  This case is about the Platform's secret rules, which were in effect throughout the class period.  Accordingly, among other things, the complaint plausibly alleges that the presence of Defendants' scheme *consistently* suppressed competition.  ECF No. 41 ¶¶ 153-57.  This continuous reduction in competition caused spreads on the Platform—the liquidity providers' markup—to *always* be artificially wide.  Thus, *every* time Plaintiffs took liquidity from the Platform, Plaintiffs paid too much when buying and received too little when selling.  *See, e.g., id.* ¶¶ 153-57, 168-75.  Defendants ignore these core allegations when falsely portraying the complaint here as turning on the probability the tiebreaking rule was "triggered" on any particular trade.  ECF No. 76 at 2.[2]

If anything, *Gamma* confirms the plausibility of Plaintiffs' claims here.  The Second Circuit expressly distinguished cases about episodic and bi-directional wrongdoing (such as spoofing) from cases about wrongdoing that allegedly "consistently push" prices always against consumers (such as Defendants' practices here).  *Gamma*, 2022 WL 2821504, at *4; *In re Merrill*, 2021 WL 827190, at *13 (plaintiffs did not even try to claim that random micro-second spoofs "warp the market forces continuously").  Indeed, there is a long line of cases recognizing that transacting during a period of continuous wrongdoing easily clears Rule 8's plausibility bar.  *See, e.g., In re LIBOR-Based Fin. Instr. Antitrust Litig.*, 27 F. Supp. 3d 447, 459-61 (S.D.N.Y.

---

[1]  *Gamma* was applying the "actual damages" statutory requirement of the Commodity Exchange Act.  2022 WL 2821504, at *3.  Plaintiffs here bring many other claims.

[2]  Given the secrecy in which Currenex operates its Platform, to demand such details would likely make it impossible for any plaintiff to ever plead a case here.  *See generally, e.g., In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 595 (S.D.N.Y. Jan 28, 2015) (cited at ECF No. 64 at 41; rejecting demand for trade-by-trade details that "are not required, and that Plaintiffs could not reasonably be expected to know, at the pleading stage").

2014) (cited at ECF No. 64 at 39; criticizing "failure to grasp" difference between a case alleging "persistent" impact and a case alleging sporadic, multidirectional trader behavior); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 595 (S.D.N.Y. Jan 28, 2015) (cited at ECF No. 64 at 41; plausible allegations that plaintiff transacted during period of "overarching" wrongdoing sufficient).

To try to distract from this damning contrast, Defendants argue the *antitrust* claim here is not well-pled for other reasons. ECF No. 76 at 2. But of course the use of common sense as part of the Rule 8 notice-pleading inquiry is not limited to antitrust claims. *See Gamma*, 2022 WL 2821504, at *6 (discussing how allegations that "permit us to infer as a matter of common sense that the market prices were artificial when Gamma traded" would have been sufficient). Thus, *all* of Plaintiffs' claims here are plausibly pled.

DATED: August 8, 2022

Respectfully submitted,

| RUDDY GREGORY, PLLC | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| | p |
| By: */s/ Mark Ruddy* | By: */s/ Daniel L. Brockett* |
| Mark Ruddy | Daniel L. Brockett |
| 1225 15th Street NW | Christopher M. Seck |
| Washington, DC 20005 | 51 Madison Avenue, 22nd Floor |
| Telephone: (202) 797-0762 | New York, New York 10010 |
| Fax: (202) 318-0543 | Telephone: (212) 849-7000 |
| mruddy@ruddylaw.com | Fax: (212) 849-7100 |
| | danbrockett@quinnemanuel.com |
| | christopherseck@quinnemanuel.com |
| | |
| | Jeremy D. Andersen (*pro hac vice*) |
| | 865 South Figueroa Street, 10th Floor |
| | Los Angeles, California 90017 |
| | Telephone: (213) 443-3000 |
| | Fax: (213) 443-3100 |

jeremyandersen@quinnemanuel.com

*Counsel for Plaintiffs*