UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; and XTX MARKETS LIMITED, <br><br> Plaintiffs, <br><br> vs. <br><br> CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5, <br><br> Defendants. | Case No. 21-cv-06598 <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT** |

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ..............................................................................................................................2

LEGAL STANDARD.......................................................................................................................3

ARGUMENT....................................................................................................................................3

I. AMENDMENT IS NOT FUTILE ...................................................................................3

II. OTHER CONSIDERATIONS DO NOT WARRANT DENIAL OF LEAVE TO
    AMEND............................................................................................................................6

CONCLUSION.................................................................................................................................7

Pursuant to Federal Rule of Civil Procedure 15(a), this Court's Opinion dated May 18, 2023 (Dkt. No. 83, the "Opinion" or "Op."), and the Joint Stipulation and Order Regarding the Schedule for Filing Answers to Plaintiffs Amended Complaint ("Stipulation and Order") (Dkt. No. 87), Plaintiffs respectfully submit this memorandum of law in support of their motion for leave to file the Second Amended Class Action Complaint (the "SAC").

## PRELIMINARY STATEMENT

Plaintiffs request the Court's permission to file the SAC for the limited purpose of addressing the deficiencies identified by the Court with respect to Defendant State Street Global Markets International Limited ("State Street Global"). Defendants previously agreed to the Stipulation and Order, but later took the position they could not agree to the actual filing of the SAC without seeing the actual SAC first. In an abundance of caution, then, Plaintiffs have filed this motion to formally seek the Court's leave.

The proposed SAC is attached as Exhibit 1 to the Declaration of Daniel L. Brockett, which has been filed contemporaneously with this motion. For the Court's convenience, a "redline" document is also attached thereto as Exhibit 2, identifying all changes in the SAC as compared to the Amended Class Action Complaint ("AC") (Dkt. No. 41).[1] The modest amendments proposed by Plaintiffs are not futile; they make it expressly clear that State Street Global itself had the same role in the scheme as Currenex Inc. In so doing, the SAC addresses the Court's prior hesitancy to extend personal jurisdiction over State Street Global without a better understanding of what it, specifically, was being charged with. Permitting Plaintiffs to file the SAC will therefore not impede the progress of this litigation or unduly prejudice Defendants.

---

[1] Plaintiffs have not re-lodged the exhibits and appendices to the SAC, because Plaintiffs do not propose any changes to those materials.

1

On the other hand, if leave is not granted, Plaintiffs will suffer prejudice as they will not have a full opportunity to resolve their claims against State Street Global on the merits.

Plaintiffs understand that, even if the Court were to grant this motion, State Street Global would be free to move to dismiss the SAC. Plaintiffs respectfully submit that the most efficient way to move forward is for the Court to permit Plaintiffs to file the SAC, and then resolve any arguments as to whether the amendments justify State Street Global remaining in the case long-term in connection with the motion to dismiss process—rather than risk briefing the issue once under the heading of Rule 15 (amendment) then again later under Rule 12 (motion to dismiss).

## BACKGROUND

On January 6, 2022, Plaintiffs filed the AC against Defendants Currenex, Inc., State Street Global, Goldman Sachs & Co. LLC, HC Technologies, LLC, State Street Bank and Trust Company, and John Doe Defendants 1-5. Dkt. No. 41.

On March 18, 2022, Defendants moved to dismiss the AC. Dkt. Nos. 53, 56.

On May 18, 2023, the Court granted in part and denied Defendants' motions to dismiss. Dkt. No. 83. The Court held that it lacked personal jurisdiction over State Street Global and dismissed State Street Global from this action. The Court explained that this decision was based on its conclusion that the AC contained "scant allegations" regarding State Street Global (*id.* at 54), and instead "rel[ied] heavily on factual allegations regarding the conduct of 'Currenex'—a term that the amended complaint uses to refer collectively to both Currenex, Inc. and SS Global" (*id.* at 55). The Court stated that "[a]ny motion for leave to amend must be made no later than thirty (30) days after the date of entry hereof." *Id.* at 62.

On June 1, 2023, the Court entered a Stipulation and Order. Stating that "Plaintiffs have the option to elect to amend the Amended Complaint by June 19, 2023." Dkt. No. 87 at 2. But

in an abundance of caution, rather than simply filing the proposed SAC directly onto the docket, Plaintiffs now seek the Court's leave to do so.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." The Second Circuit "hew[s] to the liberal standard set forth in Rule 15." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). In the absence of problems like "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment, etc.— the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## ARGUMENT

### I.     AMENDMENT IS NOT FUTILE

A pleading amendment is futile only if, "as a matter of law" it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). "Thus, while 'futility' is a valid reason for denying a motion to amend, this is true only where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999). "The burden of showing futility, bad faith, or undue prejudice" as to warrant denial of leave to amend "is on the non-moving party." *Allgaier v. Peterson*, 2015 WL 5459808, at *4 (S.D.N.Y. Aug. 13, 2015).

The Court previously found the AC did not justify extending personal jurisdiction over State Street Global[2] because the AC "scarcely mentions SS Global" and "does not allege plausibly any facts about SS Global that would support a prima facie showing that jurisdiction exists." Op. at 54. Rather, the Court concluded that Plaintiffs relied "heavily on factual allegations regarding the conduct of 'Currenex'—a term that the amended complaint uses to refer collectively to both Currenex, Inc. and SS Global," which the Court held was a "group pleading" that "conflates the alleged actions of the two entities." *Id*. at 55. The Court also concluded that State Street Global's relationship with its parent State Street Bank was not adequately described, and that Plaintiffs had pled insufficient fact-specific allegations regarding the participation of State Street Global in the alleged conspiracy. *Id*. at 56-57. The SAC directly addresses these concerns.

*First*, in the SAC, Plaintiffs clarify that the defined joint term "Currenex" in fact originated with Defendants. That is, the relevant disclosures in this case expressly stated that Currenex, Inc., State Street Global, and State Street Bank would all use the term "Currenex" as encompassing both Currenex, Inc. and State Street Global. Those same disclosures also made clear that *both* Currenex, Inc. and State Street Global "offered" *and* "operated" the Currenex trading platform, and that both entities were involved in the wrongdoing. *See, e.g.*, SAC ¶ 3. The SAC clarifies that the Currenex trading platform and its website were jointly operated and offered by Currenex, Inc. and State Street Global, and that both entities issued the disclosures at issue in this case. *Id*. ¶¶ 4, 7-9, 96, 101-03. To demonstrate this, the SAC includes additional allegations and even screenshots of disclosures, contracts, and the Currenex website itself to

---

[2] To prevent confusion with names of different State Street entities, the SAC defines "State Street Global" to refer to State Street Global Markets International Limited, and "State Street Bank" to refer to State Street Bank and Trust Company (the parent of Currenex, Inc. and State Street Global).

4

demonstrate how Currenex, Inc. and State Street Global *both* claimed responsibility for the disclosures and for offering *and* operating the Platform.  *Id*. ¶¶ 47-54, 96.

*Second*, relatedly, the Court's concern that there were unintended consequences in the use of the defined term "Currenex" has been addressed by also using that defined term far less often. In so doing, the SAC makes clear that Plaintiffs are intentionally alleging throughout that "Currenex, Inc." *and* "State Street Global" *both* undertook the same set of acts.  *E.g.*, *id*. ¶¶ 7 ("Currenex Inc., State Street Global, and State Street Bank purported to be following the industry norm"), 96 (Currenex, Inc. and State Street Global used same website for disclosures), 99 ("Currenex, Inc., State Street Global, and State Street Bank described the Platform's 'central limit order book'").

*Third*, the SAC clarifies that the main difference between the two entities is that State Street Global offered the Currenex trading platform in Europe, the Middle East, and Africa, *id*. ¶¶ 40, 97-98, in contrast to Currenex, Inc., which offered the trading platform in the United States.  The SAC includes specific allegations from contracts to show how various employees of State Street Global transacted and interfaced with U.K. and European customers of the Currenex Platform, *id*. ¶¶ 50, 53.  The SAC also shows specifically how multiple State Street Global employees wore "multiple hats" to act on behalf of both State Street Global and Currenex, Inc., and adduces facts showing that State Street Global had knowledge, awareness, and understanding of the conspiracy's effects in New York and this District.  *Id*. ¶¶ 55-56, 110-12.

In short, the clarified allegations make clear that State Street Global was an equal participant in the alleged wrongdoing, both giving rise to meritorious claims and justifying the extension of personal jurisdiction over State Street Global.  This is including, without limitation, pursuant to the doctrine of "conspiracy jurisdiction."  Under that doctrine, personal jurisdiction

can extend over a foreign defendant where (1) a conspiracy existed; (2) the defendant participated in the conspiracy, and (3) a co-conspirator's act in furtherance of the conspiracy had sufficient contacts to subject that co-conspirator to jurisdiction. *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 87 (2d Cir. 2018). The Court previously found that doctrine to be inapplicable solely because of the AC's ambiguity unintentionally created by the use of the term "Currenex." Op. at 57. With that issue addressed with allegations expressly showing that State Street Global was itself a primary wrongdoer on equal footing with the other co-conspirators, the SAC's amendments are not futile.

## II.   OTHER CONSIDERATIONS DO NOT WARRANT DENIAL OF LEAVE TO AMEND

In deciding whether undue prejudice exists, "courts evaluate whether the amendment would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)). No such prejudice exists here.

No discovery has been taken, no trial date has been set, and Plaintiffs do not seek to add any new claims or Defendants. Plaintiffs' amendment simply seeks to clarify allegations that were in the AC. Granting leave to amend will not cause Defendants to suffer any prejudice, let alone undue prejudice. *See A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (granting leave to amend where trial date had not been set, discovery had not been completed, and claims against new defendants did "not raise factual claims unrelated to the events [in the] original . . . complaint.").

On the other hand, if leave to amend were denied, Plaintiffs would be prejudiced. *See Agerbrink*, 155 F. Supp. 3d at 454 ("This inquiry [of determining prejudice] involves a balancing process, weighing any potential prejudice to the opposing party against the prejudice that the moving party would experience if the amendment were denied."). Absent amendment, Plaintiffs will have no ability to pursue any claims against State Street Global despite being that Defendant allegedly equally culpable in the wrongdoing at issue. Plaintiffs would therefore be denied a fair opportunity to fully litigate the merits of this action. *See U.S. Airways, Inc. v. Sabre Holdings Corp.*, 2015 WL 8335119, at *3 (S.D.N.Y. Dec. 8, 2015) (liberal standard for granting leave "is consistent with the strong preference for resolving disputes on the merits").

Nor is there any evidence of undue delay or bad faith. *See McGuire v. Warren*, 490 F. Supp. 2d 331, 337 (S.D.N.Y. 2007) ("mere delay alone, absent a showing of bad faith or prejudice, is not grounds for denial of leave to amend"). There has been no delay at all: Plaintiffs seek leave to amend within the timeframe authorized by the Court. Plaintiffs have no ulterior motive or hidden agenda—they simply seek to amend the AC to address the deficiencies identified by the Court. *See, e.g.*, *Sabre Holdings Corp.*, 2015 WL 8335119, at *4 (granting motion to file proposed third amended complaint because plaintiff "did not have a hidden agenda to delay the proceedings"). Given "the absence of any apparent or declared reason . . . the leave sought [here] should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for leave to file the proposed Second Amended Class Action Complaint.

DATED:   New York, New York
           June 16, 2023

| | |
|---|---|
| RUDDY GREGORY, PLLC | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| By: */s/ Mark Ruddy* <br> Mark Ruddy <br> 1225 15th Street NW <br> Washington, DC 20005 <br> Telephone: (202) 797-0762 <br> Fax: (202) 318-0543 <br> mruddy@ruddylaw.com | By: */s/ Daniel L. Brockett* <br> Daniel L. Brockett <br> Steig D. Olson <br> Christopher M. Seck <br> 51 Madison Avenue, 22nd Floor <br> New York, New York 10010 <br> Telephone: (212) 849-7000 <br> Fax: (212) 849-7100 <br> danbrockett@quinnemanuel.com <br> steigolson@quinnemanuel.com <br> christopherseck@quinnemanuel.com <br><br> Jeremy D. Andersen (*pro hac vice*) <br> 865 South Figueroa Street, 10th Floor <br> Los Angeles, California 90017 <br> Telephone: (213) 443-3000 <br> Fax: (213) 443-3100 <br> jeremyandersen@quinnemanuel.com |

*Counsel for Plaintiffs and the Proposed Class*