UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EDMAR FINANCIAL COMPANY, LLC, et al.,

                          Plaintiffs,

              v.

                                           21-cv-6598 (LAK)

CURRENEX, INC., et al.,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   6/17/2024

## MEMORANDUM OPINION

Appearances:

      Daniel L. Brockett
      Christopher M. Seck
      Jeremy D. Andersen
      QUINN EMANUEL URQUHART & SULLIVAN, LLP

      Mark Ruddy
      RUDDY GREGORY, PLLC

      *Attorneys for Plaintiffs*

      Gregg L. Weiner
      Alexander B. Simkin
      Robert G. Jones
      Samer Musallam
      ROPES & GRAY LLP

      *Attorneys for Defendant State Street Global Markets International*
      *Limited*

LEWIS A. KAPLAN, *District Judge.*

This putative class action involves Currenex, a widely used foreign exchange trading platform jointly operated by defendants Currenex, Inc. and State Street Global Markets International Limited ("SS Global" or "State Street Global").[1]  Plaintiffs alleged that SS Global and Currenex, Inc. conspired with a subset of participants who traded on the Currenex Platform[2] to "rig" auctions for foreign exchange transactions.

Last year, the Court granted in part and denied in part defendants' motions to dismiss.[3]  Relevant here, it granted SS Global's motion to dismiss for lack of personal jurisdiction. Plaintiffs then filed a second amended complaint ("SAC"), which  pled additional facts regarding SS Global's contacts in New York State.[4]  SS Global again moves to dismiss for lack of personal jurisdiction — that motion currently is before the Court.[5]  For the reasons explained below, the motion is denied.

---

[1]
SS Global and Currenex, Inc. are wholly owned subsidiaries of State Street Bank and Trust Company ("State Street Bank").  Dkt 96 (SAC) at ¶¶ 39–40.

[2]
Defendants Goldman, Sachs & Co. LLC ("Goldman Sachs"), HC Technologies, LLC ("HC Tech"), State Street Bank, and unidentified Doe Defendants (collectively, the "Trading Defendants").

[3]
Dkt 83 [*Edmar Fin. Co., LLC v. Currenex, Inc.*, No. 21-cv-6598 (LAK), 2023 WL 3570017 (S.D.N.Y. May 18, 2023)].

[4]
Dkt 96.

[5]
Dkt 99.

*Background*

The Court assumes familiarity with the facts recounted in its prior opinion.  Thus, it notes only briefly those facts most pertinent to its disposition of this motion, which are relatively few.

In granting SS Global's earlier motion to dismiss for lack of personal jurisdiction, the Court held that plaintiffs did "not allege plausibly any facts about SS Global that would support a *prima facie* showing that jurisdiction exists."[6]  "Instead," the Court observed, "plaintiffs rely heavily on factual allegations regarding the conduct of 'Currenex' — a term that the amended complaint uses to refer collectively to both Currenex, Inc. and SS Global."[7]  That group pleading — which conflated the alleged actions of the two entities — failed to establish personal jurisdiction over each defendant.

In the SAC, plaintiffs include a section entitled "summary of jurisdictional facts on State Street Global."  Among other things, plaintiffs allege  that "Currenex, Inc. and State Street Global[] . . . jointly 'offered' and 'operated' the Currenex Platform"[8] and that "[t]he Platform website itself . . . defines 'Currenex' to include both Currenex, Inc. and State Street Global."[9] "This meant," say plaintiffs, "that every representation or disclosure by or about 'Currenex' was also

---

[6] Dkt 83 at 54.

[7] Dkt 83 at 55.

[8] SAC at ¶ 47.

[9] SAC at ¶ 49.

3

explicitly a representation or disclosure by or about both Currenex, Inc. *and State Street Global*."[10]

Plaintiffs concluded, "State Street Global thus directly participated in the events giving rise to these

claims.  It shared responsibility for the disclosures at issue.  It told users it would take responsibility

for offering the Platform and operating the Platform.  It referred to itself as being 'Currenex' just

as much as 'Currenex, Inc.' is Currenex."[11]

*Discussion*

*Legal Standard*

"[T]he showing a plaintiff must make to defeat a defendant's claim that the court

lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'"[12]

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by

pleading in good faith, legally sufficient allegations of jurisdiction."[13]  That is, where, as here, there

has been no jurisdictional discovery, "the plaintiff need only make a *prima facie* showing that the

court possesses personal jurisdiction over the defendant."[14]

A federal court sitting in New York State has personal jurisdiction over a defendant

if New York law confers jurisdiction over that defendant provided that exercising jurisdiction over

---

[10]

SAC at ¶ 48 (emphasis added).

[11]

SAC at ¶ 51.

[12]

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

[13]

*Id*. (quoting *Ball*, 902 F.2d at 197).

[14]

*Id*. (internal quotation marks omitted).

4

the defendant would comport with federal due process protections.[15]  Here, plaintiffs argue that this Court has personal jurisdiction over SS Global under New York's long-arm statute, which provides for jurisdiction over a non-domiciliary "who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state" as long as the claims in suit arose from that business activity.[16]

*Application*

Plaintiffs make a *prima facie* showing that this Court properly may exercise personal jurisdiction over defendant SS Global.  Personal jurisdiction lies, at least, as a consequence of SS Global's activities in New York through its joint operation of the Currenex Platform in the state.[17]

The SAC alleges that the jurisdictional contacts of the Currenex Platform may be imputed to SS Global because SS Global operated the Platform in conjunction with Currenex, Inc.  According to the SAC, "State Street Global, together with Currenex, Inc. . . . operate and manage the Currenex Platform";[18] SS Global "claimed responsibility . . . for offering the [Currenex] Platform";[19] and SS Global and Currenex, Inc. "used" the trade name "'Currenex' to refer

---

[15]

See *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).

[16]

N.Y. CPLR § 302(a)(1).

[17]

Plaintiffs aver several other bases for personal jurisdiction, which the Court need not consider to resolve the instant motion.

[18]

SAC at ¶ 40.

[19]

SAC at ¶ 47.

interchangeably to Currenex, Inc. and State Street Global."[20]  Therefore, asserts the SAC, SS Global "directly participated in the events giving rise to" plaintiffs' claims.[21]  The Court agrees, and it holds that the jurisdictional contacts of the Currenex Platform in New York may be imputed to SS Global.

Next, the SAC alleges that the Currenex Platform — and therefore SS Global — had extensive contacts in New York.  For example, it states that the Platform was "located in . . . this District, which matched and executed trades in the United States and in his District."[22]  It alleges also that, in "deciding what contracts to enter into, how to operate the Platform, [and] whether to give secret advantages to . . . customers . . . State Street Global's representatives acted . . . within this District."[23]  And, it alleges, "State Street Global's agents drafted many of the fraudulent marketing materials and disclosures at issue on State Street Global's behalf . . . in this District."[24] These contacts with New York suffice to make out a *prima facie* case for personal jurisdiction.

SS Global protests that plaintiffs' claims did not arise from the Currenex Platform's business activities in New York.  First, it cites evidence that the Platform's "matching engine servers are located at third-party data centers" outside of New York.[25]  But resolution of such a factual issue

---

[20]

SAC at ¶ 48.

[21]

SAC at ¶ 51.

[22]

SAC at ¶ 54; *see also* Dkt 83 at 47 (this Court noting that the Currenex Platform is "furnished . . . in the state of New York").

[23]

SAC at ¶ 55.

[24]

SAC at ¶ 53.

[25]

Dkt 100 at 5–6 (internal quotation marks omitted).

6

is not proper where, as here, the Court decides a personal jurisdiction challenge on the pleadings.[26] In any event, SS Global's factual assertion is not dispositive of where the Platform is based, because it is at least conceivable that an internet-enabled business could operate from one state with its data center located in another.

Next, SS Global argues that the SAC did "not allege *any* actions were taken with regard to operation of the Platform by any SS Global employee in New York."[27]  As noted above, however, the SAC alleged that the Currenex Platform, which SS Global operated in partnership, made numerous, apparently important, business decisions from New York and that SS Global's "agents drafted many of the fraudulent marketing materials and disclosures at issue" in New York.[28] These contacts with New York suffice to make out a *prima facie* case for personal jurisdiction under the State's long-arm statute.

Last, exercising personal jurisdiction over SS Global comports with due process considerations.   Where, as here, jurisdiction is appropriate under Section 302(a), due process requirements are presumed to be satisfied.[29]  By choosing to operate its foreign exchange trading platform in New York, SS Global purposefully availed itself of the laws and privileges of the State

---

[26]

    *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986).

[27]

    Dkt 100 at 6.

[28]

    SAC at ¶ 53.

[29]

    *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements."); *Licci*, 732 F.3d at 170 (observing that it "would be unusual" if § 302(a)(1) were satisfied but due process requirements were not); *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 645 (2d Cir. 2023).

such that "maintenance of the suit" in this district would "not offend traditional notions of fair play and substantial justice."[30]

### Conclusion

Plaintiffs have met their burden of pleading facts that, taken as true, make a *prima facie* case that this Court has personal jurisdiction over SS Global with respect to the claims in suit. "Eventually, of course, the plaintiff[s] must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a *prima facie* showing suffices, notwithstanding any controverting presentation by" SS Global.[31]

Accordingly, defendant's motion to dismiss (Dkt 99) is denied.

SO ORDERED.

Dated:      June 17, 2024

_____
Lewis A. Kaplan
United States District Judge

---

[30] *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); *see Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

[31] *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).