# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; and XTX MARKETS LIMITED,<br><br>                Plaintiffs,<br><br>vs.<br><br>CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5,<br><br>                Defendants. | Case No. 21-cv-06598 |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs request that each Defendant separately produce the documents and things requested herein. These Requests for Production should be read, interpreted, and responded to in accordance with the definitions and instructions set forth below.

Plaintiffs reserve all rights regarding future discovery requests, including the right to serve additional document requests related to the Requests below, or on any other subject.

**DEFINITIONS**

1.      Unless otherwise stated below, the definitions and rules of construction set forth in FRCP 26 and 34 and Local Rule 26.3 shall apply to these Requests.

2.      "2015 Disclosures" means the disclosures and representations described in Paragraphs 98-99 of the Complaint.

3.      "2017 Disclosures" means the disclosures and representations described in Paragraph 103 of the Complaint.

4.      "Agreement" means any oral or written contract, arrangement, or understanding, whether formal or informal, between two or more persons, together with all modifications or amendments thereto.

5.      "Board of Directors" or "Board" means the board of directors of a parent organization or of the subsidiary of a parent corporation.  To the extent any of these Requests refer to the Board of Directors or Board of a defined group of entities, the request means the Board of Directors of any and each of the members of the defined group of entities.

6.      "Communication" (or any variant thereof) is intended to be as comprehensive as the meaning provided in Local Rule 26.3(c)(1) and includes "the transmittal of information, in the form of facts, ideas, inquiries, or otherwise," including written transmissions by means such as letters, memoranda, telegrams, telecopies, facsimiles, telexes, e-mail, Bloomberg messages, instant messages, text messages, chat messages, electronic bulletin board or blog messages or posts, or any other Document; including oral transmissions by means such as face-to-face meetings or telephone or video conversations, and any writings memorializing such oral contact and the transmittal of information by any means.

7.      "Currenex" means Defendant Currenex, Inc. and its parent companies, divisions, business units, subsidiaries, affiliates, predecessors, successors-in-interest, and companies under their direct or indirect management or control, as well as any of their present and former agents, directors, officers, managers, analysts, accountants, attorneys, experts, consultants, representatives, servants, employees, or other persons acting under their direction or control.

8.     "Complaint" means the Second Amended Class Action Complaint filed by Plaintiffs in Case Number 21-cv-06598 in the United States District Court for the Southern District of New York, or any subsequent amendments thereto.

9.     The terms "concerning" and "concern" mean relating to, referring to, describing, evidencing or constituting, as defined in Local Rule 26.3(c)(7).

10.     "Custodians" means the Personnel of a Party from whom Documents will be collected for discovery in this Lawsuit.

11.     "Defendants" means Currenex, Goldman Sachs, HC Tech, State Street Bank, and State Street Global.

12.     "Data" means all information of all kinds, whether maintained by electronic data processing systems or other systems, and includes all non-identical copies of such information.

13.     "Document" (or any variant thereof) is at least equal in scope to the usage of the terms "documents or electronically stored information" in FRCP 34(a)(1)(A), as provided in Local Rule 26.3(c)(2).  A draft or non-identical copy constitutes a separate "document" within the meaning of the term.  The term "Documents" includes "Communications" and "Data," as defined herein.

14.     "ESI" or "electronically stored information," is defined to be any portion of data available on a computer or other device capable of storing electronic data.  ESI includes email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, *e.g.*, Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI include: servers, desktop computers, portable computers,

handheld computers, flash memory devices, cell phones or other wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises.  ESI is meant to include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages or chats.  For any Document kept in electronic form, the term "Document" includes all metadata associated with the Document.

15.    "FX" means "forex" or "foreign exchange" and relates to the trading of national currencies and the rates at which one currency is exchanged for another in such trading.

16.    "FX E-Trading" means the trading of FX on an electronic trading platform.

17.    "Goldman Sachs" means Defendant Goldman Sachs & Co. LLC and its parent companies, divisions, business units, subsidiaries, affiliates, predecessors, successors-in-interest, and companies under their direct or indirect management or control, as well as any of its present and former agents, directors, officers, managers, analysts, accountants, attorneys, experts, consultants, representatives, servants, employees, or other persons acting under their direction or control.

18.    "HC Tech" means HC Technologies, LLC and its parent companies, divisions, business units, subsidiaries, affiliates, predecessors, successors-in-interest, and companies under their direct or indirect management or control, as well as any of its present and former agents, directors, officers, managers, analysts, accountants, attorneys, experts, consultants, representatives, servants, employees, or other persons acting under their direction or control.

19.    "Revised 2015 Disclosures" means the disclosures and representations described in Paragraphs 100-102 of the Complaint.

20.     "Lawsuit" means the litigation referred to in the above caption, Case Number 21-cv-06598 in the United States District Court for the Southern District of New York.

21.     "Meeting" means any face-to-face, virtual, electronic, or telephonic interaction where two or more persons communicate.

22.     "Parties" means the Plaintiffs and the Defendants in this Lawsuit, together.  As provided by Local Rule 26.3(c)(5), a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

23.     "Personnel" refers to any of Your current or former directors, officers, or employees, agents, representatives, attorneys, or independent contractors acting under Your direction or control or for Your benefit.

24.     "Plaintiffs" means Edmar Financial Company, LLC, Irish Blue & Gold, Inc., XTX Markets Limited, and their respective parent companies, divisions, business units, subsidiaries, affiliates, predecessors (including without limitation, for XTX Markets Limited, Green Park Trading 1 Limited), successors-in-interest, and companies under their direct or indirect management or control, as well as any of their present and former agents, directors, officers, managers, analysts, accountants, attorneys, representatives, servants, employees, or other persons acting under their direction or control.

25.     "Platform" and "Currenex Platform" and mean Currenex, Inc.'s Executable Streaming Prices Trading Model, or similar functioning platforms operating under different names.

26.     "Source Code" means programming language text (including human-readable program language text) that defines software and/or firmware.  Source Code files include, but are

not limited to, files containing code in "C", "C++", "Java" and assembly programming languages for, but not limited to, a digital signal processor ("DSP") and/or other programmable processors. Source Code files further include "include" files, "make" files, "link" files, "build" files, "configuration" files, "version control history" files, "configuration history" files, and other text files (including human-readable text files) used in the generation and/or building of software directly executed on an application processor, baseband processor, micro-controller, or DSP. Source Code further includes the text of any comments, revision histories and associated metadata, formulas, algorithms, logics, engineering specifications, or schematics associated with the foregoing. Further, the term "software," as used above is meant to include operating systems as well as operating system kernels, libraries and dynamic link libraries ("DLLs"), compiled programs, applications, and drivers.

27. "State Street Bank" means State Street Bank and Trust Company and its parent companies, divisions, business units, subsidiaries, affiliates, predecessors, successors-in-interest, and companies under their direct or indirect management or control, as well as any of their present and former agents, directors, officers, managers, analysts, accountants, attorneys, representatives, servants, employees, or other persons acting under their direction or control.

28. "State Street Global" means State Street Global Markets International Limited and its parent companies, divisions, business units, subsidiaries, affiliates, predecessors, successors-in-interest, and companies under their direct or indirect management or control, as well as any of their present and former agents, directors, officers, managers, analysts, accountants, attorneys, representatives, servants, employees, or other persons acting under their direction or control.

29.     "Tiebreaking Rules" means the process by which the Platform determines which liquidity provider becomes a party to a trade when the prices quoted by two or more liquidity providers are identical.

30.     "Trading Defendants" means Goldman Sachs, HC Tech, and State Street Bank.

31.     The terms "You" and "Your" as used herein shall refer to the Defendant responding to the Request and its parents, predecessors, other affiliates, successors, assigns, or subsidiaries, including officers, directors, employees, partners, agents, consultants, or any other person acting or purporting to act on behalf of such entities.

## INSTRUCTIONS

1.     This consolidated set of requests for production is directed in its entirety to each Defendant separately.

2.     You are requested to produce all Documents described below that can be located by a reasonable and diligent search of materials within Your possession, custody, or control, or for which any of Your officers, directors, agents, employees, representatives, affiliated or associated companies or any other person or entity acting or purporting to act on Your behalf has the practical ability to obtain.

3.     Unless otherwise stated in a specific Request and without waiving any rights to seek discovery for earlier or later time periods in connection with these or any other discovery requests at any time, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during the period of January 1, 2004 through the present.

4.     Unless otherwise stated in a specific Request, Requests for Documents or Communications include Your or any other Defendant's internal Communications,

Communications between or among any Defendants, and Communications between or among any Defendants and any third parties.

5.      Documents, including ESI, should be produced pursuant to the ESI Protocol agreed to by the Parties and/or ordered by the Court.

6.      If You object to any part of a Request, You should state the basis of Your objections clearly and completely in accordance with FRCP 34, and produce all Documents called for by the portion of the Request to which You do not object.

7.      If there are no Documents responsive to any particular Request, Your response should state so in writing.

8.      If You encounter any ambiguity in construing a Request, or any definition or instruction relevant to a Request, You should set forth the matter deemed ambiguous and the construction You adopted to respond to the Request.

9.      In the event any Document responsive to these Requests has been lost, discarded or destroyed, that Document is to be identified by stating as completely as possible: (a) the authors or creators of the Document; (b) all persons who received copies of the Document, including the Document's indicated and blind copy recipients; (c) the present custodian of the Document; (d) the date of the Document; (e) the Document's date of destruction or discard, manner of destruction or discard, and the reason for destruction or discard; and (f) the persons authorizing and carrying out such destruction or discard.

10.     A Document with handwritten, typewritten, electronically inserted, or other recorded notes, comments, editing marks, etc. of any kind shall not be deemed identical to one without such notations.

11.     Each Request herein should be construed independently.  No Request shall be construed by reference to any other Request for the purpose of limiting the scope of the response to such Request.

12.     All Documents called for by these Requests are to be produced in their full and unredacted form (except as necessary to protect a recognized and legitimate claim of privilege that is documented in a privilege log) and as kept in the ordinary course of business.  Documents or pages that are physically or electronically attached to one another in Your files should be considered a single Document for purposes of these Requests and should be produced in that form.  Documents that are categorized or identified by file labels, dividers, tabs or any other method should be produced along with the labels, dividers or tabs.

13.     If any Document or any portion of a Document is withheld under a claim of a privilege, You should furnish a list identifying each Document for which a privilege is claimed, together with the following information:

(a)     the type of Document (i.e., letter, memorandum, telegram, chart, photograph, etc.);

(b)     a description of the Document sufficient to identify it without revealing the information for which the privilege is claimed;

(c)     the date of the Document;

(d)     the name, present or last known home and business address, telephone number, the title (or position), and the occupation of the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

(e)     the nature of the privilege being claimed;

      (f)     the location of the Document;

      (g)     the custodian of the Document; and

      (h)     for electronic files, the metadata associated with that Document.

14.     If You claim a privilege as to only a portion of a Document, You should produce the portion of the Document as to which You do not claim privilege.

15.     The terms "all," "any," and "each" shall be construed as encompassing any and all, as provided by Local Rule 26.3(d)(1).

16.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery Request all responses that might otherwise be construed to be outside of the scope, as provided by Local Rule 26.3(d)(2).

17.     The use of the singular form of any word includes the plural, and vice versa, as provided by Local Rule 26.3(d)(c)(3).

18.     The terms "include" and "including" shall be construed also to mean including but not limited to.

19.     These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial.  Such supplemental Documents should be produced promptly upon their discovery.  Plaintiffs specifically reserve the right to seek supplementary responses and additional supplementary production(s) of Documents before trial.

## **REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1 (to Currenex only):**

Documents sufficient to show the organization, structure, and personnel, including divisions, departments, segments, units, or sub-divisions that are or were responsible for or

involved in FX E-Trading, including organizational charts or Personnel lists for each of Your divisions, departments, or desks with responsibility for or involvement with the Platform.

**REQUEST FOR PRODUCTION NO. 2 (to the Trading Defendants):**

Documents sufficient to show the organization, structure, and personnel, including divisions, departments, segments, units, or sub-divisions that are or were responsible for or involved in FX E-Trading, including organizational charts or Personnel lists for each of Your divisions, departments, or desks with responsibility for or involvement with the Platform, including with respect to the design or operation of, or trading on, the Platform.

**REQUEST FOR PRODUCTION NO. 3 (to all Defendants):**

Organizational charts and Personnel lists on which any person named in any Party's initial disclosures or any Custodian appears.

**REQUEST FOR PRODUCTION NO. 4 (to all Defendants):**

Documents concerning representations made to actual or potential users of the Platform (including contractual representations, disclaimers, representations on Your web sites (including archived versions), PowerPoint presentations, e-mails, and manuals) concerning the Platform's tie-breaking rules or the information accessible to users concerning the orders and flow of other users, including all Documents concerning the drafting of any such representations.

**REQUEST FOR PRODUCTION NO. 5 (to all Defendants):**

Documents concerning the 2015 Disclosures, the Revised 2015 Disclosures, and the 2017 Disclosures, including all Documents concerning the drafting of those disclosures.

**REQUEST FOR PRODUCTION NO. 6 (to all Defendants):**

Documents concerning State Street Global's involvement in the preparation of representations made to actual or potential users of the Platform, including the 2015 Disclosures,

the Revised 2015 Disclosures, the 2017 Disclosures, and representations on the Platform web site.

**REQUEST FOR PRODUCTION NO. 7 (to Currenex only):**

Documents concerning any Meetings of Your Board, including minutes of such Meetings and any Documents provided to or created by the Board.

**REQUEST FOR PRODUCTION NO. 8 (to the Trading Defendants):**

Documents concerning any Meetings of Your Board concerning trading on the Platform, including minutes of such Meetings and any Documents provided to or created by the Board.

**REQUEST FOR PRODUCTION NO. 9 (to Currenex only):**

Documents concerning any Meetings of committees with responsibility for the operation of the Platform, the Platform's matching engine or Tiebreaking Rules, or analyses of customers' performance on the Platform, including minutes of such Meetings and any Documents provided to or created by such committees.

**REQUEST FOR PRODUCTION NO. 10 (to all Defendants):**

Documents concerning any Meetings of the operations or technical team with responsibility for the operation of the Platform, the Platform's Tiebreaking Rules, or analyses of customers' performance on the Platform, including minutes of such Meetings and any Documents provided to or created by such team.

**REQUEST FOR PRODUCTION NO. 11 (to all Defendants):**

Documents concerning any analyses of performance on the Platform, including trading volumes on the Platform, analyses of the Platform's Tiebreaking Rules, customers' performance on the Platform, the Platform's liquidity providers, customer fill ratios, or the use of "last look" or "priorities."

**REQUEST FOR PRODUCTION NO. 12 (to all Defendants):**

Documents concerning any analyses of performance on FX E-Trading platforms other than the Platform, including trading volumes on the other platform, analyses of the other platform's Tiebreaking Rules, customers' performance on the other platform, the other platform's liquidity providers, customer fill ratios, or the use of "last look" or "priorities."

**REQUEST FOR PRODUCTION NO. 13 (to all Defendants):**

Documents concerning the Currenex Platform's volume and market share, including its daily trading volume and share of the daily trading volume of FX transactions.

**REQUEST FOR PRODUCTION NO. 14 (to the Trading Defendants):**

Documents concerning Your performance in trading on the Platform, including currency volume of trades and quotes, number of trades and quotes, hit rates, fill ratios, transaction costs, spreads, comparisons to benchmarks, and any performance measurements by counterparty and currency pair.

**REQUEST FOR PRODUCTION NO. 15 (to HC Tech):**

Documents concerning any changes in Your performance trading on the Platform (including currency volume of trades and quotes, number of trades and quotes, hit rates, fill ratios, transaction costs, spreads, comparisons to benchmarks, and any performance measurements by counterparty and currency pair) following HC Tech's hiring of former Currenex employees, including Sean Gilman and Cary Rosenwald.

**REQUEST FOR PRODUCTION NO. 16 (to all Defendants):**

Documents concerning any form of remuneration paid or incentives offered (including order book priority) by Currenex to the Trading Defendants in connection with any Trading Defendant's use of the Platform, including discounts, rebates, or any other consideration.

**REQUEST FOR PRODUCTION NO. 17 (to Currenex and State Street Bank only):**

Documents concerning State Street Bank's acquisition of Currenex, including concerning how State Street Bank valued Currenex and ways State Street Bank could leverage ownership of the Platform for the benefit of its own FX trading business, including by granting itself special privileges through favorable Tiebreaking Rules or otherwise.

**REQUEST FOR PRODUCTION NO. 18 (to Currenex only):**

Documents sufficient to show Currenex Personnel who were also State Street Global Personnel.

**REQUEST FOR PRODUCTION NO. 19 (to all Defendants):**

Communications with other Defendants concerning the Platform, including with respect to the Platform's Tiebreaking Rules, user performance on the Platform (including with respect to currency pairs, volume, hit rates, fill ratios, transaction costs, spreads, comparisons to benchmarks, performance and volume of trades by counterparty), and the Platform's share of the market.

**REQUEST FOR PRODUCTION NO. 20 (to all Defendants):**

Internal Communications concerning the Platform, including with respect to the Platform's Tiebreaking Rules, user performance on the Platform (including with respect to currency pairs, volume, hit rates, fill ratios, transaction costs, spreads, comparisons to benchmarks, performance and volume of trades by counterparty), and the Platform's share of the market.

**REQUEST FOR PRODUCTION NO. 21 (to all Defendants):**

Communications with third parties concerning the Platform, including with respect to the Platform's Tiebreaking Rules, user performance on the Platform (including with respect to currency pairs, volume, hit rates, fill ratios, transaction costs, spreads, comparisons to

14

benchmarks, performance and volume of trades by counterparty), and the Platform's share of the market.

**REQUEST FOR PRODUCTION NO. 22 (to all Defendants):**

Documents concerning the Platform's Tiebreaking Rules, including how those rules operated on the Platform.

**REQUEST FOR PRODUCTION NO. 23 (to all Defendants):**

Documents concerning the granting to users of the Platform (including the Trading Defendants) of any privileges with respect to the operation or use of the Platform that provided access, rights, trade opportunities, views, or features not available to all other users, including any favorable Tiebreaking Rules (such as jump-in-line rights), any favorable application of such rules, or any other privilege.

**REQUEST FOR PRODUCTION NO. 24 (to Currenex only):**

Documents sufficient to show the information available or accessible to users of the Platform at each level of access rights.

**REQUEST FOR PRODUCTION NO. 25 (to the Trading Defendants only):**

Documents regarding Your understanding of the information available or accessible to users of the Platform at each level of access rights, including what access You were entitled to under the disclosed rules and what access You were actually being given.

**REQUEST FOR PRODUCTION NO. 26 (to Currenex only):**

Documents concerning any comparison of users' access rights on the Platform.

**REQUEST FOR PRODUCTION NO. 27 (to all Defendants):**

Your system logs reflecting when a Trading Defendant accessed the Platform using any account or account privileges, including those assigned to any other person or entity other than a Trading Defendant.

**REQUEST FOR PRODUCTION NO. 28 (to the Trading Defendants only)**

Documents sufficient to show the names, owners, and access rights of all accounts that You were provided to access the Platform.

**REQUEST FOR PRODUCTION NO. 29 (to Currenex only):**

All internal tracking codes for all users of the Currenex Platform, including as discussed in Paragraph 122 of the Complaint.

**REQUEST FOR PRODUCTION NO. 30 (to the Trading Defendants only):**

All internal tracking codes for accounts You used to access the Currenex Platform, including as discussed in Paragraph 122 of the Complaint.

**REQUEST FOR PRODUCTION NO. 31 (to all Defendants):**

Documents concerning State Street Global's involvement with the operation of the Platform.

**REQUEST FOR PRODUCTION NO. 32 (to Currenex and State Street Bank only):**

Documents concerning State Street Bank filling, or partially filling, orders when its quote was not the best available, including the accounts to which such trades were booked and the profitability of such trades.

**REQUEST FOR PRODUCTION NO. 33 (to Currenex only):**

Documents concerning customer complaints about the filling, or partial filling, of orders, at prices that were worse than the best prices available.

**REQUEST FOR PRODUCTION NO. 34 (to all Defendants):**

Documents concerning the daily trading volume by currency pair in both transactions and currency volumes (including the share of total trading volume) on the Currenex Platform.

**REQUEST FOR PRODUCTION NO. 35 (to all Defendants):**

Documents concerning "market taker" reports.

**REQUEST FOR PRODUCTION NO. 36 (to all Defendants):**

Documents concerning "opportunity reports."

**REQUEST FOR PRODUCTION NO. 37 (to all Defendants):**

Documents concerning "client toxicity reports," or "ctox" reports.

**REQUEST FOR PRODUCTION NO. 38 (to all Defendants):**

Documents concerning any experiments that Currenex conducted concerning the

Platform's prioritization rules or algorithm, including the experiments described in Paragraphs

123 and 124 of the Complaint.

**REQUEST FOR PRODUCTION NO. 39 (to all Defendants):**

Documents concerning comparisons of the Platform or its Tiebreaking Rules or algorithm

with other FX trading platforms or their tiebreaking rules or algorithm(s).

**REQUEST FOR PRODUCTION NO. 40 (to all Defendants):**

Documents concerning any changes made to the Platform's Tiebreaking Rules or

algorithm, including any changes made after the filing of this Lawsuit.

**REQUEST FOR PRODUCTION NO. 41 (to all Defendants):**

Documents concerning inquiries or complaints made by any user or potential user of the

Platform about the Platform's matching engine or Tiebreaking Rules, including the inquiries

made by Plaintiff XTX Markets Limited described in Paragraphs 110 through 112 of the

Complaint.

**REQUEST FOR PRODUCTION NO. 42 (to all Defendants):**

Data concerning each FX transaction executed on the Currenex Platform, including Data

concerning:

(a)      Transaction identifier, including fields necessary to link modifications to the

original transaction record being modified;

(b)     Order identifiers for all Platform users (including price makers and price takers) and any other identifiers necessary to match executed trades to the relevant order data;

(c)     Order platform from which the trade originated (e.g., streaming, RFQ, mid matching)

(d)     Transaction status (e.g., executed, cancelled, rejected)

(e)     Product type (e.g., spot, forward, swap, NDF)

(f)     Currency pair

(g)     Transaction volume

(h)     Transaction price;

(i)     Additional fees or spreads added to transaction price;

(j)     Transaction date;

(k)     Execution time of the transaction (to milliseconds at a minimum), including time zone;

(l)     Amendment time (including milliseconds at a minimum) of the transaction, including time zone;

(m)     Settlement date;

(n)     Value/Maturity date;

(o)     Trader identifier and name;

(p)     Entity identifier and name;

(q)     Entity designation (e.g., liquidity provider, "LM," "LP," market taker);

(r)     Entity type (e.g., bank, hedge fund, corporation, broker, asset manager);

(s)     Indicator of which entity is the price maker and which is the price taker in terms of the base currency pair;

(t)      Transaction side (which entity is buying/selling the base currency pair);

(u)      Prime Broker (if applicable);

(v)      Trading service through which the trade was executed (e.g., FXTrades, Anonymous or Fully-Disclosed Direct Liquidity, Executable Streaming Price (ESP), Request for Quote (RFQ));

(w)      Type of order (e.g., market order, limit order, stop loss, etc.);

(x)      Indicator of whether the entities have last look privileges;

(y)      Whether the trade was executed under "private label," and if so, the ultimate counterparty to the trade; and

(z)      Method of execution and settlement.

**REQUEST FOR PRODUCTION NO. 43 (to all Defendants):**

Data concerning each quote submitted or streamed to the Currenex Platform, including Data concerning the following:

(a)      Whether the order was filled using first in price and time (First In First Out/FIFO) or filled using any other Tiebreaking Rule or logic;

(b)      Order identifier, including fields necessary to link modifications to the original order record being modified;

(c)      Indicator of which counterparty placed the passive or aggressive order;

(d)      Order category (e.g. simple, complex, or algorithmic);

(e)      Order type (e.g. resting, market, limit, hidden, stop, stop limit, etc.);

(f)      Indicator of whether the quote is "firm" or subject to "last look";

(g)      Entity identifier and name placing the order;

(h)      Trader identifier and name placing the order;

(i)      Entities which have been selected to view the executable quotes;

19

(j)     Entities which have been selected to not view the executable quotes;

(k)     Order status (e.g., filled, cancelled, rejected);

(l)     Product type (e.g., spot, forward, swap, NDF);

(m)     Currency pair;

(n)     Order direction in terms of the base currency pair (e.g. buy, sell);

(o)     Order volume;

(p)     Hidden volume;

(q)     Filled volume;

(r)     Order price;

(s)     Trade date of the order;

(t)     Time for all messages related to the order (to milliseconds at a minimum), including time zone;

(u)     Type of action or amendment to the order (e.g., filled, cancelled, update);

(v)     Field(s) containing time (to millisecond) of any action or amendments to the order, including time zone; and

(w)     Identifier of resulting trade, if applicable.

**REQUEST FOR PRODUCTION NO. 44 (to all Defendants):**

All FIX logs concerning trading on the Platform, including all message fields, including price requests and rejections and corresponding rejection codes.

**REQUEST FOR PRODUCTION NO. 45 (to all Defendants):**

Best-bid-and-offer Data at the highest frequency maintained ("Snapshots"), for all depths of book available on the Platform, including the following fields:

(a)     Date of the Snapshot;

(b)     Time of the Snapshot (to milliseconds at a minimum), including time zone;

20

(c)    Product type (e.g., spot, forward, swap, NDF);

(d)    Currency pair;

(e)    Price;

(f)    Side or direction in terms of the base currency pair (e.g. buy, sell);

(g)    Whether the record is reflecting a trade or an order;

(h)    For trades:

    i.    Traded volume per transaction;

    ii.    Aggregate volume traded at price;

    iii.    Number of trades at price by side;

(i)    For orders:

    i.    Distance or ranking in the book (e.g., 1 for top-of-book, 2 for second-best-quote);

    ii.    Order volume per transaction;

    iii.    Aggregate volume at price;

    iv.    Number of orders at price; and

(j)    Additional information on how the datasets are created (e.g., when snapshots are taken, and whether that changed over time).

**REQUEST FOR PRODUCTION NO. 46 (to all Defendants):**

Data concerning quotes submitted to the Currenex RFQ platform, including Data concerning the following:

(a)    Request identifier (including fields necessary to link modifications to the original order record being modified);

(b)    Entity identifier and name placing the request;

(c)     Trader identifier and name placing the request;

(d)     Request status (e.g., filled, cancelled, timed-out);

(e)     Product type (e.g., spot, forward, swap, NDF);

(f)     Currency pair;

(g)     Order direction in terms of the base currency pair (e.g. buy, sell);

(h)     Requested volume;

(i)     Filled volume;

(j)     Date of the request;

(k)     Time (in milliseconds) of the request, including time zone;

(l)     Field(s) containing time of any action or amendments to the order, including time zone;

(m)     Entity identifier(s) and name(s) to whom the request was made/sent;

(n)     Trader identifier(s) and name(s) to whom the request was made/sent;

(o)     Millisecond timestamp that the response to the request was sent and received;

(p)     Price(s) provided in response to the request, including those updated or withdrawn;

(q)     Type of action or amendment to the response to the request (e.g., updated, withdrawn, or accepted);

(r)     Time (including milliseconds at a minimum) of any action or amendments to the response to request, including time zone; and

(s)     Identifier of resulting trade, if applicable.

**<u>REQUEST FOR PRODUCTION NO. 47</u> (to all Defendants):**

Data sufficient to show, at the highest frequency maintained, the midpoint of the bid/offer spread for each currency pair quoted on the Currenex Platform.

**REQUEST FOR PRODUCTION NO. 48 (to Currenex only):**

For each user of the Platform, Documents sufficient to show, for each date, which other users (including "sell-side subscribers" as referenced in Currenex's documentation) that user could or did receive quotes from, as impacted by any elections, pooling, or choices by Currenex or any other entity.

**REQUEST FOR PRODUCTION NO. 49 (to all Defendants):**

Documents sufficient to show the features and operation of the matching and Tiebreaking Rules implemented on the Currenex Platform, including:

(a)     the Source Code;

(b)     all changes to that Source Code (including all configuration files, configuration history, version control history, and log files of all priority changes made on the matching engine);

(c)     Documents used to request, order, or specify changes in the operation of the matching and Tiebreaking Rules by any method, including e-mail, informal communication channels (including chat messages), requirements documents, change requests, change management platforms such as Github, and issue tracking software such as Jira; and

(d)     data dictionaries and instruction manuals that describe the operation and data used by that Source Code (including the identity and description of where each data element or field is stored, physically and virtually; in what format it is stored; how each data element moves and is used throughout the process; and whether such data elements are related to other databases or systems).

**REQUEST FOR PRODUCTION NO. 50 (to Currenex only):**

Documents sufficient to show all users and sessions created under the FXTrades hub, together with all of the available session properties (including created date, last logged on date,

IP address, who created the session and specific permissions for each session, etc.) from the devmon tool and any other location such information was stored.

**REQUEST FOR PRODUCTION NO. 51 (to all Defendants):**

Telephone logs and audio or video recordings for each of Your Personnel with responsibility for or involvement with the Platform.

**REQUEST FOR PRODUCTION NO. 52 (to all Defendants):**

Document concerning the Platform's use of the Intelligent Pricing Server ("IPS"), including all user guides (internal and external), all IPS layouts and diagrams, and the use of synthetic orders.

**REQUEST FOR PRODUCTION NO. 53 (to all Defendants):**

Documents concerning the accounts CX100 and CX1000, including details of trades booked to such account(s) and the institution(s) through which such trades were cleared.

**REQUEST FOR PRODUCTION NO. 54 (to all Defendants):**

Documents sufficient to show account numbers for accounts used by Currenex, Inc., State Street Bank, or State Street Global for trading on the Platform.

**REQUEST FOR PRODUCTION NO. 55 (to all Defendants):**

Documents concerning Your profits and losses from trading on the Platform, whether directly or through a third party.

**REQUEST FOR PRODUCTION NO. 56 (to Currenex and State Street Bank only):**

Documents concerning Your profits and losses from trading activity where Currenex or State Street Bank traded at a price different from that booked by the trade counterparty.

**REQUEST FOR PRODUCTION NO. 57 (to all Defendants):**

Documents concerning the ability of Currenex or State Street Bank to trade at a price different from that booked by the trade counterparty.

**REQUEST FOR PRODUCTION NO. 58 (to all Defendants):**

Documents concerning post-trade client markout analyses.

**REQUEST FOR PRODUCTION NO. 59 (to Currenex only):**

Documents sufficient to show the decision process used to determine in which liquidity pool(s) customers were placed.

**REQUEST FOR PRODUCTION NO. 60 (to all Defendants):**

Documents concerning any attempts by Currenex to capture arbitrage opportunities on the Platform.

**REQUEST FOR PRODUCTION NO. 61 (to all Defendants):**

Documents concerning the Platform's use of the ARON system, including all user guides (both internal and external).

**REQUEST FOR PRODUCTION NO. 62 (to all Defendants):**

Documents concerning the ability of the ARON system to allow select users to "follow" customer orders, including its impact on such users' ability to front-run large orders.

**REQUEST FOR PRODUCTION NO. 63 (to all Defendants):**

Documents concerning any prioritization on the Platform given to quotes coming from a white label provider.

**REQUEST FOR PRODUCTION NO. 64 (to all Defendants):**

Documents concerning any prioritization on the Platform given to quotes that would be subject to AAP or "at a pip" protocols.

**REQUEST FOR PRODUCTION NO. 65 (to all Defendants):**

Document and Communications concerning the ARON system in connection with Your trading on the Platform, including all user guides (both internal and provided by Currenex).

**REQUEST FOR PRODUCTION NO. 66 (to all Defendants):**

Documents sufficient to show the details of all trades executed by ARON for all users (internal and external), including identification of which customer orders were targeted by ARON.

**REQUEST FOR PRODUCTION NO. 67 (to all Defendants):**

Documents (including expense reports, reimbursement requests, calendars, calendar entries, or logs, whether maintained electronically or otherwise) concerning any formal or informal Meetings—including dinners, lunches, or drinks—between Personnel of Currenex and a Trading Defendant at which the Platform was discussed.

**REQUEST FOR PRODUCTION NO. 68 (to all Defendants):**

Documents concerning the departure of David Newns from State Street Bank.

**REQUEST FOR PRODUCTION NO. 69 (to all Defendants):**

Documents concerning Your policies, procedures, and training programs and materials concerning antitrust compliance.

**REQUEST FOR PRODUCTION NO. 70 (to all Defendants):**

Documents concerning Your record retention and preservation policies and practices, including Your retention or document management policies.

**REQUEST FOR PRODUCTION NO. 71 (to all Defendants):**

Documents concerning any departure or variance from Your policies, procedures, and practices relating to the retention or destruction of ESI or hardcopy files that would otherwise be called for by these Requests.

**REQUEST FOR PRODUCTION NO. 72 (to all Defendants):**

Document preservation notices or letters sent to any third parties concerning this Lawsuit.

**REQUEST FOR PRODUCTION NO. 73 (to all Defendants):**

Documents concerning this Lawsuit or its allegations.

**REQUEST FOR PRODUCTION NO. 74 (to all Defendants):**

Documents concerning the legality of Your or any other user's conduct in connection with the Currenex Platform.

**REQUEST FOR PRODUCTION NO. 75 (to all Defendants):**

Documents supporting, qualifying, undermining, or otherwise concerning each defense and affirmative defense You have asserted in this Lawsuit.

**REQUEST FOR PRODUCTION NO. 76 (to all Defendants):**

Documents upon which You intend to rely or introduce into evidence at any deposition, hearing, or otherwise use at trial in this Lawsuit.

**REQUEST FOR PRODUCTION NO. 77 (to all Defendants):**

Documents identified in, relied upon, or used in responding to any interrogatory served upon You in this Lawsuit.

**REQUEST FOR PRODUCTION NO. 78 (to Currenex):**

Documents You either sent to or received from any U.S. or European governmental, administrative, or regulatory body (including the U.S. Department of Justice, the New York Department of Financial Services, the U.S. Securities and Exchange Commission, the United Kingdom Financial Conduct Authority, and the European Commission ("EC")), concerning any investigation or inquiry concerning Your matching practices on the Platform.

**REQUEST FOR PRODUCTION NO. 79 (to all Defendants):**

For each database or system that contains data responsive to these Requests, as well as any other database that stores data related to orders submitted to the Platform:

(a)     Documents sufficient to show the identity of each database and the reports and the reporting capabilities of each database or system;

(b)     Documents sufficient to show any business requirement(s), functional requirements, mapping documents that describe any keys that link databases, the flow of data, and each data element or field that exists on each database or system;

(c)     All data dictionaries and instruction manuals that describe or explain the databases systems and the contents of the fields within the databases or systems, and all keys or manuals that describe or explain the codes or values used to populate fields used within the databases or systems; and

(d)     Documents sufficient to show data workflows, including the identity and description of where each data element or field is stored, physically and virtually, in what format it is stored, the backup procedures in place, how each data element moves and is used throughout the database or system, and whether such data elements are related to other databases or systems.

**REQUEST FOR PRODUCTION NO. 80 (to Currenex only):**

Documents concerning Your policy for handling any complaints received from any customer concerning Your response times, Your latency periods, Your fill rates, Your use of last look, Your matching engine, their performance on the Platform, their market share, or Your tie-breaking rules.

**REQUEST FOR PRODUCTION NO. 81 (to all Defendants):**

Documents concerning the Plaintiffs.

**REQUEST FOR PRODUCTION NO. 82 (to Currenex only):**

Documents concerning the Plaintiffs concerning trading on the Platform.

**REQUEST FOR PRODUCTION NO. 83 (to all Defendants):**

Documents concerning any request for reimbursement by Currenex Personnel for any

expenditure concerning a Trading Defendant.


DATED:   New York, New York
             August 31, 2023

RUDDY GREGORY, PLLC

By: */s/ Mark Ruddy*
Mark Ruddy
1225 15th Street NW
Washington, DC 20005
Telephone: (202) 797-0762
Fax: (202) 318-0543
mruddy@ruddylaw.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Daniel L. Brockett*
Daniel L. Brockett
Thomas J. Lepri
Christopher M. Seck
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
danbrockett@quinnemanuel.com
steigolson@quinnemanuel.com
christopherseck@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
jeremyandersen@quinnemanuel.com

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2023, I caused a true and correct copy of the foregoing

to be served by electronic mail transmission on all counsel of record.

/s/ Daniel L. Brockett

Daniel L. Brockett
