# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; and XTX MARKETS LIMITED,<br><br>   Plaintiffs,<br><br>  v.<br><br>CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5,<br><br>   Defendants. | Case No. 1:21-cv-06598 (LAK) |

**DEFENDANTS' SECOND SET OF REQUESTS**
**FOR THE PRODUCTION OF DOCUMENTS DIRECTED TO PLAINTIFFS**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants Currenex, Inc., Goldman Sachs & Co. LLC, HC Technologies, LLC, and State Street Bank and Trust Company (collectively, "Defendants"), by and through their undersigned counsel, hereby request that Plaintiffs Edmar Financial Company, LLC, Irish Blue & Gold, Inc., and XTX Markets Limited (collectively, "Plaintiffs") and their respective agents, assigns, representatives, attorneys, and advisors and all other persons acting or purporting to act for or on behalf of the Plaintiffs, produce for inspection and copying the following Documents, electronically stored information, and things (the "Requests," each, a "Request"), in accordance with the Definitions and Instructions set forth below, at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, within thirty (30) days from the date of service of these Requests.

## **DEFINITIONS**

The definitions and rules of construction set forth in Rule 34 of the Federal Rules of Civil Procedure ("Federal Rules") and Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rules") are hereby incorporated and apply to the Requests set forth herein. These definitions apply throughout these Requests without regard to capitalization. In addition, to the extent consistent with Local Civil Rule 26.3, the following definitions shall have the following meanings, unless the context requires otherwise:

1. The term "Action" refers to the above-captioned action, *Edmar Financial Company, et al. v. Currenex, Inc., et al.*, Case No. 1:21-cv-06598 (LAK), currently pending in the United States District Court for the Southern District of New York.

2. The terms "Agent" or "Agents" refer to any current or former employee, law firm, attorney, Person, accounting firm, accountant, entity, or individual who at any time has performed any services for any other Person or who at any time has acted or purported to act on that Person's behalf, including, without limitation, Counsel of Record.

3. The terms "any," "all," "each," and "every" shall be construed as encompassing "any and all."

4. The connectives "and," "or," and "and/or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed to be outside of its scope.

5. The terms "Communication" or "Communications" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

6. The term "Complaint" refers to the Second Amended Complaint (ECF No. 96) filed by Plaintiffs in this Action on August 10, 2023.

7. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

8. The term "Counsel of Record" means any and all attorneys representing You and/or the Purported Class in this Action, including the law firms of Ruddy Gregory, PLLC and Quinn Emanuel Urquhart & Sullivan, LLP, and any of their predecessor or successor firms, and any other names by which such firms may have been or may now be known.

9. The term "Data" means all information of all kinds, whether maintained by electronic data processing systems or other systems, and includes all non-identical copies of such information.

10. The term "Defendants" refers to Currenex, Inc.; Goldman Sachs & Co.; HC Technologies, LLC; and State Street Bank and Trust Company.

11. The terms "Document" or "Documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

12. The term "each" shall be construed as "each and every."

13. The term "ECN" refers to an electronic communication network on which FX is transacted.

14. The term "ESI" means all Electronically Stored Information and materials to the extent authorized under Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Civil Rules.

15. The term "FX" refers to foreign exchange, as referenced in paragraph 1 of the Complaint.

16. The terms "FX Instrument" or "FX Instruments" refer to any FX spot transaction, forward, swap, future, option, or any other Transaction or instrument the trading or settlement value of which is related in any way to FX rates.

17. The terms "FX Market" or "FX Markets" refer to any market for Transactions in FX Instruments.

18. The terms "include," "includes," and "including" shall mean "including, but not limited to," and "including, without limitation."

19. The term "Order" refers to a request to execute a trade, contract, assignment, novation, settlement, expiration, exercise, termination, or any other agreement to exchange things of value regardless of form or structure, including but not limited to, limit order, stop-loss order, trailing-stop order, market order, fixing order, at-best order, at worst order, or any other type of order.

20. The terms "Person," "Persons," "Entity," or "Entities" shall be construed to mean any natural person or any business, legal, or governmental entity or association.

21. The terms "Plaintiffs," "You," and "Your" means and refers to named plaintiffs Edmar Financial Company, LLC, Irish Blue & Gold, Inc., and XTX Markets Limited, including its predecessor Green Park Trading 1 Ltd., and each of their Agents, as well as any of the members of the putative Purported Class, where specified.

22. The "Platform" means the Executable Streaming Prices Trading Model allegedly operated by Currenex, Inc. and State Street Global Markets International Limited.

23. The term "Purported Class" means the putative class of plaintiffs that You seek to represent in this Action.

24. The term "Quote" refers to an Entity's provision of prices at which it is willing to engage in a Transaction.

25. The term "Transaction" means an executed Order.

## INSTRUCTIONS

1. In responding to these Requests, You shall produce all responsive Documents that are in Your actual or constructive possession, custody, or control.

2. In the event that the parties execute a stipulated e-discovery and discovery protocol at any point in the pendency of this Action, Documents shall be produced in accordance with such protocol.

3. The Requests shall be considered continuing in nature, requiring supplemental production of Documents if You later identify additional Documents responsive to these requests pursuant to Federal Rules of Civil Procedure 26(e) and 34.

4. For purposes of the Requests, terms, words, and/or phrases not specifically defined herein shall be accorded by You their ordinary, usual meanings in the common, ordinary sense.

5. A Request for any Document shall be deemed to also include a request for any and all drafts or mark-ups thereof, revisions, modifications, or amendments thereto, and non-identical copies thereof.

6. You should produce responsive Documents as they have been kept in the usual course of business or shall organize and label them to correspond to the enumerated Requests.

7. The Requests shall be read liberally and construed broadly, so as to be inclusive rather than exclusive.

    a. Use of the singular form of any word includes the plural and vice versa.

    b. The disjunctive shall include the conjunctive and vice versa.

    c. The present tense shall include the past tense and vice versa.

        d.        Each Request shall operate and be responded to independently and, unless otherwise expressly stated, no Request shall limit the scope of any other.

8.        If You have reason to believe that there are responsive Documents or Communications that were created during the Relevant Time Period (defined below) that have not been retained, You shall state the name and address of the email, text message, or other provider (*e.g.*, Microsoft, Gmail, Bloomberg, Verizon) or program used by You during the Relevant Time Period and what efforts You have made to retrieve the requested information.

9.        If, in responding to a Request, You claim any ambiguity in interpreting either the Request or a definition or instruction applicable thereto, such claim shall not be utilized by You as a basis to refuse to respond, but there shall be set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the Request.

10.        In Your response, You must identify with particularity any Document responsive to a particular demand that is being withheld under a claim of privilege or upon any other ground and, as to each such Document, You must identify the nature of the privilege being asserted and the grounds therefore (e.g., attorney/client privilege, work product doctrine, etc.) and provide information in sufficient detail to permit the court to rule on Your claim.

11.        If any Document responsive to any of the Requests contained herein is withheld from production on the ground that such Document is privileged or otherwise protected from discovery in whole or in part, then You shall produce the Document to the fullest extent possible as to any part thereof for which no claim of privilege is made.

12.        Defendants reserve the right to serve supplemental Requests for the Production of Documents.

13.        Unless otherwise indicated, the relevant time period for each Request shall be the time period of January 1, 2005 through July 7, 2023 (the "Relevant Time Period"), and shall

include all Documents, Communications, and/or information that relate or refer to such time period even though prepared, published, sent or received, in whole or in part, prior to or subsequent to that time period.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1**

Data concerning each FX transaction executed on the Platform, or any other ECN or trading platform that You used in connection with FX Transactions, including:

a. Transaction identifiers, including fields necessary to link modifications to the original transaction record being modified and to link legs of related trades (e.g., legs of a swap, multi-leg executions of a single order, allocations of a trade to different funds);

b. Order identifiers for all Platform users (including price makers and price takers) and any other identifiers necessary to match executed trades to the relevant order data;

c. Order platform from which the trade originated (e.g., streaming, RFQ, mid matching), including the branded or trade name for any commercially available electronic trading platform;

d. Transaction status (e.g., executed, cancelled, rejected);

e. Version number and indicator for final version of trade record;

f. Product type (e.g., spot, forward, swap, NDF);

g. Currency pair;

h. Transaction volume;

i. Transaction price;

j. Additional fees or spreads added to transaction price;

k. Transaction date;

l. Execution time of the transaction (to milliseconds at a minimum), including time zone;

m. Booking time of the transaction (to milliseconds at a minimum), including time zone;

n. Amendment time (including milliseconds at a minimum) of the transaction, including time zone;

o. Settlement/Value date;

p. Maturity date;

q. Trader identifier and name (if the order was generated algorithmically, include information on the system that generated the order);

r. Trader location (if the order was generated algorithmically, include location of the system that generated the order);

s. Each counterparty's identifier and name;

t. Each counterparty's designation (e.g., liquidity provider, "LM," "LP," market taker);

u. Each counterparty's type (e.g., bank, hedge fund, corporation, broker, asset manager);

v. Indicator of which counterparty was the price maker and which was the price taker;

w. Transaction side (which counterparty bought/sold the base currency);

x. Prime Broker (if applicable);

y. Type of trading service through which the trade was executed (e.g., FXTrades, Anonymous or Fully-Disclosed Direct Liquidity, Executable Streaming Price (ESP), Request for Quote (RFQ));

z. Type of order (e.g., market order, limit order, stop loss, etc.);

aa. Indicator of whether the entities have "last look" privileges;

bb. Whether the trade was executed under "private label," and if so, the ultimate counterparty to the trade;

cc. Method of execution and settlement; and

dd. Profit and loss estimate (i.e. trade cost estimate) and/or benchmark price used to evaluate execution quality.

**REQUEST NO. 2**

Data concerning each quote or non-marketable limit order submitted or streamed to the Platform, or any other ECN or trading platform that You used in connection with FX Transactions, including the following:

a. Order identifier, including fields necessary to link modifications to the original order record being modified and to link legs of related trades (e.g., legs of a swap, multi-leg executions of a single order, allocations of a trade to different funds);

b. Indicator of which counterparty placed the passive or aggressive order;

c. Order category (e.g. simple, complex, or algorithmic);

d. Order type (e.g. resting, market, limit, hidden, stop, stop limit, etc.);

e. Indicator of whether the quote is "firm" or subject to "last look";

f. Entity identifier and name placing the order;

ee. Trader identifier and name placing the order (if the order was generated algorithmically, include information on the system that generated the order);

g. Trader location (if the order was generated algorithmically, include location of the system that generated the order);

h. Entities which have been selected to view the executable quotes;

i. Entities which have been selected to not view the executable quotes;

j. Order status (e.g., filled, cancelled, rejected);

k. Product type (e.g., spot, forward, swap, NDF);

l. Currency pair;

m. Order direction in terms of the base currency (e.g., buy, sell);

n. Order volume;

o. Hidden volume;

p. Filled volume;

q. Order price;

r. Trade date of the order;

9

    s.  Time for all messages related to the order (to milliseconds at a minimum), including time zone;

    t.  Type of action or amendment to the order (e.g., filled, cancelled, update);

    u.  Field(s) containing time (to millisecond) of any action or amendments to the order, including time zone; and

    v.  Identifier of resulting trade, if applicable.

**REQUEST NO. 3**

Bid-and-offer and trade Data, including any Data received from third parties, at the highest frequency maintained ("Snapshots"), for all depths of book available on the Platform, or any other ECN or trading platform that You used in connection with FX Transactions, including the following:

    a.  Date of the Snapshot;

    b.  Time of the Snapshot (to milliseconds at a minimum), including time zone;

    c.  Product type (e.g., spot, forward, swap, NDF);

    d.  Currency pair;

    e.  Price;

    f.  Whether the record is reflecting a trade or an order; ECN platform from which the bid-and-offer data originated (e.g., Currenex, Hotspot, FXAll)

    g.  ECN platform service type from which the bid-and-offer data originated (streaming, RFQ, mid matching);

    h.  For trades:

        i.  Side or direction in terms of the base currency pair (e.g., buy, sell);

        ii.  Traded volume per transaction;

        iii.  Aggregate volume traded at price;

        iv.  Number of trades at price by side;

    i. For orders:

        i. Distance or ranking in the book (e.g., 1 for top-of-book, 2 for second-best-quote);

        ii. Order volume;

        iii. Aggregate volume at price;

        iv. Number of orders at price;

    j. Additional information on how the datasets are created (e.g., when Snapshots are taken, and whether that changed over time); and

    k. Physical location where trade or order was placed.

**REQUEST NO. 4**

Data concerning requests for quotes submitted to the Currenex RFQ platform, or any other ECN or trading platform that You used in connection with FX Transactions, including the following:

    a. Request identifier (including fields necessary to link modifications to the original order record being modified);

    b. Entity identifier and name placing the request;

    c. Trader identifier and name placing the request;

    d. Request status (e.g., filled, cancelled, timed-out);

    e. Product type (e.g., spot, forward, swap, NDF);

    f. Currency pair;

    g. Order direction in terms of the base currency (e.g., buy, sell);

    h. Requested volume;

    i. Filled volume;

    j. Date of the request;

    k. Time (in milliseconds) of the request, including time zone;

    l. Field(s) containing time of any action or amendments to the order, including time zone;

    m. Entity identifier(s) and name(s) to whom the request was made/sent;

n.  Trader identifier(s) and name(s) to whom the request was made/sent;

o.  Millisecond timestamp that the response to the request was sent and received;

p.  Price(s) provided in response to the request, including those updated or withdrawn;

q.  Type of action or amendment to the response to the request (e.g., updated, withdrawn, or accepted);

r.  Time (including milliseconds at a minimum) of any action or amendments to the response to request, including time zone;

s.  Identifier of resulting trade, if applicable; and

t.  Physical location where request was placed.

**REQUEST NO. 5**

Data sufficient to show, at the highest frequency maintained, the midpoint of the bid/offer spread for each currency pair quoted on the Platform, or any other ECN or trading platform that You used in connection with FX Transactions.

**REQUEST NO. 6**

Documents sufficient to show account numbers for accounts used by Plaintiffs for trading on the Platform.

**REQUEST NO. 7**

Documents and Data concerning any alternate trade that You considered, but did not execute, via the Platform or any other ECN or trading platform that You used in connection with FX Transactions.

**REQUEST NO. 8**

Documents and Data concerning analysis of Your trading on the Platform or any other ECN or trading platform, whether prepared by You or a third party, that You used in connection with FX Transactions, including without limitation, trade analytics, information about currency volume of trades and quotes, number of trades and quotes, hit rates, fill ratios, transaction costs,

spreads, comparisons to benchmarks, other performance measures, and any comparative or post-trade analysis.

**REQUEST NO. 9**

Documents and Data concerning Your daily trading volume by currency pair in both number of transactions and currency volume (including the share of total trading volume) on the Platform or any other ECN or trading platform that You used in connection with FX Transactions.

**REQUEST NO. 10**

Documents and Data, including source code, concerning algorithms or other methodologies You used in connection with FX Transactions on the Platform or any other ECN or trading platform, including but not limited to algorithms or methodologies designed to evaluate, route, and/or place orders and/or to select trading platforms on which to place orders.

Dated: New York, New York
       October 10, 2023

| ROPES & GRAY LLP | KATTEN MUCHIN ROSENMAN LLP |
|---|---|
| /s/ *Gregg L. Weiner* | /s/ *Peter G. Wilson* |
| Gregg L. Weiner | Peter G. Wilson |
| Alexander B. Simkin | Christian T. Kemnitz |
| 1211 Avenue of the Americas | Elliott M. Bacon |
| New York, New York 10036 | 525 W Monroe Street |
| Telephone: (212) 596-5000 | Chicago, IL 60661 |
| Facsimile: (212) 596-9090 | Telephone: (312) 902-5200 |
| Email: gregg.weiner@ropesgray.com | Email: peter.wilson@katten.com |
| Email: alexander.simkin@ropesgray.com | Email: christian.kemnitz@katten.com |
|  | Email: elliott.bacon@katten.com |
| Robert G. Jones (*pro hac vice*) |  |
| 800 Boylston Street | *Counsel for Defendant HC Technologies, LLC* |
| Boston, Massachusetts 02199 |  |
| Telephone: (617) 951 7000 |  |
| Facsimile: (617) 951 7050 |  |
| Email: robert.jones@ropesgray.com |  |

13

Samer Musallam (*pro hac vice*)
2099 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 508-4600
Facsimile: (202) 508-4650
Email: samer.musallam@ropesgray.com

*Counsel for Defendants Currenex, Inc. and State Street Bank and Trust Company*

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ *Carmine D. Boccuzzi Jr.*
Carmine D. Boccuzzi Jr.
Rishi N. Zutshi
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Email: cboccuzzi@cgsh.com
Email: rzutshi@cgsh.com

*Counsel for Defendant Goldman Sachs & Co. LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2023, I caused a true and correct copy of the foregoing to be served by electronic mail transmission on all counsel of record.

/s/ *Gregg L. Weiner*