**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; and XTX MARKETS LIMITED, <br><br>                Plaintiffs, <br><br>    vs. <br><br> CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5, <br><br>                Defendants. | Case No. 21-cv-06598 <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................................ 1

BACKGROUND ........................................................................................................................... 2

ARGUMENT ................................................................................................................................ 5

I.     THERE IS GOOD CAUSE TO ADD DSQUARE AS A PLAINTIFF ............................... 5

II.     THERE IS NO UNDUE DELAY, BAD FAITH, OR PREJUDICE .................................... 8

CONCLUSION ............................................................................................................................. 9

Plaintiffs respectfully submit this memorandum of law in support of their motion for leave to file the proposed Third Consolidated Amended Class Action Complaint ("TAC"). The proposed TAC is attached as Exhibit 1 to the Declaration of Daniel L. Brockett, which has been filed contemporaneously with this motion. A "redline" identifying all changes in the TAC as compared to the operative Second Amended Complaint (Dkt. No. 96) is attached as Exhibit 2.[1] [2]

## PRELIMINARY STATEMENT

This is a case about the Currenex trading Platform. Among other problems, the Platform operated with secret tiebreaking rules—some traders, like Defendants, were given priority rights. Based on new evidence learned in discovery, Plaintiffs request the Court's permission to file the TAC. The proposed amendment is simple and straightforward: Plaintiffs seek leave for the limited purpose of adding a new plaintiff. They do so to fill a potential class representative gap that has come out in discovery. The request to add additional class representatives is a routine one, and is routinely granted. This is because the rights of class members should not be jeopardized due to later-discovered idiosyncrasies with the originally chosen named plaintiffs.

During discovery, Currenex acknowledged that, as alleged by Plaintiffs, the Currenex platform used priority settings to break ties, but now claims this practice ended at some unspecified point prior to August 2015. Plaintiffs have vetted that assertion through extensive analysis of the gargantuan data files Currenex produced in December. In an abundance of caution, and to protect class members' interests, Plaintiffs now seek the Court's leave to add a named plaintiff—DSquare Trading Ltd.—whose trading, unlike that of the current named

---

[1]   Plaintiffs sought to alert the Court that they would be filing this motion within the joint request to amend the schedule, ECF No. 160, but Defendants refused to include the disclosure.

[2]   Plaintiffs have not re-lodged the previously filed exhibits and appendices to the TAC, because Plaintiffs do not propose any changes to those materials. Plaintiffs have included one new exhibit ("Exhibit D") with the TAC.

Plaintiffs, goes back to the very early years of the platform. DSquare began trading on the Currenex platform in 2006.

The parties still are in disagreement as to the timing, scope, and relevance of any stoppage. But we do not want the ability of the class—victims of now *admitted-to* wrongs—to be put in jeopardy by getting the "date" wrong. By amending, even if it turns out the prioritization scheme stopped, the scheme's victims can still pursue all appropriate remedies in this case. And thus by amending now, the timing issue is that much less likely to be a burden on the Court or the schedule at the class certification stage.

Indeed, Plaintiffs do not expect any impact on the current schedule. As the Court will see from the proposed TAC and the accompanying redline, no new claims, legal theories, or defendants are introduced. Thus, the amendment would not trigger a new round of motions to dismiss. To mitigate any other scheduling concerns, Plaintiffs' counsel have begun the process of collecting DSquare's data and documents and expect to be to produce documents promptly after a Court order granting this motion.

## **BACKGROUND**

In August 2021, Plaintiffs commenced this action on behalf of a putative class of traders who used Currenex's trading platform. ECF No. 1. As Plaintiffs have alleged, users of the Currenex Platform submit bids and offers, and the platform matches buyers and sellers using a "matching algorithm," which includes instructions about what to do when bids or offers are tied at the same price. Plaintiffs allege that while Currenex publicly stated it used "first-in, first out" (or "FIFO") system to resolve tied bids and offers, it secretly granted priority privileges to select customers such as State Street Bank, Goldman Sachs, and HC Tech (the "Trading Defendants"). Plaintiffs allege that these privileges allowed the Trading Defendants to jump the queue and execute trades without offering the best price. *See* ECF No. 96 ¶¶ 1-21.

2

In January 2022, Plaintiffs amended the complaint to add XTX as a Plaintiff.  ECF No.
41.  In August 2023, Plaintiffs filed a second amended complaint (ECF No. 96) to address
jurisdictional deficiencies identified by the Court as to Defendant State Street Global (ECF No.
83).  State Street Global moved again to dismiss on jurisdictional grounds (ECF Nos. 99, 100),
and the Court denied that motion (ECF No. 130).

Although the Court granted the parties' joint request to extend the case management plan,
the scheduling order kept March 18, 2024 as the deadline to add new parties.  ECF No. 143 at 2.

In November 2024, Plaintiffs moved to compel Currenex to produce transactional data
for two years post-dating the filing of the initial complaint.  ECF No. 151.  In its opposition
papers, Currenex admitted it used priority settings during the class period—i.e., that, it deviated
from FIFO to give trading advantages to select participants.  ECF No. 154 at 1-2.  However,
Currenex claimed it stopped doing so "at least 6 years before August 4, 2021."  ECF No. 154-1.

In December 2024, Currenex and State Street produced the trading data from the trading
Platform.  It was only with this data that Plaintiffs could ascertain what it was Defendants were
even purporting to mean with their vague statement to the Court.  The production was massive—
Currenex's transactional data amounts to more than 192 million files.  It thus took huge efforts to
even receive and access the data, let alone to make sense of it.  Even now, and even after a
mediation, the parties still disagree on how to even interpret the massive pile of data, including
with respect to if and when the prioritization scheme changed or stopped.

Depending on *when* a change was made, Defendants could be expected to challenge the
ability of the current named Plaintiffs to pursue the claims on behalf of the class.  For instance,
XTX was not launched as a company until June 2015.  And while XTX believes it has the right
to pursue claims from earlier trades for reasons not germane to this motion, Defendants are likely

to disagree.  And as for current-Plaintiff Plaintiffs Edmar Financial Company, LLC ("Edmar") and Irish Blue & Gold, Inc. ("IBG"), Defendants are expected to argue they are too small to be representative, and in any event their trading goes back to 2014-2015, the gray area in terms of Defendants' claims to have stopped the wrongdoing.

Thus, in an abundance of caution, Plaintiffs seek leave to add DSquare Trading Ltd. ("DSquare") as a new plaintiff.  DSquare traded extensively on the Currenex platform starting in *2006*.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires."  The Second Circuit "hew[s] to the liberal standard set forth in Rule 15." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).  Absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Because Plaintiffs seek leave to amend after the scheduling deadline, "the lenient standard under Rule 15(a) . . . must be balanced against the [good cause] requirement under Rule 16(b)." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009).[3]  To show good cause, the moving party "must demonstrate that it has been diligent in its efforts to meet the Court's

---

[3]  Because it is a balancing, to be clear, the Court may grant leave to amend, even if some part of a good-cause showing is found lacking.  *See Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014) ("a district court has discretion to grant a motion to amend even where the moving party has not shown diligence"); *Coale v. Metro-N. R.Co.*, 2009 WL 4881077, at *3 (D. Conn. Dec. 11, 2009) (allowing amendment notwithstanding moving party's failure to show "good cause").

deadlines and that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 550 (S.D.N.Y. 2022) (cleaned up).

## ARGUMENT

### I.    THERE IS GOOD CAUSE TO ADD DSQUARE AS A PLAINTIFF

Good cause exists to add DSquare as an additional plaintiff.  As an initial matter, the proposed amendment meets the lenient standard of Rule 15(a).  The proposed amendment is not futile, as it adds no new claims and asserts only those already upheld by the Court.[4]  *See, e.g., Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (amendment is not "futile" if it could survive a motion to dismiss).  And the reason for the amendment is plain, and plainly sufficient—to head off any defense that the current named Plaintiffs do not adequately represent the class, due to the timing of their trading activities.

As for diligence, Currenex did not represent that it stopped using priority settings until November 2024, and did not produce Platform data until December 2024.  Thus, no amount of diligence by Plaintiffs could have led them file this motion before the scheduling deadline of *March* 2024.  *Cf. Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (no good cause where the "proposed amendment rests on information that the party knew, or should have known, in advance of the deadline") (citation omitted).[5]

---

[4]  As did the operative Second Amended Complaint, the TAC continues to reference certain dismissed claims for the purpose of preserving rights on appeal.  *See* TAC at 1 n.1.

[5]  *See Perfect Pearl*, 889 F. Supp. 2d at 458 (good cause found based on newly discovered evidence); *Estate of Ratcliffe v. Pradera Realty Co.*, 2007 WL 3084977, at *3-4 (S.D.N.Y. Oct. 19, 2007) (same).

Defendants may argue that Plaintiffs could have moved more quickly after they declared to the Court, in November 2024, that the prioritization scheme existed but had stopped at some point in the past. But that argument should be rejected.

As an initial matter, all Defendants said was that the prioritization scheme stopped "at some point" prior. But in terms of whether the current named Plaintiffs traded while the scheme was still occurring, it could matter *when exactly* that point is. Defendants' letter did not say. Moreover, Plaintiffs did not, and reasonably could not, simply rely on Defendants' say-so that they stopped doing bad things. Rather, Plaintiffs' experts needed time to analyze the platform's transactional data and source code. These materials were immense—Currenex's transactional data amounts to more than 192 million files. It took months for Plaintiffs' experts months to unpack, sort, and review that data in depth. Indeed, even today, the parties dispute how the data should be interpreted.

The class should not be punished for Plaintiffs' diligence in deciding whether the belated assertion that the prioritization scheme stopped, truly warranted having to bring an amended complaint. *See Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 37-38 (S.D.N.Y. 2016) (good cause to amend present where plaintiffs learned of new information in document production but waited seven months for confirmation in other discovery and depositions); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (although plaintiff "may have suspected" new cause of action, plaintiff acted properly by waiting until a proposed amended complaint was "based on factual allegations, not factual speculation"). And, indeed, even if the clock started the moment Defendants made their

representation to the Court—it should not—the time that has elapsed since then is well within the timeframes that courts have found acceptable.[6]

Also of relevance, much of the past few months were spent in settlement discussions, including an April 2025 mediation. These discussions temporarily delayed expert and discovery work, including analysis of Currenex's tiebreaking practices. *See Enzymotec Ltd.*, 754 F. Supp. 2d at 537 (good cause present where, among other things, plaintiffs' ability to discover new facts were delayed by settlement discussions and an unsuccessful mediation). And it would not have made sense for Plaintiffs to move forward with an amendment motion, at the very same time the parties were trying to wrap up the case through settlement.

Finally, even once Plaintiffs determined that there might be merit to Currenex's assertion that its conduct changed around 2015, identifying a substitute plaintiff was not simple. It required finding a willing and appropriate party that (1) traded on the Currenex platform prior to 2015, (2) agreed to undertake the burden of being a named plaintiff, *and* (3) was willing to stand up against major industry players.

In sum, even for amendments adding claims, courts find good cause when triggered by later-discovered facts, which is what occurred here. But notably, the amendment here is even narrower, and for specific purpose—to ensure absent class members' rights are not lost merely

---

[6] *See Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 551 (S.D.N.Y. 2022) ("Defendants argue that Plaintiffs should have moved to amend *earlier* in the fact discovery process, but, as Defendants concede, some of the documents Plaintiffs on which rely were *produced* less than five months ago, Defs.' Amend. Opp'n 16. Given the complexity of Plaintiffs' allegations, the Court concludes that they acted with reasonable diligence in seeking to amend.") (emphasis in original); *Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354, 361 (S.D.N.Y. 2014) (finding that plaintiffs acted with a sufficient "modicum of diligence" in moving to amend complaint nearly six months after discovery); *Ambac Assurance Corp. v. EMC Mortg. Corp.*, 2010 WL 11595698, at *6-7 (S.D.N.Y. Dec. 16, 2010) (finding good cause where a securities-fraud plaintiff "waited almost a year in some cases, and in no case less than six months, after it obtained the relevant discovery" to move for amendment) (emphasis omitted).

because of issues specific to the originally chosen class representatives. Courts routinely permit plaintiff-adding amendments—even at much later stages in litigation than this—when necessary to protect the rights of a putative class.[7]

## II.    THERE IS NO UNDUE DELAY, BAD FAITH, OR PREJUDICE

For similar reasons as set forth above, Plaintiffs have not engaged in bad faith or undue delay by seeking leave to amend. Nor can Defendants claim surprise or undue prejudice. The TAC adds no new allegations or claims, and the amendment is necessitated by Currenex's own statements. And the mere fact this will add to the discovery record is irrelevant, as "complaints of the time, effort and money expended in litigating the matter, without more, [do not] constitute prejudice sufficient to warrant denial of leave to amend." *Pasternack v. Shrader,* 863 F.3d 162, 174 (2d Cir. 2017) (cleaned up). Applying this principle, the "[Second C]ircuit has permitted a party to amend a complaint after discovery has been completed and defendants have filed summary judgment motions, even when the basis for the amendment existed at the time of the original complaint." *Miller v. Selsky,* 234 F.3d 1262 at *2 (2d Cir. 2000) (cleaned up).

Here, the procedural posture weighs even more clearly in favor of amendment: the case is still pre-certification and summary judgment, and no depositions have been taken. There is more than sufficient time to take discovery of one additional plaintiff. *Cf. Haddock v.*

---

[7]    *See, D.J. through O.W. v. Connecticut State Bd. of Educ.*, 2019 WL 1499377, at *6 (D. Conn. Apr. 5, 2019), *aff'd sub nom. A.R. v. Connecticut State Bd. of Educ.*, 5 F.4th 155 (2d Cir. 2021) (permitting amendment at class-certification stage and stating "courts have routinely held that adding a new representative is appropriate, or even required, to protect the rights of the proposed class") (citation omitted); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2017 WL 5504531, at *1 (S.D.N.Y. Nov. 15, 2017) ("In general, when a certified or putative class is left without adequate representation, courts hold that adding a new class representative is appropriate, even required, to protect class interests."); *Cf.* Newberg and Rubenstein on Class Actions § 2:17 (6th ed.) ("When mootness of the named plaintiff's claims occurs, intervention by absentee members is freely allowed in order to substitute them as class representatives.").

*Nationwide Fin. Servs. Inc.*, 514 F. Supp. 2d 267, 271 (D. Conn. 2007) (amendment permitted where the case was "still at an early procedural stage—the class certification stage").  And, as discussed above, courts are particularly lenient when it comes to plaintiff-adding amendments in the class setting.

And to be clear, the new Plaintiff is ready to proceed.  Counsel is already gathering DSquare's transactional data and all the same documents that were requested of the other Plaintiffs.  We expect to be able to produce all such materials promptly after the Court rules on this motion—i.e., we would not, of course, force Defendants to re-serve requests or go through further discovery conferrals.  Thus, we do not anticipate the current motion requiring any further adjustments to the recently-amended schedule.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the motion for leave to file the proposed Third Consolidated Amended Class Action Complaint.

9

DATED:   New York, New York
         May 16, 2025

RUDDY GREGORY, PLLC                    QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP

                                       By:  /s/ Daniel L. Brockett
Mark Ruddy                             Daniel L. Brockett
1225 15th Street NW                    Thomas J. Lepri
Washington, DC 20005                   295 Fifth Avenue, 9th Floor
Telephone: (202) 797-0762              New York, New York 10016
Fax: (202) 318-0543                    Telephone: (212) 849-7000
mruddy@ruddylaw.com                    Fax: (212) 849-7100
                                       danbrockett@quinnemanuel.com
                                       thomaslepri@quinnemanuel.com
                                       christopherseck@quinnemanuel.com

                                       Jeremy D. Andersen (*pro hac vice*)
                                       865 South Figueroa Street, 10th Floor
                                       Los Angeles, California 90017
                                       Telephone: (213) 443-3000
                                       Fax: (213) 443-3100
                                       jeremyandersen@quinnemanuel.com

             *Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATION</u>

I, Daniel L. Brockett, hereby certify that this memorandum of law contains 2,871 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

<u>*/s/ Daniel L. Brockett*</u>
Daniel L. Brockett