**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; and XTX MARKETS LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5,<br><br>Defendants. | Case No. 1:21-cv-06598 (LAK) |

**DEFENDANTS CURRENEX, INC., GOLDMAN SACHS & CO. LLC, HC TECHNOLOGIES, LLC, STATE STREET BANK AND TRUST COMPANY, AND STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD CONSOLIDATED <u>AMENDED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................... 1
ARGUMENT ............................................................................................................................ 3
    I.   PLAINTIFFS FAIL TO DEMONSTRATE GOOD CAUSE IN LIGHT OF THEIR DELAY. .................................................................................................................... 4
    II.  PLAINTIFFS' DILATORINESS AND THE RESULTING PREJUDICE FACED BY DEFENDANTS FURTHER REQUIRE DENIAL OF THE MOTION. ............................ 7
    III. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE IT IS FUTILE. ................ 9
CONCLUSION ...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aiola v. Malverne Union Free Sch. Dist.*,
  2016 WL 1588118 (E.D.N.Y. Apr. 20, 2016) ........................................................................... 7

*AT&T Corp. v. Atos IT Sols. & Servs., Inc.*,
  714 F. Supp. 3d 310 (S.D.N.Y. 2024) ................................................................................. 4, 9

*Bodner v. Oreck Direct, LLC*,
  2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ......................................................................... 7

*Cardew v. New York State Dep't of Corr. & Cmty. Supervision*,
  743 F. Supp. 3d 523 (W.D.N.Y. 2024) .................................................................................... 9

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................................................ 4

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  2008 WL 2795141 (S.D.N.Y. July 18, 2008) ....................................................................... 10

*In re Bank of N.Y. Corp. Forex Transaction Litig.*,
  2014 WL 4494158 (S.D.N.Y. Sept. 4, 2014) .......................................................................... 3

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
  850 F. App'x 38 (2d Cir. 2021) .............................................................................................. 4

*Kontarines v. Mortg. Elec. Registration Sys., Inc.*,
  2016 WL 3821310 (E.D.N.Y. July 12, 2016) ................................................................. 3, 6, 8

*Perez v. Escobar Constr., Inc.*,
  2023 WL 5387541 (S.D.N.Y. Aug. 22, 2023) ......................................................................... 6

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*,
  899 F. Supp. 2d 453 (S.D.N.Y. Jan. 11, 2012) ........................................................................ 6

*Ruotolo v. City of New York*,
  514 F.3d 184 (2d Cir. 2008) .................................................................................................... 4

*Shibetti v. Z Rest., Diner & Lounge, Inc.*,
  2021 WL 1738315 (E.D.N.Y. May 3, 2021) ........................................................................... 7

iii

**Other Authorities**

Fed. R. Civ. P. 15 ............................................................................................................................ 4

Fed. R. Civ. P. 16 .................................................................................................................... 1, 3, 4

Defendants Currenex, Inc., State Street Global Markets International Limited, Goldman Sachs & Co. LLC, HC Technologies, LLC, and State Street Bank and Trust Company (together, "Defendants") respectfully submit this memorandum in support of their joint opposition to the Motion for Leave to File Third Consolidated Amended Class Action Complaint (the "Motion"), filed by Plaintiffs Edmar Financial Company, LLC ("Edmar"), Irish Blue & Gold, Inc. ("Irish"), and XTX Markets Limited ("XTX") (together, "Plaintiffs" or "Named Plaintiffs").

## INTRODUCTION

Plaintiffs seek leave to add as a new plaintiff DSquare Trading Ltd. ("DSquare")—a defunct UK-based entity that allegedly traded on the Currenex platform beginning in 2006. But Plaintiffs do not, and cannot, meet their burden to demonstrate the existence of good cause, as required under Rule 16, including because their Motion *comes over one year* after the March 2024 deadline set by the Court for adding parties to this lawsuit. Worse, the prejudice this long untimely application would impose on Defendants provides further bases for denying the Motion.

*First*, Plaintiffs cannot show the diligence necessary to demonstrate good cause. According to Plaintiffs, DSquare will bring to the case a plaintiff who traded on the Currenex platform starting in 2006 whereas the existing Named Plaintiffs started trading in 2010.[1] But Plaintiffs own allegations (about themselves) across the initial complaint, and the two amendments that followed, confirms that they have known prior to the inception of this case that none of the three Named Plaintiffs traded on the Currenex platform for at least the first five years of the putative 17-year class period (2005-2021). They have also always known that their other two

---

[1] Although Plaintiffs conclusorily state that a DSquare predecessor began trading on the Currenex platform in 2006, they cite no supporting evidence. The earliest trade in the "sample" trading data Plaintiffs provide with their motion is in 2009. *See* Motion at Exhibit 1, at Exhibit D. Defendants also asked Plaintiffs to provide a copy of any agreement that allowed DSquare to trade on the Currenex Platform in 2006 and Plaintiffs did not respond.

1

defunct Named Plaintiffs—Edmar and Irish who traded on the Currenex platform from 2010–2015 and 2014–2016, respectively—had relatively low trading volumes.

Despite always knowing of the flaws in their own allegations, Plaintiffs made no attempt to add DSquare within the Court-ordered deadline. Nor did Plaintiffs ever seek to amend the deadline this Court set for adding new parties in the context of the two prior amendments to the case management order. Plaintiffs instead brought this Motion on May 16, 2025, just 10 days *after* the parties submitted a new proposed case management order—which the Court approved on May 13, 2025. That gamesmanship alone is sufficient to defeat the Motion.

*Second*, and notwithstanding Plaintiffs' superficial assurances to the contrary, adding DSquare will prejudice Defendants. Plaintiffs waited to raise this Motion until after Defendants had completed their document discovery and started depositions and deposition preparation. Discovery of Named Plaintiffs, unlike many class actions, is critically important here. This is, at core, a fraud case that requires substantial discovery of what each Plaintiff knew, should have known, and when they knew and should have known it. DSquare's emails showing what *it* knew and when will be equally critical, and restarting the discovery process over 21 months after discovery began and over five months after document discovery was to be concluded would materially impair the progress of this case.[2] It took the current Named Plaintiffs over *fourteen months* to produce their own trading data, and over *twenty months* to substantially complete their document production. There is every reason to believe discovery of DSquare would be equally, if not more, lengthy because, even after securing data from a defunct entity, Defendants undoubtedly

---

[2] Because many of the relevant Currenex custodians left Currenex years before this lawsuit started (in some cases more than a decade before), Currenex does not have a complete set of emails from the putative class period. This makes discovery from Plaintiffs all the more critical even if the key emails are communications with Currenex itself.

will need to use burdensome and lengthy cross-border process to obtain deposition testimony from third-party former employees of DSquare who reside abroad, given that its alleged at-issue trading extends back nearly two decades to 2006.

*Finally*, Plaintiffs' Motion should be denied for the additional reason that it is futile. Plaintiffs assert that adding DSquare is necessary "because of issues specific to the originally chosen class representatives." Motion at 7. It is telling that Plaintiffs themselves acknowledge in the Motion some of the insurmountable challenges in their case: including that the evidence contradicts their theory of liability, that the Named Plaintiffs are inadequate representatives for the class, and that intra-class conflicts and challenges with ascertainability and typicality will doom their motion for class certification. Adding another potential class representative will not solve the inherent challenges to certifying a class in this case; if anything it will only further highlight the typicality and intra-class conflict issues that already exist.

## ARGUMENT

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "It is the movant's burden to establish good cause," which "depends on the diligence of the moving party" and "cannot be established where 'the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline.'" *Kontarines v. Mortg. Elec. Registration Sys., Inc.*, No. 15-CV-2206 (ARR), 2016 WL 3821310, at *3 (E.D.N.Y. July 12, 2016); *In re Bank of N.Y. Corp. Forex Transaction Litig.*, No. 12-md-2335 (LAK), 2014 WL 4494158, at *3 (quoting *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 899 F. Supp. 2d 453, 457 (S.D.N.Y. Jan. 11, 2012)). "Although diligence is the primary focus of a good cause analysis, a court may, in its discretion, also consider other factors, such as whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kontarines*, 2016 WL 3821310, at *3 (citation and quotation marks omitted).

"[W]here a party's motion to amend would require altering a court's scheduling order, the party must satisfy **both** Federal Rules of Civil Procedure 15 and 16 to be permitted to amend." *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 322 (S.D.N.Y. Feb. 1, 2024) (citation omitted). The Second Circuit has held that "a lack of diligence is . . . reason alone to deny leave to amend." *Id.* (quoting *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 850 F. App'x 38, 43 (2d Cir. 2021). To the extent a court deems it necessary to consider factors under Rule 15, leave to amend should be denied in cases of "'undue delay, bad faith . . . dilatory motive . . . , repeated failure to cure deficiencies by [previous] amendments . . . , undue prejudice to the opposing party [or] futility of amendment.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### I. PLAINTIFFS FAIL TO DEMONSTRATE GOOD CAUSE IN LIGHT OF THEIR DELAY.

The Motion is governed by Rule 16 because the operative amended case management order set March 18, 2024 as the deadline for adding parties. That date was reaffirmed in the case management order entered on May 13, 2025, but had been in place in case management orders since August 14, 2023. *See* ECF No. 98 (original scheduling order entered on August 14, 2023, with March 18, 2024 deadline to add parties); ECF No. 143 (modified scheduling order entered on August 15, 2024, with March 18, 2024 deadline to add parties); ECF No. 161 (further modified scheduling order entered on May 13, 2025, which March 18, 2024 deadline to add parties). Plaintiffs fail to meet their burden to show that they have acted diligently, as required under Rule 16. To the contrary, the record is clear that despite repeated opportunities to revise the scheduling order and amend their complaint, Plaintiffs chose not to seek such relief and instead have engaged in improper delay and tactical gamesmanship.

Plaintiffs' purported justifications for why they could not have brought this Motion within the time period this Court set for adding new parties fail because Plaintiffs cite only information about themselves that they have known since they filed this lawsuit in 2021. Those justifications for amendment are that (i) none of the Named Plaintiffs traded on the Platform prior to 2010 and (ii) two of the three Named Plaintiffs had relatively low trading volume on the Platform. Motion at 5-6. Plaintiffs knew and pled these very points in their prior complaints. Plaintiffs knew when they initiated this litigation that their proposed class period spanned back 17 years to 2005. ECF No. 1 (Class Action Complaint) ¶ 96 (defining class period as "from January 1, 2005 to the present"). Plaintiffs also knew at that time that the earliest any of the Named Plaintiffs began trading on the Currenex platform was 2010, several years into the proposed class period. *Id*. ¶ 20 (alleging Edmar began trading in 2010). Finally, Plaintiffs knew that Irish and Edmar had relatively low trading data. ECF No. 96 (Second Amended Complaint), ¶¶ 29-31 (alleging that XTX conducted an average of $1.5 billion in trades per day while only pleading that Edmar and Irish placed "numerous" orders).

Plaintiffs' Motion makes no reference to their own allegations, and regardless, their assertion that new information learned in discovery supports their request to add a new plaintiff is a red herring. Plaintiffs cite to evidence, Motion at 5, confirming that the Currenex platform stopped using the priority settings that Plaintiffs complain about by 2015. But that has no bearing on the supposed timing issues that DSquare is supposed to cure because all of the current Named Plaintiffs traded on the Currenex platform before 2015. Nor do Plaintiffs' cited cases (*see, e.g.*, Motion at 7, 8) help them because, unlike here, those cases involved newly discovered evidence relevant to the proffered amendment.

What discovery in this case has shown is that Named Plaintiff XTX received the same purported priority benefits that Plaintiffs complain about here. For example, emails that XTX improperly withheld from production until just recently show that ███████████████████████████████████████████████████████████████████████████████████████████████████████ *See, e.g.,* Ex. A (XTX2486161) (emails between Currenex and XTX founder and co-CEO Alex Gerko ████████████████████████) (produced for the first time on April 6, 2025).³ Plaintiffs' attempt to amend is nothing more than a shift in litigation strategy to solve the class certification challenges they face as a result of evidence they belatedly produced about their own knowledge. But the law is clear that a party's decision to change its litigation strategy does not amount to good cause. *See Kontarines*, 2016 WL 3821310, at *4 (E.D.N.Y. July 12, 2016); *Perez v. Escobar Constr., Inc.*, No. 20-cv-8010 (LTS), 2023 WL 5387541, at *5 (S.D.N.Y. Aug. 22, 2023) (denying motion to amend, brought to avoid decertification, because the "argument may describe Plaintiffs' litigation strategy, but it does not demonstrate good cause or diligence").

Finally, Plaintiffs had ample opportunity to seek amendment of the original scheduling order entered on August 14, 2023, which set March 18, 2024 as the deadline to add parties. ECF No. 98. Last summer, when the parties jointly sought to amend the order, which the Court approved, Plaintiffs did not raise the possibility of adding new parties or extending that deadline. ECF No. 143. Last month, the parties again conferred on a revised scheduling order. For the first time, on April 16, 2025, Plaintiffs informed Defendants that they were contemplating seeking leave to add a new plaintiff (although would not say who, when, or why). Defendants immediately

---

³ For this reason, Defendants suspect that—even though the Motion is styled as one to *add* a named plaintiff—Plaintiffs will drop XTX as a Named Plaintiff prior to moving for class certification.

6

objected, reminding Plaintiffs that the deadline to add new parties had long passed. After hearing these objections, Plaintiffs told Defendants during an April 18, 2025 meet-and-confer that Defendants should proceed to negotiate a new schedule as if Plaintiffs had never raised the possibility of adding a new party. *Id.* While Plaintiffs insisted that they had not waived their right to add a new party, and in one draft of the joint letter requesting a scheduling extension included a footnote saying as much (which was ultimately removed), Plaintiffs plainly waited until *after* the Court entered the modified case management schedule setting a mid-September deadline for the close of fact discovery to file their Motion to add DSquare as a new named plaintiff. This was the first time they identified DSquare as a potential plaintiff. Plaintiffs' tactical delay in identifying DSquare rebuts any notion that Plaintiffs have been diligent in seeking this relief.[4]

## II. PLAINTIFFS' DILATORINESS AND THE RESULTING PREJUDICE FACED BY DEFENDANTS FURTHER REQUIRE DENIAL OF THE MOTION.

Leave to add a new named plaintiff should also be denied here because it would cause significant prejudice to Defendants, given the current stage of this litigation.

*First*, document discovery is substantially complete, depositions have started, and fact discovery is scheduled to be completed in about three months. This, alone, is a basis to deny the Motion. *See Aiola v. Malverne Union Free Sch. Dist.*, No. 15-CV-0064 (ADS), 2016 WL

---

[4] Plaintiffs also argue that they needed additional time to "identify[] a substitute plaintiff," which they assert was "not simple." Motion at 7. Not only does that assertion fail to demonstrate good cause, but it raises significant questions regarding the circumstances under which Plaintiffs' counsel apparently solicited DSquare as a named plaintiff and, relatedly, DSquare's ability to fairly and adequately protect the interests of the class. *See Shibetti v. Z Rest., Diner & Lounge, Inc.*, No. 18-cv-853, 2021 WL 1738315, at *6 (E.D.N.Y. May 3, 2021) (imposing sanctions on class counsel for improper solicitation when plaintiff's counsel called defendant's employees asking them to "give [him] a call back" if they had "any interest in joining this lawsuit."); *see also Bodner v. Oreck Direct, LLC*, No. C 06-4756, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007) (finding that a named plaintiff cannot fairly and adequately represent the interests of the class when plaintiffs' counsel is the "driving force behind th[e] action").

7

1588118, at *2 (E.D.N.Y. Apr. 20, 2016) (denying motion to amend complaint where "(i) the proposed second amended complaint was the Plaintiff's third pleading in this action; and (ii) discovery is nearly complete"); *Kontarines*, 2016 WL 3821310, at *4 (denying motion to amend complaint where non-movant would be "necessarily prejudice[d]" by being required to reopen fact discovery).

*Second*, this is a case where discovery from, and about, Plaintiffs is critical. Unlike many class cases, here, each user interacted with the Currenex platform differently in ways material to Plaintiffs' claims. Adding a new Plaintiff now would require Defendants to start discovery from scratch as the parties approach class certification deadlines. Such discovery will require Defendants to parse through over 15 years of documents and trading data to try and obtain relevant information regarding, among other things, the volume and types of trading that DSquare did on the Currenex platform; determine whether such trading was impacted by the alleged tie-breaking rules; and determine whether DSquare actually and reasonably relied upon any alleged misstatements.

*Third*, Plaintiffs' pattern of delay in discovery undercuts Plaintiffs' claim that it will "promptly" produce information from DSquare. For example, Named Plaintiff XTX belatedly produced nearly 55,000 documents just a few weeks ago (five months after the substantial completion deadline).[5] Additionally, while Currenex produced over 221TB of trading data weeks

---

[5] Plaintiffs failed to produce any pre-2015 documents from Named Plaintiff XTX by the substantial completion deadline (and did not ultimately complete production until earlier *this month*) (*see* Ex. C (May 12, 2025 Email)). They also incorrectly represented that Edmar and Irish destroyed their respective documents before bringing this litigation, until admitting in March 2025—over two-and-a-half months after the substantial completion deadline and just two months before the then-close of fact discovery—that other email addresses exist (*see* Ex. B (March 5, 2025 Email)). Plaintiffs cannot simultaneously exhibit a continued disregard for deadlines while claiming that "no amount of diligence . . . could have led them [to] file this motion before the scheduling deadline of *March* 2024." Motion at 5.

8

before the substantial completion deadline, Plaintiffs did not complete their production of a mere 68MB of trading data (approximately ***3.2 million times smaller***) until just days before the deadline. Moreover, given that DSquare's at-issue trading allegedly dates back nearly two decades to 2006, and that DSquare is a defunct UK entity, employees with relevant information will have departed DSquare and many, if not all, of those individuals are likely to be located abroad. *See* Motion at Exhibit 1 ¶ 34. Obtaining those individuals' depositions will be tremendously burdensome, particularly as it may require the use of the Hague Convention and the cooperation of foreign courts. Indeed, even now, Defendants do not have DSquare's proposed initial disclosures, proposed email custodians, or a single document to even begin to determine who to depose.[6] Even a meaningful extension of the fact discovery deadline as to DSquare and a pause in the case would materially truncate the time Defendants have to obtain relevant evidence from DSquare and will thus invariably prejudice Defendants' defense of this case.

Permitting the addition of DSquare would therefore prejudice Defendants by adding "significant delay" to the resolution of the dispute. *AT&T Corp.*, 714 F. Supp. 3d at 322; *see Cardew v. New York State Dep't of Corr. & Cmty. Supervision*, 743 F. Supp. 3d 523, 529 (W.D.N.Y. Aug. 5, 2024) (finding additional delays to the discovery process prejudicial where a case has already experienced a "lengthy delay in completing discovery").

### III. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE IT IS FUTILE.

Plaintiffs argue that the proposed addition of DSquare is necessary "to ensure absent class members' rights are not lost merely because of issues specific to the originally chosen class

---

[6] Defendants asked Plaintiffs to identify the names of their proposed custodians for DSquare and to provide a hit report for proposed email search terms. *See* Ex. D (May 28, 2025 Email). Plaintiffs declined to do so and Plaintiffs' response implies that Plaintiffs have not even *begun* reviewing any of DSquare's emails and other data. *Id*.

9

representatives." Mot. at 7-8. But Plaintiffs get it exactly backwards. As noted above, discovery has shown that each user on the Currenex platform traded in unique and materially different ways. Those differences will lead to unresolvable intra-class conflicts and render it impossible for plaintiffs to satisfy the requirements of typicality and commonality. In addition, discovery has also shown that at least one of the Named Plaintiffs, XTX, actually received the very tie-breaking benefits that Plaintiffs allege give rise to their claims (and knew such priorities existed years before it filed this lawsuit claiming otherwise). The addition of a new Named Plaintiff will only introduce *more* individualized issues. Not only will it require substantial additional discovery, causing further delay and expense, but it will not solve any of the many fatal defects in Plaintiffs' case. The law is clear that "[w]here it appears that granting leave to amend is unlikely to be productive, it is not an abuse of discretion to deny leave to amend." *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-8141 (JES), 2008 WL 2795141, at *4 (S.D.N.Y. July 18, 2008) (citing *Foman*, 371 U.S. at 182) (denying a motion to amend as futile because it would expand the class period in such a way as to render the class uncertifiable).

*   *   *

Where, as here, Plaintiffs cannot articulate good cause for amending their pleadings, and where the amendment will substantially prejudice Defendants and will, in any event, be futile, the Motion to Amend must be denied. Should this Court nevertheless grant Plaintiffs' Motion, Defendants request that the case schedule be extended to allow Defendants sufficient time to seek discovery from DSquare. Plaintiffs' undue delay in bringing this Motion should not force Defendants to attempt to conduct such discovery to occur on an impossibly compressed schedule.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny with prejudice Plaintiffs' Motion for Leave to File Third Amended Complaint.

Dated: New York, New York
May 30, 2025

| ROPES & GRAY LLP | KATTEN MUCHIN ROSENMAN LLP |
|---|---|
| /s/ *Alexander B. Simkin* | /s/ *Peter G. Wilson* |
| Gregg L. Weiner | Peter G. Wilson |
| Alexander B. Simkin | Elliott M. Bacon |
| 1211 Avenue of the Americas | 525 W Monroe Street |
| New York, New York 10036 | Chicago, IL 60661 |
| Telephone: (212) 596-5000 | Telephone: (312) 902-5200 |
| Facsimile: (212) 596-9090 | Email: peter.wilson@katten.com |
| Email: gregg.weiner@ropesgray.com | Email: elliott.bacon@katten.com |
| Email: alexander.simkin@ropesgray.com | |
| | *Counsel for Defendant HC Technologies, LLC* |
| Robert G. Jones (*pro hac vice*) | |
| 800 Boylston Street | |
| Boston, Massachusetts 02199 | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| Telephone: (617) 951 7000 | |
| Facsimile: (617) 951 7050 | |
| Email: robert.jones@ropesgray.com | /s/ *Carmine D. Boccuzzi Jr.* |
| | Carmine D. Boccuzzi Jr. |
| Samer Musallam (*pro hac vice*) | Rishi N. Zutshi |
| 2099 Pennsylvania Avenue NW | One Liberty Plaza |
| Washington, DC 20006 | New York, NY 10006 |
| Telephone: (202) 508-4600 | Telephone: (212) 225-2000 |
| Facsimile: (202) 508-4650 | Email: cboccuzzi@cgsh.com |
| Email: samer.musallam@ropesgray.com | Email: rzutshi@cgsh.com |
| *Counsel for Defendants Currenex, Inc., State Street Bank and Trust Company, and State Street Global Markets International Limited* | *Counsel for Defendant Goldman Sachs & Co. LLC* |

11

## **CERTIFICATION**

I hereby certify that this opposition contains 3,407 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

*/s/ Alexander B. Simkin*
Alexander B. Simkin
