UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; and XTX MARKETS LIMITED,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5,<br><br>                    Defendants. | Case No. 21-cv-06598<br><br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

**TABLE OF CONTENTS**

**Page**

I. THERE IS GOOD CAUSE TO ADD DSQUARE AS A PLAINTIFF ................................ 1

II. THERE IS NO UNDUE DELAY, BAD FAITH, OR PREJUDICE .................................... 2

    A. To Suggest Undue Delay, Defendants Misrepresent the Purpose of the Proposed Amendment ................................................................................................ 2

    B. The Amendment Was Brought in Good Faith ............................................................ 3

    C. No Undue Prejudice Exists ........................................................................................ 3

III. THE AMENDMENT IS NOT FUTILE, AS THE COURT HAS ALREADY UPHELD THESE EXACT CLAIMS ............................................................................... 6

IV. DEFENDANTS' REMAINING ATTACKS AND INNUENDO ARE UNFOUNDED AND IRRELEVANT ................................................................................. 7

<a>
<p><s>Case 1:21-cv-06598-LAK-HJR Document 173 Filed 06/06/25 Page 3 of 14</s></p>
</a>

# TABLE OF AUTHORITIES

## Cases

*In re Am. Int'l Gp. Sec. Litig.*,
  2008 WL 2795141 (S.D.N.Y. July 18, 2008) ............................................................................6

*A.R. v. Connecticut State Bd. of Educ.*,
  5 F.4th 155 (2d Cir. 2021) ......................................................................................................1

*D.J. through O.W. v. Connecticut State Bd. of Educ.*,
  2019 WL 1499377 (D. Conn. Apr. 5, 2019) ............................................................................1

*Duling v. Gristede's Operating Corp.*,
  265 F.R.D. 91 (S.D.N.Y. 2010) ..............................................................................................3

*Francisco v. Abengoa, S.A.*,
  559 F. Supp. 3d 286 (S.D.N.Y. 2021) .....................................................................................6

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2017 WL 5504531 (S.D.N.Y. Nov. 15, 2017) .........................................................................2

*Kinkead v. Humana at Home, Inc.*,
  330 F.R.D. 338 (D. Conn. 2019) ............................................................................................2

*Kontarines v. Mortgage. Elec. Registration Sys., Inc.*,
  2016 WL 3821310 (E.D.N.Y. July 12, 2016) ..........................................................................2

*Pangburn v. Culbertson*,
  200 F.3d 65 (2d Cir. 1999) .....................................................................................................6

*Perez v. Escobar Constr., Inc.*,
  2023 WL 5387541 (S.D.N.Y. Aug. 22, 2023) .........................................................................2

## Other Authorities

Fed. R. Civ. P. 15 ............................................................................................................................3, 6

Newberg and Rubenstein on Class Actions § 2:17 (6th ed.) ...........................................................2

Plaintiffs respectfully submit this reply memorandum in further support of their motion for leave to file a third amended complaint. *See* ECF Nos. 162, 163, 167 ("Opp.").

I. **THERE IS GOOD CAUSE TO ADD DSQUARE AS A PLAINTIFF**

Plaintiffs' motion explained the simple purpose of this amendment: to ensure that Defendants' misconduct is addressed on the merits, rather than thwarted by technicalities over when the named Plaintiffs traded on the Currenex Platform. One central issue in this case is that Currenex secretly broke price ties based on a numerical ranking list that its salespeople edited at will. It is undisputed this occurred. Plaintiffs believed and alleged it continued until the filing of this action. Yet Defendants waited until November 2024 to assert that the jump-in-line scheme stopped a decade earlier, and waited an additional month to produce data supposedly backing up the claim. If the conduct stopped, that could create a "cutoff date" for who could bring a valid claim tied to that core part of the scheme. Thus, the trading activity during the very early years of the Platform's life may be far more important than could have been originally anticipated.[1]

Defendants argue that amendment is unnecessary because at least one Plaintiff has some trades in 2010. Opp. at 5. But in a case of this size and importance, Plaintiffs and the Court should not be forced to gamble on the sufficiency of a limited set of named Plaintiffs, particularly when Defendants continue to challenge them. Indeed, far from conceding that the current representatives are adequate, Defendants *even in their current opposition brief* are attacking the named Plaintiffs, specifically. The wider class's rights would clearly be better protected with an additional representative, which is why such requests are routinely granted. *See, e.g., D.J. through O.W. v. Connecticut State Bd. of Educ.*, 2019 WL 1499377, at *6 (D. Conn. Apr. 5, 2019), *aff'd sub nom. A.R. v. Connecticut State Bd. of Educ.*, 5 F.4th 155 (2d

---

[1] *See* ECF No. 164-1 (proposed TAC) ¶ 22 (alleging DSquare traded on the Platform from 2006 to 2021); *id.*, Ex. D (listing only a small *sample* of trades).

1

Cir. 2021) (permitting amendment at class-certification stage and stating "courts have routinely held that adding a new representative is appropriate, or even required, to protect the rights of the proposed class") (citation omitted); *Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338, 344 (D. Conn. 2019) (finding good cause to amend and add a second class representative amid "legal uncertainty" over the standing of the current representative).[2]

Defendants ignore the routine nature of a request to add additional representatives, instead citing cases denying amendments that seek to alter "litigation strategy." Opp. at 6. But Plaintiffs seek to assert the same claims based on the same facts. That is not a change in strategy at all, as confirmed by even a cursory comparison to the cases Defendants cite.[3]

## II. THERE IS NO UNDUE DELAY, BAD FAITH, OR PREJUDICE

### A. To Suggest Undue Delay, Defendants Misrepresent the Purpose of the Proposed Amendment

Defendants argue undue delay by claiming Plaintiffs have always known the timing of their trades. Opp. at 6-7. But Plaintiffs could not have known until late 2024 that the exact timing of the trades could be dispositive. Plaintiffs reasonably believed that the wrongdoings continued until the complaint made the scheme public. Defendants *knew* Plaintiffs so-believed, both by way of the complaint and numerous discovery conferrals.[4] Nonetheless, as outlined in

---

[2] *See also, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 5504531, at *1 (S.D.N.Y. Nov. 15, 2017) ("In general, when a certified or putative class is left without adequate representation, courts hold that adding a new class representative is appropriate, even required, to protect class interests."); Newberg and Rubenstein on Class Actions § 2:17 (6th ed.) ("When mootness of the named plaintiff's claims occurs, intervention by absentee members is freely allowed in order to substitute them as class representatives.").

[3] *See Kontarines v. Mortgage. Electronic Registration Systems., Inc.*, 2016 WL 3821310, at *1-2 (E.D.N.Y. July 12, 2016) (rejecting motion, brought by substituted counsel after close of discovery, to transform breach-of-contract action into fraud and RICO action); *Perez v. Escobar Construction, Inc.*, 2023 WL 5387541, at *5 (S.D.N.Y. Aug. 22, 2023) (rejecting argument amended complaint was necessary to "accurately present" Fair Labor Standards Act case).

[4] *See* ECF No. 96 ¶¶ 115, 221.

2

the motion and as is undisputed, Currenex waited until November 2024 to first reveal its assertion that the jump-in-line system stopped, and waited until December 2024 to first produce documents and data relating to that assertion.

Between Currenex's late-2024 revelation and Plaintiffs' present motion—the only relevant comparison points—there was no undue delay. In that short window, Plaintiffs reviewed the new source code, parsed Defendants' voluminous data productions, identified an appropriate class representative who was willing to take on these industry titans, and prepared the motion. In that same period, the parties participated in a mediation. Not only would it have been a questionable strategy to try add a new party into the mix while simultaneously trying to settle the case, but the mediation effort slowed expert and discovery work, including Plaintiffs' expert analysis of Currenex's tiebreaking practices. By any standard, the amendment was timely. If anything, given the tasks at hand, this motion came quite speedily.

### B.     The Amendment Was Brought in Good Faith

Given the limited purpose of the amendment, and the timing issues discussed above, Plaintiffs acted in good faith. Defendants do not argue otherwise—apart from a boilerplate recitation of the Rule 15 factors, the words "bad faith" appear nowhere in their opposition brief. Plaintiffs' proposed amendment is limited, justified, and timely. It was made in good faith.

### C.     No Undue Prejudice Exists

Defendants suggest prejudice exists because they will need to take discovery from DSquare. But the mere need to take discovery from DSquare is not undue prejudice. *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 100 (S.D.N.Y. 2010) (observing that the need to take new discovery is not undue prejudice, and collecting cases). If any prejudice with regard to the schedule exists, Defendants are to blame for waiting until November 2024 to reveal their assertion that jump-in-line stopped, for waiting until December 2024 to produce the discovery

3

supposedly showing as much, and for engaging in the destruction of evidence they now bizarrely try to turn in their favor.

Defendants argue that getting DSquare's documents will be "critical," Opp. at 8, because "Currenex does not have a complete set of [Currenex's own] emails," *id.* at 2 n.2. As to Defendants' productions, this understates the issue—Currenex and State Street have admitted to mass destruction of critical evidence. Currenex and State Street recently confirmed that ultimately *no* custodial emails were located for four of the original document custodians for the case, including three (Sean Gilman, Cary Rosenwald, and Romain Rossier) that are directly mentioned in the complaint as key actors. *See* ECF No. 96 ¶¶ 114-15, 118, 137, 159. Currenex explained in a conferral that it had a practice to delete emails associated with a departing employee approximately 30 days following that employees' departure. A former Currenex employee testified ███████████████████████████████.[5] Indeed, such a practice violates regulatory compliance for trading platforms, not to mention Defendants' own written document preservation guidelines. Even documents of employees who remained at Currenex and State Street *while this litigation was pending* appear to have been destroyed. A key employee who left the company in 2022, and who ███████████████████████ ███████,[6] had only approximately 2,000 to 3,000 documents *total* from his entire *18-year* Currenex tenure available for collection. Most basically, Defendants' suggestion the class should be denied an additional representative *because Defendants engaged in a mass destruction of the evidence*, as to make Plaintiffs' records supposedly extra important, is absurd.[7]

---

[5] Brockett Decl., Ex. 1 at 228:13-18.
[6] *Id*. at 227:10-15 ███████████████████████████.

[7] To distract, Defendants misleadingly use the word "destroyed" in connection with Plaintiffs Edmar and Irish. Opp. at 8 n.5. But, as counsel accurately represented, Edmar and

4

Regardless, the time it will take to complete any actually-needed discovery on DSquare is overblown. For instance, Defendants claim that they need to evaluate DSquare's "volume and types of trading," and how it relates to "tie-breaking." Opp. at 8. But Currenex, as the operator of the Platform at issue, is the source of the tie-breaking information and already has *everyone's* trading data. Defendants can analyze, and likely have already begun analyzing, DSquare's trading patterns. Thus, the only issue identified as requiring DSquare document discovery is that of reliance. But that can be addressed easily in the time remaining, particularly because the parties are not starting from scratch but have already heavily negotiated the relevant protocols. Indeed, DSquare is already gathering *all* emails using *all* the search terms Defendants have requested.

Defendants do not deal with any of this, and instead note how long discovery has been going on in this case already. But, again, the parties are not now starting from scratch, and the prior pace of XTX's production was driven entirely by Defendants' unreasonable and ever-shifting demands. Despite being the victim, rather than the wrongdoer, XTX alone ultimately produced over 650,000 documents, far more than all Defendants (260,000) *combined*.[8]

Again, however, ultimately the pace of *XTX's* prior productions is irrelevant. *DSquare* is ready to move expeditiously. Class members' rights should not be put at risk with an unnecessary, prophylactic bar on amendment just in case DSquare cannot move as fast as Defendants prefer. But notably, in the hypothetical and unlikely event that DSquare does not

---

Irish's business email accounts on leased servers were shut down when the businesses themselves were shut down and the lease ended. That is not destruction in nearly the same sense as what Currenex and State Street appear to have engaged in. And, of course, what happened to Edmar's and Irish's email servers has nothing to with the need to add DSquare.

[8] Defendants try to distract on this point by bragging about how Currenex's *data production* is larger than XTX's. Opp. at 8-9. But of course it is. XTX would only have its own trading data, whereas as the operator of the Platform, Currenex has data on *everyone's* trades.

satisfy its discovery obligations, Defendants can seek relief from the Court—and any such relief would only prejudice Plaintiffs, not Defendants. It is Plaintiffs who, during any (hypothetical, unlikely) extended period would have to split their attention between wrapping up DSquare discovery, while also meeting the November 18 deadline for filing a motion to certify the class.

### III. THE AMENDMENT IS NOT FUTILE, AS THE COURT HAS ALREADY UPHELD THESE EXACT CLAIMS

Futility under Rule 15 concerns whether the proposed claims are plausibly pled. *See Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (amendment is futile "only where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims") (cleaned up); *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 315 (S.D.N.Y. 2021) ("To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss pursuant to Rule 12(b)(6)."). The Court has already upheld the same claims as plausible in denying Defendants' prior motions to dismiss. *See generally* ECF No. 83. The amendment merely adds a plaintiff asserting identical claims. It necessarily follows that the amendment is not futile.

Defendants ignore this, instead arguing how "intra-class conflicts" will preclude certification. Opp. at 9-10. But Defendants do not and cannot argue that adding DSquare will *create* those (illusory) problems. Defendants instead are merely arguing that the case will never be certified, period. Either way, this is simply not a "futility" question, and it certainly cannot be decided based on a few conclusory sentences. The lone case Defendants cite does not suggest otherwise.[9]

---

[9] In *In re American International Group Securities Litigation*, 2008 WL 2795141 (S.D.N.Y. July 18, 2008), the amendment "would expand the class period by more than three years," "concerns … an entirely new theory of relief," and would add a defendant, all such that the amendment would have created new jurisdictional problems for the court. *Id*. at *3-4.

## IV. DEFENDANTS' REMAINING ATTACKS AND INNUENDO ARE UNFOUNDED AND IRRELEVANT

The Court can stop here, as the dispositive facts and issues are set forth above. But Defendants repeatedly resort to insinuations and misdirection to avoid discussing the merits of the motion. While Plaintiffs are loath to give Defendants' irrelevant attacks more airtime than they deserve—none, really—Plaintiffs are compelled to make the following response.

*First*, Defendants assert that XTX received a "priority" number. Opp. at 6. But Currenex actually claims ███████████████████████. Brockett Decl., Ex. 1 at 35:13-20, 45:24-46-6. What distinguishes the Trading Defendants, among other things, is that they knew and were paying for a superior ranking. *See, e.g.*, Brockett Decl., Ex. 2 at GS-EDMAR-00001574 (April 24, 2006 email from Goldman Sachs employee stating ████████████████████████████████████████████████████████████████████████████████████) (emphasis added); Ex. 3 at CXSSB00261652 (March 28, 2014 email from Currenex employee stating: ████████████████████████████████████████████████████████████████████████████████████████████).

To falsely suggest some moral equivalency with the likes of Goldman Sachs, for instance—which paid an absurdly high ████████ in brokerage fees in an express quid-pro-quo for the jump-in-line-right[10]—Defendants cite a single email involving an XTX predecessor entity. Defendants want the Court, and likely the public, to draw the false inference that XTX also knew of the jump-in-line scheme. Such insinuation makes no sense; XTX would not have stuck its head above the parapet as a named plaintiff, solely for the benefit of other Platform

---

[10] Ex. 4 at GS-EDMAR-00875036 ████████████████████████████

7

users, if it had known the Platform was corrupt all along. What is really occurring here, then, is the same sleight-of-hand Defendants attempted at the outset of this case. This case is not about whether the Platform "prioritizes" one trade over the other in the abstract sense—of course it does. Matching based on price "de-prioritizes" the quote with the worst price, for instance. The fraud occurred because *specific practices* were not disclosed. Thus, as the Court recognized in rejecting Defendants' motion to dismiss, "that the Platform did not follow 'strict FIFO' to break ties . . . is beside the point." ECF No. 83 at 18. The submitted exhibit, which involves how ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, is thus also "beside the point," both substantively and in the context of this motion. If there is a problem with XTX's individual claim, that only makes an amendment to add a new plaintiff *more* necessary to protect the class, not less.

*Second*, Defendants hypothesize that Plaintiffs waited for the Court to approve the scheduling stipulation before filing this motion. Opp. at 2, 7. But this is rank hypocrisy. As Defendants well know, Plaintiffs *expressly sought* to alert the Court that this motion was forthcoming *specifically to avoid* accusations of surprise—but Defendants refused to allow us to do so. *See* Brockett Declaration, Ex. 5 (Defendants' redline of Plaintiffs' draft joint letter to the Court). But ultimately, it is not clear what this "dispute" even relates to. Defendants cannot mean that the entire class should be punished because this motion was not filed *a few days earlier* than it was.

*Third*, Defendants suggest the amendment request was filed "as if" no amendment had been discussed during the scheduling conferrals. Opp. at 7. Again, it is unclear the supposed import of that observation. But all this refers to is that, after Defendants indicated they would oppose the amendment request, the parties streamlined discussions to what schedule was needed just for the existing named plaintiffs. And an extension certainly was necessary. For instance,

8

despite deposition requests being outstanding since February, Defendants only provided the first proposed dates in May, and only one deposition has taken place with only one more witness on-calendar even as-of today. And as discussed above, even now the parties are still working through the fallout from Currenex's and State Street's document destruction. Any suggestion that Defendants would have only agreed to a *shorter* schedule if they knew this amendment request was coming is not only false—they did know it was coming, as discussed above—but illogical.

*Finally*, Defendants suggest Plaintiffs withheld DSquare's name until filing the motion. Opp. at 7. So what? Defendants cite no rule requiring earlier disclosure, and they do not explain what harm they supposedly suffered in learning the name six days later than they would have preferred—especially since they were already planning to oppose the motion.

\* \* \*

In sum, the facts relevant to this motion are simple and largely uncontested. Currenex withheld its belief that the jump-in-line scheme stopped, and withheld all related documents and data, until late 2024. Once that defense surfaced, Plaintiffs acted promptly and in good faith to ensure the class would be protected. Defendants cannot dispute that adding DSquare helps protect the class's interests. To the contrary, by making clear Defendants cannot defend this case on the merits, but are instead trying to knock out the individual claims of the named Plaintiffs, Defendants' opposition brief only confirms that it is prudent to add an additional representative.

9

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant the motion for leave to file the proposed Third Consolidated Amended Class Action Complaint.

DATED:   New York, New York
         June 6, 2025

| RUDDY GREGORY, PLLC | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
|  | By: */s/ Daniel L. Brockett* |
| Mark Ruddy | Daniel L. Brockett |
| 1225 15th Street NW | Thomas J. Lepri |
| Washington, DC 20005 | 295 Fifth Avenue, 9th Floor |
| Telephone: (202) 797-0762 | New York, New York 10016 |
| Fax: (202) 318-0543 | Telephone: (212) 849-7000 |
| mruddy@ruddylaw.com | Fax: (212) 849-7100 |
|  | danbrockett@quinnemanuel.com |
|  | thomaslepri@quinnemanuel.com |
|  | christopherseck@quinnemanuel.com |
|  | |
|  | Jeremy D. Andersen (*pro hac vice*) |
|  | 865 South Figueroa Street, 10th Floor |
|  | Los Angeles, California 90017 |
|  | Telephone: (213) 443-3000 |
|  | Fax: (213) 443-3100 |
|  | jeremyandersen@quinnemanuel.com |

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATION

I, Daniel L. Brockett, hereby certify that this memorandum of law contains 2,980 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

*/s/ Daniel L. Brockett*
Daniel L. Brockett