

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

June 11, 2025

Alexander B. Simkin
T +1 212 596 9744
alexander.simkin@ropesgray.com

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 21B
New York, NY 10007

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

Defendants Currenex, Inc., State Street Bank and Trust Company, and State Street Global Markets International Limited (the "State Street Defendants") respectfully request that two extraneous pages of the deposition transcript that Plaintiffs attach as an exhibit to their reply memorandum of law (the "Reply") *that were never cited in the Reply* remain under seal.  *See* 167-1 (the "Transcript").

In an effort to facilitate public review of judicial documents, the State Street Defendants do not seek to seal any portion of the Reply or any portion of the Transcript that was quoted or cited in the Reply.  Instead, this request is limited to pages 107 and 108 of the Transcript that relate to State Street's internal audit procedures, which are commercially sensitive and not relevant to Plaintiffs' pending motion.  As set forth more fully below, the State Street Defendants respectfully submit that sealing of this unreferenced two-page portion of the Transcript is justified under controlling legal precedent, including the Second Circuit's decision in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

**I.   The Materials Are Not "Judicial Documents" And Should Remain Sealed**

Under the three-part inquiry laid out by the Second Circuit in *Lugosch*, a court considering whether to seal documents must *first*, determine whether the documents at issue are "judicial documents," to which a presumption of public access attaches; *second*, determine the applicable weight of the presumption that may apply; and *third*, after determining such weight, balance "countervailing factors" against it, including the "privacy interests" of interested parties.  *Id.* at 119–20.

Judicial documents are only those that are "relevant to the performance of the judicial function and useful in the judicial process."  *Id.* at 119.  The *Lugosch* court acknowledged that "the mere filing

ROPES & GRAY LLP

Hon. Lewis A. Kaplan                              - 2 -                              June 11, 2025

of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Id.*; *see also United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("[D]ocuments that play no role in the performance of Article III functions . . . lie entirely beyond" the presumption of public access); *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 2013 WL 6171315, at *7 (S.D.N.Y. Nov. 25, 2013) (determining that the documents were non-judicial because they "played no role in [the] Court's adjudication of the parties' respective motions" and "were immaterial to the analysis"), *aff'd*, 776 F.3d 126 (2d Cir. 2015); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 2012 WL 1382557, at *1 S.D.N.Y. Apr. 20, 2012) (same).

Pages 107 to 108 of the Transcript are not judicial documents, because they have no relevance to the adjudication of the issue presently pending before the Court: whether Plaintiffs have carried their burden of showing good cause under Rule 16 to amend their complaint for a third time to add a plaintiff over a year after the Court-ordered deadline to do so based on information Plaintiffs admit that they have always known, but that they claim to have not understood the importance of before now. Reply at 2. Pages 107 and 108 of the Transcript have nothing to do with the reasons Plaintiffs fail to carry their burden. *See, e.g., Levin v. Johnson and Johnson*, 2021 WL 9553623, at *4 (E.D.N.Y. Jan. 11, 2021) ("[B]ecause Plaintiff was aware of the facts prior to [the court-imposed deadline for motions to amend] . . . the fact that he didn't necessarily understand its importance until fairly recently does not justify good cause under Rule 16."); *Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland*, 2010 WL 4968247, at *4 (S.D.N.Y. Nov. 24, 2010) (no good cause where plaintiff did not "claim that it discovered new information . . . and fail[ed] to explain why the information to which it had access . . . was insufficient for it to amend in a timely fashion"). Indeed, pages 107 and 108 of the Transcript are not cited, let alone quoted, by any party in any legal brief.

Where documents are not judicial, "there is no presumption of public access" to overcome, and thus the movant must "only make a baseline showing of good cause" to justify maintaining the documents under seal. *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 62, 73 (S.D.N.Y. 2007), *aff'd*, 347 F. App'x. 615 (2d Cir. 2009). Under a good cause standard, even a "minimal showing of possible harm from disclosure" of the information sought to be sealed is sufficient to meet this burden and "trigger a sealing order." *Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 519 (E.D.N.Y. 2011). Here, public disclosure of State Street's internal auditing approach may, for example, make it easier for people to evade future internal audits and otherwise result in competitive harm to the State Street Defendants.

II.   **State Street Defendants' Privacy Interests Outweigh Any Presumption of Public Access**

Even if the relevant portions of the Transcript could be considered "judicial documents" (they cannot), they are still appropriately sealed as any minimal presumption of public access is strongly outweighed by the State Street Defendants' significant privacy interests.

*First*, little weight should be afforded to any presumption of public access because of the "negligible role" that Pages 107 and 108 of the Transcript play in the performance of any Article III function. *Amodeo*, 71 F.3d at 1050 ("[W]here . . . documents play only a negligible role in the

ROPES & GRAY LLP

Hon. Lewis A. Kaplan - 3 - June 11, 2025

performance of Article III duties, the weight of the presumption [of access] is low . . . ."); *GoSMiLE*, 2012 WL 1382557, at *1 (noting that even if documents found to be "immaterial" to the court's analysis *were* "viewed as judicial documents, the presumption of access is slight") (emphasis added). As set forth above, pages 107 and 108 of the Transcript are not quoted or discussed *at all* in Plaintiffs' Reply, since they have no relevance to whether Plaintiffs should be allowed an otherwise-untimely amendment.

*Second*, Pages 107 and 108 of the Transcript implicate the State Street Defendants' commercially sensitive information. They relate to a State Street internal audit, activities that State Street routinely treats as confidential. Revealing details of State Street's internal audit procedures, areas of focus, and/or findings could create opportunities for others to evade ongoing or future audits, or to access non-public information about State Street's operations more generally. Such confidential and sensitive information regarding State Street's audit function and the operation of the platform are among the types of information held to be appropriately sealed. *See In re B&C KB Holding GmbH*, 2023 WL 2021299, at *1 (S.D.N.Y. Feb. 14, 2023) (courts "routinely permit parties to seal or redact commercially sensitive information in order to protect confidential business and financial information.").[1]

Respectfully submitted,

*/s/ Alexander B. Simkin*
Alexander B. Simkin

cc: Counsel of record (via ECF)

---

[1] The State Street Defendants further join in Defendant Goldman Sachs & Co. LLC's request to keep under seal the two documents at Bates numbers GS-EDMAR-00001574 (Reply at Exhibit 2) and GS-EDMAR-00875036 (Reply at Exhibit 4), as they contain sensitive and non-public information relating to Currenex's pricing and marketing strategies and communications with platform customers.