

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

July 23, 2025

Alexander B. Simkin
T +1 212 596 9744
alexander.simkin@ropesgray.com

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Court Room 21B
New York, NY  10007-1312

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

  Pursuant to the Court's Individual Rules, we write on behalf of Defendants to respectfully request that the Court compel Alexander Gerko and Zarthustra "Zar" Amrolia, current employees of named Plaintiff XTX Markets Limited ("XTX"), to sit for depositions.  Both Gerko and Amrolia were personally involved in directing FX trading by XTX and its predecessor entity on the Currenex Platform (the "Platform").  Both had extensive direct communications with Defendant Currenex about trading on the Platform.  And both are likely to have unique information that will undercut Plaintiffs' claims and show that they are time-barred.

  Gerko is the founder and longtime co-CEO of XTX.  In 2015, he founded XTX by spinning it off from investment firm GSA Capital Partners LLP ("GSA"), where he was employed from 2009 to 2015 and had risen to lead GSA's currency trading operations.[1]  GSA entered into a service agreement to trade on the Platform in 2010.  While at GSA and continuing at XTX, Gerko was directly involved in setting trading strategy and discussing key subjects of critical relevance to this litigation with Currenex, including order matching logic, liquidity settings, and XTX's trading performance.

  Amrolia joined XTX shortly after it was formed.  He served as its co-CEO for approximately eight years, from 2015 to 2023, and is now its Chairman.  Like Gerko, Amrolia played an active and direct role in setting XTX's trading strategy, and in interfacing with Currenex and State Street regarding details of the Platform's operation and XTX's settings and performance on the Platform.

---

[1] Ex. A, B. Stupples & T. Maloney, *Quant Trader Doubles Fortune to $11 Billion as XTX Profit Surges*, Bloomberg (Aug. 21, 2023).  GSA is not a party to this litigation.  However, Plaintiffs have produced emails from GSA employees with GSA email domains, including from Gerko.

ROPES & GRAY LLP

- 2 -                                                                                                              July 23, 2025

In short, both Gerko and Amrolia possess unique personal knowledge that is not only relevant but important to the outcome of this litigation. Nevertheless, Plaintiffs have refused to make either available for depositions, improperly invoking the "apex doctrine" to shelter individuals with first-hand, relevant information that is likely to be damaging to Plaintiffs' case.[2] Plaintiffs' position lacks merit and Gerko and Amrolia should each be compelled to sit for a deposition.

### I. The Court Should Order Gerko and Amrolia to Sit for Depositions

Plaintiffs do not dispute that Gerko and Amrolia have direct personal knowledge of material issues to this litigation. As such, Plaintiffs' refusal to sit for depositions is contrary to their discovery obligations, and is particularly improper for a would-be class representative like XTX, which has a fiduciary duty to "comply wholeheartedly and fully with [its] discovery requirements." *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y.1976); *see also Darvin v. International Harvester Co.*, 610 F.Supp. 255, 257 (S.D.N.Y.1985) (finding putative class representative to be unsuitable where he refused to answer relevant questions at deposition); *Garcia De Leon v. New York Univ.*, 2022 WL 2237452, at *17 (S.D.N.Y. 2022) (finding that plaintiff was an inadequate class representative due to, among other reasons, a failure to comply with discovery obligations). The "apex doctrine," which Plaintiffs invoke, does not excuse Gerko and Amrolia from having to testify here. That doctrine allows a court to limit depositions of high-ranking corporate executives "where it [is] clear that the witness lack[s] personal familiarity with the facts." *Naftchi v. New York Univ. Medical Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997). But that is not the case here. Gerko and Amrolia have direct and unique involvement in issues central to the case and the parties' defenses. Plaintiffs offer no reason, let alone "compelling circumstances," that would excuse them from testifying. *Oakley v. MSG Networks, Inc.*, 2024 WL 4134903, at *2 (S.D.N.Y. Sept. 10, 2024).

#### A. Gerko and Amrolia Each Possess Unique, Relevant Information

Discovery to date demonstrates that Gerko and Amrolia each possess unique information relevant to the claims and defenses in this litigation and are "a far cry from the prototypical apex witness, who sits removed from the key facts of the dispute." *Oakley*, 2024 WL 4134903, at *3. Plaintiffs have produced over 87,000 responsive emails involving Gerko and over 28,000 involving Amrolia, both of whom were among XTX's agreed-upon custodians. Of these, over 2,700 of Gerko's emails and 900 of Amrolia's involve communications with representatives from Currenex and/or State Street (many of which they either sent or are the only XTX representative on the email).

Even more significant than the volume of documents produced is the content of those documents. XTX's own documents establish that both Gerko and Amrolia were personally involved in discussions with Currenex about liquidity management and order-matching. For example, Gerko

---

[2] Tellingly, while Plaintiffs invoke the "apex doctrine" to block these depositions, they have either taken or requested the depositions of certain of Defendants' top executives, including the former CEO and Chairman of HC Technologies, LLC (now Chairman of Laconic Infrastructure Partners Inc.) and the former CEO and Chairman of Currenex (now Chairman and co-founder of FairX).

ROPES & GRAY LLP

and Amrolia attended numerous meetings with Currenex personnel responsible for managing liquidity on the Platform. *See, e.g.*, Ex. B (XTX2009515) (Aug. 2014 email chain involving Gerko and Currenex discussing trading on the Platform and arranging a time to meet in person); Ex. C (CXSSB00053194) (Dec. 2014 Currenex email chain in which a Currenex employee notes he will be "meeting with Alex from GSA"); Ex. D (XTX1706040) (Feb. 2016 calendar invite from Gerko to Amrolia and Currenex employees); Ex. E (XTX1580992) (May 2016 email chain in which Amrolia requests a meeting with Currenex to "understand who is in their liquidity pool and how we build a partnership and get more access"). What Gerko and Amrolia discussed at those meetings regarding the use of priority on the Platform, how liquidity was managed on the Platform, or the information visible to other Platform participants is central to the claims and defenses in this case and is plainly discoverable. *See Oakley*, 2024 WL 4134903, at *3 (ordering high-ranking executive to sit for deposition in part because he was an "eyewitness" to the facts at issue and could provide "personal observations" as to the challenged conduct); *Speadmark v. Federated Dep't. Stores, Inc.*, 176 F.R.D. 116, 118 (S.D.N.Y. 1997) (deposition of lower-level employee not an adequate substitute where CEO had solo interactions with opposing party).

Gerko and Amrolia were also involved in developing a ███████████████████ ███████████████████████████████. *See, e.g.*, Ex. F (XTX2017272) (email chain between Gerko and Currenex in which ████████████████████████████████████████); Ex. G (XTX1153120) (email chain in which Gerko and Amrolia discuss ███████████████████ ███████████████). These emails demonstrate that Gerko and Amrolia knew the Platform allowed participants to create bespoke liquidity pools and was not a pure "central limit order book," in which all bids were eligible to match with all offers—contrary to the Complaint's implications as to XTX's perception of how the Platform operated. *See* Third Amended Complaint (ECF No. 184) at ¶ 93.

Gerko was also the sole XTX participant in a critical email exchange. Ex. H (XTX2486161). In May 2011, a former Currenex employee emailed Gerko ███████████████████████ *Id.* The former employee wrote, in part: ████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* Gerko did not ask "what is priority?" Instead, his response was: ████████████████████████████████████ *Id.* The fact that Gerko knew, at least as early as 2011, about the existence of ████████████ rights on the Platform directly undercuts Plaintiffs' claims. Defendants are plainly entitled to examine Gerko about this email and what he knew about ████████████████ on the Platform.

Gerko and Amrolia's day-to-day involvement in discussing liquidity management with Currenex is not surprising given that they reportedly exercise significant, if not complete, control over XTX's strategic initiatives and day-to-day operations. Publicly available sources describe XTX (in which Gerko holds a 75% ownership stake) as being "made in Gerko's mould," and identify Amrolia as the co-chief executive responsible for day-to-day management. Ex. I, N. Asgari, *'King of the*

ROPES & GRAY LLP

- 4 -                                                                                                                           July 23, 2025

*Geeks': How Alex Gerko Built a British Trading Titan*, Financial Times (Oct. 13, 2024). And both of them have personally written publicly and frequently during the purported class period about the order matching logic of ECN platforms and the last look practices that Plaintiffs challenge in the Complaint.[3] *See* Third Amended Complaint (ECF No. 184) at Section II.C. There is ample evidence that both individuals possess unique knowledge and decision-making authority relevant to additional critical issues in this litigation, including the factors that XTX considered when deciding where to conduct its FX trading and whether XTX could have reasonably believed the Platform to use strict first-in-first-out order matching logic. *See GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, 2025 WL 1488512, at *1 (S.D.N.Y. May 23, 2025) (ordering deposition because "executive [was] intimately involved in every aspect of key strategic decisions" and the "record [was] replete with [his] emails."). Accordingly, Plaintiffs will fall well short of their burden to show that Gerko and Amrolia have "nothing to contribute" to the record. *In re Garlock*, 463 F. Supp. 2d 478, 481 (S.D.N.Y. 2006).[4]

### B. Plaintiffs Have Refused to Make Other XTX Deponents Available Until Near the End of Fact Discovery

Plaintiffs have argued that Defendants must await depositions of other XTX employees in order to depose Gerko and Amrolia, but Plaintiffs refused to make a single XTX employee available for a deposition until August 6—just over a month before the September 19 close of fact discovery so-ordered by this Court. Defendants simply cannot "wait and see," and should not have to when the timing crunch is a problem of Plaintiffs' making. Plaintiffs justified "back-ending" depositions of XTX's witnesses because they had not substantially completed XTX's document production by this Court's December 17, 2024 deadline. ECF No. 143. Indeed, since the substantial completion deadline, XTX has made seven rolling productions (most recently on July 21, 2025) comprising approximately 200,000 documents. Plaintiffs have also refused to make relevant former employees located abroad available for depositions without the need for formal process. The result of Plaintiffs' position is that depositions of XTX witnesses have not started. With fact discovery closing on September 19, Defendants cannot wait until late August to see whether Plaintiffs will reconsider their refusal to make Gerko and Amrolia available for deposition.

\*   \*   \*

Accordingly, for the reasons set forth above, the Court should grant Defendants letter motion and order Gerko and Amrolia to sit for depositions.

---

[3] *See, e.g.*, Ex. J, Alexander Gerko, *Evil Empire strikes back*, LinkedIn (May 13, 2021) (discussing last look rights and order matching logic); Ex. K, Letter from Zar Amrolia to the Global Foreign Exchange Committee (GFXC) Re: GFXC Request for Feedback on Last Look practices in the Foreign Exchange Market, at 86-90 (Aug. 7, 2017).

[4] Plaintiffs have not claimed that Defendants seek these depositions for purposes of harassment, nor would any such claim have merit. Defendants remain willing to accommodate reasonable requests to ease any burden on Gerko and Amrolia, including traveling to London to take their depositions.

ROPES & GRAY LLP

Respectfully Submitted,

| ROPES & GRAY LLP | KATTEN MUCHIN ROSENMAN LLP |
|---|---|
| /s/ *Alexander B. Simkin* | /s/ *Peter G. Wilson* |
| Gregg L. Weiner | Peter G. Wilson |
| Alexander B. Simkin | Elliott M. Bacon |
| 1211 Avenue of the Americas | 525 W Monroe Street |
| New York, New York 10036 | Chicago, IL 60661 |
| Telephone: (212) 596-5000 | Telephone: (312) 902-5200 |
| Facsimile: (212) 596-9090 | Email: peter.wilson@katten.com |
| Email: gregg.weiner@ropesgray.com | Email: elliott.bacon@katten.com |
| Email: alexander.simkin@ropesgray.com | |
| | *Counsel for Defendant HC Technologies, LLC* |
| Robert G. Jones (*pro hac vice*) | |
| 800 Boylston Street | |
| Boston, Massachusetts 02199 | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| Telephone: (617) 951 7000 | |
| Facsimile: (617) 951 7050 | |
| Email: robert.jones@ropesgray.com | /s/ *Carmine D. Boccuzzi Jr.* |
| | Carmine D. Boccuzzi Jr. |
| Samer Musallam (*pro hac vice*) | Rishi N. Zutshi |
| 2099 Pennsylvania Avenue NW | One Liberty Plaza |
| Washington, DC 20006 | New York, NY 10006 |
| Telephone: (202) 508-4600 | Telephone: (212) 225-2000 |
| Facsimile: (202) 508-4650 | Email: cboccuzzi@cgsh.com |
| Email: samer.musallam@ropesgray.com | Email: rzutshi@cgsh.com |
| *Counsel for Defendants Currenex, Inc., State Street Bank and Trust Company, and State Street Global Markets International Limited* | *Counsel for Defendant Goldman Sachs & Co. LLC* |

Cc:     All Counsel of Record