**quinn emanuel** trial lawyers | new york

295 FifthAvenue, New York, New York 10016-7103| TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7345

WRITER'S EMAIL ADDRESS
danbrockett@quinnemanuel.com

July 28, 2025

**By ECF**

The Honorable Lewis A. Kaplan
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Court Room 21D
New York, NY 10007

Re:    *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

Plaintiffs write in response to Defendants' motion to compel Plaintiff XTX to produce its top two executives—Alex Gerko (sole CEO) and Zar Amrolia (former co-CEO, current Chair)—for depositions. Dkt. 192. This is Defendants' latest salvo in their ongoing campaign to bully XTX into rethinking its decision to volunteer to serve as a representative. Prior attempts include setting document discovery parameters so broad that XTX, despite being the victim, has produced 660,000 documents—*nearly three times more than Defendants combined*. We know of no other class action where the named plaintiff was placed under such disproportionate discovery burdens. Defendants also tried to force the production of XTX's trading source code, the proprietary lifeblood of this algorithmic trading company, despite its irrelevance. *See* Dkts. 134, 138, 146 at 15-16. Defendants also crammed in false accusations about XTX into a publicly filed brief on a completely unrelated topic. *See* Dkt. 173 at 7. The current motion—based on a handful of documents that have nothing to do with the claims and defenses at issue—continues Defendants' harassment strategy.

The apex doctrine protects executives from depositions unless (1) they have "unique, non-repetitive, first-hand knowledge of the facts at issue"; *and* (2) "other less intrusive means of discovery have been exhausted without success." *Harapeti v. CBS Television Stations, Inc.*, 2021 WL 3932424, at *2 (S.D.N.Y. Sep. 2, 2021). Neither criterion is met here.

***Gerko and Amrolia have no knowledge (much less "unique" knowledge) of the practices at issue.*** To recap, Plaintiffs represent a putative class of traders who used Currenex's trading platform. Users of the platform submit bids and offers, and the platform matches buyers and sellers accordingly. The evidence to date confirms that Currenex secretly was giving super-

quinn emanuel urquhart & sullivan, llp

priority privileges to break ties in favor of its cronies, including Defendants Goldman Sachs and HC Tech. Notably, the Complaint does *not* allege that Currenex falsely represented that its platform was a "pure 'central limit order book,'" as Defendants re-argue here. Indeed, the Court has specifically rejected that mischaracterization of the Complaint. Dkt. 83 at 15 n.69 (finding "defendants mistakenly contend that plaintiffs' fraud claims require a misrepresentation … that the platform adhered to a 'strict FIFO' tiebreaking system").

The documents Defendants append to their motion do not suggest either Gerko or Amrolia ever knew (let alone had "unique" knowledge) of Currenex's secret assignment of priority numbers. Four of the documents (Dkt. 192 Exs. B-E) are, even by Defendants' accounting, generic indications of "meetings with Currenex personnel." Dkt. 192 at 3. There is no reason to believe Currenex's secret scheme was disclosed at such meetings, and Currenex can question other attendees to confirm as much.



Defendants also attach two ██████████████████████████████████████████████████. Dkt. 192 Exs. F, G. ██████████████████████████████████████████████████████████████████████████, and has nothing to do with Currenex's assignment of priority numbers. Indeed, these emails are from 2015 and 2016, *after* Defendants assert that the use of assigned priority numbers ceased. *See* Dkt. 154-1.

Finally, Defendants attach ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ has nothing to do with Currenex secretly giving preferential treatment to orders placed by preferred cronies.[1] Defendants do not really argue otherwise, instead only suggesting the Court infer something nefarious because Gerko did not ask "What is priority?" when the word "priority" was used in the email. Dkt. 192 at 3. But of course XTX knew that *some* system of prioritization existed, in the uselessly abstract sense that ties had to be broken somehow. *See* Dkt. 184 ¶ 5 (alleging that "matching logic" is a "fundamental feature" of all ECNs). That an email used the word "priority" in the general sense in no way indicates Gerko was tipped off to Currenex's assignment of numbers to allow some users to jump in line.

Defendants in desperation turn to raw, meaningless statistics in an effort to demonstrate Gerko and Amrolia's involvement. But it does not matter how many emails or meetings Gerko or Amrolia were involved in—as the heads of XTX, they were involved in many emails and meetings. The fact remains that Defendants do not assert, and have no basis to assert, that Defendants disclosed the practices actually at issue in this case in any of those emails or

---

[1] ████████████████████████████████████████████████████ Plaintiffs allege Currenex gave away employee passwords to permit Defendants to see everything on the platform, including who was behind each price. Dkt. 184 ¶¶ 141-42. The 2011 email cited by Defendants has nothing to do with that allegation.

meetings.  Indeed, the testimony of defense witnesses confirm that the use of assigned numbers to determine priority was never disclosed to Currenex users (except of course Goldman and HC Tech).[2]  Thus, if anything, Defendants' emphasis on raw numbers and the executives' deep "control" over the company only confirms the need to protect them from harassing requests.

In short, Defendants' motion is based on a purported need to question Gerko and Amrolia regarding *what Defendants themselves disclosed*.  But Defendants do not even *claim*, let alone show, that anyone at Defendants disclosed the practices at issue to Gerko, Amrolia, or anyone else.  Defendants' own witnesses have confirmed this did not happen.  The motion is thus worse than a fishing expedition—Defendants already know there are no fish to catch.  If forced to testify, Gerko and Amrolia would confirm they have *zero* knowledge of the practices actually at issue.  This not only accords with the defense testimony in this case, but common sense, too:  Why would XTX stick its head above the parapet by volunteering to be a named plaintiff if its CEO knew of the corruption all along?  The notion is absurd.

***Multiple other witnesses could testify about the generic topics referred to in Defendants' motion.***  The Court should also deny the motion because Defendants have not even tried to get testimony from the many other Defendant and XTX employees involved in the emails and meetings to which Defendants now point.  *See, e.g.*, *Jackson-Lipscomb v. City of New York*, 2019 WL 6139443, at *5 (S.D.N.Y. Oct. 7, 2019) (denying apex deposition where the plaintiff did not attempt to depose lower level employees); *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) (denying depositions of Siemens AG executives where Rule 30(b)(6) witness was available to testify on behalf of corporation).

If Defendants need to depose XTX about "trading strategy," "trading performance," and "liquidity management," there are plainly many different people who can do so other than a CEO.  Indeed, Mr. Jeremy Smart is the head of an *entire team* "responsible for liquidity management."  Dkt. 139 (Smart Dec.) ¶¶ 3, 6.  Smart is thus the appropriate witness, and Gerko and Amrolia have no non-cumulative knowledge.  Indeed, Smart is already scheduled to be deposed, both in his individual capacity and as XTX's designee, on those topics and more.  Nonetheless subjecting CEOs to depositions about such generic topics is a textbook example of an improper, harassing request.[3]  And contrary to Defendants' assertion, that Gerko and Amrolia

---

[2] ███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████

---

[3]  While, as discussed above, the specific meetings Defendants refer to have not been shown to be relevant at all, even if Defendants wished to ask about *those meetings*, there are other people to talk to as indicated in the very materials Defendants cite.  These include, among others, people who are already going to be deposed in this case (such as Nick Burrlock of Currenex and Jeremy Smart of XTX), XTX document custodians that Defendants did not even bother to seek depositions of (such as Alex Migita and Chi Tang), and current or former Currenex employees (such as David Newns, Russell Sears, Patrick McTurk, and Dan Flowerdew).  Defense counsel here represent Newns in connection with this matter.  Currenex counsel initially confirmed Newns, who lives in Switzerland, would be made available for deposition, but later withdrew that commitment and refused service of the subpoena.

have publicly commented on "order matching logic" and "last look practices" does not change that fact. *See Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *16 (N.D. Cal. May 9, 2011) ("The mere fact that Jobs made public statements, even on issues that Affinity considers relevant to its claims, are insufficient to justify his deposition.").

Also contrary to their assertions, Defendants should not get a special right to harass XTX's highest-level executives about these generic topics merely because of the deposition calendar. This is true as a general matter, but also notably Defendants control many of the meeting participants, and failed to even depose others. As for the XTX witnesses already scheduled to be deposed, Defendants did not request dates for those witnesses until April, and XTX provided the soonest available dates for them in May.[4] Belying Defendants' suggestion that depositions could have moved faster, XTX offered to make its Rule 30(b)(6) designee, Jeremy Smart, available on August 8, but Defendants refused that date on the basis that they were not yet prepared to move forward.

The cases Defendants cite only confirm their motion lacks merit, as Defendants rely on situations where the deponents were defendants who had *personally* been involved in the alleged wrongdoing. In *Naftchi v. New York University Medical Center*, 172 F.R.D. 130, 131-32 (S.D.N.Y. 1997), the requested deponent was a named defendant alleged to have personally discriminated against the plaintiff. In *Oakley v. MSG Networks, Inc.*, 2024 WL 4134903, at *3 (S.D.N.Y. Sep. 10, 2024), Knicks owner James Dolan personally gave the order to have Charles Oakley physically removed from the stadium. And in *In re Garlock*, 463 F. Supp. 2d 478, 480-81 (S.D.N.Y. 2006), Ernst & Young partners who were involved in the diligence and marketing of an illegal tax shelter that the firm mass-marketed were fair game. But this case is about *Defendants'* actions, not XTX's. And as to XTX's knowledge, again as discussed above, Defendants know what Defendants themselves disclosed, and their own witnesses have confirmed this scheme was *not* part of those disclosures.[5]

*In conclusion*, Plaintiffs respectfully request that Defendants be precluded from deposing Gerko and Amrolia, or, at minimum, to reserve ruling on the matter until other discovery has been taken. Plaintiffs also welcome the opportunity to provide full briefing on this matter to the Court, which would also afford XTX time to provide declarations from Gerko and Amrolia on these issues, should the Court find it necessary to do so despite the fundamental flaws pervading Defendants' motion.

---

[4] For their part, there are multiple defense witnesses for whom Defendants still have not proposed deposition dates, despite Plaintiffs' having requested them in April.

[5] Defendants also suggest that XTX's top executives should be given harsher treatment than normal because XTX volunteered to be a class representative. Dkt. 192 at 2. But the cited case, *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 503-06 (S.D.N.Y. 1976), involved a comically bad proposed representative—one who violated champerty rules, had not authorized the filing of the action, lied under oath, and was found by the court to be acting out of "spite" and "animus." Such a case in no way suggests that XTX's right to protect its executives from harassment differs from the rights of any other litigant.

Respectfully submitted,

 /s/ Daniel L. Brockett

Daniel L. Brockett
cc: Counsel of Record