## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; XTX MARKETS LIMITED; and DSQUARE TRADING LIMITED,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5,<br><br>                              Defendants. | Case No. 21-cv-06598 |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ISSUANCE OF LETTER ROGATORY FOR FORMER XTX EMPLOYEE JAN STROMME**

Pursuant to Federal Rule of Civil Procedure 28(b)(2), 28 U.S.C. § 1781(b)(2), and the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 ("Hague Convention"), Defendants Currenex, Inc. ("Currenex"), State Street Global Markets International Limited ("State Street Global"), Goldman Sachs & Co. LLC ("Goldman"), HC Technologies, LLC ("HC Tech"), and State Street Bank and Trust Company ("State Street Bank," and, together with Goldman and HC Tech, the "Trading Defendants") (collectively, "Defendants") respectfully move the Court to issue a letter rogatory to take testimony overseas of former employee of Named Plaintiff XTX Markets Limited ("XTX"), Jan Stromme.

## BACKGROUND

Defendants seek the instant letter rogatory in order to take deposition testimony that is important to their defenses.  Among other things, Plaintiffs in this action assert that they were harmed by Currenex's alleged failure to fully disclose tiebreaking settings on its "Executable Streaming Prices Trading Model" (the "Platform").    Third Amended Compl. ¶¶ 10-12. Specifically, Plaintiffs allege that, where there was a "tie" between two users, Currenex broke "ties" in favor of the Trading Defendants based on their assigned priority settings. *Id.* ¶¶ 45-48. Plaintiffs allege that they believed that the Platform broke ties on a strict first in, first out ("FIFO") basis.  *Id.* ¶ 94.  Plaintiffs support that allegation by claiming, among other things, that they purportedly understood the Platform to operate as a pure "central limit order book," in which all bids were eligible to match against all offers (a system which they claim carried with it an assumption that strict FIFO would apply).  *Id.* ¶ 95.

Defendants deny Plaintiffs' allegations and assert, among other defenses, that Plaintiffs in fact understood that the Platform did not operate on a strict FIFO basis and instead, for a period of time prior to 2015, utilized priority settings in order matching.  Discovery has revealed, for example, that Named Plaintiff XTX had favorable priority settings on the Platform prior to 2015 and that its representatives, including its CEO and founder, Alex Gerko, may have discussed the use of this type of priority with representatives of Currenex over a decade before XTX brought this action.  *See* ECF 192 at 3 (referencing May 2011 email exchanges between Gerko and a former Currenex representative discussing priority).  Discovery has also revealed that XTX knew that the Platform did not operate as a pure central limit order book but, instead, allowed individual platform participants to shape their own bespoke liquidity pools.  *See* Ex. 1, CXSSB00000121 at CXSSB00000131-132 (Currenex's Description of Services and Conflicts of Interest dated August

10, 2015, explaining that when a participant creates a new account on the Platform they can customize their own streaming settings and other bespoke options). Plaintiffs' knowledge of these facts is directly relevant to Defendants' case.

Furthermore, in order to defend against Plaintiffs' claims, Defendants also need to understand the factual bases for Plaintiffs' allegations in the Complaint: (i) that they reviewed and relied upon certain statements made by Currenex about the Platform's operations in making their decisions about where and how to trade, Third Amended Compl. ¶ 108; (ii) that they regularly monitored their performance on the Platform, *id.* ¶ 227; and (iii) that they suffered damages as a result of Defendants' alleged actions, *see, e.g., id.* ¶ 281.

To that end, Defendants are seeking testimony from Jan Stromme, a former XTX executive who Defendants expect to be knowledgeable about each of the foregoing topics.

Mr. Stromme resides in the United Kingdom and, upon information and belief, served as the Global Head of Distribution at XTX between July 2015 and December 2017 and before that as the Global Head of Distribution at GSA Capital Partners LLP ("GSA")[1] from December 2010 to July 2015. Discovery has revealed that Mr. Stromme was responsible for developing GSA's and XTX's business relationships with foreign exchange platforms, and for liaising with those platforms, including Currenex. *See, e.g.*, Ex. 2, XTX2006270 ("I will . . . liaise with [Currenex] now."); Ex. 3 XTX2483528 (describing Mr. Stromme's role as "run[ning] FX sales in GSA"). Of particular relevance here, Mr. Stromme regularly communicated with Currenex about the configuration and performance of XTX's accounts on the Platform and regarding amendments to

---

[1] Discovery has revealed that XTX's principals spun off XTX from GSA, which is the manager of GSA Capital International Master. XTX appears to have continued to use GSA's accounts to trade on the Currenex Platform after its formation. Documents produced by Plaintiffs in this litigation include documents from Mr. Stromme's XTX and GSA email addresses. For purposes of this Motion, reference to "XTX" includes GSA. For the avoidance of doubt, however, Defendants do not waive and expressly reserve any arguments relating to the ability of XTX to bring claims on behalf of GSA, including, without limitation, on the basis that Plaintiffs do not purport to bring claims on behalf of GSA on the face of the Complaint.

XTX's contracts with Currenex.  *See, e.g.*, Ex. 4, XTX2467800 (responding to request from Currenex asking how XTX would like to structure their new streams).  In particular, Mr. Stromme communicated regularly with Currenex regarding the Platform during the crucial window between when XTX started trading on the Platform and when the Platform's priority settings changed in 2015.  *See, e.g.*, Ex.5 XTX2691081 (email communications between Mr. Stromme and Currenex in January 2015).   The nature and extent of these communications make it highly likely that Mr. Stromme is knowledgeable not only about what Currenex communicated to XTX about the Platform's operations, but also about how XTX understood those communications and how it considered (or did not consider) them in making decisions about where and how to trade.

Quinn Emanuel Urquhart & Sullivan, LLP, counsel to Plaintiffs, has told Defendants that it also represents Mr. Stromme in connection with this litigation, so Defendants have not been able to communicate directly with him.  Plaintiffs' counsel have also represented that Mr. Stromme has declined Defendants' request that he voluntarily testify in this matter.  Because Mr. Stromme is not a party to this litigation, resides in the United Kingdom, and is otherwise outside the Court's jurisdiction, Defendants seek to secure his testimony via a letter rogatory.  *See, e.g.*, *In re Turquoise Hill Res. Ltd., Sec. Litig.*, 2023 WL 5322019, at *2 (S.D.N.Y. Mar. 8, 2023) (granting requests for issuances of letters rogatory through the Hague Convention for non-party citizens of the United Kingdom, who are otherwise outside the court's jurisdiction, because "[t]he parties are able to secure their documents and testimony only by letter of request").

Accordingly, Defendants respectfully request that the Court issue the requested letter rogatory, attached as Exhibit A.  Plaintiffs have stated that they do not to oppose this motion.

## ARGUMENT

This Court is authorized to and should issue a letter rogatory to the United Kingdom to secure deposition testimony from Mr. Stromme.  Generally, courts may issue a letter rogatory seeking the assistance of a foreign court to obtain non-party discovery from a foreign entity, pursuant to Federal Rule of Civil Procedure 28(b)(2) and 28 U.S.C. §1781(b)(2).  *Netherby Ltd. v. Jones Apparel Grp. Inc.,* 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005) (granting a motion for the issuance of letters rogatory to permit non-party discovery in a foreign country).  "Courts routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material." *Id*.

### A.  The Hague Convention Applies to Defendants' Requests.

Pursuant to Article 1 of the Hague Convention, a court of a nation party to the Hague Convention can request a court in another nation party "to obtain evidence, or to perform some other judicial act."  U.S.T. 2555, T.I.A.S. No. 7444 at Article 1.  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 538 (1987).  The United States and the United Kingdom are each party to the Hague Convention, so this Court may issue a letter rogatory to a court in the United Kingdom requesting that the court authorize Defendants to obtain evidence.  *See Villella v. Chem. & Mining Co. of Chile Inc.*, 2018 WL 2958361, at *3 (S.D.N.Y. June 13, 2018) (internal citations and quotation marks omitted) (granting request for court to issue letter rogatory to the United Kingdom and noting that "[a]lthough the party seeking the application of the Hague Convention procedures bears the burden of persuasion, that burden is not a heavy one.").

Further, the English court (the relevant jurisdiction within the United Kingdom in which Mr. Stromme resides) is likely to compel Mr. Stromme's testimony if presented with the letter

rogatory attached as Exhibit A.  Declaration of J. Dhillon K.C., ¶¶ 2-8 (citing the Evidence (Proceedings in Other Jurisdictions) Act 1975 ("1975 Act").

### B. Defendants' Proposed Letter Rogatory Complies with Federal Rule of Civil Procedure 26 and the 1975 Act.

When evaluating a request for a letter rogatory, courts in the United States apply the discovery principles of Rule 26.  *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012).  Courts accordingly authorize requests for letters rogatory that seek to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Moreover, under English law the 1975 Act permits oral examinations where "it can reasonably be expected that the intended witness has evidence to give on topics that are relevant to issues for the trial of the foreign proceedings." Declaration of J. Dhillon K.C., ¶ 5(2).  Defendants' request meets both standards.

Defendants seek relevant testimony from Mr. Stromme via the proposed letter rogatory. Plaintiffs allege that Defendants made materially false and misleading statements in that they purportedly failed to fully disclose the Platform's tiebreaking rules and that Plaintiffs relied on these alleged false statements to trade at prices worse than what they otherwise could have obtained.  *See* Third Amended Compl. ¶ 94.  To prevail on their fraud claim, Plaintiffs must show that they relied on Defendants' alleged representations in, among other things, deciding which platforms to trade on and what trading strategies to pursue on those platforms.  Documents produced in discovery indicate that Mr. Stromme was involved in communications with Currenex and others at XTX on these subjects.  Specifically, Mr. Stromme frequently communicated with Currenex about the configuration and performance of XTX's accounts on the Platform and regarding amendments to XTX's contracts with Currenex for use of the Platform during the relevant time period.  Mr. Stromme can reasonably be expected to testify to what he and others at

XTX knew about the operation of the Platform (including whether it operated as a pure central limit order book) and its tiebreaking rules, when and how it gained that understanding, and how XTX used that information in deciding where and how to trade.  That testimony by Mr. Stromme would be relevant to the issues at the trial of the Plaintiff's claim.  The English court would also find this testimony to be a relevant and the proposed lines of questioning of Mr. Stromme to be appropriate matters under English law.  *See* Declaration of J. Dhillon K.C., ¶ 5.

For the purposes of Fed. R. Civ. P. 26, too, Mr. Stromme's testimony is relevant to an element of Plaintiffs' fraud claim, and to Defendants' defense that XTX understood that the Platform did not operate on a strict FIFO basis, including prior to the statute of limitations periods applicable to Plaintiffs' claims.  *See Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (holding that a matter is considered "relevant" if it "bears on, or [] reasonably could lead to other matter that could bear on any party's claim or defense.").

Defendants' request is also proportional to the needs of the case.  Defendants seek a one-day deposition of Mr. Stromme and intend to confine their questioning to Mr. Stromme's employment at GSA and XTX, over an approximately five-year span from 2010 through 2015.  Defendants' proposed letter rogatory enumerates specific topics upon which they seek to collect evidence from Mr. Stromme.  Exhibit A at 7.  Given the importance of Mr. Stromme's potential testimony and the targeted nature of the proposed discovery, Defendants' request is proportionate and sufficiently tailored to the needs of the case.

## **CONCLUSION**

For the foregoing reasons, Defendants request that this Court grant this motion and issue the letter rogatory attached as Exhibit A.


DATED:   August 8, 2025
New York, New York

ROPES & GRAY LLP

/s/ *Alexander B. Simkin*
Gregg L. Weiner
Alexander B. Simkin
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-5000
Facsimile: (212) 596-9090
Email: gregg.weiner@ropesgray.com
Email: alexander.simkin@ropesgray.com

Robert G. Jones (*pro hac vice*)
800 Boylston Street
Boston, Massachusetts 02199
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
Email: robert.jones@ropesgray.com

Samer Musallam (*pro hac vice*)
2099 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 508-4600
Facsimile: (202) 508-4650
Email: samer.musallam@ropesgray.com

*Counsel for Defendants Currenex, Inc., State Street
Bank and Trust Company, and State Street Global
Markets International Limited*