

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

August 25, 2025

Alexander B. Simkin
T +1 212 596 9744
alexander.simkin@ropesgray.com

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Court Room 21B
New York, NY 10007-1312

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

Pursuant to the Court's Individual Rules, we write on behalf of Defendants concerning three discovery disputes arising from Plaintiffs' efforts to obscure that key allegations in the Third Amended Complaint ("TAC") attributed to three unnamed former Currenex employees (the so-called "Confidential Witnesses" or "CWs")[1] are simply untrue, and that Plaintiffs' claims are untimely.

*First*, Defendants ask that the Court reopen the depositions of third-party fact witnesses Nicholas Burrlock (the "Platform Employee") and Jermaine Harmon (the "Salesperson," we think), instruct the witnesses to answer questions that Plaintiffs' counsel improperly instructed them not to answer, and direct Plaintiffs to bear Defendants' reasonable costs associated with the reopened depositions. *Second*, Plaintiffs should produce, or at a minimum log, their communications with CWs and other fact witnesses. *Third*, Plaintiffs should identify the CWs relied on in the TAC by name.

As background, with the production of the Currenex Platform's trading data and matching engine source code, it is now indisputable that any use of priority settings in tiebreaking considerations stopped more than six years before the original complaint was filed in August 2021 (and putting to one side Plaintiffs' groundless claims of secret agreements and fraud).[2] Accordingly, Plaintiffs' fraud claims are untimely if they were brought more than two years after when Plaintiffs knew or should have known about the use of priority. *See* N.Y. C.P.L.R. 213(8). Recent depositions raise serious doubts about whether Plaintiffs can make this showing.

---

[1] These three sources are identified as the "Platform Employee," the "Salesperson," and the "Executive," and each supposedly had "first-hand knowledge of the fraudulent scheme." ¶ 117.

[2] Discovery has shown that the entities that received such tiebreaking "priority" were large liquidity providers, like Plaintiff XTX, who helped provide stability to the then-nascent Platform. *See* ¶ 158.

ROPES & GRAY LLP

- 2 -                                                                                                                      August 25, 2025

### I.    The Court Should Reopen The Depositions Of Burrlock And Harmon

Plaintiffs noticed the depositions of former Currenex employees Nicholas Burrlock and Jermaine Harmon.  Although neither Burrlock nor Harmon are or were represented by Plaintiffs' counsel, it became clear during their depositions that both had provided information to Plaintiffs' counsel in advance of the filing of the original complaint and continued to have non-privileged communications with Plaintiffs' counsel leading up to the depositions.  During Defendants' efforts to cross-examine Burrlock and Harmon, Plaintiffs' counsel improperly instructed both witnesses not to answer numerous relevant questions pertaining to topics including any "pre-suit" communications they had with Plaintiffs' counsel.  In other words, even though the TAC relies on what these "former insiders" allegedly revealed, *see* ¶¶ 117–121, Plaintiffs' counsel directed them to refuse to testify about these very same conversations.

For example, Burrlock testified that he discussed the claims in this litigation "more than 10" times and "potentially more than 20" times with Plaintiffs and their representatives, but Plaintiffs' counsel told the witness he should "not disclose the content of any [such] communications." Ex. A (Burrlock Tr.) at 115:8–22.  Burrlock also testified that he emailed individuals associated with Plaintiffs and Plaintiffs' counsel but deleted his emails, *id.* at 58:19–59:6, and that his communications with Plaintiffs' counsel may have started in 2016, *id.* at 50:25–51:5.  Perhaps recognizing that their case is untimely if Plaintiffs knew or should have known about the tiebreaking allegations prior to August 4, 2019, Plaintiffs' counsel refused to let Burrlock provide the likely case-dispositive testimony about what he told Plaintiffs in 2016, 2017, 2018, and the first half of 2019.

As another example, during Burrlock's deposition, when defense counsel asked him to disclose the mere identities of the attorneys he spoke with about the case before the complaint was filed, Plaintiffs' counsel interjected: "So to the extent you are asking him about conversations with the legal team that constitutes part of our pre-suit investigation, I am going to ask Mr. Burrlock not to provide information responsive to those questions." Ex. A (Burrlock Tr.) at 46:25–47:4.  Plaintiffs' counsel made similar interjections throughout Burrlock's and Harmon's depositions, and both witnesses abided by Plaintiffs' counsel's instruction.  These objections were all the more concerning because Burrlock *admitted* to being the source of a key allegation in the TAC regarding the negotiation of purported "secret priority agreements," but then testified he had *no direct knowledge of that fact*. *See* ¶ 121; Ex. A (Burrlock Tr.) at 127:22–128:1.  Plaintiffs' improper interference at the depositions comes on top of other questionable practices, including providing these witnesses free meals and golf, and compensating a mutual friend of the witnesses that Plaintiffs claim to have engaged as a consulting expert (Caspar Marney) and who arranged such meetings.  *See* Ex. B (Harmon Tr.) at 22:13–23:5, 43:2–9; *see also* Ex. A (Burrlock Tr.) at 111:16–112:1.

Plaintiffs' privilege assertions over communications between themselves and third-party fact witnesses have no basis in law.  "[N]o attorney-client privilege arises unless an attorney-client relationship has been established." *Priest v. Hennessy*, 51 N.Y.2d 62, 68 (N.Y. 1980).  Nor does the work product doctrine apply to communications, like those at issue here, made by a third-party

ROPES & GRAY LLP

- 3 -                                                                                                   August 25, 2025

witness to counsel who does not represent that witness. *See Ricoh Co. v. Aeroflex Inc.*, 219 F.R.D. 66, 69–70 (S.D.N.Y. 2003) (finding emails from third-party witness to counsel not privileged and observing "it is a stretch to apply the attorney work product privilege to documents created by a third party and then sent to counsel for a party"); *Lakehal-Ayat v. St. John Fisher Coll.*, 2021 WL 6775441, at *2 (W.D.N.Y. Oct. 15, 2021) (finding no work product protection over plaintiff's counsel's communications with potential witnesses about relevant facts).

But even if such communications reflected some degree of attorney work product, any such protection has been waived. Courts in the Second Circuit have consistently held that the disclosure of work product to a third-party witness waives the protection. *Lakehal-Ayat*, 2021 WL 6775441, at *2; *see also Ricoh*, 219 F.R.D. at 70 (counsel "waived protection for these e-mails under the work product doctrine when counsel shared his observations with a third-party who was likely to be an independent witness in the case"). In addition, the "at-issue" doctrine provides a second independent basis for waiver because Plaintiffs placed the substance of these communications at issue, such that disclosure is necessary to test the validity of their claims and withholding the information would deprive the adversary of vital evidence. *See Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr.*, 837 N.Y.S.2d 15, 23 (1st Dep't 2007). Plaintiffs have repeatedly relied on statements from "former insiders" to Plaintiff's counsel to support their allegations. *See, e.g.*, ¶¶ 117–121. Plaintiffs cannot use these communications as both a sword and a shield—relying on them to make allegations in support of their claims while simultaneously withholding the underlying communications, or basic facts like when they were sent, from Defendants' scrutiny. *See Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 652–53 (S.D.N.Y. 2019) (waiver of privilege and work product where defendant's good faith defense put privileged communications at issue); *NYU Winthrop Hospital v. Microbion Corp.*, 405 F. Supp. 3d 387, 391–92 (E.D.N.Y. 2019) (affirming waiver where party's factual assertions placed privileged material at issue).

And waiver aside, Defendants are entitled to testimony regarding these communications because they have a substantial need and no other means of obtaining this information. As explained *supra*, the timing of Plaintiffs' communications with the CWs is directly relevant to Defendants' statute of limitations defense. *See National Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000) ("A substantial need for work product materials exists where the information sought is 'essential' to the party's defense[.]"). Defendants attempted to obtain this information from the CWs, but Plaintiffs blocked those efforts, including by instructing the CWs not to respond to deposition questions. *See In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2008 WL 2941215, at *3 (S.D.N.Y. July 30, 2008) (substantial need found in part because CWs provided relevant materials that were not obtainable other than from plaintiff).

In any event, defense counsel are entitled to question a third-party witness about the factual content of that witness's conversations with plaintiffs' counsel, so long as the questions do not encroach upon counsel's legal strategy or thought processes. *See SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, 2002 WL 1334821, at *5–6 (S.D.N.Y. June 19, 2002). Here, Defendants do not seek Plaintiffs' counsel's legal strategy or thought processes; instead, Defendants' questions were

ROPES & GRAY LLP

- 4 -                                                                                        August 25, 2025

intended to elicit *factual* testimony to: (i) explore when Plaintiffs learned or should have learned of the factual allegations underlying the TAC; and (ii) assess whether the factual allegations attributed to the CWs were consistent with what those CWs actually told Plaintiffs' counsel. Those facts are not privileged, and they go to the core of Defendants' statute of limitations defense and arguments regarding the adequacy of Named Plaintiffs and their counsel.

## II. Plaintiffs Should Produce, Or At Least Log, Communications With Third-Party Fact Witnesses

Plaintiffs have refused to produce, or even log, *any* communications with the CWs. But as set forth above, any privilege assertions over communications with third-party fact witnesses lack merit, and Plaintiffs' refusal to log them has itself resulted in waiver of any privilege. *See Fleisher v. Phoenix Life Ins. Co.*, 2013 WL 42374, at *2 (S.D.N.Y. 2013) ("Courts consistently have held that [a party asserting privilege] is required to produce a document index or privilege log, and that the failure to produce a log of sufficient detail constitutes a waiver of the underlying privilege or work product claim."). The only reasonable inference from Plaintiffs' refusal to even log these communications is that they will show that Plaintiffs knew, or should have known, about their core tiebreaking allegations before August 2019.

While these non-privileged materials are relevant to the claims and defenses in this case and should be produced, at the very least, Defendants are entitled to a privilege log to assess the validity of any claimed protection, and to evaluate whether they may be able to show a substantial need for any particular withheld document or communication. *See Bennett v. Cuomo*, 2023 WL 7624669, at *1 (S.D.N.Y. Nov. 14, 2023) (ordering party claiming privilege to produce a privilege log, since such party "bears the burden to demonstrate that the Privileges apply on a document-by-document basis").

## III. Plaintiffs Should Name Their Purported Confidential Witnesses

Plaintiffs' refusal to identify the names of the CWs whose accounts form the allegations in the TAC runs contrary to the weight of authority in this district. The majority view is that "the names of the persons identified in [a complaint] as [Confidential Witnesses] are not entitled to any work product protection; and if any work product protection does apply to these names, it is minimal." *Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 340 (S.D.N.Y. 2011). Accordingly, Defendants are entitled to discovery sufficient to identify the names of the CWs who are "sources" of Plaintiffs' specific factual allegations.

*                *                *

In sum, the Court should (i) reopen the depositions of Nicholas Burrlock and Jermaine Harmon, order the witnesses to answer questions that Plaintiffs' counsel improperly instructed them not to answer, and direct Plaintiffs to bear Defendants' reasonable costs associated with such reopening; (ii) order Plaintiffs to produce their communications with the CWs and other fact witnesses, or at the bare minimum, order Plaintiffs to log such withheld communications; and (iii) order Plaintiffs to identify the names of the three CWs identified in and relied on in the TAC.

ROPES & GRAY LLP

Respectfully Submitted,

| ROPES & GRAY LLP | KATTEN MUCHIN ROSENMAN LLP |
|---|---|
| /s/ Alexander B. Simkin | /s/ Peter G. Wilson |
| Gregg L. Weiner | Peter G. Wilson |
| Alexander B. Simkin | Elliott M. Bacon |
| 1211 Avenue of the Americas | 525 W Monroe Street |
| New York, New York 10036 | Chicago, IL 60661 |
| Telephone: (212) 596-5000 | Telephone: (312) 902-5200 |
| Facsimile: (212) 596-9090 | Email: peter.wilson@katten.com |
| Email: gregg.weiner@ropesgray.com | Email: elliott.bacon@katten.com |
| Email: alexander.simkin@ropesgray.com | |
| | *Counsel for Defendant HC Technologies, LLC* |
| Robert G. Jones (*pro hac vice*) | |
| 800 Boylston Street | |
| Boston, Massachusetts 02199 | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| Telephone: (617) 951 7000 | |
| Facsimile: (617) 951 7050 | |
| Email: robert.jones@ropesgray.com | /s/ Carmine D. Boccuzzi Jr. |
| | Carmine D. Boccuzzi Jr. |
| Samer Musallam (*pro hac vice*) | Rishi N. Zutshi |
| 2099 Pennsylvania Avenue NW | One Liberty Plaza |
| Washington, DC 20006 | New York, NY 10006 |
| Telephone: (202) 508-4600 | Telephone: (212) 225-2000 |
| Facsimile: (202) 508-4650 | Email: cboccuzzi@cgsh.com |
| Email: samer.musallam@ropesgray.com | Email: rzutshi@cgsh.com |
| | |
| *Counsel for Defendants Currenex, Inc., State Street Bank and Trust Company, and State Street Global Markets International Limited* | *Counsel for Defendant Goldman Sachs & Co. LLC* |