**quinn emanuel** trial lawyers | new york

295 Fifth Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S EMAIL ADDRESS
**danbrockett@quinnemanuel.com**

September 2, 2025

**BY ECF**

The Honorable Lewis A. Kaplan
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Court Room 21D
New York, NY 10007

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

Plaintiffs oppose Defendants' request to reopen the depositions of Nick Burrlock and Jermaine Harmon and to expand our logging obligations. ECF 213. Defendants seek information not about the facts of the case, but about Plaintiffs' counsel's investigative process—i.e., our core work product. Defendants have shown no need, let alone a substantial need, for this information.

## Background

Burrlock and Harmon[1] are former Currenex/State Street employees who gave interviews to Plaintiffs' counsel as part of a pre-suit investigation of this case. They were listed in Plaintiffs' initial disclosures as witnesses likely to have discoverable information, and Defendants have known of their identities from the beginning. We do not represent or control these witnesses.[2]

At their depositions, defense counsel repeatedly asked Burrlock and Harmon about the substance of conversations they had with Plaintiffs' counsel prior to filing the complaint. Plaintiffs' counsel did not object to questions about the general subject matter of such conversations, and Burrlock and Harmon testified freely about the facts surrounding the priority scheme and related

---

[1] With respect to Defendants' request for Plaintiffs to name all "confidential witnesses," Plaintiffs state the last name is Russell Sears, who will be deposed after the Hague Convention process is completed. That portion of the motion is thus moot.

[2] In addition to the privilege issues discussed below, Defendants cannot show that the burden on these third parties is proportional to the needs of the case. It also is not clear by what mechanism Defendants propose to re-open a deposition of a foreign witness (Burrlock is a U.K. citizen), who initially appeared voluntarily in London but who could insist on being accorded full Hague Convention rights if he is imposed upon again.

wrongdoing.  Defendants do not want further discovery into the facts of their own scheme, however.  Rather, they seek to probe the contours of counsel's investigative process.  But the witnesses were asked, and were allowed to freely answer, questions about *when* the witnesses discussed these matters with counsel, who was present, and other foundational matters.  Defendants thus have already examined these witnesses as to the merits of this case, and as to the timing of the witness's connections, if any, to Plaintiffs and their attorneys.  Defendants have not been denied any relevant, substantive information uniquely available to Plaintiffs.  The only issue on this motion is whether, at the end of discovery, Defendants can re-impose on these third-party witnesses to question them about the *specific words used* in conversations with counsel.

***The information sought is protected work product.***  Courts routinely apply work product protection to counsel's communications with witnesses carried out in contemplation of litigation.[3]  *See, e.g.*, *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 2025 WL 2337108, at *3 (D. Ariz. Aug. 13, 2025); *In re Bofi Holding, Inc. Sec. Litig.*, 2021 WL 3700749, at *5 (S.D. Cal. July 27, 2021) ("[T]o protect counsel's work product … defendants are not to inquire of the witnesses about any prefiling communications with plaintiffs' counsel or investigators[.]").[4]  Because they would reveal "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative," counsel's discussions with Burrlock and Harmon are "core" work product, deserving protection that courts have described as "absolute or near absolute."  *Schomburg v. New York City Police Dep't*, 298 F.R.D. 138, 143 (S.D.N.Y. 2014) (cleaned up).

Even if the Court finds that the specific words used in conversations with counsel are merely factual work product, Defendants must show a "substantial need" for the testimony and that "equivalent information cannot be obtained from other sources without undue hardship."  *United States ex rel. Integra Med Analytics, LLC v. Laufer*, 2023 WL 3203912, at *2 (S.D.N.Y. May 2, 2023) (cleaned up).  Defendants cannot meet that burden.

***There is no need for still-more limitations-related discovery.***  Defendants argue they must be permitted to probe counsel's pre-complaint investigation to support a statute-of-limitations defense.  This argument is wrong on both the facts and the law.

As to the facts, Burrlock and Harmon already gave their full recollections on the topics Defendants claim are relevant to their statute-of-limitations defense.  Plaintiffs' counsel did not "instruct" or seek to block any questions of Burrlock or Harmon concerning *when* they spoke with Plaintiffs' counsel, or the general subject matters discussed.  This information is more than sufficient to allow Defendants to develop their timeliness defense without piercing Plaintiffs'

---

[3] Defendants argue Plaintiffs "waived" privilege by interviewing Burrlock and Harmon about the priorities scheme.  ECF 213 at 3.  But unlike attorney-client privilege, work product protections apply to communications between counsel and third parties provided there is no "tangible adversarial relationship" between them.  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 447 (S.D.N.Y. 2004); *see also S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 146 (S.D.N.Y. 2004) (waiver only where disclosure made "in a manner that materially increases the likelihood of disclosure to an adversary").  Here, Burrlock and Harmon were akin to whistleblowers, providing counsel with information adverse to *Currenex*.

[4] *See also Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 2606830, at *6 (N.D. Cal. May 6, 2016) (declining to order Plaintiffs to produce communications with confidential witnesses); *In re New Century*, 2009 WL 10691336, at *5 (C.D. Cal. Dec. 7, 2009) (same).

counsel's work product privilege. Asking the witnesses about the exact words used in those conversations would add nothing with respect to any supposed statute-of-limitations defense.

More basically, as to the law, Defendants are categorically barking up the wrong tree. Statutes of limitations do not begin to run when an *attorney* somewhere learns of a defendant's wrongdoing. Courts in this district and elsewhere universally agree that the knowledge of an attorney cannot be imputed to a party until the attorney is actually retained by a *client*. *See, e.g.*, *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 399 F. Supp. 3d 120, 137 (S.D.N.Y. 2019) (explaining that "it would be improper to attribute [plaintiff's agent's] knowledge of the claims" to plaintiff where the agent was not "authorized to represent [plaintiff] in connection with the legal claims now before the Court"). As the Fourth Circuit has explained: "To be sure, once a plaintiff hires counsel to investigate a claim, it may be appropriate to impute the counsel's knowledge to the plaintiff. *But until that point, a plaintiff cannot be charged with the knowledge of his yet-to-be-retained counsel.* We know of no opinion holding otherwise[.]" *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 557 n.7 (4th Cir. 2019) (emphasis added).[5]

In short, the relief sought in this motion (the exact words used in conversations between a third-party witness and counsel) is logically and legally untethered to its stated basis (statute of limitations). There is no legally cognizable statute-of-limitation defense that is premised on when an attorney learns of a possible claim. The statute of limitations is triggered only when the client itself learns of the wrongdoing. The relevant "when" fact is not when *Burrlock or Harmon* spoke to counsel, but when the named Plaintiffs themselves retained counsel or otherwise learned of the claim. Defendants have that information; these third-party witnesses do not.[6]

***There is no need for Rule 11 discovery into the basis for counsel's allegations.*** Defendants vaguely suggest more testimony is also needed to ascertain the accuracy of the complaint. But requests to conduct Rule 11-style discovery require not just overcoming the regular rules protecting work product; they must also meet an "extraordinary circumstances" test. *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2021 WL 2481835, at *8 (S.D.N.Y. June 17, 2021). Any suggestion that such circumstances exist here is, frankly, absurd. The complaint in this case was spot-on in every material respect, and the operative allegations have been repeatedly confirmed in discovery, including by Currenex itself.

For instance, every Currenex employee—including not just Burrlock and Harmon, but also Cary Rosenwald (Head of Strategy at Currenex), Sean Gilman (Chief Technology Officer), Rick Schonberg (Managing Director at Goldman Sachs), and Tom Liconte (Head of Currenex Operations)—has confirmed that, exactly as alleged, (ECF 184 ¶¶ 1, 116-28), ███████

---

[5] The law cannot sensibly be otherwise. If the law instead were to date the statute of limitations based on the pre-retention work of counsel, then the victim's rights would turn on which attorneys they hired. And, perversely, victims would be heavily incentivized to hire counsel ignorant about the events at issue. This, in turn, would undermine the important role attorneys often play in uncovering wrongdoing and bringing it to light.

[6] The original complaint in this case was filed in August 2021. Plaintiffs Edmar Financial and Irish Blue & Gold testified their first interaction with counsel relating to this action was in June 2021; they retained counsel that same month. Ex. 3 at 55:22-25, 57:19-58:5, 142:3-5. Plaintiff XTX testified its first interaction with counsel relating to this action was after the original complaint was filed and made public. Ex. 4 at 125:20-126:9. XTX retained counsel in September 2021. Plaintiff DSquare Trading Limited is expected to testify its first interaction with counsel relating to this action was in 2025; it retained counsel in April 2025.

███████████████████████████████████████████████████. *See* Ex. 5 at 65:25-66:8; Ex. 6 at 67:19-68:8; Ex. 7 at 134:20-135:24, 164:21-166:12; Ex. 8 at 91:15-24.[7] Indeed, that Currenex carried out this scheme is so firmly established that Currenex itself no longer even pretends otherwise—it directly admitted to the Court that it did so. ECF 154 at 1-2. Defendants' various attempts to downplay the significance of these admissions have only dug them into a deeper hole. For its part, Goldman claims its conduct is defensible because, ███████████████████████████
████████████████████████████████████████████████████████████████████. Ex. 8 at 94:2-25, 129:4-8. But if both the buyer and seller of a car know the trunk is full of cocaine, it is no defense to argue that the purchase price *also* included the packaged value of the car. Either way, the buyer is knowingly negotiating for and paying for cocaine. ██████████████████████
████████████████████████████████████████████.

As another example, exactly as alleged (ECF 184 ¶¶ 2, 140-42, 191-95), Burrlock testified ██
████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████. Ex. 1 at 27:25-32:1. Also as alleged (ECF 184 ¶ 143 n.13), Burrlock testified ████████████████
████████████████████████████████████████████████. Ex. 1 38:2-38:6, 40:1-42:18. On this record, there is no basis to pierce Plaintiffs' work product privilege so Defendants can test whether the complaint squares with what the witnesses told investigating counsel.

**The expanded "privilege log" request should be denied for the same reasons.** The proper scope of discovery, and thus of any logging obligation, is with respect to *Plaintiffs'* own documents. As is standard, we gathered materials from our clients' files and logged any communications withheld for privilege. But, as is customary, we did not log communications relating to our *own investigative files*, for the reasons above. Defendants' request for a detailed log of counsel's own investigative files is disproportionate to the needs of the case, and designed solely to harass and further chip away at our privileges. That request should also be denied.[8]

The Court should deny the motion in its entirety and direct Defendants to pay the costs associated with opposing this frivolous motion, which disregards clearly established law on the imputation of counsel's knowledge to clients.

---

[7] *See also* Ex. 1 at 16:24-17:3 (Burrlock stating ████████████████████████████████); Ex. 2 at 16:14-17:2 (Harmon stating "████████████████████████████████████████████████
████████████████████████████████).

[8] To the extent any relief with respect to logging is granted, we ask that the Court confirm that any newly imposed burden of searching through the records of counsel (rather than the files of the Plaintiffs themselves) be limited to June 2021, the date the first Plaintiff retained us on this action. As discussed above, it is only then that counsel's knowledge could even possibly become relevant. And the gathering effort should be limited to the files of those who were working for us at the time of that work. Marney has his own consulting firm, which has provided services to numerous other law firms not presently before the Court.

Respectfully submitted,

/s/ Daniel L. Brockett

Daniel L. Brockett

cc: Counsel of Record