# EXHIBIT 4

                                                                1

```
 1    HIGHLY CONFIDENTIAL - ROUGH - 30(B)(6) XTX
 2         INTERACTIVE REALTIME TRANSCRIPT
 3              ROUGH DRAFT DISCLAIMER
 4    -------------------------------------
 5      IMPORTANT NOTICE - AGREEMENT OF PARTIES
 6    -------------------------------------
 7              We, the party working with
 8    realtime and rough draft transcripts,
 9    understand that if we choose to use the
10    realtime rough draft screen or the
11    printout, that we are doing so with the
12    understanding that the rough draft is a
13    noncertified copy.
14              We further agree not to share,
15    give, copy, scan, fax or in any way
16    distribute this realtime rough draft in
17    any form (written or computerized) to any
18    party.  However, your own experts,
19    co-counsel and staff may have limited
20    internal use of same with the
21    understanding that we agree to destroy
22    your realtime rough draft and/or any
23    computerized form, if any, and replace it
24    with the final transcript upon its
25    completion.
```

125

```
              1    HIGHLY CONFIDENTIAL - ROUGH - 30(B)(6) XTX
              2    after I joined the firm, which is when
              3    Paul took over the -- the running of the
              4    team.  So I don't know the exact timelines
12:27:07      5    of that but it's going to be something
              6    around that.  So I think Phil Dowson would
              7    have been a -- in position during the GSA
              8    period.
              9            MR. GAIONI:  It's 12:30.  You
12:27:24     10    want to take a lunch break.
             11            THE VIDEOGRAPHER:  Off the
             12    record.  The time will be 12:27 p.m.
             13            (A recess was taken.)
             14            THE VIDEOGRAPHER:  We're back
13:06:57     15    on the record.  The time is 1:06 p.m.
             16            MR. ANDERSEN:  Before we get
             17    started, he has some clarifications
             18    on his testimony.
             19            MR. GAIONI:  Okay.
13:07:05     20            THE WITNESS:  I just wanted to
             21    make clarifications on two points in
             22    the testimony.
             23            One was first contact with
             24    Quinn Emanuel and who set up the
13:07:14     25    lunch with Caspar Marney.  I now
```

126

```
              1    HIGHLY CONFIDENTIAL - ROUGH - 30(B)(6) XTX
              2         understand that after the filing of
              3         the initial complaint, in-house
              4         counsel reached out to our Americas
   13:07:27   5         CEO, who reached out directly to
              6         Quinn Emanuel and it was Quinn
              7         Emanuel that put us in touch with
              8         Caspar Marney and arranged the lunch,
              9         that's the first one.
   13:07:37  10              And then the second one, second
             11         point of clarification is in relation
             12         to the question you asked me about
             13         searching for emails from the GSA
             14         period.  I now understand that those
   13:07:48  15         emails were in the possession of XTX
             16         at the time of the spinout and so
             17         hence there was no need for XTX to
             18         ask GSA for those emails.  They
             19         already had all of the emails.
   13:08:01  20              These points of clarification
             21         were of my recollection was refreshed
             22         my counsel during the break.
             23    BY MR. GAIONI:
             24         Q.   With respect to the emails from
   13:08:14  25    GSA, in addition to those GSA email files
```