

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

September 16, 2025

Alexander B. Simkin
T +1 212 596 9744
alexander.simkin@ropesgray.com

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Court Room 21B
New York, NY 10007-1312

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

We write on behalf of Defendants seeking an order to compel Named Plaintiffs Edmar Financial Company, LLC and Irish Blue & Gold, Inc. (collectively, "Plaintiffs") to produce a set of 15 emails identified on Plaintiffs' May 30, 2025 privilege log (the "Privilege Log") that were sent between Matt Edwards, the founder and sole employee of Plaintiffs, and two employees of a consulting firm named Velador Associates ("Velador") between August 13, 2018 and December 4, 2020.[1] These emails (the "Velador Emails") are highly relevant and not protected from discovery by attorney-client privilege because (i) they involved no attorney, (ii) they were sent between six months and three years before Edwards had even met a lawyer working on this case and, (iii) in any event, any privilege that might have existed with respect to the emails has been waived.

I.   **The Velador Emails Are Highly Relevant.**

The Velador Emails are plainly responsive to Defendants' requests, and they also may be case-dispositive. Plaintiffs' claims are untimely unless they can show that they did not know, or have reason to know, about the allegations in the Complaint *prior to August 4, 2019* (two years before the Complaint was filed). *See* N.Y. C.P.L.R. 213(8) (the limitations period for fraud is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.").

The Privilege Log states on its face that Edwards was corresponding with Velador employee Colin Lloyd *in 2018* regarding "*claims against Currenex.*" *See, e.g.,* Ex. 1 (Privilege Log) at 50, 90 (emphasis added). Subject lines of withheld messages make clear that Lloyd traveled to Florida

---

[1] Ex. 1 (Privilege Log) at Rows 5-6, 36, 50 – 57, 88 - 91.

ROPES & GRAY LLP

- 2 -                                                                                         September 16, 2025

(where Edwards lives) in early 2019, to meet with him about his "CURRENEX CLAIM."[2] Although Edwards denied it, there is good reason to believe those emails are about claims in this case and that Lloyd and Edwards discussed Currenex's historic use of priority as a tiebreaking mechanism at that time. For example, in January 2019, Velador hired former Currenex employee, David Hastings, who would have known about Currenex's historic use of priority as a tiebreaking mechanism from his time as the Global Head of Strategic Relationships at Currenex from June 2006 to October 2009. Ex. 2 (Hastings LinkedIn Profile). The record confirms that Hastings worked closely with Lloyd at Velador, co-authoring articles with him and, in marketing materials, asking potential clients to "call David Hastings or Colin Lloyd." Ex. 3.

Moreover, Edwards testified that his 2018 and 2019 communications with Velador related to potential last-look claims that purportedly did not go forward and the Privilege Log confirms that those potential claims were against Currenex.[3] Ex. 4 (Edwards Tr.) at 73:19-74:8 ( ▓▓▓ id. at 91:5-19 ( ▓▓▓ While Edwards claimed at his deposition that the ▓▓▓ id. at 91:5-19 (emphasis added), Plaintiffs' operative pleading here asserts that last look harmed them because (i) "the Platform . . . matched Plaintiffs with the Trading Defendants' last-look quotes when it should have matched Plaintiffs with a firm quote," (ii) "the Trading Defendants provided last-look quotes far more often than they would have in the but-for world" where priority did not exist, and (iii) "the Platform's actual tiebreaking rules gave Trading Defendants 'last look' quote priority even over a 'firm' quote by someone else." TAC ¶ 181; see also id. ¶¶ 9, 35, 80, 95, 102, 103, 105, 174-190, 292 (all referencing or discussing the Platform's last-look functionality and its use).

If, as it appears from the subject line of the emails, Edwards was discussing these or similar "Currenex Claim[s]" with Velador as early as 2018, then his August 2021 lawsuit is untimely.

## II.     The Velador Emails are Not Privileged.

As the party claiming privilege, Plaintiffs have the burden of establishing its applicability. *United States v. Stern*, 511 F.2d 1364, 1367 (2d Cir. 1975). The Privilege Log asserts that the Velador

---

[2] ▓▓▓ Ex. 4 (Edwards Tr.) at 78:8-11.

[3] "Last look" is an industry-wide practice that allows liquidity providers a final opportunity to accept or reject a trade under certain circumstances, and constitutes one element of Plaintiffs' alleged non-disclosures starting with the original complaint, which alleged broadly that "[t]he existence of 'last look' rights was hidden for a large part of the relevant time period" and that "even when the existence of last look rights *in general* was disclosed in 2015, Plaintiffs were misled as to *how often* their trades would be cancelled pursuant to these 'last look' superpowers." Compl. ¶ 11. While Plaintiffs later conceded that last look had, in fact, been disclosed by Currenex, their TAC continues to allege that they were harmed by the combined operation of last look and priority on the Platform.

ROPES & GRAY LLP

- 3 -                                                                          September 16, 2025

Emails are protected by "Attorney Client Privilege." Ex. 1 (Privilege Log) at Rows 5-6, 36, 50 – 57, 88 - 91. It does not assert, as it does for many other documents, that the Velador Emails are "Attorney Work Product."[4]

The Velador Emails are plainly not attorney-client privileged. None of them involve an attorney, or a client. Communications by a non-lawyer aimed at collecting information that will later be provided to an attorney do not suffice to create an attorney-client relationship. *United States ex rel. Raffington v. Bon Secours Health Sys.*, Inc., 2018 WL 11217867, at *1 (S.D.N.Y. Aug. 21, 2018) ("[A] person's collection of information is not protected by attorney client privilege merely because the person harbors a plan to provide the information later to an attorney") (cleaned up). The Velador Emails were sent in 2018, 2019, and 2020. ██████████████████████████████████████ Ex. 4 (Edwards Tr.) at 142:7-19 ████████████████████████████████████████████████████████████████ Plaintiffs' counsel's September 2, 2025 court filing reaffirmed that June 2021 was "the date the first Plaintiff retained us on this action." ECF No. 217 (Pls.' Mot. to Compel Opp.) at 4, n.8. Because there was no attorney-client relationship when the Velador Emails were sent, they cannot possibly constitute attorney-client communications.

To the extent Plaintiffs may try to argue these e-mails are protected from disclosure as work product, Plaintiffs have waived that claim. The Privilege Log does not assert that the Velador Emails are protected from disclosure as work product, so that hypothetical privilege assertion is waived and should not be considered. *See Obeid v. Mack*, 2016 WL 7176653, at *6 (S.D.N.Y. Dec. 9, 2016) (concluding "plaintiff has waived any privilege that was not asserted in the privilege log"). Even if Plaintiffs, despite waiving this argument, were to now assert that these e-mails constitute work product, they should still be required to produce these documents because they have not met their "burden of establishing [the doctrine's] applicability to the case at hand." *See Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007). A core element of any work product claim is that the material in question was prepared by a party or its representative. *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, 2008 WL 4452134, at *9 (S.D.N.Y. Oct. 2, 2008). Yet, according to Edwards himself, ████████████████████████████ Ex. 4 (Edwards Tr.) at 83:8-14 (████████████████████████████████████████████ *id.* at 142:3-6 ████████████████████████████████████████████████████████

### III. Plaintiffs Cannot Use the Privilege as a Sword and a Shield.

Plaintiffs should not be allowed to partially disclose Edwards's communications with Velador while also withholding the Velador Emails from production. The law of this Circuit is clear: "[A]

---

[4] The Privilege Log is Plaintiffs' second version of their privilege log. The original version was produced on April 14, 2025. After Defendants identified numerous deficiencies, Plaintiffs produced a corrected and updated version on May 30, 2025.

ROPES & GRAY LLP

- 4 -                                                                 September 16, 2025

party cannot partially disclose privileged communications ... and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000).

Edwards testified repeatedly, albeit selectively, about his conversations with both Lloyd and Marney from Velador, including during the period that the Velador Emails were sent.[5] Ex. 4 (Edwards Tr.) at 72:3-10 ▇▇▇; *id.* at 73:21-75:11 ▇▇▇ *id.* at 90:14-91:13 (same); *id.* at 76:22-81:7 ▇▇▇ *id.* at 81:13-84:4 ▇▇▇ *id.* at 85:2-88:12 ▇▇▇

Plaintiffs' withholding of the Velador Emails in the face of Edwards's testimony is a quintessential use of the privilege as a sword and a shield. *See In re Grand Jury Proc.*, 219 F.3d at 182 (selective disclosure of alleged privileged communication waives the privilege over those communications). Plaintiffs seek to create a record that includes Edwards's selective characterizations of communications with Velador while seeking to exclude the communications themselves, claiming a broad, unsubstantiated privilege. This is improper and, to the extent any privilege had once applied to the Velador Emails, this Court should find it is waived. *See In re Actos Antitrust Litig.*, 628 F. Supp. 3d 524, 533 (S.D.N.Y. 2022) ("[W]aiver applies where considerations of fairness should allow the attacking party to reach all privileged conversations regarding a particular subject once one privileged conversation on that topic has been disclosed, in order to avoid prejudice to the adversary party and distortion of the judicial process that may result from selective disclosure.") (cleaned up).

\*    \*    \*

Accordingly, the Court should order Plaintiffs to produce the Velador Emails.

---

[5] Perhaps recognizing that revealing a full account of his 2018 to 2020 conversations with Velador could defeat his claims, Plaintiffs' counsel allowed Edwards to assert that his 2018 to 2020 discussions with Velador pertained to last look claims against Currenex and that he did not learn about his claims relating to priority until 2021, while simultaneously preventing Defendants from exploring whether those earlier conversations did (or should have) put Edwards on notice of the allegations that Irish and Edmar are pursuing in this case. *See, e.g.*, Ex. 4 (Edwards Tr.) at 81:6-12 (refusing to answer questions about the details of Velador discussions); *id.* at 84:14-25 (same). Those improper instructions make production of the Velador Emails all the more critical.

ROPES & GRAY LLP

Respectfully Submitted,

| ROPES & GRAY LLP | KATTEN MUCHIN ROSENMAN LLP |
|---|---|
| */s/ Alexander B. Simkin* | */s/ Peter G. Wilson* |
| Gregg L. Weiner | Peter G. Wilson |
| Alexander B. Simkin | Elliott M. Bacon |
| 1211 Avenue of the Americas | 525 W Monroe Street |
| New York, New York 10036 | Chicago, IL 60661 |
| Telephone: (212) 596-5000 | Telephone: (312) 902-5200 |
| Facsimile: (212) 596-9090 | Email: peter.wilson@katten.com |
| Email: gregg.weiner@ropesgray.com | Email: elliott.bacon@katten.com |
| Email: alexander.simkin@ropesgray.com | |
| | *Counsel for Defendant HC Technologies, LLC* |
| Robert G. Jones (*pro hac vice*) | |
| 800 Boylston Street | |
| Boston, Massachusetts 02199 | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| Telephone: (617) 951 7000 | |
| Facsimile: (617) 951 7050 | |
| Email: robert.jones@ropesgray.com | */s/ Carmine D. Boccuzzi Jr.* |
| | Carmine D. Boccuzzi Jr. |
| Samer Musallam (*pro hac vice*) | Rishi N. Zutshi |
| 2099 Pennsylvania Avenue NW | One Liberty Plaza |
| Washington, DC 20006 | New York, NY 10006 |
| Telephone: (202) 508-4600 | Telephone: (212) 225-2000 |
| Facsimile: (202) 508-4650 | Email: cboccuzzi@cgsh.com |
| Email: samer.musallam@ropesgray.com | Email: rzutshi@cgsh.com |
| *Counsel for Defendants Currenex, Inc., State Street Bank and Trust Company, and State Street Global Markets International Limited* | *Counsel for Defendant Goldman Sachs & Co. LLC* |