**quinn emanuel** trial lawyers | new york

295 Fifth Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S EMAIL ADDRESS
**danbrockett@quinnemanuel.com**

September 22, 2025

<u>BY ECF</u>

The Honorable Lewis A. Kaplan
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Court Room 21D
New York, NY 10007

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

Plaintiffs write in response to Defendant's latest motion to compel (ECF 242), which again was submitted mere hours after Defendants alerted Plaintiffs of Defendants' intention to file it. The materials Defendants seek are privileged. However, as noted below, Plaintiffs intend to work with Defendants to negotiate the terms of a voluntary dismissal with prejudice of the claims of Edmar Financial Company, LLC and Irish Blue & Gold, Inc., and thus moot this motion.

As an initial matter, Plaintiffs are compelled to clarify the record with regard to Defendants' purported statute of limitations defense. Defendants presume that *any* conversations involving Currenex are relevant to the statute of limitations. Not so. *This* case is about Currenex's undisclosed use of assigned "priority" numbers to break ties at the top of the order book on its anonymous FX trading platform. However, other law firms (not Plaintiffs' counsel here) were investigating other matters that also involved Currenex. Specifically, these law firms were working on issues relating to "last look," a practice by which certain bank liquidity providers would impose "hold times" between their receipt of customer orders and the execution of those orders, and then automatically reject customer orders that would have been unprofitable due to price swings that occurred during the hold time.

Defendants' motion focuses on consulting firm Velador Associates and whether it was aware of Currenex's use of priority numbers when its employees talked in late 2018 to Matthew Edwards, the owner of Plaintiffs Edmar Financial Company, LLC and Irish Blue & Gold, Inc. But as they did in their motion to reopen certain non-party depositions (ECN 213), Defendants ignore that Velador Associates was working on behalf of law firms that are not involved in this action in connection with investigations and litigation relating to "last look" practices.

The Court should reject Defendant's attempt to conflate this case with the last-look cases. The last-look cases referenced in Edwards' testimony involved whether the last-look functionality *itself* was an allowable feature and/or property disclosed. *See, e.g.*, *Axiom Inv. Advisors, LLC v. Barclays Bank PLC and Barclays Cap., Inc*., No. 1:15-cv-09323 (S.D.N.Y. Nov. 25, 2015), ECF 1. While it is true that the term "last look" appears in the Complaint here, that is only because the Trading Defendants' ability to use "last look" exacerbated the harm caused by Currenex's priorities scheme—i.e., by enabling liquidity providers who could cancel trades through the use of last look to jump ahead of other platform users who had no such ability to cancel trades. ECN 184 ¶ 178. That harm alleged in this case was caused by the illegal *tiebreaking system*, regardless of whether "last look" itself was an acceptable feature or was disclosed.

Defendants cannot expect the Court to take seriously the notion that the two cases are actually related. The Complaint here expressly says: "For the sake of clarity, this action is *not* about whether 'last look' was disclosed or represents an acceptable platform features in the abstract." ECN ¶ 174. And if knowledge of the last-look functionality was sufficient to start the statute of limitations, then Defendants do not need this discovery: Currenex disclosed that functionality at least as early as 2015, and the first complaint alleging it should have been disclosed sooner was filed in late 2015.

To be clear: the documents Defendants seek are privileged. Again, for many years Velador Associates worked on behalf of other law firms not present before the Court in this case. In this regard, Velador Associates was always operating at the direction of attorneys, even though it was doing so in earlier years for attorneys not present here. Contrary to Defendants' suggestion, communications between a prospective client (Edwards) and a consulting firm (Velador Associates) working as an agent of a law firm are protected by the attorney-client privilege.[1] *See, e.g.*, *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 363 (S.D.N.Y. 2014) (noting "the Second Circuit long ago held that the privilege covers communications to agents of an attorney, such as an accountant, where the communication [is] made in confidence for the purpose of obtaining legal advice from the lawyer").

That result is not changed by the fact that Edwards never engaged that law firm to be represented as a plaintiff in a last-look case. *See, e.g., Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1018 (N.D. Cal. 2022) ("[C]ommunications from prospective clients with the aim of obtaining legal services are generally covered by the attorney-client privilege, even if the attorney is not ultimately retained."); *In re Lifetrade Litig.*, 2022 WL 3644357, at *4 (S.D.N.Y. Aug. 24, 2022) ("The fact that an attorney was not ultimately engaged does not remove the protection from the communication so long as the client/potential client reasonably understood the communication to be confidential.").

---

[1] Moreover, work performed by Velador Associates at the direction of those other law firms would also constitute work product of those law firms. Plaintiffs reject the notion that work product claims were waived because they were not separately identified along side attorney-client claims on the privilege log for these documents. Unlike the attorney-client privilege, which is held by Edwards himself, the work product protections afforded to the 2018 communications are held by the other law firms at whose direction they were created by Velador Associates. Plaintiffs' counsel thus made the decision not to list work product protection on the privilege logs for Edwards' companies, Plaintiffs Edmar Financial Company and Irish Blue & Gold, Inc.

2

Defendants' assertion that Plaintiffs have improperly used privilege as both a "sword" and a "shield" ignores the dynamics at play in Defendants' questioning. As the Second Circuit has held, a "sword-shield" waiver may arise where a party seeks to "partially disclose privileged communications or affirmatively rely on privileged communications to support its claim . . . and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000). That is not the situation here. Plaintiffs have never sought to use Edwards' privileged communications to support any claim in this case. Plaintiffs invoked attorney-client privilege only in response to defense counsel's repeated attempts to invade that privilege. *See, e.g.*, *United Bank v. Buckingham*, 301 F. Supp. 3d 547, 560 (D. Md. 2018) (no waiver where "Defendants' invocation of the attorney-client privilege was done only as a shield, the traditional and protected use of the privilege, and not as a sword to deny wrongdoing or as affirmative justification for their allegedly wrongful conduct"). That Edwards, in response to Defendants' questioning, gave his recollection of the first time he discussed the practices alleged in the complaint here (i.e. Currenex's priorities scheme), while also explaining that his earlier discussions with Velador Associates involved the general subject matter of potential last look claims—a high-level, general description akin to what would appear on a privilege log—in no way constitutes a "sword-shield" waiver.

It is clear, however, that no matter how the Court decides this motion, Defendants will argue at class certification that Edwards is not a typical class representative because he is uniquely subject to statute of limitations arguments relating to his interaction with Velador Associates. Therefore, to prevent this sideshow from distracting from the merits of the case, and for the good of the broader class, Plaintiffs will work with Defendants to effectuate a voluntary dismissal with prejudice of Edmar Financial Company, LLC's and Irish Blue & Gold, Inc.'s claims, and thereby moot this motion.

Respectfully submitted,

 /s/ Daniel L. Brockett

Daniel L. Brockett

cc: Counsel of Record