**quinn emanuel** trial lawyers | new york

295 Fifth Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S EMAIL ADDRESS
**danbrockett@quinnemanuel.com**

September 23, 2025

<u>BY ECF</u>

The Honorable Lewis A. Kaplan
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Court Room 21B
New York, NY 10007

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

Plaintiffs reluctantly request the Court consider this short statement in connection with Defendants' "reply" re-seeking XTX's source code. ECF 267. This is necessary because the reply says many things that are simply not true. And it wholly ignores the *thousands of hours of work* and *trade-secret destroying* nature of the requests being made. While the motion is frivolous, the stakes for XTX are too high to risk the Court being misled.

*As an initial matter*, Defendants argue that XTX's "only real response" is that XTX would not have traded on the Platform if it had known the truth. *Id.* at 1. False. XTX opposed on many grounds, including that the requested code does not exist. As for Defendants' emphasis on the assertion XTX has traded on Currenex in the post-complaint period, Defendants fail to mention that XTX re-connected to Currenex only after Currenex's Global Head personally assured XTX that the misconduct had ceased. And even then XTX stripped its intellectual property from the Platform and kept its usage minimal, by XTX's standards. That carefully-considered, human decision does not transform non-existent code into something relevant or discoverable, nor does it excuse Defendants' past misconduct.

*As for the so-called "automated trading code,"* Defendants seek code that performed the function of determining where a particular trade will occur, based on price. ECF 267 at 2. They assert XTX "concedes that something along these lines exists." *Id*. False. XTX does *not* trade FX using code that decides between platforms on a trade-by-trade basis, based on price or otherwise. ECF 247 at 2; ECF 248 ¶¶ 4-10. Defendants' reference to a high-level, generalized disclosure that uses the phrase "fully automated" does not show otherwise. Trading is "fully

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

automated" because the core algorithm decides whether to buy or sell, and that triggers actions across all approved platforms. That is consistent with the fact that humans decide which platforms XTX will plug into at all, which is the decision that matters to this case.

What code actually exists, then, performs a function outside the scope of Defendants' motion: code that merely translates a desire to buy or sell into simultaneous actions on *every* platform. As Defendants do not and cannot argue *that* type of code is relevant, they cannot demonstrate that the thousands of hours of work it would take to extract it would be proportional to the needs of the case. And they certainly cannot overcome the burden-shifting protections that courts afford trade secrets *above and beyond* the protections afforded by a confidentiality order. *See* ECF 247 at 1 (discussing burden-shifting requirement under the law); ECF 139 ¶¶ 14-16 & ECF 248 ¶ 11 (discussing the thousands of hours, by a very few select employees, that it would take to extract this data, and discussing the risk of leakage).

***As for the "protective measure data,"*** Defendants argue that "data does exist." False. All that exists is a string of numbers typed into a computer *for a variety of reasons unrelated to this case*. Defendants make zero effort to explain how they could possibly use such a mishmash of numbers. And Defendants make zero effort to address the fact that Currenex, as the Platform operator, already has direct access to XTX's spread data. In other words, they make zero effort to show the hundreds of hours of work that would be needed to extract this meaningless set of numbers is at all proportional to the needs of the case. *See* ECF 248 ¶ 15. Instead, Defendants refer to the efforts undertaken to produce Currenex's source code. But Currenex's source code is where the wrongdoing occurred, and Currenex did not and could not challenge its relevancy. That is why Magistrate Judge Ricardo *rejected* the same "tit-for-tat" reasoning Defendants deploy here. ECF 146. Discovery is not about settling scores by creating make-work. Rather, each request must be proportional to the needs of the case by its own terms. This request is not.

***As for the "Liquidity Management System,"*** Defendants argue that XTX "do[es] not meaningfully contest that it is relevant." ECF 267 at 2. False. XTX contested relevancy of this source code on multiple grounds, all of which Defendants ignore. ECF 247 at 3-4 (arguing irrelevant because, e.g., the system only was invented after Defendants claim the wrongdoing stopped; because the final decisions were made by humans; and because Currenex already has access to XTX's actual, final spreads). As for burden, *see* ECF 248 ¶ 18, Defendants' only argument is again one of retribution—Currenex had to work to produce code, so XTX should be forced to perform hundreds of hours of unnecessary work. That fails here, as it did above. And, yet again, Defendants also ignore the additional protections afforded to XTX's highly valuable trade secrets.[1] *Id.* ¶¶ 17-18 (discussing trade-secret nature of this code)

***In sum***, instead of withdrawing the motion as should have occurred after their misconceptions were corrected *yet again*, Defendants filed a reply that doubles down on demonstrably false presumptions, and invents new ones. The motion should be denied, and Defendants should be directed to pay the fees and costs associated with responding to this frivolous motion.

---

[1] Defendants also argue that the Court should require the production of "automated emails." ECF 267 at 2. But the original motion sought only "the code itself." ECF 230 at 4. To the extent Defendants wish to make a request for more emails, we can confer. But to cram a request in to a "reply" is improper.

2

Respectfully submitted,

*/s/ Daniel L. Brockett*

Daniel L. Brockett

cc: Counsel of Record