

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

September 24, 2025

Alexander B. Simkin
T +1 212 596 9744
alexander.simkin@ropesgray.com

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 21B
New York, NY 10007

Re:    *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

      Defendants Currenex, Inc., State Street Bank and Trust Company, and State Street Global Markets International Limited (the "State Street Defendants") respectfully request that certain exhibits and the relevant portions of Plaintiffs' September 19, 2025 Letter Motion to Compel ("the Motion") remain under seal or redacted. *See* ECF No. 259. Specifically, Defendants request that four of the exhibits cited in the Motion remain under seal in their entirety;[1] that portions of two other exhibits cited in the Motion remain under seal;[2] and that the portions of the Motion referencing sealed content in these six exhibits remain under seal.

      These six at-issue exhibits (the "Exhibits") consist of (i) service agreements between Currenex and certain Platform users (ECF Nos. 259-5, 259-6, and 259-7), as well as deposition testimony regarding the terms of one such agreement (ECF No. 259-4); (ii) an internal Currenex document reflecting the technical operation of the Currenex Platform (ECF No. 259-3); and (iii) deposition testimony regarding State Street Bank's trading strategies on the Currenex Platform (259-2). These documents are commercially sensitive and play (at most) a negligible role in Plaintiffs' pending Motion. As set forth more fully below, the State Street Defendants respectfully submit that sealing is justified under controlling legal precedent.

      *First*, since the Exhibits play only a "negligible role" in the Court's consideration of the Plaintiffs' Motion, little weight should be afforded to any presumption of public access. *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("[W]here . . . documents play only a negligible role in the performance of Article III duties, the weight of the presumption [of access] is low . . . .").

---

[1] These four exhibits are referenced on the docket at ECF Nos. 259-3, 259-5, 259-6, and 259-7.
[2] These two exhibits are referenced on the docket at ECF Nos. 259-2 and 259-4.

Hon. Lewis A. Kaplan                                                                                    September 24, 2025

Here, the six Exhibits need not factor into the Court's ruling on the Plaintiffs' Motion. Of the two Exhibits cited to support Plaintiffs' request for the OXOTA source code, one Exhibit has nothing to do with the OXOTA function and the other Exhibit is excerpted deposition testimony from a State Street Bank *eFX Trading Desk* witness (*i.e.*, not a Currenex witness) who had no role in the technical operation of the Currenex Platform or its OXOTA software. As for brokerage fees, Plaintiffs' mention of specific commission rates contained in two Currenex service agreements is gratuitous. The Court need not take into account the exact commission rates certain users were paying to rule on Plaintiffs' request to compel the production of brokerage fee data, particularly where there is no dispute over whether such fees are relevant.

*Second*, the Exhibits directly implicate the State Street Defendants' commercially sensitive information and privacy interests. It is clear from the face of these documents that they contain commercially sensitive and proprietary information regarding the technical operation of the Currenex Platform; contractual terms governing the relationship between Currenex and its Platform users, including pricing and commission rates paid by users; and the business strategy of Currenex and certain of its Platform users.[3] In the highly competitive and dynamic FX trading market, revealing technical details of the Currenex Platform's operation, its pricing and commission structure, and information reflecting Currenex's and its users' business strategies could severely damage Currenex's reputation and harm its competitive standing by handing its competitors free insights and access to sensitive information. Such confidential and commercially sensitive information are among the types of information routinely found to be appropriately sealed. *See In re B&C KB Holding GmbH*, 2023 WL 2021299, at *1 (S.D.N.Y. Feb. 14, 2023) (courts "routinely permit parties to seal or redact commercially sensitive information in order to protect confidential business and financial information."). In fact, courts have recognized that documents reflecting "internal pricing strategies and competitive pricing data [are] sufficiently sensitive to warrant redaction" and regularly permit the sealing of documents like the ones at issue here. *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 82 n.1 (S.D.N.Y. 2017); *see also Graczyk v. Verizon Commc'ns Inc.*, 2020 WL 1435031, at *9 (S.D.N.Y. Mar. 24, 2020) (citing cases).

For the reasons set forth above, the Court should order that the Exhibits referenced at ECF Nos. 259-3, 259-5, 259-6, and 259-7 remain sealed in their entirety; that the Exhibit referenced at ECF No. 259-2 be redacted at 42:7-43:11 and 45:18-47:6 and the Exhibit referenced at Exhibit No. 259-4 be redacted at 129:4-13 and 130:21-23; and that references to the sealed exhibits in Plaintiffs' Motion remain under seal.

---

[3] The State Street Defendants only seek to redact (rather than seal entirely) the following portions of ECF Nos. 259-2 and 259-4: 42:7-43:11 and 45:18-47:6 in ECF No. 259-2, and 129:4-13 and 130:21-23 in ECF No. 259-4.

Hon. Lewis A. Kaplan                                                        September 24, 2025

 Respectfully submitted,

*/s/ Alexander B. Simkin*
Alexander B. Simkin

cc: Counsel of record (via ECF)