**quinn emanuel** trial lawyers | new york

295 Fifth Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S EMAIL ADDRESS
**danbrockett@quinnemanuel.com**

September 24, 2025

<u>BY ECF</u>

The Honorable Lewis A. Kaplan
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Court Room 21D
New York, NY 10007

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

Plaintiffs move to compel Defendants to re-open the depositions of four important witnesses—Cary Rosenwald (former Head of Strategy at Currenex), Sean Gilman (former Chief Technology Officer at Currenex), Tom Liconte (former Head of Trade Operations at Currenex), and Jim Foster (Global Head of E-FX at State Street)—because Currenex and State Street made an eleventh-hour document dump that flatly contradicts these witnesses' testimony and deprives Plaintiffs of a fair opportunity to examine them.[1] Defendants sat on these materials—some of which were responsive to the original search terms negotiated in the case over a year ago—until the final day of fact discovery, ensuring Plaintiffs could not question the witnesses about them. These documents go to a core allegation in the Complaint: Currenex's undisclosed use of triangular arbitrage via the platform's OXOTA functionality and the ███ account. If these depositions are not re-opened, Plaintiffs will be severely prejudiced; because the witnesses may be outside the subpoena power of the court for trial, this is likely the only chance Plaintiffs have

---

[1] Plaintiffs asked Defendants on Tuesday (September 22) to confirm by Wednesday whether they would agree to the relief requested in this motion. Defendants did not confirm their agreement, and threatened to seek "fee-shifting as a sanction" if Plaintiffs filed this motion without first participating in a telephonic meet-confer. In the interest of not letting any more time elapse after the fact discovery deadline, and given Defendants' complete disregard for meeting-and-conferring prior to their recent barrage of letter motions, Plaintiffs are nonetheless filing this motion. Of course, Plaintiffs will withdraw the motion if Defendants agree to reopen the depositions.

to question the witnesses on these matters.[2]  The depositions should be re-opened for the limited purpose of allowing Plaintiffs to question these witnesses on the late-produced documents.

### Background

***Currenex's destruction of documents***.  As we have previously informed the Court (*see, e.g.*, ECF 173 at 7) Plaintiffs' ability to prosecute this case has been severely compromised by Currenex's mass destruction of emails.  Plaintiffs served their first set of document requests on Currenex and State Street in August 2023 and spent months negotiating search terms and custodians.

Currenex and State Street made their first custodial productions in late November and December 2024.  Those productions were paltry—especially compared to Plaintiff XTX's production of over 600,000 documents.  And for at least eight negotiated custodians, Currenex and State Street produced zero emails—including Rosenwald and Gilman, both named in the Complaint as key players in the priorities scheme.  ECF 184 ¶ 118.  Other custodians with no produced emails included Tom Liconte, Jermaine Harmon, Patrick McTurk, Tim Robinson, Romain Rossier, and Conor Keane.  Plaintiffs spent months chasing Currenex and State Street for answers as to why no documents had been produced for so many custodians.  Finally, in March 2025, Currenex and State Street admitted the reason:  During the height of the alleged priorities scheme, Currenex followed a practice of deleting all employee emails 30 days after their departure—in plain conflict with regulatory obligations for trading platforms and Defendants' own written preservation guidelines.  Defendants later noted in interrogatory responses that this 30-day deletion practice continued until 2016, when it was replaced by 120 and 150-day deletion policies.  Former Currenex employee Liconte testified ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  *See* Ex. 1 (Liconte Tr.) at 228:13-18.

Currenex's document destruction has put Plaintiffs at a massive disadvantage.  Plaintiffs negotiated for the right to receive the custodial emails of every Currenex and State Street custodian.  Yet Currenex and State Street never disclosed that Plaintiffs were negotiating for documents that did not exist—not during the meet-confer process in early 2025, not in the approximately six months between the time the parties reached agreement on custodians and search terms and Currenex and State Street began making productions, not even when Currenex and State Street declared their productions substantially complete.  It was only after persistent questioning by Plaintiffs, that State Street and Currenex finally admitted the emails had been destroyed.

***Defendants' last-day production***.  On September 19, 2025—the final day of fact discovery under the Court's schedule (ECF 161)—Defendants produced over 11,000 emails, including custodial files for Liconte, Rosenwald, and Foster.  These emails concern topics that were squarely at issue in those depositions and directly contradict the testimony of Liconte, Rosenwald, and Gilman.  For Foster (State Street Bank's 30(b)(6) designee on triangular arbitrage), the new materials address the precise subjects of his examination, including

---

[2]  Defendants produced these new documents late Friday night ***after*** Plaintiffs and Defendants filed a joint letter regarding the case schedule on September 19, 2025.  *See* Dkt. 255.  Thus, Plaintiffs did not request to re-open these depositions in the joint letter.

██████████████████████████████████
████████████████.[3]

A central theme in these late-produced emails is ████████████████████████
████████████████████████████████ Triangular arbitrage is a trading strategy that seeks to exploit temporary price discrepancies among three FX pairs—e.g., EUR-USD, USD-JPY, and EUR-JPY—to extract risk-free profit.  The complaint alleges that Currenex used its "see-all" visibility to front-run these opportunities before they were visible to other users (ECF 184 ¶ 45 n.13), a form of undisclosed super-prioritization.  Critically, the negotiated search terms for Currenex's main productions included two strings referencing "████████."

### Argument

The late-produced emails contradict sworn testimony of Liconte, Rosenwald, and Gilman and justify re-opening.

**_Tom Liconte._**  Liconte ████████████████████████████████████. See Ex. 1 (Liconte Tr.) at 230:22-24 ████████████████████████████████████████████████████.  Newly-produced emails show the opposite:  that ████████████████████████████████████████████████████████████████████████████.  See Ex. 2 (CXSSB00950631) ████████████████████████████████████████; Ex. 3 (CXSSB00950215) ████████████████████████████████████████████████.  In fact, one thread was in Liconte's own custodial files,[4] while others had Liconte copied.  Another newly-produced email shows Liconte ████████████████████████████████████████████████████████████████  See Ex. 4 (CXSSB00950532) (████████████████████████████████████████████); Ex. 5 (CXSSB00950533) (████████████████████████████████████████); Ex. 6 (CXSSB00925451) (████████████████████████████████████).

**_Cary Rosenwald._**  Rosenwald ████████████████████████████████████████████████████████.  See Ex. 7 (Rosenwald Tr.) at 332:11-19, 332:25-333:18, 334:9-21.[5]  Rosenwald's statements are verifiably false in light of the newly-produced emails.  These emails show that ████████████████████████████████████████████████████████████████.  See Ex. 8 (CXSSB00950645) (████████████████████████████████████████████████); Ex. 2 (████████

---

[3] It is Plaintiffs' understanding that these emails were produced pursuant to (1) Currenex's agreement to provide documents from additional custodians as an attempt to mitigate the damage from Currenex's mass deletion of custodial emails, and (2) a request that certain additional search terms be run in response to deposition testimony regarding triangular arbitrage.  It is, of course, entirely Currenex's fault that Plaintiffs find themselves in their current predicament, having been forced to depose these key witnesses with only a handful of documents.

[4] *See* Ex. 3 (CXSSB00950215) (from T. Liconte's custodial files).

[5] *See also*, Ex. 7 at 333:9-334:2, 335:21-336:3 (further ████████████████████████████████████
████████████████████████).

3

██████); Ex. 9 (CXSSB00940821) (████████████████████████████
████████████████████████). At least some of these newly-produced emails appear in Rosenwald's own custodial files.[6]

**Sean Gilman.** Gilman ████████████████████████████████████. *See* Ex. 10 (Gilman Deposition Tr.) at 186:17-25; 187:6-14. He furthered ████████████
████████████████████████████████. *Id.* However, the newly-produced emails show that ████████████████████████████████████
████████████████████████████ during his time at Currenex. *See* Ex. 11 (CXSSB00940788) (████████████████████████████████████████
████████████████); *See* Ex. 12 (CXSSB00950620) (████████████████
████████████████████████). In fact, the new production includes emails directly from Mr. Gilman's custodial files about ████████████. *See* Ex. 13 (CXSSB00950626) (document from Mr. Gilman's custodial files ████████████████████); Ex. 14 (CXSSB00950598) (document from Gilman's custodial files ████████████████
████████████).

**Jim Foster.** Foster was designated as State Street Bank's representative on State Street Bank's use of triangular arbitrage. At the time of Foster's deposition, Defendants had produced a relatively small number of emails related to OXOTA and the Platform's use of triangular arbitrage. However, the emails produced on the last day of fact discovery included a large volume of documents related to triangular arbitrage and OXOTA and a range of related issues that came up during Foster's deposition, including ████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████.[7] *See* Ex. 15 (Foster (State Street Bank) 30(b)(6)) Tr.) at 140:15 to 140:24 (asking if ████████████████████████████
████████████████████████████████████████); *id.* at 152:8 to 152:25 (questions about the ████████████████████████████████).

The prejudice to Plaintiffs is severe and irreparable absent reopening. These witnesses may be outside the court's trial subpoena power. This is likely our only chance to examine them on the newly-revealed materials, documents that go to the heart of the case. Plaintiffs therefore respectfully request that the Court order the depositions of Liconte, Gilman, Rosenwald, and Foster reopened for focused examination on the late-produced materials.

---

[6] *See* Ex. 6 (CXSSB00950533) (████████████████████████████████████) (part of C. Rosenwald's custodial files).

[7] The late-produced emails appear to confirm Plaintiffs' allegation that Currenex used "see-all" access to conduct triangular arbitrage trading. *See* Ex. 16 (CXSSB00924332) (████████████████████
████████████████████"); *see* Ex. 17 (CXSSB00926392) (████████████████████████████
████"); *cf.* Third Amended Complaint (Dkt. No. 184) at 45, n. 13 (noting Currenex exploited its "see-all access" to conduct triangular arbitrage trades not available other Platform customers).

4

Respectfully submitted,

 /s/ *Daniel L. Brockett*

Daniel L. Brockett

cc: Counsel of Record

6

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 24, 2025, I served a true and correct copy of the foregoing by electronic mail transmission on all counsel of record.

                                          */s/ Daniel L. Brockett*
                                          Daniel L. Brockett