**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

EDMAR FINANCIAL COMPANY, LLC;
IRISH BLUE & GOLD, INC.; XTX
MARKETS LIMITED; and DSQUARE
TRADING LIMITED,

                         Plaintiffs,

    vs.

CURRENEX, INC.; GOLDMAN SACHS &
CO. LLC; HC TECHNOLOGIES, LLC;
STATE STREET BANK AND TRUST
COMPANY; STATE STREET GLOBAL
MARKETS INTERNATIONAL LIMITED;
and JOHN DOE DEFENDANTS 1-5,

                         Defendants.

Case No. 21-cv-06598

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR THE ISSUANCE OF**
**LETTERS ROGATORY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT ......................................................................................................................... 5

I.     THE COURT SHOULD DENY THE REQUEST FOR ASSISTANCE WITH
RESPECT TO DAVID HASTINGS ............................................................................. 5

     A.     Defendants Cannot Justify the Last-Minute Request for Assistance in
Understanding Their Own Scheme ............................................................... 5

     B.     Defendants Cannot Justify the Last-Minute Request for Assistance in
Probing the Work of Velador, a Legal Consulting Firm ............................ 7

II.    THE COURT SHOULD ONLY GRANT ASSISTANCE WITH RESPECT TO
JAD SARMO IF DEFENDANTS AGREE IT WILL NOT DISRUPT THE CASE
CALENDAR ............................................................................................................. 10

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Axiom Inv. Advisors, LLC v. Barclays Bank PLC and Barclays Cap., Inc.*,
No. 1:15-cv-09323 (S.D.N.Y. Nov. 25, 2015), ECF 1 ................................................................3

*Bell v. Saunders*,
2022 WL 2064872 (N.D.N.Y. June 8, 2022)...............................................................................7

*Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*,
2023 WL 2346337 (S.D.N.Y. Mar. 3, 2023)...............................................................................7

*Doe v. State Univ. of New York Purchase Coll.*,
617 F. Supp. 3d 195 (S.D.N.Y. 2022)........................................................................................7

*Farzan v. Wells Fargo Bank*,
No. 12 CIV. 1217 RJS JLC, 2012 WL 6763570 (S.D.N.Y. Dec. 28, 2012) .............................9

*HDMI Licensing Adm'r, Inc. v. Availink, Inc.*,
2025 WL 799036 (N.D. Cal. Mar. 13, 2025) .............................................................................4

*Joseph v. Gnutti Carlo S.p.A.*,
2016 WL 4083433 (S.D.N.Y. July 25, 2016)..............................................................................4

*Kurtanidze v. Mizuho Bank, Ltd.*,
2025 WL 1898927 (S.D.N.Y. July 9, 2025) ...............................................................................7

*In re Lifetrade Litig.*,
2022 WL 3644357 (S.D.N.Y. Aug. 24, 2022)...........................................................................10

*Merck Sharp & Dohme Corp. v. Sandoz, Inc.*,
2013 WL 12203112 (D.N.J. June 7, 2013) .................................................................................4

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*,
2015 WL 4757601 (S.D.N.Y. Aug. 12, 2015).............................................................................4

*Pearlstein v. BlackBerry Ltd.*,
332 F.R.D. 117, 121 (S.D.N.Y. 2019) .........................................................................................4

*Rodriguez v. Seabreeze Jetlev LLC*,
620 F. Supp. 3d 1009 (N.D. Cal. 2022) ......................................................................................9

*Route1 Inc. v. AirWatch LLC*,
2018 WL 6427145 (D. Del. Dec. 7, 2018)...................................................................................4

*Shin v. NBC Universal Media, LLC*,
2025 WL 438297 (S.D.N.Y. Feb. 7, 2025).................................................................................7

**<u>Rules</u>**

Fed. R. Civ. P. 26(b)(1) ................................................................................................................4

Fed. R. Civ. P. 26(b)(2)(C) ...........................................................................................................5

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants' motion for the issuance of letters rogatory. ECF 253 ("Mot.").

## PRELIMINARY STATEMENT

The Court-ordered deadline for the completion of fact discovery was September 19. ECF 161. Defendants filed their motion the day before, on September 18. They are doing so not because of any legitimate discovery need, and certainly not because of any *last-minute* need. Rather, they are doing so to try to derail this case's progression into the class certification stage.

***With respect to David Hastings***, Defendants first claim to need last-minute assistance to understand *their own* Platform. Nonsense. As an initial matter, that Currenex employees secretly assigned "priority" numbers as part of an undisclosed scheme is not disputed. Defendants have admitted it to the Court, and every witness has confirmed that to be the case. Defendants' suggestion that Hastings may nonetheless have some unique knowledge that could break this case wide open is comically unsupported—Defendants proffer only *his LinkedIn profile*. But even if Hastings did have some unique insights about the Platform, that could not save the motion, because it is untimely. Defendants indisputably knew at the outset of this case that the Platform's operations were relevant, and that Hastings served as Currenex's Global Head. Defendants' suggestion they nonetheless have an urgent, unforeseen, last-minute need to secure Hastings' testimony to understand *their own scheme*, should not be taken seriously. It is, transparently, pretextual.

Defendants' other stated justification is less absurd, but still fails. Colin Lloyd, of the legal consulting firm Velador Associates, appears on the privilege log as interfacing with Matthew Edwards, of Plaintiffs Edmar Financial, LLC ("Edmar") and Irish Blue & Gold, Inc. ("IBG"). Defendants observe Hastings *also* worked, for a time, at Velador. Defendants thus

1

speculate that maybe Hastings told Lloyd something while they were both at Velador, which Lloyd then told Edwards, outside the statute of limitations period. But Hastings only joined Velador in February 2019, which is *within the statute of limitations period*. Thus, even if Defendants' speculation turned out to be accurate, it would be irrelevant.

Even that aside, the request for testimony regarding Velador also comes too late. Defendants have known of the Edwards-Velador-Currenex connection since *April 2025*. Yet they deliberately waited until the day before the close of discovery to act. Indeed, Defendants appear to be targeting someone further removed (Hastings) specifically to avoid the fact that the person who actually interfaced with Edwards (Lloyd) had long been known to them. This is in addition to other problems, including that probing Hastings' work at Velador would present a thicket of privilege issues, given Velador during Hasting's tenure was acting at the direction and control of law firms not present here.

**With respect to Jad Sarmo**, Plaintiffs would concede to the request, if Defendants agree that it will not be used to disrupt the case calendar. As discussed below, this caveat is important both because Sarmo was disclosed on August 11, and because Defendants have made clear their recent discovery barrage is an attempt to engineer an excuse to extend the time they have to oppose Plaintiffs' forthcoming class certification papers.

## BACKGROUND

Plaintiffs represent a putative class of traders who used Currenex's FX trading platform. Among other things, the complaint alleges that, contrary to its public representations, Currenex was resolving order-book ties by secretly giving super-priority privileges to Trading Defendants State Street Bank, Goldman Sachs, and HC Tech. ECF 184 ¶¶ 1, 116-28. This practice enabled the Trading Defendants to jump the line and execute trades without having to provide the most competitive price. *Id.* Contrary to Defendants' assertions, the complaint does *not* allege that

2

Currenex falsely represented that its platform was a "central limit order book" or that the platform "broke ties on a strict first in, first out ('FIFO') basis." Mot. at 2. Indeed, the Court has specifically rejected that mischaracterization of the Complaint in denying Defendants' motion to dismiss. ECF 83 at 15 n.69 (finding "defendants mistakenly contend that plaintiffs' fraud claims require a misrepresentation . . . that the platform adhered to a 'strict FIFO' tiebreaking system"); *see id*. at 18 ("that the Platform did not follow 'strict FIFO' to break ties . . . is beside the point").

On April 14, 2025, Plaintiffs produced a privilege log that disclosed that employees of Velador, including specifically Colin Lloyd, had communications with Matthew Edwards (of Plaintiffs Edmar and IBG) starting in August 2018.[1] As Defendants themselves stress, the privilege log even indicated that Edwards interacted with Velador *about Currenex*. Mot. at 6. Velador is a consulting firm that, at all relevant times, was acting at the direction and control of law firms. This includes performing work for law firms not present here, including in connection with (irrelevant) cases about whether "last look" functionality was adequately disclosed.[2]

On September 16, 2025, Defendants indicated for the first time they intended to ask the Court to issue letters rogatory for Hastings and Sarmo.

On September 18, 2025, Defendants filed this motion.

On September 19, 2025, fact discovery closed. ECF 161.

Plaintiffs' class certification papers are currently due on November 18, 2025. *Id.*

---

[1]  *See* Ex. 1 (Edwards Privilege Log).
[2]  *See* ECF 261 at 1-2 (discussing "last look" cases); *Axiom Inv. Advisors, LLC v. Barclays Bank PLC and Barclays Cap., Inc*., No. 1:15-cv-09323 (S.D.N.Y. Nov. 25, 2015), ECF 1.

## LEGAL STANDARD

District courts have the inherent authority to manage their dockets, including the

enforcement of deadlines. *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co*.,

2015 WL 4757601, at *3 (S.D.N.Y. Aug. 12, 2015). This includes, of course, denying belated

requests for the issuance of letters rogatory—which present a particular risk of delay as the date

of actual compliance is at the mercy of foreign systems. *See, e.g.*, *HDMI Licensing Adm'r, Inc.

v. Availink, Inc.*, 2025 WL 799036, at *10 (N.D. Cal. Mar. 13, 2025) (denying as untimely

request for Hague assistance filed "less than two months" from discovery cutoff given it "would

take six months to a year (or more) for compliance"); *Merck Sharp & Dohme Corp. v. Sandoz,

Inc.*, 2013 WL 12203112, at *4 (D.N.J. June 7, 2013) (denying motion for letters rogatory as

untimely where filed less than two months before discovery close).

Letters rogatory must fall within the scope of proper discovery under Rule 26 of the

Federal Rules of Civil Procedure. *See Joseph v. Gnutti Carlo S.p.A.*, 2016 WL 4083433, at *1

(S.D.N.Y. July 25, 2016). Pursuant to Rule 26, this Court must limit discovery where, as here, it

is not relevant to any claim or defense, not proportional to the needs of the case, or unreasonably

cumulative or duplicative. *See* Fed. R. Civ. P. 26(b)(1); *Pearlstein v. BlackBerry Ltd*., 332

F.R.D. 117, 121 (S.D.N.Y. 2019) (denying in part motion for letters rogatory as "not

proportional to the needs of the case"). "Because of the system's cumbersome nature, where the

relevancy or materiality of the testimony sought is doubtful, the court should not grant the

application." *Route1 Inc. v. AirWatch LLC*, 2018 WL 6427145, at *1 (D. Del. Dec. 7, 2018)

(denying motion for letters rogatory as "speculative, unnecessary, and a fishing expedition").

Thus, among other things, as Defendants concede, they bear the burden of making a "reasonable

showing that the evidence sought may be material." Mot. at 8-9; *see also* ECF 252-19 ¶ 6(2)

(Defendants' expert on foreign law confirming that requests for assistance to English Courts

4

must not be "for investigatory purposes," but it "must be shown that the proposed witness . . . has relevant evidence to give").

In addition, the Rules require courts to limit discovery where it is "unreasonably cumulative or duplicative, or can be obtained from some other source" or if "the party seeking discovery has [already] had ample opportunity to obtain" the discovery.  Fed. R. Civ. P. 26(b)(2)(C).

## **ARGUMENT**

### I.    **THE COURT SHOULD DENY THE REQUEST FOR ASSISTANCE WITH RESPECT TO DAVID HASTINGS**

#### A.    **Defendants Cannot Justify the Last-Minute Request for Assistance in Understanding Their Own Scheme**

Defendants first try to justify their last-minute request by observing that Hastings "was the Global Head of Strategic Relationships at Currenex."  Mot. at 5.  Defendants thus claim to want discovery into how the Platform operated, and whether the schemes at issue in this case were disclosed.  *Id.*  But Currenex has at its disposal its own source code, its own emails, and its own current and former employees, all of whom can be questioned by Defendants whenever they like, and many of whom have already been deposed in this case.  In fact, every single witness has confirmed that the scheme worked just like Plaintiffs' allege—Currenex secretly applied a "priority" number it could change at will.  *No* defense witness has claimed the assignment of priority numbers was disclosed to Platform users, nor have Defendants ever actually argued that to the Court.  Instead, unable to do so, even now they try to dodge by presenting the issue as being about "strict FIFO," Mot. at 2, even though the Court expressly rejected that argument, ECF 83 at 15 n.69, 18, as discussed above.  In other words, the key elements of the fraud are not just undisputed, but have been repeatedly confirmed by the Defendants' documents, Defendants' employees, and Defendants' arguments to this Court.

If Defendants had an actual basis to believe that the scheme did not exist, or to believe the assignment of priority numbers was disclosed, we all certainly would have heard about it by now.  Or, at least, Defendants would have included it in their motion to the Court, to prove how, supposedly, *Hastings* is so important.  Despite that this is a Currenex employee, and despite that the issue is whether Currenex disclosed the scheme, and despite that Defendants are now suggesting Hastings is singularly important to their disclosure defense, the Court is offered as proof . . . . *his LinkedIn profile.*  Mot. at 5.  That, alone, confirms this argument is not to be taken seriously.  So, too, does the fact that Hastings is *not* listed on any of Defendants' initial disclosures.[3]

Defendants' motion also cannot be granted based on a need for Platform or disclosure-related discovery because the request for any such testimony comes too late.  Defendants cannot claim to have only recently discovered that such issues as how the Platform operated, and what Currenex disclosed, would be relevant to this case.  That *is* the case.  Nor can Defendants claim to have only recently stumbled on Hastings' name.  He worked *for Currenex.*  Thus, if Hastings' knowledge of the fraud itself is truly the basis for Defendants' request, Defendants cannot possibly explain why this motion was only filed the day before the close of fact discovery.[4]

---

[3]  Defendants' assertion (Mot. at 5) that Hastings may have a different recollection of how priorities operated on the platform in the early years of the class period than the other Currenex former employees who have been deposed, based solely on a LinkedIn profile, is pure speculation.  And as with all other issues, Defendants knew from the start of the case that the temporal scope of their scheme would be an issue.

[4]  Indeed, as a former *Currenex and State Street* employee, Defendants should disclose to the Court and Plaintiffs all written communications they have had with Hastings and detail the timing and content of their oral communications with him, including without limitation to ensure the "necessity" of this last-minute, potentially-case-delaying motion was not engineered.

**B.**    **Defendants Cannot Justify the Last-Minute Request for Assistance in Probing the Work of Velador, a Legal Consulting Firm**

The other justification for requesting Hastings' testimony is that he was, later in his career, employed by Velador, a legal consulting firm.  Mot. at 6.  Relying on a LinkedIn post that has both names in it, Defendants assert Hastings "worked closely with" Lloyd, another Velador employee.  Mot. at 6.  From there, Defendants speculate that Hastings, after being hired by Velador, might have spilled his guts about Currenex's fraud to Lloyd.[5]  And from *there*, Defendants speculate that Lloyd may have passed on the knowledge (hypothetically) gleaned from Hastings, directly to Edwards, of Plaintiffs Edmar and IBG.[6]  *Id.*  Defendants argue that this would render Edmar and IBG's fraud claims untimely.  This chain of suppositions fails to justify the motion, for several reasons.

*First*, Defendants have their statute of limitations math wrong.  They claim the relevant date is August 2019.  Mot. at 6 n.3.  But then-Governor Cuomo issued executive orders that tolled statutes of limitations during the COVID period.  *See, e.g.*, *Doe v. State Univ. of New York Purchase Coll.*, 617 F. Supp. 3d 195, 207 (S.D.N.Y. 2022) (describing initial and subsequent executive orders on claims tolling).[7]  Thus, the relevant date for Edwards' knowledge is not two

---

[5]  Defendants cannot simultaneously assert the scheme did not exist, while also insisting they hope to learn that Hastings told Lloyd the scheme existed.  Thus, this argument serves as yet another confirmation that the existence of the fraud is undisputed.

[6]  For Hastings' knowledge of the fraud to be relevant, that knowledge had to be *actually* transferred to Edwards outside the statute of limitations period.  This is because, as was undisputed in yet-another last minute discovery motion, ECF 218, 226, knowledge cannot be *imputed* until the point of retention, which did not occur until 2021.

[7]  *See also Kurtanidze v. Mizuho Bank, Ltd.*, 2025 WL 1898927, at *10, n.5 (S.D.N.Y. July 9, 2025) (applying Covid-19 orders to toll New York state-law claims for 228 days); *Shin v. NBC Universal Media, LLC*, 2025 WL 438297, at *10 (S.D.N.Y. Feb. 7, 2025) (same); *Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*, 2023 WL 2346337, at *1 n.1 (S.D.N.Y. Mar. 3, 2023) (same); *Bell v. Saunders*, 2022 WL 2064872, at *5 (N.D.N.Y. June 8, 2022) ("District courts in this Circuit have agreed and found that Executive Order 202.8 and subsequent orders tolled the statute of limitations period from March 20, 2020 through November 3, 2020, a total of 228 days.").

years before the filing of the complaint, but *two years plus 228 days*—or, December 19, 2018. This is fatal to the core of Defendants' motion, because Hastings did not join Velador until February 2019.[8] Thus, even if a Hastings-Lloyd-Edwards series of conversations occurred while Hastings was at Velador, Edmar and IBG's fraud claims would still be timely.

*Second*, the request comes too late. In support of their motion, Defendants explicitly rely on privilege log entries about Edwards' conversations with Velador about "Currenex claims." Mot. at 6. But that log was produced in April 2025. Defendants thus had more than *five months* to seek deposition testimony from Velador employees. Fact discovery should not be held open indefinitely for this latest request to wind through a foreign court system.

Defendants in a footnote assert they only learned "of the role that Velador played in informing Mr. Edwards about the historical use of priority during Mr. Edwards' deposition." Mot. at 9 n.4. Even if the deposition was a triggering event, Defendants do not explain why they waited another month to file their motion. But more fundamentally, Velador's name did not arise serendipitously at Edwards' deposition—Velador's name is all over the privilege log and Defendants focused a significant portion of the questioning on Velador, confirming it was already on their radar.

Further confirming Edwards' deposition is not the proper comparison point in terms of the timeliness of the request, consider that Defendants are arguing they need to know what *Lloyd* knew. *Lloyd* spoke to Edwards, not Hastings. So, why didn't Defendants seek *Lloyd*'s testimony? Because they knew any such request would be rejected as being untimely because Lloyd's name is all over the April 2025 privilege log. Defendants should not be allowed to

---

[8] Hastings' LinkedIn lists "January 2019," ECF 252-13 at 2, but Velador's records indicate February 1, 2019. For current purposes, the difference is immaterial.

circumvent their own lack of diligence into Velador by substituting in the name of a peripheral actor instead.

*Third*, any deposition of Hastings with regard to his work and interactions at Velador would be fraught with, if not completely blocked by, privilege issues. Defendants downplay this by noting that "years passed" between Hastings' work at Velador and *Edwards'* retention of counsel here. Mot. at 12. But that elides that Velador is a consulting firm that was working at all times at the direction of law firms. During the period of Hastings' employment, Velador was doing so at the direction *of law firms not even present here*. Thus, discussions of Velador's inner-workings would implicate work-product privileges of law firms not present here. And communications with anyone but Edwards would implicate attorney-client privilege issues with respect to neither attorneys or clients that are present here.[9]

Defendants cannot evade these issues by stressing that Hastings could testify about his own knowledge from his time at Currenex. Mot. at 12-13. Testifying about his personal knowledge of the Platform is the first basis for the motion, discussed above. But here, in this second basis for the motion, Defendants are requesting the right to probe Velador's inner workings. That would directly implicate the confidences and privileges of those whom Velador was working with at the time of Hastings' tenure—which was not the law firms present here. The Court should avoid placing absent third parties' confidences and privileges at risk, even if the Court were to (improperly) ignore Edwards' own privilege interests.[10] Thus, at a minimum,

---

[9]  Communications with Velador, as an agent of attorneys, are afforded attorney-client communication protections. *Farzan v. Wells Fargo Bank*, No. 12 CIV. 1217 RJS JLC, 2012 WL 6763570, at *1 (S.D.N.Y. Dec. 28, 2012).

[10]  Edwards' own communications with Velador are privileged, even before Edwards retained counsel here and even for the conversations had when Velador was working for counsel he never retained. *See* ECF 261 at 2; *Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1018 (N.D. Cal. 2022) ("[C]ommunications from prospective clients with the aim of obtaining

the Court should limit any questioning to only Hastings' direct experiences at Currenex, and not his experiences at Velador.

*Finally*, Defendants only argue that the timing of Velador's knowledge is relevant because Edwards—of Edmar and IBG—interacted with Velador outside the statute of limitations period.  Accordingly, to the extent Edmar and IBG are dismissed from the case as Plaintiffs are considering in order to keep this case moving forward for the best interest of the class, *see* ECF 261, that would completely moot this basis for Defendants' requested relief.[11]

## II.    THE COURT SHOULD ONLY GRANT ASSISTANCE WITH RESPECT TO JAD SARMO IF DEFENDANTS AGREE IT WILL NOT DISRUPT THE CASE CALENDAR

Plaintiff DSquare's initial disclosures, served August 11, had just two people on it, one of which was Jad Sarmo.  Yet, Defendants' motion was not filed until September 18.  While Plaintiffs in theory would not oppose the deposition proceeding in theory, as DSquare was a Plaintiff added later in the case, that agreement comes with a caveat.  We seek assurances that granting Defendants' motion will not be later used to demand a one-sided shift in the overall case calendar.

Plaintiffs' class certification papers are currently due November 18, 2025, while Defendants' opposition papers are due on December 23, 2025.  ECF 161.  As the Court is aware, Plaintiffs had to seek the rescheduling of depositions due to a medical emergency.  ECF 255.

---

legal services are generally covered by the attorney-client privilege, even if the attorney is not ultimately retained."); *In re Lifetrade Litig.*, 2022 WL 3644357, at *4 (S.D.N.Y. Aug. 24, 2022) ("The fact that an attorney was not ultimately engaged does not remove the protection from the communication so long as the client/potential client reasonably understood the communication to be confidential.").

[11]   As if more is needed to deny the motion, Plaintiffs should also not be burdened with more overseas depositions, particularly not when the parties are supposed to now be focused on the actual class certification papers.  Indeed, Defendants' last-minute barrage of ginned-up disputes is obviously not just meant to disrupt the schedule as discussed below, but to try to keep Plaintiffs distracted.

Defendants tried to seize on that need to extract an agreement that Defendants would get until *February 23, 2026*, to oppose the class certification papers—while Plaintiffs' November 18, 2025 date remained the same.  Plaintiffs declined to approach the Court with a proposal that the Court had already expressly considered, and rejected.  ECF 161 (crossing out proposed "February 23, 2026" date).  Since then, Defendants have ginned up discovery dispute after discovery dispute, while "reserving rights" to argue that anything new gained thereby would form the basis of a request to change the class certification schedule in their favor.

The Court should not countenance Defendants' attempt to engineer a path, through belated and frivolous discovery disputes, to getting the extended briefing schedule the Court already rejected.  If the Court were to grant the request to depose Sarmo (or Hastings, for that matter), Plaintiffs respectfully request the Court make clear the case calendar will remain unchanged.  Otherwise, Defendants will be in effect be given an *open-ended* extension to oppose class certification, with papers due only at some unknown point in the future after the request winds its way through the foreign court system and Defendants decide to actually take the testimony.  This case should not be put into hiatus for these tangential and duplicative (at best) witnesses.[12]

In the alternative, if Defendants insist these depositions or other discovery are critical to class certification, and the Court is inclined to agree, then the schedule should be adjusted in a way fair to both sides.  That is, all dates should simply be moved back *pari passu*, with the gaps between dates staying the same.  Otherwise, Defendants will be given an unfair advantage, with Plaintiffs still filing on November 18 (and presumably only having 30 days to reply), but with

---

[12]   In the (very unlikely) event Sarmo adds unique testimony relevant to class certification, Defendants could of course seek to supplement their opposition papers.

Defendants having many months—or, potentially here, an open-ended amount of time—to work on their opposition papers.  That is the outcome the Court already rejected.  To be clear, Plaintiffs do not favor this approach at all.  Plaintiffs want to keep the case moving forward on the current schedule.  But our willingness and intent to proceed on November 18 should not come at the expense of being ambushed later by a one-sided request to change the calendar.

In sum, either by way of keeping the schedule as-is, or by forcing an open discussion now about moving it back in equal measures for both parties, Plaintiffs just seek to ensure neither we nor the Court are being slow-walked into a scheduling trap.  Any refusal by Defendants to disavow an interest seeking changes in the case calendar will only confirm the motion is not really about needed discovery, but about engineering (one-sided) delays.

**<u>CONCLUSION</u>**

Plaintiffs respectfully request that the Court deny Defendants' motion for letters rogatory to take overseas testimony.  In the alternative, Plaintiffs request that the Court do so only with respect to Sarmo, while making clear Defendants' class certification papers will still be due 35 days after Plaintiffs' class certification papers, as set forth in the Court's scheduling order.[13]

DATED:   New York, New York
             September 25, 2025

RUDDY GREGORY, PLLC

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:  */s/ Daniel L. Brockett*
Daniel L. Brockett

Mark Ruddy
1225 15th Street NW
Washington, DC 20005
Telephone: (202) 797-0762
Fax: (202) 318-0543
mruddy@ruddylaw.com

Thomas J. Lepri
295 Fifth Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
Fax: (212) 849-7100

---

[13]   If the Court grants any relief with respect to Hastings, Plaintiffs request equal time with the witness.  To be clear, however, Plaintiffs do not believe he should be deposed by either party.

danbrockett@quinnemanuel.com
thomaslepri@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
jeremyandersen@quinnemanuel.com

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATION</u>

I, Daniel L. Brockett, hereby certify that this memorandum of law contains 3893 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.


<u>/s/ Daniel L. Brockett</u>
Daniel L. Brockett