UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; XTX MARKETS LIMITED; and DSQUARE TRADING LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5,<br><br>Defendants. | Case No. 21-cv-06598 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR ISSUANCE OF LETTERS ROGATORY FOR FORMER DSQUARE EMPLOYEE JAD SARMO AND FORMER CURRENEX EMPLOYEE DAVID HASTINGS**

Defendants respectfully submit this reply in support of their motion for the issuance of two letters rogatory to take testimony overseas of Jad Sarmo, a former employee of Named Plaintiff DSquare and David Hastings, a former employee of Defendant Currenex.

**PRELIMINARY STATEMENT**

Plaintiffs do not oppose issuance of the requested letter rogatory for Jad Sarmo. Plaintiffs' professed concerns about delay are entirely of their own making. Defendants are and have been prepared to depose Mr. Sarmo when Plaintiffs make him available. Plaintiffs did not identify Mr. Sarmo as a witness with relevant information or produce any of his documents until mid-August. They then waited weeks to respond to Defendants' request for Mr. Sarmo's deposition, only to then insist that Defendants obtain a letter rogatory to depose him. Plaintiffs' own actions have

caused the supposed delay they now complain about. In all events, because the request is unopposed, the letter rogatory should issue.

The letter rogatory for David Hastings' testimony should also issue because the request seeks relevant testimony, does not seek privileged information, and is timely made. Mr. Hastings will provide relevant testimony about when the use of priority settings in tiebreaking began at Currenex, and what Currenex communicated to users at the time about how the Platform broke ties. He will also testify about his work at Velador, which had apparently been soliciting potential plaintiffs to bring the claims in this lawsuit years before it was filed. Mr. Hastings' testimony about his work at Currenex is indisputably not privileged and, with respect to his work at Velador, Plaintiffs offer nothing more than vague statements that all of Velador's work relating to currency exchanges during the relevant time period was for unidentified attorneys not present here, representing unidentified clients. Even if those generalized assertions were sufficient to establish a legal privilege (they are not), they would still not establish privilege with respect to the particular testimony that Defendants seek. Specifically, Plaintiffs would need to demonstrate that Velador, at the direction of an identified attorney engaged by an identified client, solicited from Mr. Hastings details of the Currenex Platform for the purposes of rendering legal advice. Plaintiffs have not articulated any of those predicate facts, nor have they established the basis for any claim of work product. Finally, Defendants' motion is timely. Defendants only learned of Mr. Hastings' involvement, his role, and the need for his testimony as a direct result of recent depositions in this case. As explained below, Defendants moved expeditiously to bring this Motion once those depositions revealed that doing so was necessary. Accordingly, this Court should issue the requested letter rogatory.

## ARGUMENT

I. **Defendants' Motion to Depose Mr. Sarmo Is Timely**

Plaintiffs do not dispute the relevance of Mr. Sarmo's testimony. Instead, they try to frame Defendants' motion as a delay tactic, while omitting crucial information that shows Defendants acted as expeditiously as they could have in the face of Plaintiffs' own delay. The full undisputed timeline is as follows:

- Plaintiffs first identified Mr. Sarmo in their initial disclosures on August 11, 2025 (four days after they were due). *See* ECF No. 252-3. This was before Plaintiffs produced a single DSquare document (despite telling this Court on May 16, 2025, that they would produce DSquare's documents "promptly"). ECF No. 163 at 2.

- The next day, Plaintiffs made their first production of DSquare documents, producing *over 110,000* documents spanning 15 years. Ex. 1 (Email from Plaintiffs serving document production).

- On August 22, 2025 (the next week), Defendants formally requested Mr. Sarmo's deposition. *See* ECF No. 252-10.

- *Three weeks later* and, only after Defendants followed up to ask, Plaintiffs informed Defendants that—despite Plaintiffs' counsel representing Mr. Sarmo, Mr. Sarmo being a substantial part-owner of DSquare, and Mr. Sarmo being one of only two individuals listed on DSquare's initial disclosures—Plaintiffs would not make Mr. Sarmo available to be deposed solely because he lives abroad. Ex. 4 (2025.09.08 Email T. Lepri to D. Beck "RE: Edmar v. Currenex - Proposed Schedule").

- Rather than spend still more time fighting with Plaintiffs over whether Mr. Sarmo is in their custody and control as co-owner of the company, Defendants promptly filed their motion for letters rogatory the following week. ECF No. 252.

Defendants have been prepared to depose Mr. Sarmo for some time, if Plaintiffs would only make him available. Mr. Sarmo's testimony is relevant to their defenses against the claims brought by DSquare—a now-defunct business that apparently destroyed key email records while this lawsuit was pending.[1] Plaintiffs themselves agree Mr. Sarmo has relevant information and

---

[1] For example, DSquare employee Eve Otway ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* ECF No. 253-1. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* Plaintiffs informed us on Friday that they destroyed all copies of these notes and that DSquare sold "all of its computer hardware"

3

their Opposition does not dispute that he should be subject to deposition.  Instead, Plaintiffs attempt to shift blame for delay that they caused, arguing that the Court should deny a future motion to extend the case schedule that has not even been filed.  This gamesmanship should not be countenanced.[2]  Indeed, any genuine concern about Mr. Sarmo's deposition delaying this case could be addressed by an order from the Court directing Plaintiffs to make him—as co-owner of DSquare—available for a prompt deposition by a date certain.[3]

## II. Mr. Hastings' Testimony Is Relevant And Not Privileged And Defendants' Motion Is Timely

### A. Mr. Hastings' Testimony Is Relevant

Plaintiffs at best miss the point when they argue that Mr. Hastings' testimony is irrelevant because, in their view, there is no evidence that "*the assignment of priority numbers* was disclosed."  ECF No. 280 (Opposition) at 6 (emphasis added).  Plaintiffs well know that there is compelling evidence that the *fact of priority* settings being used as a tiebreaker at the relevant time was known to many in the marketplace, including to Plaintiffs.  *See, e.g.,* Ex. 3 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  Plaintiffs do not meaningfully dispute that, as Currenex's Global Head of Strategic Relationships, Mr. Hastings is likely to have knowledge about what was told to Currenex's strategic partners like XTX.  Plaintiffs also do not dispute (i) that there is inconsistent

---

and only saved selected emails "around January 2021."  *See* Ex. 2 (2025.09.27 Email from M. Gaioni to T. Lepri "RE: Edmar v. Currenex (DSquare)").

[2] As Defendants discussed with Plaintiffs in meet and confer efforts, Defendants plan to promptly seek to modify aspects of the schedule in this case.  But the Court should not bless Plaintiffs' attempt to force a hypothetical scheduling dispute into an otherwise undisputed motion for Mr. Sarmo's testimony.

[3] Plaintiffs' opposition does not dispute that Mr. Sarmo owns 22.5% of DSquare through vehicle Prime Elements Limited, ECF No. 252 (Motion) at 4, or even address his status as co-owner of the company.

evidence concerning when tiebreaking priority started being used on the Platform, and (ii) that Mr. Hastings may have relevant knowledge of that fact. Plaintiffs further do not dispute that who knew what about the use of tiebreaking priority on the Platform and when is highly relevant both to issues of reliance and to Defendants' statute of limitations defenses.

Indeed, the fact that Plaintiffs' consultant, Velador, hired Mr. Hastings to consult about practices that are at issue in this case years before the case was filed is itself compelling evidence that Mr. Hastings has relevant knowledge. Why else would Plaintiffs' consultant have hired Mr. Hastings? Plaintiffs' Opposition is tellingly silent on that question. Plaintiffs also call it "speculation" or a "chain of suppositions" that Mr. Hastings shared information about the use of priority within order books with anyone at Velador. That is false. Mr. Hastings and Velador jointly advertised years before the filing of this case that "*Velador Associates can assist with analyzing your . . . priority within order books*":[4]



---

[4] David Hastings, Are you achieving the best from your FX execution / Hedging? LINKEDIN (bit.ly/42ibWTP).

5

Plaintiffs' Opposition attempts to cabin the relevance of Velador-related discovery by claiming that it bears only on the supposedly about-to-be-dismissed claims of Edmar and Irish. Not so. As discussed in more detail in Defendants' Reply in Support of their Motion to Compel Production of the Velador Emails, ECF No. 283, at 2, both of the remaining Named Plaintiffs (XTX and DSquare) ███████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████. *See* Ex. 4 ███████████████
██████████████████████████████████████; Ex. 5 █████████████████████
██████████████████████████████████████.[5]

Plaintiffs draw the finest of lines to avoid acknowledging Defendants' very real defense that Plaintiffs knew or should have known of the challenged aspects of the Platform's operations well before they brought this suit. Plaintiffs know that there are few emails or documents from fifteen to twenty years ago, when Mr. Hastings worked at Currenex. Yet, their opposition frets over a lack of documentary evidence regarding Mr. Hastings' communication with Platform users at that time. That is *precisely the point* of Defendants' Motion—there are not documents to help the parties know what happened on the Platform and what was communicated to putative class

---

[5] Plaintiffs also observe that "Governor Cuomo issued executive orders that tolled statutes of limitations during the COVID period," but they ignore that (i) Governor Cuomo's tolling has no impact on the numerous federal claims brought in this case; (ii) New York's "borrowing statute," N.Y. C.P.L.R. § 202, requires the Court to apply the shorter of the statute of limitations of New York or the home jurisdiction of each Named Plaintiff and putative class member; and (iii) in any event, all Named Plaintiffs had communications with Velador well before the December 19, 2018 date that Plaintiffs claim is controlling. The start date of Mr. Hastings' employment at Velador is also not controlling. The relevant date is not when Mr. Hastings became a Velador employee, but rather when he started communicating with Velador—a date Plaintiffs noticeably fail to disclose in their Opposition. It is, of course, highly improbable that Mr. Hastings started working at Velador on February 1, 2019 without any prior discussions about what, exactly, he would be doing for Velador. This is particularly true since it appears that Velador was effectively shopping this lawsuit to potential clients (and counsel) for many years prior to 2019.

members about it more than fifteen years ago.  No discovery thus far has clarified those points.  Mr. Hastings' testimony can potentially solve this issue for all parties.

Finally, Plaintiffs dismiss the Hastings-Velador-Edwards connection by suggesting that it is "speculative" that Hastings voluntarily opted to "spill his guts" to Velador.  ECF No. 280 (Opposition) at 7.  Really, though, Plaintiffs are asking this Court to believe that Velador was exploring claims against Currenex prior to hiring Mr. Hastings, then hired Mr. Hastings, a former Currenex leader, and *did not ask him any questions about Currenex*.  This defies reason and provides no basis for the Court to deny Defendants' Motion.

### B. Mr. Hastings' Testimony Is Not Privileged

Plaintiffs tacitly concede, as they must, that Mr. Hastings' testimony about his work for Currenex cannot be privileged as to Currenex.  Their opposition thus offers no grounds for denying Defendants' request to depose him on that subject.

As to Plaintiffs' claim that Mr. Hastings' testimony about his work for Velador is privileged, that argument lacks any legal or evidentiary basis.  Plaintiffs assert that Velador was working with "law firms" during Mr. Hastings' tenure.  ECF No. 280 (Motion) at 9.  But, as a threshold matter, that vague reference to unnamed and unidentified law firms is not enough to support a claim of privilege.  A party that asserts attorney-client privilege or the work product doctrine without providing enough information to identify the relevant attorney "fail[s] to meet their evidentiary burden" and accordingly waives that privilege claim.  *See In re Rivastigmine Pat. Litig.*, 237 F.R.D. 69, 82 (S.D.N.Y. 2006) (claim that agent was "operating under direction of" unnamed attorney failed to establish privilege); *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 47 (E.D.N.Y. 2011) (noting that "conclusory invocation of the privilege or work-product rule

7

will not suffice; rather, the focus is on the specific descriptive portion of the log.") (internal quotation marks omitted and alterations adopted).

Plaintiffs do not suggest that any lawyer appearing in this case is the source of the purported privilege. Indeed, the opposition pointedly ignores the fact that Plaintiffs' own privilege log states that Velador was working for two of Plaintiffs' counsel here—Mark Ruddy and Aaron Zigler. *See* ECF No. 252-16 (Irish and Edmar Privilege Log) at 50, 90. Notably, the Opposition does not assert that either of those attorneys is the source of the privilege. Nor could it, where the record is clear that no client had engaged Ruddy or Zigler in connection with this case at the time of Hastings' employment at Velador. *See* ECF No. 253-5 ███████████████████████████████████████████████████████████████████████████; ECF No. 217 (Pls.' Mot. to Compel Opp.) at 4, n.8 (reaffirming that June 2021 was "the date the first Plaintiff retained us on this action").

Even if Plaintiffs did identify some attorney that worked with Velador at some point, that would not, on its own, subject Mr. Hastings' testimony to privilege protection. Plaintiffs would still need to demonstrate that Velador solicited details of the Currenex Platform from Mr. Hastings at the direction of an attorney, (i) at a time when that specific attorney had retained Velador; (ii) for the purpose of enabling that attorney to render legal advice to a client that he or she was currently representing. *See, e.g.*, *United States ex. rel Raffington v. Bon Secours Health Sys., Inc.*, 2018 WL 11217867, at *1 (S.D.N.Y. Aug. 21, 2018) (holding that information is not protected by attorney-client privilege simply where a person intends to later provide that information to an attorney); *Riverkeeper, Inc. v. Coeymans Recycling Center LLC*, 2024 WL 1053507, at *12 (N.D.N.Y. Mar. 11, 2024) (rejecting privilege assertion where a consultant was not formally engaged or supervised by counsel, and holding that privilege does not extend to consultants unless

retained by and acting under the direction of counsel to facilitate legal advice). Moreover, Plaintiffs' argument does nothing to address the fact that Mr. Hastings advertised his services with Velador as assisting those looking for "FX transaction optimization"—not as an expert witness for attorneys. *See supra* at Section II.A (LinkedIn post). The evidence suggests that it is more likely that Mr. Hastings shared information regarding Currenex's operations with Velador, including about priority in a non-privileged context.

Plaintiffs should not be permitted to avoid discovery of potentially case-dispositive testimony through vague references to the unspecified work of unnamed lawyers. The privilege arguments advanced in the opposition provide no basis to deny Defendants' Motion.

### C. Defendants' Motion Is Timely

Plaintiffs argue that Defendants' motion is untimely because, in their telling, Defendants should have known they needed Mr. Hastings' testimony from the start of this case. Plaintiffs' argument presumes that Defendants could know what the deposition record would show before depositions even began. But of course, Defendants could not have known at the outset that witnesses would offer conflicting testimony about what year priority even began. ECF No. 252 (Motion) at 5; *compare* ECF No. 252-14 (Liconte Tr.) at 26:21-27:5 (stating that priority on the Platform began between 2007 and 2009) *with* ECF No. 252-15 (Rosenwald Tr.) at 39:15-23 (stating that priority on the Platform began between 2005 and 2007). Defendants did not learn what those witnesses would say until their depositions unfolded over the past few months. Nor could anyone who currently works at Currenex be expected to identify every individual employed more than fifteen years ago that might have relevant testimony.

9

Plaintiffs also claim their own privilege log was all Defendants needed to decide to depose Mr. Hastings.[6] That is not true either. Mr. Hastings is not listed once on the Privilege Log. And Plaintiffs ignore that even their corrected Privilege Log is replete with, at best, misleading information and attempts at misdirection. For example, the Privilege Log lists Casper Marney of Velador in bold, which Plaintiffs' counsel told us was used to identify counsel. Mr. Marney also was listed as having an @ruddylaw.com email address. It was not until Mr. Edwards's deposition on August 19, 2025, ███████████████████████████████████ *See* ECF No. 253-5 (Edwards Tr.) ███████████████████████████████████

███████████████████████████████████

███████. And Mr. Hastings's work for Velador was not discovered by Defendants until after that date. The fact that Defendants conducted that investigation, met and conferred with Plaintiffs' counsel (who refused to take a position at the time), and then filed the instant Motion to secure Mr. Hastings testimony all in one month after Mr. Edwards' deposition speaks to how promptly Defendants moved—not any unreasonable delay.

## **CONCLUSION**

For the foregoing reasons, Defendants request that this Court grant the Motion and issue the letters rogatory attached as Exhibit A to the Motion.

DATED: September 29, 2025
New York, New York

---

[6] Plaintiffs claim that Edmar and Irish produced their privilege log in April 2025, but ignore that that log was replete with errors and withdrawn by Edmar and Irish in favor of the operative Privilege Log, which was not provided until May 30, 2025.

ROPES & GRAY LLP

/s/ *Alexander B. Simkin*
Gregg L. Weiner
Alexander B. Simkin
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-5000
Facsimile: (212) 596-9090
Email: gregg.weiner@ropesgray.com
Email: alexander.simkin@ropesgray.com

Robert G. Jones (*pro hac vice*)
800 Boylston Street
Boston, Massachusetts 02199
Telephone: (617) 951 7000
Facsimile: (617) 951 7050
Email: robert.jones@ropesgray.com

Samer Musallam (*pro hac vice*)
2099 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 508-4600
Facsimile: (202) 508-4650
Email: samer.musallam@ropesgray.com

*Counsel for Defendants Currenex, Inc., State Street Bank and Trust Company, and State Street Global Markets International Limited*

KATTEN MUCHIN ROSENMAN LLP

/s/ *Peter G. Wilson*
Peter G. Wilson
Elliott M. Bacon
525 W Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
Email: peter.wilson@katten.com
Email: elliott.bacon@katten.com

*Counsel for Defendant HC Technologies, LLC*

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ *Carmine D. Boccuzzi Jr.*
Carmine D. Boccuzzi Jr.
Rishi N. Zutshi
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Email: cboccuzzi@cgsh.com
Email: rzutshi@cgsh.com

*Counsel for Defendant Goldman Sachs & Co. LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 30, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

      /s/ *Alexander B. Simkin*
      Alexander B. Simkin