quinn emanuel trial lawyers | new york

295 Fifth Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S EMAIL ADDRESS
**danbrockett@quinnemanuel.com**

October 1, 2025

**BY ECF**

The Honorable Lewis A. Kaplan
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Court Room 21B
New York, NY 10007

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

Plaintiffs respectfully request the Court consider this further opposition to Defendants' motion to compel the production of certain documents from Plaintiffs Edmar Financial Company, LLC and Irish Blue & Gold, Inc.  ECF 242.  This submission is necessary to address new "relevance" arguments raised for the first time in Defendants' reply, ECF 283.

Defendants now argue the Edwards-Velador communications should be produced, even if Edmar and Irish are voluntarily dismissed.  That argument fails because it does not overcome the threshold defect:  the documents are privileged.  Plaintiffs established that (i) communications with *agents* of attorneys are privileged, and (ii) communications remain privileged even if no attorney is ultimately retained.  ECF 261 at 2.  Edwards' communications with Velador are therefore plainly privileged, because Velador was acting under the direction and control of attorneys.[1]  Neither Defendants' motion nor their reply disputes those points of black-letter law.

---

[1] Defendants observe that Velador is logged as working with Ruddy Gregory and Aaron Zigler, counsel here, in connection with Currenex—but elide such entries are in connection with recent work.  That Velador is now working with counsel here does not negate the fact that probing backwards into Velador's history will implicate other law firms, which should heighten the concern.  It is a matter of public record, for instance, that Velador was working with Scott+Scott, Hausfeld, and Korein Tillery on FX cases regarding benchmark manipulation and whether "last look" was disclosed.  *See In re Foreign Exchange Benchmark Antitrust Litig.*, No. 13-cv-07789, ECF 1692 at 2 (S.D.N.Y. June 30, 2022); *Axiom Inv. Adv. v. Deutche Bank AG*, No. 15-cv-9945, ECF 169 at ¶ 2 (S.D.N.Y. Oct. 23, 2018).  Aaron Zigler, counsel here now at his own law firm, left Korein Tillery in 2019.  *Axiom Inv. Advisors v. Barclays Bk. PLC*, 15-cv-9323-LGS, ECF No. 145 (Oct. 28, 2019).

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

Defendants' motion is *also* moot because Plaintiffs have stated their intent to dismiss Plaintiffs Irish and Edmar, the only Plaintiffs involved in the sought-after documents. Defendants' reply fails to demonstrate any possibly relevance of those communications to the claims of the remaining Plaintiffs XTX and DSquare.

*First*, Defendants argue they need Edwards' communications to probe what XTX and DSquare knew about the claims at issue. But discovery on what XTX and DSquare knew should come from those parties—not through piercing Edwards' privilege, especially when XTX and DSquare did not even know Edwards existed before this action.

*Second*, Defendants suggest that what *Velador* knew could somehow bear on what XTX or DSquare "should have known." But Edwards's privileged communications are an incredibly poor—and improper—vehicle for that theory, which is probably why Defendants never raised it before now. If Defendants wished to probe Velador's independent knowledge, they could have sought Velador discovery during the discovery period. They chose not to, demonstrating this argument comes far too late, and has no merit. A legal consultant's pre-complaint investigative work is not just privileged, but irrelevant to the question of whether a reasonable user would have known of Currenex's misconduct. *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 435-36 (2d Cir. 2008) (investor that was affiliated with a law firm with specialized experience was not a relevant "bellwether" for other investors).[2] Defendants' reliance on *Hopkinson v. Estate of Siegal*, 470 Fed. Appx. 35, 36-7 (2d Cir. May 21, 2012), only underscores the point: there, the specific plaintiff personally received direct notice of the fraud.

*Third*, Defendants argue that Velador's knowledge could be imputed to XTX and DSquare. But as a matter of law, an attorney's knowledge—or the knowledge of an attorney's agent—cannot be imputed until counsel is actually retained. ECF 218 at 3. Thus, the earliest possible date when imputation could occur is September 2021 with respect to XTX and April 2025 with respect to DSquare. *Id.*

*Finally*, while Defendants' attempt to tie Velador to XTX and DSquare through stray documents is irrelevant to the current motion, it is also factually baseless.

As to XTX, Defendants cite an email regarding the .[3] Defendants misleadingly suggest the email is about "Currenex." Even a cursory reading reveals that the exchange is about 

---

[2] *See also, e.g.*, *In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 367-8 (S.D.N.Y. 2019) (even where law firm put together successful complaint with public data, rejecting limitations argument because expecting ordinary victims to conduct analysis "just on the off chance that it would reveal some suspicious behavior would be absurd"); *In Ire Magnetic Audiotape Antitrust Litig.*, 2002 WL 975678, at *3 (S.D.N.Y. May 9, 2002) ("Without a tip-off that a price-fixing conspiracy existed, plaintiffs had no reason to exercise due diligence.").

[3] *See* ECF 283-1 at XTX0618902 ("                                                                                              ").

███████████████████████████████████████████████.[4] This benign ███████████████████████████████████ falls miserably short of demonstrating Velador shared confidential consultant work about Currenex's priority scheme at any point prior to the filing of this action. It did not. *See* Ex. 1 (Smart 30(b)(6) Tr.) at 66:9-67:17.

Moreover, the issue discussed in the email is last look practices, but this case is about Currenex's assignment of priority numbers. ECF 261 at 2-3. Effectively conceding the two are unrelated, Defendants now argue that knowledge of last look may nonetheless have triggered a duty to investigate any and every other potential problem. ECF 283 at 2. Defendants only invent this argument now because it is absurd on its face. But if they truly intend to pursue it, no further discovery—let alone, discovery of Edwards' privileged materials—is necessary. XTX does not dispute that it knew last look existed; XTX has in fact often criticized its potential for abuse.[5]

As for DSquare, Defendants submit an email referring to a ███████████████████ ███████. But in reality, as the concurrently filed Damian Mitchell declaration confirms, that discussion concerned ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████.

*In sum*, Defendants' motion was flawed from the outset, as the sought-after communications were privileged. But the motion was also fully mooted by Plaintiffs' offer to voluntarily dismiss Plaintiffs Irish and Edmar. If Plaintiffs are unable to reach terms with Defendants on a stipulated dismissal, we expect to file a separate motion requesting the Court enter such an order. Either way, however, the current motion should be denied.

Respectfully submitted,

 /s/ *Daniel L. Brockett*

Daniel L. Brockett

cc: Counsel of Record

---

[4] *See* ECF 283-1 at XTX0618896 ("███████████████████████████████████████ ██████████"); *id.* at XTX0618901 ("████████████████████████████████████████ ██████████████████████████████████████").

[5] *E.g.*, Ex. 2 (Gerko Tr.) at 33:4-23; Ex. 3 (Smart Tr.) at 208:15-25; ECF 283-1 (2016 email cited by Defendants, showing ████████████████████). Even if that were not the case, the first "last look" case was publicly filed in 2015. *Axiom Inv. Advisors, LLC v. Barclays Bank PLC and Barclays Cap., Inc.*, No. 1:15-cv-09323 (S.D.N.Y. Nov. 25, 2015), ECF 1.

[6] *See, e.g.*, *In re Foreign Exchange Benchmark Antitrust Litig.*, No. 13-cv-07789 (S.D.N.Y.), ECF 925 at 5 (notices sent out October 2017), 1692 at 2 (referring to Velador as "Settlement Expert"). Notably, the claims process was so complex that, though the settlements were approved in 2018, distribution issues were still being resolved into *2024. See id.* at ECF 2101.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2025, I served a true and correct copy of the foregoing by electronic mail transmission on all counsel of record.

*/s/ Daniel L. Brockett*
Daniel L. Brockett
