

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

October 1, 2025

Alexander B. Simkin
T +1 212 596 9744
alexander.simkin@ropesgray.com

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Court Room 21B
New York, NY 10007-1312

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

Plaintiffs' motion to compel the re-opening of four depositions (ECF No. 276, the "Motion") is based on the incorrect premise that Currenex's OXOTA tool to try to facilitate triangular arbitrage, which has not been used since 2012, is important to this case. As Defendants explained in their opposition to Plaintiffs' separate motion to compel the OXOTA source code (ECF No. 288), it is not even relevant. But, in all events, Plaintiffs will be deposing Currenex's 30(b)(6) designee on October 9, 2025 on their OXOTA topics (rescheduled, at Plaintiffs' request, from September 11). Plaintiffs will also be deposing Russell Sears, the sender or recipient of all but three of the OXOTA email exhibits they cite. In addition, *Plaintiffs already examined all four of the witnesses at issue on this topic*. State Street's eFX Trading Desk's 30(b)(6) witness, Jim Foster, said the OXOTA tool was ineffective and his team decided to stop using it after a few attempts. Ex. 1 (J. Foster Rule 30(b)(6) Tr.), at 137:7-16 ("[W]e attempted to use it a few times. . . . But we gave up on it."). Currenex's former Managing Director of Global Trade Operations, Tom Liconte, said that he did not recall how the OXOTA tool worked, other than to categorically reject Plaintiffs' supposition that it allowed "State Street or Currenex to obtain a risk free profit." Ex. 2 (T. Liconte Tr.), at 230:11-232:5 ("[W]e created software for customers called OXOTA, which was OXO triangular arbitrage. How it exactly worked, I can't recall . . ."). And HC Tech's two witnesses repeatedly confirmed they also didn't recall details about Currenex's OXOTA tool or State Street engaging in triangular arbitrage on the Platform. ECF No. 276-7 (C. Rosenwald Tr.), at 335:21-336:3 ("Q: Do you know when State Street started and ended the practice of taking triangular arbitrage opportunities for its own account? A: No, I don't know anything about that."); Ex. 3 (S. Gilman Tr.), at 187:12-14 ("I don't remember OXOTA as being anything. I don't remember that."); *id.* at 188-1:4 ("I don't remember any OXOTA or anything like that."); *id.* at 188-11:13 ("I don't remember OXOTA."). For the reasons described more fully below, this unduly burdensome fishing expedition should be rejected.[1]

---

[1] Plaintiffs' contention that they were sandbagged by a late production of OXOTA-related documents is categorically false. Plaintiffs omit from their letter that they served new OXOTA-focused RFPs

ROPES & GRAY LLP

- 2 -                                                                                                      October 1, 2025

### I.   The Motion Should Be Denied For Plaintiffs' Failure To Comply With Rule 37

A party's failure to meet and confer in good faith is alone sufficient reason to deny a motion to compel. *See Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (collecting cases). Here, Plaintiffs refused to meet and confer. At 7:17 p.m. on Tuesday, September 23 (misidentified in the Motion as September 22), Plaintiffs requested, for the first time and without explanation, that Defendants inform them by "noon tomorrow" whether Defendants would agree to re-open four depositions, or else Plaintiffs would file a motion to compel. Ex. 4 (9/23/2025 email chain between M. Gaioni and T. Lepri/T. Nagle). Defendants responded that evening by asking Plaintiffs to explain the basis for their request and offering to meet and confer at 11:30 a.m. on September 25 in connection with a call the parties were already scheduling to discuss other topics. *Id.* Plaintiffs did not respond until 6:56 p.m. on September 24, stating that they planned to file their Motion that night. *Id.* Indeed, Defendants only learned that this "dispute" was about the long-defunct OXOTA tool by reading the Motion. Plaintiffs' explanation for their failure to meet and confer— that they did not want to "let[] any more time elapse[,]" *see* (ECF No. 276, at 1 n.1)—is not a basis for refusing to meet and confer and would gut Rule 37 if it were.

### II.  There Is No Basis For Continued Examination of Messrs. Liconte, Rosenwald, Gilman, and Foster About The OXOTA Tool Or Triangular Arbitrage

Plaintiffs' Motion is premised entirely on their desire to take additional testimony regarding the OXOTA tool—a software offering that allowed Platform users to pursue triangular arbitrage opportunities and that has not been used since 2012. As set forth in Currenex's letter opposing Plaintiffs' separate motion to compel OXOTA source code and the supporting declaration submitted therewith, and contrary to Plaintiffs' speculative theory, the OXOTA tool had no impact on order matching on the Platform, and it certainly did not allow arbitrage opportunities to be taken *before* they reached the order book. ECF No. 288 at 1-2; ECF No. 290 at ¶¶ 4-9. Indeed, despite knowing about the OXOTA tool from their pre-complaint consulting witness Nick Burrlock, Currenex's former Vice President, Liquidity Management, the term "OXOTA" does not appear in any of the four complaints that Plaintiffs have filed in this litigation and the term "triangular arbitrage" is buried in a single footnote.

This is for good reason. As Currenex has repeatedly explained, trades executed through the OXOTA tool were completed by submitting orders that would only then be subject to the Platform's matching engine, just as if they had been placed without the OXOTA tool (and just as if they had

---

on August 18, 2025 (*i.e.*, with only *one month* to go in fact discovery), asking Defendants to review thousands of additional documents that hit on *brand new* OXOTA-focused search terms. That Plaintiffs elected to conduct most of their depositions before even asking for these documents is unsurprising, since they have nothing to do with the tiebreaking issues in the case.

ROPES & GRAY LLP

- 3 -                                                                                          October 1, 2025

been placed using a user's own software, like the software designed by Plaintiffs to identify and trade on arbitrage opportunities). *See* ECF No. 288 at 1-2. Despite this unremarkable reality, Plaintiffs suggest in their Motion that they have uncovered supposedly groundbreaking documents in Defendants' recent production that they claim "contradict sworn testimony" of three of the witnesses. ECF No. 276 at 3. Not so. As recounted above, that testimony consisted of witnesses testifying that they either did not recall the OXOTA tool or denying that it functioned in the manner suggested by Plaintiffs questioning. Furthermore, the overwhelming majority of the emails Plaintiffs cite in the Motion reflect non-substantive, technical discussions on topics like system updates and password changes for the tool. *See, e.g.*, ECF Nos. 276-3; 276-6; 276-11; 276-12; 276-13; 276-14. None of the cited exhibits support Plaintiffs' claim that the OXOTA tool impacted order matching or was used (or even could have been used) to take triangular arbitrage opportunities before those opportunities reached the Platform's order book.[2]

And even if the OXOTA tool had some tangential relevance to this case, it is Plaintiffs who decided to schedule the depositions of Messrs. Liconte, Rosenwald, Gilman, and Foster *before even asking for OXOTA-related documents*. That Plaintiffs knew about the OXOTA tool from the outset of this case is laid bare by the fact that they asked Mr. Liconte about it at his May 29, 2025 deposition, which was the very first deposition in this case. *See, e.g.*, Ex. 2 (T. Liconte Tr.), at 230:11-232:5. Plaintiffs did not serve OXOTA-related document requests or propose OXOTA-related search terms until August 18, 2025—nearly three months later and after the depositions of Messrs. Liconte, Rosenwald, and Gilman. And Mr. Foster's 30(b)(6) deposition (on behalf of State Street Bank) happened on September 16, 2025, which was after Plaintiffs had requested OXOTA-documents but before Defendants had time to complete their document review. Plaintiffs never once raised the prospect of needing these OXOTA documents—which at this point they knew conclusively they did not have—for Mr. Foster's deposition. *See, e.g.*, *Lyons v. New York Life Ins. Co.*, 2021 WL 2981586, at *2 (S.D.N.Y. July 15, 2021) (denying the motion in part because the moving party "was well aware that document and deposition discovery were ongoing when she chose to depose these individuals").

This complete sideshow does not warrant the additional burden and delay associated with re-opening four depositions. *See Lyons*, 2021 WL 2981586, at *1-2 (denying motion to re-open depositions where plaintiff "has not provided any basis to conclude that the burden of a second deposition would not outweigh its potential benefit") (citation modified). Indeed, as is, there are already eight depositions that have been taken or are scheduled to be taken after the previously-scheduled September 19, 2025 end date for fact discovery, an additional two international depositions

---

[2] Plaintiffs' separate reply in support of their motion seeking production of the OXOTA source code suggests that State Street Bank's Rule 30(b)(6) witness, Jim Foster, ███████████████████████████████████████████████████. *See* ECF No. 296 at 1. Not so. What the document Plaintiffs cite actually shows is, ███████████████████████████████████████████████████████████████████████████████████████ ECF No. 296-3.

ROPES & GRAY LLP

- 4 -                                                              October 1, 2025

for which the Court has already issued letters rogatory and that the parties are pursuing in foreign courts,[3] and six pending discovery motions that, if granted, would require four additional depositions and meaningful additional document discovery.[4] Re-deposing four individuals who have already been fully deposed would surely require further delays to the case schedule (beyond what is already needed, which is the subject of a separate forthcoming motion from Defendants).

### III.   If the Motion Is Not Denied, Any Relief Should Be Limited In Scope

If the Court does not deny the Motion, it should limit the scope of any re-opened depositions in the following manner: (i) any re-opened depositions should be limited to questions regarding documents produced in response to Plaintiffs' August 18, 2025 OXOTA-related document requests; (ii) the number of re-opened depositions should be no more than one or two witnesses; (iii) any re-opened deposition should last no more than one hour. *See, e.g.*, *Briceno v. USI Servs. Grp., Inc.*, 2014 WL 12841438, at *1 (E.D.N.Y. Mar. 17, 2014) (granting motion to reopen depositions but only for one hour and covering limited topics).

\* \* \*

For the foregoing reasons, Plaintiffs' Motion should be denied in its entirety, or, in the alternative, the relief it seeks should be limited as described herein.

---

[3] These post-discovery-deadline depositions are a function of (i) Plaintiffs seeking to reschedule them on account of medical issues facing one of their team members (Currenex's two 30(b)(6) witnesses, Joe Niciforo, and HC Tech's 30(b)(6) witness), (ii) Plaintiffs waiting until the end of fact discovery to offer a date (Zar Amrolia), (iii) Plaintiffs failing to timely produce DSquare's documents (Damian Mitchell and DSquare's 30(b)(6) witness), and (iv) added process associated with seeking testimony of witnesses living abroad (Russell Sears and Jan Stromme).

[4] Specifically, Defendants have moved to reopen the depositions of Nick Burrlock and Jermaine Harmon, *see* ECF Nos. 213 (opening letter motion) and 223 (reply), and for the issuance of letters rogatory for the testimony of David Hastings and Jad Sarmo, *see* ECF Nos. 253 (opening motion) and 300 (reply).

ROPES & GRAY LLP

Respectfully Submitted,

| ROPES & GRAY LLP | KATTEN MUCHIN ROSENMAN LLP |
|---|---|
| */s/ Alexander B. Simkin* | */s/ Peter G. Wilson* |
| Gregg L. Weiner | Peter G. Wilson |
| Alexander B. Simkin | Elliott M. Bacon |
| 1211 Avenue of the Americas | 525 W Monroe Street |
| New York, New York 10036 | Chicago, IL 60661 |
| Telephone: (212) 596-5000 | Telephone: (312) 902-5200 |
| Facsimile: (212) 596-9090 | Email: peter.wilson@katten.com |
| Email: gregg.weiner@ropesgray.com | Email: elliott.bacon@katten.com |
| Email: alexander.simkin@ropesgray.com | |
| | *Counsel for Defendant HC Technologies, LLC* |
| Robert G. Jones (*pro hac vice*) | |
| 800 Boylston Street | |
| Boston, Massachusetts 02199 | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| Telephone: (617) 951 7000 | |
| Facsimile: (617) 951 7050 | |
| Email: robert.jones@ropesgray.com | */s/ Carmine D. Boccuzzi Jr.* |
| | Carmine D. Boccuzzi Jr. |
| Samer Musallam (*pro hac vice*) | Rishi N. Zutshi |
| 2099 Pennsylvania Avenue NW | One Liberty Plaza |
| Washington, DC 20006 | New York, NY 10006 |
| Telephone: (202) 508-4600 | Telephone: (212) 225-2000 |
| Facsimile: (202) 508-4650 | Email: cboccuzzi@cgsh.com |
| Email: samer.musallam@ropesgray.com | Email: rzutshi@cgsh.com |
| *Counsel for Defendants Currenex, Inc., State Street Bank and Trust Company, and State Street Global Markets International Limited* | *Counsel for Defendant Goldman Sachs & Co. LLC* |

ROPES & GRAY LLP

- 6 -                                          October 1, 2025

## CERTIFICATE OF SERVICE

      I hereby certify that on October 1, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

      /s/ *Alexander B. Simkin*
      Alexander B. Simkin