

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

October 3, 2025

Alexander B. Simkin
T +1 212 596 9744
alexander.simkin@ropesgray.com

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 21B
New York, NY 10007

Re:     *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

  Defendants Currenex, Inc. ("Currenex"), State Street Bank and Trust Company, and State Street Global Markets International Limited (collectively, "Defendants") respectfully request that certain exhibits and the relevant portions of Plaintiffs' September 30, 2025 Reply to the Letter Motion to Compel regarding OXOTA source code, billing records, and Platform volume information ("the Reply") remain under seal or redacted.  *See* ECF No. 296.  Specifically, Defendants request that seven exhibits cited in the Reply remain under seal in their entirety and one exhibit remain under seal in part.[1]

  The eight at-issue exhibits (the "Exhibits") consist of seven internal Currenex and State Street emails and excerpts of the deposition testimony of one witness.  The Exhibits reflect commercially sensitive and proprietary information about State Street's FX trading strategy and the Currenex Platform's operation, including strategies for future FX trading, detailed information about the Platform's technical configuration, and commercially sensitive billing and commission rates.  As explained below, Defendants respectfully submit that sealing is justified under controlling legal precedent.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).

  The Exhibits directly implicate Defendants' commercially sensitive information and privacy interests.  It is clear from their face that they contain commercially sensitive and proprietary information regarding State Street's foreign exchange trading strategy and the technical operation of

---

[1] These exhibits are referenced on the case docket as: 296-2, 296-3, 296-4, 296-5, 296-6, 296-7, 296-8, and 296-9.  Defendants request that Exhibit 296-9 remain under seal in part, and the other Exhibits remain under seal in their entirety.  Defendants note that versions or exact duplicates of five of the email Exhibits (ECF Nos. 296-2, 296-3, 296-4, 296-5, and 296-6) were also cited by Plaintiffs in their September 24, 2025 Letter Motion to Compel (ECF No. 276).  Defendants previously filed a motion to keep them under seal (ECF No. 293).

Hon. Lewis A. Kaplan                                                                                              October 3, 2025

the Currenex Platform.  For example, the email at ECF No. 296-2 reflects a discussion of State Street's FX trading results in the context of a specific State Street price stream and discloses the manner in which State Street settled the trades being discussed in the email chain.  The chain also reflects State Street's planned strategy with respect to future FX trading via that specific price stream.  The email at ECF No. 296-3 reflects a detailed synopsis of State Street's FX trading strategy on the Currenex Platform and a discussion of the order types submitted by State Street on the Platform.  The emails at ECF Nos. 296-4 and 296-5 contain detailed information about the Currenex Platform's system architecture, including instructions for configuring users, troubleshooting procedures, and user login credentials.  The email at ECF No. 296-6 includes the Currenex Platform's proprietary trade execution data and trade monitoring systems.  Both emails at ECF Nos. 296-7 and 296-8 contain sensitive information regarding the management of trading accounts on the Platform, the processes by which trades are executed, and the methods by which Currenex monitors trading activity.  In addition, portions of the deposition transcript excerpt at ECF No. 296-9 (specifically, lines 130:21-23 and 131:6-11) reflect the commission rates a Currenex client was paying for FX currency volume traded via a specific price stream.

In the highly competitive and dynamic FX trading market, revealing information reflecting State Street's FX trading strategies, Currenex's billing and commission rates, and confidential technical details regarding the design, operation, and monitoring of the Platform could severely damage Currenex's reputation and harm the Defendants' competitive standing by handing their competitors access to sensitive information and market intelligence.  The information contained in the Exhibits could also, if exposed, create vulnerabilities with respect to the security of the Platform and, accordingly, pose a risk of harm to Currenex and its clients.  Such confidential and commercially sensitive information are among the types of information routinely found to be appropriately sealed. *See In re B&C KB Holding GmbH*, 2023 WL 2021299, at *1 (S.D.N.Y. Feb. 14, 2023) (courts "routinely permit parties to seal or redact commercially sensitive information in order to protect confidential business and financial information."); *Hesse v. SunGard Sys. Int'l*, 2013 WL 174403, at *2 (S.D.N.Y. Jan. 14, 2013) (sealing documents including a company's "billing rates and project pricing" as "proprietary business information"); *Locus Techs. v. Honeywell Int'l Inc.*, 2024 WL 5103334, at *2 (S.D.N.Y. Dec. 13, 2024) (granting motion to seal deposition transcript excerpt for witness who discussed a party's pricing for its software services).

The Second Circuit has also made clear that where the documents at issue "play only a negligible role" in a court's execution of its Article III duties, "the weight of the presumption [of public access] is low."  *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir.1995).  Here, redaction of the deposition transcript Exhibit (ECF No. 296-9) is appropriate because Plaintiffs' citation to the deposition excerpt is gratuitous.  *See* ECF No. 259.  The deposition excerpt provides no further information on Plaintiffs' supposed need for additional discovery at this late stage of the litigation.  Nor does it have any bearing on whether the OXOTA-related source code is relevant, whether Plaintiffs already possess the fee and volume data they presently seek, or whether Currenex maintains fee data in a centralized format.

For the reasons set forth above, the Court should order the following: (i) the Exhibits referenced at ECF Nos. 296-2, 296-3, 296-4, 296-5, 296-6, 296-7, and 296-8 remain sealed in their

Hon. Lewis A. Kaplan                                                                                      October 3, 2025

entirety, and (ii) the content reflected at 130:21-23 and 131:6-11 of ECF No. 296-9 be redacted, but otherwise unsealed.


 Respectfully submitted,

*/s/ Alexander B. Simkin*
Alexander B. Simkin


cc: Counsel of record (via ECF)