**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; XTX MARKETS LIMITED; and DSQUARE TRADING LIMITED, | Case No. 21-cv-06598 |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR THE ISSUANCE OF LETTERS ROGATORY** |
| vs. | |
| CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5, | |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND .......................................................................................................... 3

    A.    The Case Schedule.......................................................................................... 4

    B.    Edmar and Irish's April 2025 Privilege Log and Extensive Testimony About Velador............................................................................................... 5

    C.    XTX's December 2024 Document Production and Extensive Testimony About Velador............................................................................................... 6

    D.    DSquare's August 2025 Document Production and Extensive Testimony About Velador............................................................................................... 7

    E.    Defendants Question Former Currenex Employees About Velador ....................... 7

    F.    Defendants Request Marney's Deposition, then Abandon That Request ............... 8

    G.    Defendants Deploy This Same Argument Regarding Velador Multiple Times Before the Fact Discovery Cutoff ................................................................. 8

    H.    It Is Undisputed That "Last Look" Functionality Was Known by All by at Least 2015 ....................................................................................................... 9

    I.    The "New Evidence" Cited in Defendants' Motion ................................................. 10

LEGAL STANDARD ................................................................................................... 10

ARGUMENT ............................................................................................................. 12

I.    THE COURT SHOULD DENY THE REQUEST FOR ASSISTANCE AS UNTIMELY ........................................................................................................ 12

    A.    Defendants Had All the Evidence to Bring This Motion Months Ago ................. 12

    B.    The "Newly Discovered Evidence" Opens No New Lines of Questioning ........... 13

II.    EVERYTHING ELSE DEFENDANTS POINT TO IS OLD NEWS AND IRRELEVANT ................................................................................................... 13

    A.    Defendants Knew of and Already Had an Opportunity to Question Witnesses About Velador's Irrelevant Interactions with XTX ............................... 14

    B.    Defendants Knew of and Already Had an Opportunity to Question Witnesses About Velador's Irrelevant Interactions with DSquare ....................... 15

    C.    Defendants Chose Not to Pursue Discovery as to Caspar Marney ......................... 17

    D.    Defendants Chose Not to Pursue Discovery as to Colin Lloyd .............................. 18

    E.    Defendants Knew of and Already Had an Opportunity to Discover Velador's Interactions with Absent Class Members but Chose Not to Do So ................................................................................................................. 18

i

III.    DEFENDANTS' MOTION WOULD INVADE PRIVILEGE AND WORK
        PRODUCT...................................................................................................................21

IV.    DEFENDANTS' REQUEST FOR DOCUMENTS FROM COUNSEL'S
        EXPERT CONSULTANTS SHOULD BE REJECTED ....................................................23

CONCLUSION.........................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*In re Actos Antitrust Litig.*,
2024 WL 4251891 (S.D.N.Y. Aug. 9, 2024) ...........................................................................20

*Axiom Inv. Advisors, LLC v. Barclays Bank PLC and Barclays Cap., Inc*.,
No. 1:15-cv-09323 (S.D.N.Y. Nov. 25, 2015) .....................................................................5, 9

*In re Bofi Holding, Inc. Sec. Litig.*,
2021 WL 3700749 (S.D. Cal. July 27, 2021) ..........................................................................22

*Edmonson v. Eagle Nat'l Bank*,
922 F.3d 535 (4th Cir. 2019) ...................................................................................................19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .................................................................................................................20

*HDMI Licensing Adm'r, Inc. v. Availink, Inc.*,
2025 WL 799036 (N.D. Cal. Mar. 13, 2025) ..........................................................................11

*Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*,
399 F. Supp. 3d 120 (S.D.N.Y. 2019) .....................................................................................19

*Joseph v. Gnutti Carlo S.p.A.*,
2016 WL 4083433 (S.D.N.Y. July 25, 2016) ..........................................................................11

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
62 F. Supp. 3d 358 (S.D.N.Y. 2014) .......................................................................................21

*In re Lifetrade Litig.*,
2022 WL 3644357 (S.D.N.Y. Aug. 24, 2022) ........................................................................21

*Merck Sharp & Dohme Corp. v. Sandoz, Inc.*,
2013 WL 12203112 (D.N.J. June 7, 2013) .............................................................................11

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
229 F.R.D. 441 (S.D.N.Y. 2004) .............................................................................................21

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co*.,
2015 WL 4757601 (S.D.N.Y. Aug. 12, 2015) ........................................................................10

*Pearlstein v. BlackBerry Ltd*.,
332 F.R.D. 117 (S.D.N.Y. 2019) .............................................................................................11

*Rodriguez v. Seabreeze Jetlev LLC*,
  620 F. Supp. 3d 1009 (N.D. Cal. 2022) ........................................................... 21

*Route1 Inc. v. AirWatch LLC*,
  2018 WL 6427145 (D. Del. Dec. 7, 2018) ....................................................... 11

*S.E.C. v. Beacon Hill Asset Mgmt. LLC*,
  231 F.R.D. 134 (S.D.N.Y. 2004) ...................................................................... 21

*Schomburg v. New York City Police Dep't*,
  298 F.R.D. 138 (S.D.N.Y. 2014) ...................................................................... 22

*United Ass'n Nat'l Pension Fund v. Carvana Co.*,
  2025 WL 2337108 (D. Ariz. Aug. 13, 2025) ................................................... 22

## <u>Rules/Statutes</u>

Fed. R. Civ. P. 26 ...................................................................................................... 10

Fed. R. Civ. P. 30(b)(6) ............................................................................................. 13

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants'

motion for the issuance of letters rogatory.  ECF 362 ("Mot.").[1]

## PRELIMINARY STATEMENT

Plaintiffs write to oppose yet another untimely request by Defendants to obtain overseas

testimony and documents—this time from two individuals, Caspar Marney and Colin Lloyd.

Both each worked with the litigation consulting firm Velador Associates ("Velador") and

performed investigatory work prior to the initial filing of the complaint in this action at the

direction of Plaintiffs' counsel and other law firms, including Korein Tillery, Scott+Scott, and

Hausfeld LLP.  Marney is also a non-attorney member of Ruddy Gregory, PLLC, one of

Plaintiffs' counsel of record.

---

[1]  Defendants filed their motion on October 28, 2025.  On November 3, 2025, the Court, perhaps believing that Defendants' motion was unopposed, granted the motion, before Plaintiffs had the opportunity to file their opposition. ECF 366.  In an Order dated November 4, 2025, the Court stated that "[t]he Court's individual practices require opposing papers on discovery matters within 2 business days.  The Court may treat plaintiffs' belated response as a motion for reconsideration."

Plaintiffs respectfully submit that they construed Defendants' motion as a motion governed by the Local Rule 6.1(a), which provides that "[o]n all motions and applications under Fed. R. Civ. P. 26 through 27 inclusive, . . . . any opposing or response papers must be served within seven days after service of the moving papers."  While Plaintiffs understand the Court's individual practices regarding briefing schedules on "discovery disputes" (Individual Rules at 2) Plaintiffs understood Defendants' motion *not* to fall within that category because it was 13 pages in length, and accompanied by a three-page declaration.  *See* ECF 362, 362-22; see also Individual Rules at 2 (stating that "discovery disputes" shall not exceed four (4) pages in length, including affidavits and declarations").  Plaintiffs believed this understanding was correct in light of the treatment of prior motions for Hague assistance.  *See* ECF Nos. 252, 280, 299 (motion for letters rogatory as to Jad Sarmo and David Hastings briefed according to Local Rule 6.1, with opposing papers served seven days after moving papers, and reply papers served three days after opposing papers).

Plaintiffs apologize for this confusion, and, pursuant to the Court's November 4 Order (ECF 369), now present this motion as a motion for reconsideration.  Motions for reconsideration should be granted where the moving party identifies a "need to correct a clear error or prevent manifest injustice."  *Diakite v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-00725 (ALC), 2024 WL 2884047, at *1 (S.D.N.Y. May 14, 2024).  Plaintiffs submit it would be manifestly unjust to grant Defendants' motion without consideration of Plaintiffs' opposition, for the reasons herein.

Defendants inexplicably claim they were powerless to seek these depositions earlier, a position flatly contradicted by the record. The names Marney, Lloyd, and Velador have appeared repeatedly in prior motion practice, deposition testimony, and documents produced well before the close of fact discovery. Indeed, just before the September 19 discovery cutoff, Defendants sought the deposition of a different Velador employee, and weeks earlier sought to re-open depositions, making *the exact same arguments* they advance now.

The request fails for multiple reasons. First and foremost, it is ***inexcusably untimely***. Fact discovery ended on September 19. Defendants possessed all the necessary facts to bring this motion months ago. They have known since at least April about the identities and the roles of Marney and Lloyd—the very witnesses they now claim only recently became important. In early August, Defendants ***specifically requested the deposition of Marney*** for the same reason they present now: to question him regarding communications with third parties prior to the filing of the initial complaint. When Plaintiffs declined to make Marney available, for perfectly legitimate reasons, Defendants simply abandoned the request rather than move to compel or seeking Hague assistance.

Second, the request concerns irrelevant information. Defendants contend they need discovery to argue that Plaintiffs' fraud claims are time-barred because Plaintiffs' counsel and their agents (i.e., Velador) purportedly knew about Currenex's undisclosed numerical priority system. But the knowledge of Plaintiffs' counsel and its agents is irrelevant for statute-of-limitations purposes. What matters is the knowledge of the named Plaintiffs, XTX Markets Limited ("XTX") and DSquare Trading Limited ("DSquare"). Defendants have already received full discovery from both, including approximately 800,000 documents and depositions of all key employees (including each founder and CEO). The record shows that neither XTX nor DSquare

2

communicated with Marney, Lloyd, or anyone else regarding the alleged conduct before suit was filed. The additional discovery sought will yield nothing but delay and improper intrusion into counsel's work.

Third, the request seeks discovery plainly protected by attorney-client privilege and work product. Open-ended questioning of Marney and Lloyd regarding work performed at counsel's direction would inevitably intrude on privileged communications and core work product arising from counsel's pre-complaint investigations, including work undertaken by the law firm Korein Tillery, Scott+Scott, and Hausfeld LLP, and potentially other law firms. *See* Marney Dec. ¶¶ 4-6.

Finally, this motion is yet another step in Defendants' drip-drip strategy of prolonging discovery after its close nearly two months ago. Defendants' objective is apparent: (1) distract Plaintiffs' counsel with needless discovery disputes while Plaintiffs prepare their class certification motion by the November 18 deadline, (2) manufacture "new" discovery to justify seeking an extension of Defendants' deadline to oppose certification, and (3) continue efforts to pierce Plaintiffs' pre-complaint investigation by targeting non-testifying expert consultants at Velador. The Court should put an end to these tactics.

## BACKGROUND

Plaintiffs represent a putative class of traders who used Currenex's FX trading platform. Among other things, the complaint alleges that, contrary to its public representations, Currenex was resolving order-book ties by having employees secretly assign priority numbers to Trading Defendants State Street Bank, Goldman Sachs, and HC Tech. ECF 184 ¶¶ 1, 116-28. This practice enabled the Trading Defendants to jump the line and execute trades without having to provide the most competitive price. *Id.*

A.    <u>**The Case Schedule**</u>

Fact discovery began on August 18, 2023.  ECF 98 at 4.  The original schedule

contemplated completion of fact discovery by August 18, 2024, and completion of class-

certification briefing by June 5, 2025.  *Id*. at 4, 5.

The Court extended the schedule twice.  First, on August 15, 2024, the Court extended

fact discovery to May 19, 2025, with class-certification briefing to conclude by March 6, 2026.

ECF 143 at 2-4.  Second, on May 13, 2025, the Court extended these dates again to September

19, 2025 and January 23, 2026, respectively.  ECF 161 at 2, 3.

Fact discovery closed, as scheduled, on September 19, 2025.  ECF 161 at 2.  On the final

day of discovery, the parties submitted a joint letter to the Court in which they acknowledged

that two Hague depositions (Russell Sears and Jan Stromme) would necessarily take place after

the close of discovery because "the foreign processes have not yet resulted in dates being issued

for their respective depositions."  ECF 255 at 1.  Nowhere in that letter did Defendants mention

any additional discovery related to Velador.[2]

Plaintiffs' class-certification motion is due November 18, 2025.  ECF 161 at 3.

---

[2]   As Plaintiffs have previously described (ECF 280 at 6, 15), Defendants have signaled for
months that they intend to seek an extension of their time to oppose Plaintiffs' class certification
papers, while Plaintiffs' November 18, 2025 date would remain the same, even though the Court
has already considered and rejected this proposal.  *See* ECF 161 (crossing out proposed
"February 23, 2026" date).  On September 30, Defendants represented to the Court that they
would "promptly seek to modify aspects of the schedule in this case."  ECF 299 at 4.  It is now
November, and Defendants have yet to make their "prompt" motion to modify the schedule.
However the Court decides this motion, it should not permit Defendants to engineer a path,
through belated and frivolous discovery disputes, to obtaining the extended briefing schedule the
Court already rejected.

**B.**     **Edmar and Irish's April 2025 Privilege Log and Extensive Testimony About Velador**

On April 14, 2025, Plaintiffs Edmar and Irish produced a privilege log reflecting communications between Velador employees and Edmar/Irish founder Matthew Edwards, beginning in August 2018.[3]  The log specifically identified Colin Lloyd and Caspar Marney as consultants working at the direction of counsel "investigating claims against FX platforms,"[4] and in some entries "investigating claims against Currenex."[5]  Velador is a consulting firm that acted, at all relevant times, at the direction and control of law firms.[6]  During the period relevant to Defendants' motion—2018 and 2019[7]—those law firm were, at a minimum, Korein Tillery, Scott+Scott, and Hausfeld LLP.  As described in the Declaration of Aaron Zigler, Korein Tillery had retained Velador in connection with various matters, including the unrelated "last look" cases concerning whether banks' use of last-look functionality was adequately disclosed.  Zigler Dec. ¶¶ 6-7.  Marney, in his accompanying Declaration, attests that Velador also performed consulting work at the direction of the law firms Scott+Scott and Hausfeld LLP (as well as Korein Tillery) in connection with the claims administration process for the *In re Foreign Exchange Benchmark Rates Antitrust Litigation* ("*Forex*") settlement.  *See* Marney Dec. ¶¶ 4-6 (also attesting that Velador worked as consultants at the direction of several other law firms during the period in question).

On August 18 and 19, Edwards was deposed individually and as a corporate representative for Edmar and Irish.  He was questioned extensively about ███████████

---

[3]  *See* ECF 280-1.

[4]  *Id*.

[5]  *Id.*

[6]  *See* ECF 261 at 1-2 (discussing "last look" cases); *Axiom Inv. Advisors, LLC v. Barclays Bank PLC and Barclays Cap., Inc*., No. 1:15-cv-09323 (S.D.N.Y. Nov. 25, 2015), ECF 1.

[7]  ECF 362 at 15 ("Specifically, Defendants are seeking documents and testimony from 2018 and 2019.").

███████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████ Ex. 1 (Edwards Tr.) at 55:22-25.

Marney's name alone ████████████████████████████████████

**C.    XTX's December 2024 Document Production and Extensive Testimony
About Velador**

Defendants were aware of Velador interactions with one XTX employee long before

April 2025.  In December 2024, XTX produced over 120 documents involving ████████████

██████████████████████████████████████████████████

██████████ Not only have Defendants had these documents for *almost a year*, but they are

irrelevant. ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

Defendants subsequently deposed five XTX witnesses.  Defendants questioned four of

them—Ben Klixbull, Jeremy Smart, XTX co-chair Zar Amrolia, and XTX founder Alex

Gerko—about Marney and their communications with him.  The testimony showed that ████████

██████████████████████████████████████████████████

███████████████████████████████████

### D.    DSquare's August 2025 Document Production and Extensive Testimony About Velador

DSquare produced its documents on August 11, 2025, including 74 emails involving Velador or Marney predating the initial complaint.  None suggest any discussion of the allegations at issue.  Most concern Velador's assistance preparing DSquare's claims in the *Forex* settlement, in connection with Velador's work at the direction of Korein Tiller, Scott+Scott, and Hausfeld LLP.

Defendants questioned DSquare founder Damian Mitchell over two days (October 13 and October 14, 2025), repeatedly asking about his contacts with Velador.[8]  The words "Marney," "Lloyd," or "Velador" appear approximately *190 times* on the deposition transcripts.  Mitchell testified unequivocally ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████.  Mitchell has separately attested to the same in a sworn declaration.  ECF 305 ¶¶ 6, 9.

### E.    Defendants Question Former Currenex Employees About Velador

On July 31, 2025, Defendants deposed former Currenex employee Nick Burrlock, who had spoken with Plaintiffs' counsel during the pre-suit investigation.  Defense questioning focused on ███████████████████████████████████ ██████████████████████████████████.

On August 6, 2025, Defendants deposed former Currenex employee Jermaine Harmon, again focusing on ████████████████████████████████████████ ███████████████████.

---

[8]  Mr. Mitchell's depositions were originally scheduled for September 18 and 19.  They were pushed back at the request of Defendants, who claimed they were not ready to take them at the dates the parties originally agreed upon.

## F.    Defendants Request Marney's Deposition, then Abandon That Request

On *August 5, 2025*, Defendants informed Plaintiffs that they intended to seek the deposition of Marney.  Plaintiffs responded on August 12 that they would oppose.  Defendants did not raise the matter again.

## G.    Defendants Deploy This Same Argument Regarding Velador Multiple Times Before the Fact Discovery Cutoff

On August 25, rather than pursue a deposition of Marney himself, Defendants moved to re-open Burrlock's deposition so that they could question him about the substance of his communications with counsel and Marney during their pre-complaint investigation.  ECF 213.  Defendants also asked the Court to compel Plaintiffs' counsel (including Marney) to produce their communications with third-parties.  In their motion papers, Defendants acknowledged they were aware that former Plaintiffs Edmar Financial Company, LLC and Irish Blue & Gold, Inc. "were discussing suing Currenex with employees of Caspar Marney's consulting firm . . . going back to at least as early as 2019."  ECF 222 at 2.  The Court denied Defendant's motion.  ECF 311.

On September 18—the day before the close of fact discovery—Defendants moved for letters rogatory for overseas testimony as to David Hastings.  ECF No. 253.  Defendants argued that Hastings' testimony was "relevant to Defendants' statute of limitations defense because . . . Lloyd and Velador met with Plaintiffs Irish and Edmar about a potential lawsuit more than two years prior to this lawsuit" (ECF 253 at 12), and because Hastings would "testify about his work at Velador, which apparently had been soliciting potential plaintiffs to bring claims in the lawsuit years before it was filed."  ECF 300.  The Court granted the motion.  ECF 337.

### H.   It Is Undisputed That "Last Look" Functionality Was Known by All by at Least 2015

Defendants again devote significant space to Velador's involvement in the unrelated "last look" matters.  Defendants suggest these cases relate to the allegations here simply because the phrase "last look" appears in the complaint, and that new discovery is necessary to probe what any Plaintiff may have discussed or known about the industry practice of "last look."  They are wrong.  ***To be clear:  Plaintiffs will not argue or base any claim on the assertion that Plaintiffs were not aware that Currenex had last-look functionality until recently.***  That Plaintiffs (and the entire industry) knew about "last look" has been indisputable since 2015, when the first complaints challenging banks' use of that practice were filed.  *See Axiom Inv. Advisors, LLC v. Barclays Bk. PLC, et al.*, 15-cv-9323-LGS (S.D.N.Y. filed Nov. 25, 2015).  And that Plaintiffs (and the entire industry) knew that *Currenex* employed last-look functionality has also been indisputable since 2015, when Currenex publicly disclosed its use of last-look.

That Plaintiffs do not dispute they knew of last-look functionality since at least 2015 moots the current motion, but to be clear this ultimately is irrelevant, because this case is not about last-look disclosures.  It concerns the undisclosed assignment of priority numbers to determine which platform participants would win ties.  The only relevance "last look" has to *this* case is in its effect of turbocharging the damages caused by Currenex's priorities scheme, which had the effect of causing customers to match much more frequently with the Trading Defendants (who had last-look rights) on the Currenex platform.  *See* ECF 184 ¶ 178.  The *disclosure* of last look is not at issue in this case.  Indeed, the complaint itself states:  "For the sake of clarity, this action is *not* about whether "last look" was disclosed or represents an acceptable platform feature in the abstract."  ECF 184 ¶ 174.

Even if Plaintiffs' knowledge of last look mattered (it does not), discovery of their knowledge would be irrelevant because Plaintiffs admit—and Defendants agree—that XTX, DSquare, and the entire industry knew of last-look functionality long before the limitations period.

## I.    The "New Evidence" Cited in Defendants' Motion

As discussed above, virtually every document cited in Defendants' motion was produced long ago and has been explored extensively in deposition testimony.  Only six documents cited in Defendants' motion can be fairly characterized as "new," i.e., produced by Edwards following the Court's October 3, 2025 order.  Of these, Defendants discuss only one at any length—██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████.[9]  Ex. 1 (Edwards Tr.) at 72:3-75:2.

## LEGAL STANDARD

District courts have the inherent authority to manage their dockets, including the enforcement of deadlines.  *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co*., 2015 WL 4757601, at *3 (S.D.N.Y. Aug. 12, 2015).  This includes denying belated requests for

---

[9]    The other five documents cited by Defendants are: a████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
(ECF 362-10).

the issuance of letters rogatory—mindful that compliance depends on foreign judicial systems, which can take months. *See, e.g.*, *HDMI Licensing Adm'r, Inc. v. Availink, Inc.*, 2025 WL 799036, at *10 (N.D. Cal. Mar. 13, 2025) (denying as untimely request for Hague assistance filed "less than two months" from discovery cutoff given it "would take six months to a year (or more) for compliance"); *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, 2013 WL 12203112, at *4 (D.N.J. June 7, 2013) (denying motion for letters rogatory as untimely where filed less than two months before discovery close).

Letters rogatory must fall within the scope of proper discovery under Rule 26. *See Joseph v. Gnutti Carlo S.p.A.*, 2016 WL 4083433, at *1-2 (S.D.N.Y. July 25, 2016). The Court must limit discovery that is not relevant to any claim or defense, is not proportional, or is unreasonably cumulative or duplicative. *See* Fed. R. Civ. P. 26(b)(1); *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 121 (S.D.N.Y. 2019) (denying in part motion for letters rogatory as "not proportional to the needs of the case"). "Because of the system's cumbersome nature, where the relevancy or materiality of the testimony sought is doubtful, the court should not grant the application." *Route1 Inc. v. AirWatch LLC*, 2018 WL 6427145, at *1 (D. Del. Dec. 7, 2018) (denying motion for letters rogatory as "speculative, unnecessary, and a fishing expedition").

Defendants therefore bear the burden of making a "reasonable showing that the evidence sought may be material." Mot. at 11-12; *see also* ECF 362-22 ¶ 9(1) (Defendants' expert on foreign law confirming that requests for assistance to English Courts must not be "for investigatory purposes," but it "must be shown that the proposed witness . . . has relevant evidence to give").

## ARGUMENT

### I. THE COURT SHOULD DENY THE REQUEST FOR ASSISTANCE AS UNTIMELY

#### A. Defendants Had All the Evidence to Bring This Motion Months Ago

The names Velador, Lloyd, and Marney appear hundreds of times in documents, depositions, and prior discovery motions, all before the close of fact discovery. Defendants' assertion that "it was impossible to bring these requests earlier" is patently false.

The privilege log for Plaintiffs Edmar and Irish—identifying Velador, Marney, and Lloyd as discussing "Currenex claims"—was produced in April 2025, more than six months before the close of fact discovery. Defendants therefore had ample time to seek their testimony.

Defendants likewise claim that "recent" discovery confirms Velador regularly communicated with XTX and DSquare. ECF 362 at 5. Again, false. The documents Defendants cite were produced long ago. The XTX document on which Defendants rely (ECF 362 at 9) was produced in *December 2024*. The DSquare document cited (ECF 362 at 9) was produced in early August 2025, around the same time Defendants requested—and then abandoned—the deposition of Marney.

Nor can Defendants credibly claim they only recently came to appreciate Velador's role. Beginning more than two years ago, Defendants have doggedly pursued discovery regarding Plaintiffs' counsel's pre-suit investigation and communications with third parties. ███████ ████████████████████████████████████████████████████████████ ██████████████████████. Defendants questioned virtually every Plaintiff witness about pre-suit contacts with Marney, including: Zar Amrolia (XTX co-chair), Alex Gerko (XTX founder), Ben Klixbull (XTX), Jeremy Smart (XTX), Matthew Edwards (Edmar and Irish founder), AND

Damian Mitchell (DSquare founder).[10] Defendants have even deposed *Currenex's own former employees* (Nick Burrlock and Jermaine Harmon) about Marney.[11] Having already pursued that line of inquiry exhaustively, Defendants cannot now justify more depositions abroad, months after the discovery cutoff.

### B.    The "Newly Discovered Evidence" Opens No New Lines of Questioning

The only purportedly "new" document reflecting the term "priorities" is a single August 2018 call invitation. ECF 362-3. Nothing else cited by Defendants is new; all is either: (i) previously produced and explored, or (ii) related to "last look," which is irrelevant here.

None of the "new" documents have anything to do with XTX or DSquare—they relate only to the now-dismissed Plaintiffs Edmar and Irish. As noted, Defendants have known since April 2025 that Velador consulted on potential claims with Edmar and Irish. They attempted to depose (and then abandoned) Marney months ago. They have questioned XTX and DSquare witnesses repeatedly about their communications with Velador. The discovery they now seek is cumulative and unnecessary.[12]

## II.    EVERYTHING ELSE DEFENDANTS POINT TO IS OLD NEWS AND IRRELEVANT

Defendants argue the 15 documents produced by Edmar and Irish show Velador had "direct, substantive communications with Named Plaintiffs" about "bringing the instant case."

---

[10] Ex. 2 (Amrolia Tr.) at 101:1-104:13; Ex. 3 (Gerko Tr.) at 62:8-10, 97:15-21; Ex. 4 (Klixbull Tr.) at 43:13-17; Ex. 5 (Smart (30(b)(6)) Tr.) at 65:15-67:20; Ex. 1 (Edwards Tr.) at 55:15-25; Ex. 6 (Mitchell Tr.) at 88:21-93:3.

[11] *See, e.g.*, Ex. 7 (Burrlock Tr.) at 111:22-112:7; Ex. 8 (Harmon Tr.) at 50:14-21.

[12] The Court will recall that on the final day of fact discovery, Defendants (having deleted nearly all emails for most of the key custodians) produced over 11,000 emails, many of which ███████████████████████████████████████. *See* ECF 277. The Court nonetheless declined Plaintiffs' requests to re-open four depositions so that the witnesses could be questioned about these new documents. ECF 341. The suggestion that these 15 documents—and as a practical matter, just one of the 15—warrant overseas depositions after the close of fact discovery is absurd on its face.

ECF 362 at 14. Even assuming it could be derived from ████████████████████████

███l, the assertion is misleading for another reason: The "named Plaintiffs" involved in those

15 communications are merely Edmar and Irish, who have been dismissed from this case. ECF

357. As discussed below, there is nothing in the "newly discovered evidence" that relates to

DSquare, XTX, or any other class members for that matter.

     **A.**    <u>**Defendants Knew of and Already Had an Opportunity to Question Witnesses**</u>
<u>**About Velador's Irrelevant Interactions with XTX**</u>

     None of the 15 recently produced Edwards documents mentions or otherwise involves

XTX in any way. Defendants cite only *one document* to support their suggestion that there is

reason to suspect there were "direct, substantive discussions" between XTX and Velador about

bringing this case. That document was produced nearly one year ago, and cannot justify this

belated request.



     The document Defendants cite is ████████████████████████████

████████████████████████████████. It is not related in

any way to this case. Rather, as discussed above, the email is ████████████████████

████████████████████████. Defendants also cite

Rule 30(b)(6) testimony from XTX's corporate representative to the effect that XTX ████████

████████████████████████████████████████

████████████████████████████████████

████████ECF 362 at 15. ████████████████████████████████

████████████████████ has no relevance to any statute-of-limitations argument.

     As discussed above, Defendants have been aware since December 2024 that ████████

████████████████████████████. XTX's December 2024 document

production contained more than 120 documents involving Marney and Velador, including the

14

correspondence between ████████████████████████████████████████████

Defendants portray as only recently unearthed evidence of something unsavory.  These

innocuous and irrelevant documents all arose from the fact that ██████████████████

████████████████████████  Combined with the fact that correspondence with Marney (with a

Velador email address) appeared on the privilege log of former Plaintiffs Edmar and Irish,

Defendants have known that Velador (through Marney and Lloyd) was communicating with

Edmar and Irish since April 2025.

Accordingly, Defendants questioned no fewer than four XTX witnesses thoroughly about

██████████████████████████████████████  As noted above, each witness

confirmed they ███████████████████████████████████████████

████████████████████████████████████████████.  This clear

testimony is confirmed by the accompanying declarations of Marney and Lloyd, who each

declare they never spoke to XTX about this case prior to the initial complaint and are not aware

of anyone else at Velador having done so.  *See* Marney Dec. ¶¶ 6, 7;  Lloyd Dec. ¶ 5.

**B.**    **Defendants Knew of and Already Had an Opportunity to Question Witnesses About Velador's Irrelevant Interactions with DSquare**

To insinuate that DSquare had discussions with Velador about bringing this case,

Defendants cite three documents produced by DSquare.  *See* ECF 362-2, 362-16, 362-17.  Each

of these emails were produced months ago, and as with XTX, DSquare is not mentioned or

otherwise involved in any of the 15 Edwards documents.

The three documents cited by Defendants are also all irrelevant, as each relates solely to

██████████████████████████████████████.  One of the three emails is a late 2017

email in which ██████████████████████████████████████.  ECF 362-

2.  Mitchell has already confirmed in a sworn declaration to this Court that this meeting

concerned the submission of complex claims forms in the *Forex* settlement.[13]  ECF 305 ¶ 6.  The other two emails, on their face, plainly relate to the same topic.  *See* ECF 362-16 (July 2018 email exchange concerning ████████████████████████████████; ECF 362-17 (November 2018 email exchange concerning ██████████████████████  It should go without saying that ██████████████████████████████ has nothing to do with conduct alleged in this case, i.e., Currenex's secret assignment of priority numbers to determine which platform users would win ties at the top of the order book on its platform.

As described above, Defendants recently questioned Mitchell, DSquare's founder, at length about his communications with Marney and Velador.  It speaks volumes that Defendants do not cite a single fact learned in that deposition that would support the assertion that Velador had any communications with DSquare about "bringing this case."  The closest Defendants come is to that Mitchell testified that █████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████.  ECF 362 at 10.  For his part, Mitchell has already declared to this Court that if any such discussions occurred, "I believe they would have been brought to my attention and I would have remembered it taking place, because the allegations in this case are so serious."  ECF 305 ¶ 10.  In any event, this does not justify a new request to depose Marney and Lloyd, because Defendants will shortly be deposing Sarmo himself, and will

---

[13]  Defendants insinuate there is something untoward about the fact that Mr. Marney and Mark Ruddy—both members of Ruddy Gregory LLP, one of Plaintiffs' counsel in this case— first contacted Mr. Mitchell about this case in January 2025 at his personal Gmail address.  ECF 362 at 10.  At Defendants' request, Plaintiffs have run search terms proposed by Defendants on Mr. Mitchell's personal Gmail account, and have confirmed that there were no communications between Mr. Mitchell and Mr. Marney relating to the allegations in this case prior to that initial January 2025 email.

be free to ask him whether he ever corresponded with Velador employees about "bringing this case" outside the statute of limitations period.

Defendants have already had full discovery on whether DSquare and Velador discussed the conduct alleged in this case the case was filed.  Mitchell has testified unambiguously that ███ ████████████████████████████████████████████ ███[14]  Ex. 6 (Mitchell Tr.) at 88:9-15.  He has separately attested to the same in a declaration submitted to this Court.  ECF 305 ¶¶ 6, 9.  And his testimony is confirmed by the declarations of Marney and Lloyd, who each state they never spoke to DSquare about this case prior to the initial complaint and are not aware of anyone else at Velador having done so.  *See* Marney Dec. ¶ 6,7; Lloyd Dec. ¶ 5.

**C.    Defendants Chose Not to Pursue Discovery as to Caspar Marney**

Defendants have known since December 2024 that Marney had communications ████ ███████████████████████████████████████████████████████████████████ ████████████████████████  They have known since April 2025 that Marney was in contact with Edmar and Irish prior to the filing of the initial complaint.  Defendants even requested the deposition of Marney in early August following the deposition of former Currenex employee Nick Burrlock.  When Plaintiffs refused to produce Marney, Defendants made the decision not to pursue the matter further.

Nothing in the 15 emails produced by Edmar and Irish changes any of this.  Defendants cannot credibly claim that they did not suspect that Velador was communicating with Edmar and Irish about bringing this case until these 15 emails were produced.  Indeed, Defendants informed the Court in August that Edmar and Irish "were discussing suing Currenex with employees of Caspar Marney's consulting firm . . . going back to at least as early as 2019."  ECF 222 at 2.

---

[14]   Mr. Mitchell has separately attested to the same in a declaration submitted to this Court. ECF 305 ¶¶ 6, 9.

Defendants had ample opportunity to seek the deposition of Marney before the close of

fact discovery. They should not get a do-over now.

### D.    Defendants Chose Not to Pursue Discovery as to Colin Lloyd

The same is true for Colin Lloyd. Since April 2025, Lloyd was identified on Edmar's

and Irish's privilege log as a Velador employee who was discussing claims against Currenex

with Edmar and Irish prior to the filing of the initial complaint. For reasons known only to them,

Defendants chose not to seek his deposition. It cannot be said Defendants made that choice

because they failed to appreciate the significance of Velador's communications. Instead of

seeking the deposition of Lloyd, Defendants chose to pursue the deposition of David Hastings, a

former Velador employee who, unlike Lloyd, had never been identified as communicating with

any named Plaintiff. In their motion for Hague assistance—several weeks prior to the

production of the 15 emails—Defendants told the Court that Hastings' testimony was "relevant

to Defendants' statute of limitations defense because . . . Lloyd and Velador met with Plaintiffs

Irish and Edmar about a potential lawsuit more than two years prior to this lawsuit." ECF 253 at

12; *see also* ECF 300 (Defendants' reply brief stating that Hastings would "testify about his

work at Velador, which apparently had been soliciting potential plaintiffs to bring claims in the

lawsuit years before it was filed").

As with Marney, Defendants had ample opportunity to seek Lloyd's deposition before the

close of fact discovery. They chose not to, and should not be permitted to do so now, even on

the eve of the filing of Plaintiffs' class certification motion.

### E.    Defendants Knew of and Already Had an Opportunity to Discover Velador's Interactions with Absent Class Members but Chose Not to Do So

As Plaintiffs previously explained (see, e.g., ECF 217 at 3) and Defendants have never

rebutted, when Plaintiffs' counsel or Velador became aware of the conduct alleged in the

complaint is irrelevant to any statute-of-limitations defense. Rather, what matters is when the *named Plaintiffs themselves* learned of the conduct. That is because the knowledge of an attorney cannot be imputed to a party until that party actually retains the attorney. *See*, *e.g.*, *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 399 F. Supp. 3d 120, 137 (S.D.N.Y. 2019) (explaining that "it would be improper to attribute [plaintiff's agent's] knowledge of the claims" to plaintiff where the agent was not "authorized to represent [plaintiff] in connection with the legal claims now before the Court"). As the Fourth Circuit has explained: "To be sure, once a plaintiff hires counsel to investigate a claim, it may be appropriate to impute the counsel's knowledge to the plaintiff. *But until that point, a plaintiff cannot be charged with the knowledge of his yet-to-be-retained counsel.* We know of no opinion holding otherwise[.]" *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 557 n.7 (4th Cir. 2019) (emphasis added).

Defendants now posit that Velador's knowledge is relevant because of communications Defendants speculate that it may have had with absent class members. But since April 2025, Defendants have known the factual predicates that would have been necessary to seek testimony from Velador employees about such communications, if any. And Defendants have long suspected Velador had been conducting plaintiff-outreach relating to this case more than two years before the initial complaint was filed. Indeed, in their motion for Hague assistance for the deposition of David Hastings, Defendants informed the Court that they believed Hastings' work at Velador included "soliciting potential plaintiffs to bring the claims in this lawsuit years before it was filed." ECF 300 at 2. Notably, Defendants made this assertion *before* the production of the 15 documents by Edmar and Irish.

If, with no documents showing his involvement in discussions with Plaintiffs or absent class members, Defendants were willing to ask for Hastings' deposition before the close of fact

discovery, the notion that it was impossible for them to seek the testimony of Marney and Lloyd—each already the subject of extensive testimony and documentation—is absurd. And to repeat again, Defendants *did* seek the deposition of Marney in August, but chose not to pursue his testimony. These facts all give the lie to Defendants' assertion that they could not have sought the testimony of Velador employees during fact discovery.

Finally, Defendants assert that whether "other putative class members" received "outreach" from Velador regarding Currenex's priorities scheme could create a predominance issue at class certification. ECF 362 at 14. But the notion that Velador was spraying the market with knowledge of Currenex's secret numerical-priorities scheme and password sharing simply makes no sense. This behavior was so remarkable that, when made public, it caused shockwaves across the entire FX industry, such that industry titan XTX affirmatively sought out Plaintiffs' to volunteer to join the case simply for the betterment of the industry. Whatever knowledge Velador had, it would not have wanted that knowledge to leak, given the certainty that the press and other law firms would have pounced on it. That XTX and DSquare remained wholly ignorant, and the public record remained bereft of information about the alleged conduct, until this case was filed, confirms that Velador s pre-suit investigations will not create a valid predominance issue. *See, e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate."); *In re Actos Antitrust Litig.*, 2024 WL 4251891, at *36 (S.D.N.Y. Aug. 9, 2024) (potential individualized issue as to injury for seven class members would not defeat predominance). The court need not decide that question here, of course. But if Defendants legitimately thought otherwise, they would have sought this discovery long ago.

III.    **DEFENDANTS' MOTION WOULD INVADE PRIVILEGE AND WORK PRODUCT**

Defendants assert that none of the documents or testimony they seek can be privileged because (1) Defendants seek only documents and testimony from 2018 and 2019, and (2) no named Plaintiff retained counsel in connection with this action until 2021 or later.  This is wrong.

Confidential communications between counsel (or their agents) and prospective clients for the purpose of obtaining legal advice are privileged, regardless of whether the client ultimate engages counsel.  *See, e.g., Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1018 (N.D. Cal. 2022) ("[C]ommunications from prospective clients with the aim of obtaining legal services are generally covered by the attorney-client privilege, even if the attorney is not ultimately retained."); *In re Lifetrade Litig.*, 2022 WL 3644357, at *4 (S.D.N.Y. Aug. 24, 2022) ("The fact that an attorney was not ultimately engaged does not remove the protection from the communication so long as the client/potential client reasonably understood the communication to be confidential.").[15]

The same holds true for work product:  Courts routinely apply work product protection to communications of consultants or investigators carried out at the direction of counsel and in contemplation of litigation—even where those communications are with third parties.[16]  *See,*

---

[15]    *See also La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 363 (S.D.N.Y. 2014) (noting "the Second Circuit long ago held that the privilege covers communications to agents of an attorney, such as an accountant, where the communication [is] made in confidence for the purpose of obtaining legal advice from the lawyer").

[16]    Unlike attorney-client privilege, work product protections apply to communications between counsel (or counsel's agents) and third parties provided there is no "tangible adversarial relationship" between them. *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 447 (S.D.N.Y. 2004); *see also S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 146 (S.D.N.Y. 2004) (waiver only where disclosure made "in a manner that materially increases the likelihood of disclosure to an adversary").

*e.g.*, *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 2025 WL 2337108, at *3 (D. Ariz. Aug. 13, 2025); *In re Bofi Holding, Inc. Sec. Litig.*, 2021 WL 3700749, at *5 (S.D. Cal. July 27, 2021) ("[T]o protect counsel's work product . . . defendants are not to inquire of the witnesses about any prefiling communications with plaintiffs' counsel or investigators[.]").  Because they would reveal "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative," Velador's communications are "core" work product, deserving protection that courts have described as "absolute or near absolute."  *Schomburg v. New York City Police Dep't*, 298 F.R.D. 138, 143 (S.D.N.Y. 2014) (cleaned up).

Thus, to the extent Marney or Lloyd were engaged in communications with prospective clients regarding potential claims—even if on behalf and at the direction of firms other than Plaintiffs' counsel in this action—those communications are protected by attorney-client privilege and the work product doctrine.  As discussed in the declarations of Aaron Zigler, Caspar Marney, and Colin Lloyd, in 2018 and 2019, Velador was engaged in investigations, outreach, and other work at the direction of Korein Tillery, Scott+Scott, and Hausfeld LLP in contemplation of litigation.

Defendants' assertion that the Court has already resolved the question whether privilege or work product applies to Velador's communications is false.  Although the Court did find that Plaintiffs had not established that 15 specific communications between Velador and Matthew Edwards at issue in Defendants' motion to compel were made for the purpose of enabling a law firm to provide "legal advice to [its] client(s) or prospective client(s)," the same does not apply here, where Defendants seek license to conduct broad, open-ended questioning about Velador's communications.  *See* Zigler Dec. ¶¶ 6, 7.  In this context, Defendants' questioning of Marney

and Lloyd is virtually certain to encroach upon privilege, work product, or both. This is true even if the privileges at issue are held by clients and law firms not presently before the Court.

## IV.    DEFENDANTS' REQUEST FOR DOCUMENTS FROM COUNSEL'S EXPERT CONSULTANTS SHOULD BE REJECTED

The Court should also reject Defendants' request for communications from Marney. As discussed above, these documents are irrelevant to any statute-of-limitations argument, which depend on the substance and timing of Plaintiffs' knowledge, not knowledge acquired by counsel or their agents before they were retained by Plaintiffs. The documents are also cumulative and redundant of the massive document productions Defendants have already received from Plaintiffs. To the extent there were any communications between Marney and XTX or DSquare relating to the allegations in the complaint prior to August 2021—and there were none—they would have been produced.

The request for documents also should be denied for an additional reason. The proper scope of discovery is with respect to *Plaintiffs'* own documents. Defendants here seek to go much further, demanding productions of documents gathered from the investigative files of a legal consulting firm that was working at the direction of several law firms, including Korein Tillery, Scott+Scott, and Hausfeld LLP.[17] This request is extraordinarily intrusive, burdensome, and vastly disproportionate to the needs of the case.

### CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion for letters rogatory for overseas testimony and documents.

---

[17] To be clear, Plaintiffs are not asserting that Marney's and Lloyd's investigative files from 2018 and 2019 are Plaintiff's counsel's *own* work product. Rather, the applicable work product protections and other privilege attach to the law firms (and their respective clients) at whose direction Velador was performing work in 2018 and 2019. At a minimum, this would be Korein Tillery, Scott+Scott, and Hausfeld LLP.

DATED:   New York, New York
         November 4, 2025

RUDDY GREGORY, PLLC

By: */s/ Mark Ruddy*
Mark Ruddy
1225 15th Street NW
Washington, DC 20005
Telephone: (202) 797-0762
Fax: (202) 318-0543
mruddy@ruddylaw.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Daniel L. Brockett*
Daniel L. Brockett
Thomas J. Lepri
295 Fifth Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
Fax: (212) 849-7100
danbrockett@quinnemanuel.com
thomaslepri@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
jeremyandersen@quinnemanuel.com

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATION</u>

I, Daniel L. Brockett, hereby certify that this memorandum of law contains 7252 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

*/s/ Daniel L. Brockett*
Daniel L. Brockett
