**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; XTX MARKETS LIMITED; and DSQUARE TRADING LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5,<br><br>Defendants. | Case No. 21-cv-06598 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF ISSUANCE OF LETTERS ROGATORY FOR NON-PARTY INDIVIDUALS CASPAR MARNEY AND COLIN LLOYD**

Defendants respectfully submit this opposition to Plaintiffs' Motion for Reconsideration of this Court's order granting the issuance of letters rogatory (the "Letters Rogatory") for documents and testimony of non-party individuals Caspar Marney, founder and current employee of Velador Associates Ltd. ("Velador"), and Colin Lloyd, a former Velador employee.[1]

**PRELIMINARY STATEMENT**

The Court granted Defendants' Motion for the Issuance of Letters Rogatory (ECF No. 362), recognizing that Defendants had shown that the documents and testimony sought from Marney and Lloyd are necessary to understand the extent of their efforts to solicit potential plaintiffs to

---

[1] Plaintiffs style their filing as an opposition to Defendants' motion for the issuance of letters rogatory, but state that they present the motion as one for reconsideration consistent with the Court's order, which said it would treat Plaintiffs' response as a motion for reconsideration. *See* ECF No. 366 (Order); ECF No. 371 (Opposition) at 1 n.1.

bring the "priorities" claims in this lawsuit, which will bear on whether those claims are time-barred. Defendants also showed that they acted in a timely manner by moving shortly after receiving the Velador Emails,[2] which Plaintiffs had improperly withheld until just last month, and which revealed that, ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

Plaintiffs do not come anywhere close to demonstrating a "manifest injustice" that would justify reconsideration. Instead, Plaintiffs merely recycle arguments that the Court has already rejected multiple times.

For example, Plaintiffs challenge the relevance of the discovery sought by incorrectly arguing that the testimony and document requests relate solely to dismissed Plaintiffs (Irish and Edmar). But Plaintiffs do not dispute that Velador's discussions of the claims in this case with potential class members in or around August 2018 would make those class members' claims untimely. Plaintiffs effectively conceded that Irish and Edmar's discussions with Velador in 2018 make their claims untimely when Plaintiffs voluntarily dismissed Irish and Edmar's claims with prejudice. *See* ECF No. 261. Tellingly, Plaintiffs never claim—despite attaching declarations from Marney and Lloyd—that Irish and Edmar were the *only* putative class members with whom Velador discussed the claims in this case. Indeed, that would be highly implausible. It would also be contrary to the documentary evidence that confirms ███████████████████████████

███████████████████████████ Ex. 1 (XTX0618894) ███████████████████████

███████; Ex. 2 (DSQ0233886) ███████████████████████

---

[2] The "Velador Emails" are 15 emails between Matthew Edwards and Velador personnel that the Court ordered Plaintiffs to produce on October 3, 2025, after they were improperly withheld. *See* ECF No. 312.

███████████.³ Thus, discovery into which class members Velador reached out to about the claims in this case and when is highly relevant to class certification, since such discovery will support Defendants' argument that issues of reliance and timeliness of claims are necessarily individualized inquiries.

With respect to privilege, Plaintiffs' Motion still asserts the same claims that this Court has previously considered and rejected. ECF No. 312 (compelling production of Velador Emails); ECF No. 337 (granting deposition of David Hastings in the face of similar privilege claims). Plaintiffs continue to identify purported privileges that apply to documents and testimony that Defendants do not seek. Defendants are not pursuing discovery into Velador's work on other FX cases, for other law firms. The Letters Rogatory authorize targeted discovery into non-privileged communications about the claims in this matter that Velador, as a consultant, shared with putative class members years before the engagement of any attorney by any plaintiff in this case. Plaintiffs' claims of privilege remain a distraction.

Plaintiffs also incorrectly argue that Defendants' request to depose Marney and Lloyd came "too late." But this argument ignores that Defendants' request was based on the new information revealed in the Velador Emails that Plaintiffs produced for the first time on October 7, 2025 after the Court rejected Plaintiffs' baseless privilege assertion. Plaintiffs had previously misrepresented

---

³ Plaintiffs now claim that they do not "base any claim on the assertion that Plaintiffs were not aware that Currenex had last-look functionality until recently," ECF No. 371 at 9, but that is not what their original complaint said, *see* ECF No. 1 at ¶ 11 ("The existence of 'last look' rights was hidden for a large part of the relevant period. But even when the existence of last look rights in general was disclosed in 2015, Plaintiffs were misled as to how often their trades would be cancelled pursuant to these 'last look' superpowers"); *id.* at 21 (entire section of complaint titled "The Combination of Jump-in-Line and Last Look Further Increased Plaintiffs' Execution Costs"); *id.* at ¶ 78 ("Last look increases the cost of execution for those who do not have such powers"). Plaintiffs' complaints about Currenex's use of "last look" still permeate the operative complaint too. ECF No. 184 at ¶¶ 174-81 (describing last look at length and concluding it is relevant to this action).

to the Court that the Velador Emails relate solely to other litigation being pursued by Velador. *See* ECF No. 261 at 1-2 (representing that the Velador Emails related to last look cases unrelated to the present case). It is Plaintiffs' own obfuscation that concealed the nature and timing of Velador's communications until after the close of discovery. Plaintiffs can hardly argue that any delay arising from seeking discovery from Marney and Lloyd establishes manifest injustice when Plaintiffs' own actions contributed to that delay.

Finally, Plaintiffs argue that it would be "manifestly unjust to grant Defendants' motion without consideration" of Plaintiffs' arguments, ECF No. 371 at 1 n.1, but this Court has already considered and rejected substantially similar arguments in granting the production of the Velador Emails and a letter rogatory for former Velador employee David Hastings. *See* ECF No. 312; ECF No. 337. Plaintiffs' Motion should be denied.

## ARGUMENT

### I. Marney's and Lloyd's Documents and Testimony Are Relevant.

As Defendants explained in their original motion, understanding which class members Velador contacted about this case and when is highly relevant to Defendants' argument at class certification that issues of reliance and timeliness of claims are necessarily an individualized inquiry. Rather than address those arguments head-on, Plaintiffs' Motion relies on carefully worded and unsourced statements to try to distract from the clear relevance of the discovery sought (and ordered). For instance, Plaintiffs posit that it "makes no sense" that Marney and Lloyd would have shared their knowledge of the claims in this case with putative class members, ECF No. 371 at 20, but concede ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████ Ex. 3
(Edwards Tr. at 76:5–7, 142:7–19) ████████████████████████████

4

█████████████████████████████████████. Without the ordered discovery of Marney and Lloyd, Defendants have no way of knowing how many other class members received the same outreach.

Plaintiffs also submit declarations of Marney and Lloyd that they characterize as answering open questions. ECF Nos. 374-75. Those declarations, however, *only* assert that neither witness spoke to XTX or DSquare about certain artfully worded topics or vague generalizations. Defendants ought to be permitted to test those claims through cross-examination, particularly where neither DSquare's nor XTX's witnesses could say with any certainty what Velador conveyed to them, and where both DSquare and XTX have serious gaps in their document productions due to their spoliation. *See infra* Section 4. But even setting all that aside, **the declarations are silent about whether Marney and Lloyd communicated with absent class members about these claims, how many they contacted, what they told them, and when those communications occurred**. Those questions are undisputedly relevant and lie at the core of what Defendants seek through the Letters Rogatory. ECF No. 362 at 8, 11. Allowing the Court's order for discovery in this area to stand would hardly be "manifestly unjust."

## II.   The Requested Information Is Not Privileged.

Plaintiffs' Motion rehashes the same array of privilege claims that this Court previously considered and rejected. *See* ECF Nos. 312, 337. Nothing in this iteration of the argument changes the outcome—Plaintiffs still cannot establish a privilege over the requested information because they have not identified any valid attorney-client relationship that bears on the communications at issue, and they have failed to establish the basis for any claim of work product. Plaintiffs argue that Velador did work for other law firms on cases that they contend are unrelated to this case.

5

Even accepting that as true, it would not make privileged Velador's discussions with third parties *about the claims in this case*, especially since no counsel was involved at that time.

This Court previously found that Plaintiffs had not established that the Velador Emails were made "for the purpose of enabling a law firm to provide 'legal advice to [its] client(s) or prospective client(s).'" ECF No. 371 at 22 (citation omitted). The same flaw defeats Plaintiffs' arguments here: Plaintiffs still do not establish that communications between Velador and putative class members during the relevant time period were made for the purposes of enabling a law firm to provide legal advice to clients or prospective clients.

The privilege analysis does not change simply because Plaintiffs have now provided a list of law firms that Velador worked with on other cases. For any documents or communications to be protected, Plaintiffs would need to demonstrate that Velador communicated with putative class members about the claims in this case at the direction of attorneys (i) at a time when those specific attorneys had retained Velador; and (ii) for the purpose of enabling those attorneys to render legal advice to a client that they were currently representing. *See, e.g.*, *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 2018 WL 11217867, at *1 (S.D.N.Y. Aug. 21, 2018) (information is not protected simply where a person intends to later provide that information to an attorney). Even if those putative class members were prospective clients, Plaintiffs still fail to establish that those communications were "about the possibility of forming a client-lawyer relationship with respect to a matter." N.Y. R. Prof'l Conduct 1.18(a) (section defining "prospective client").

Plaintiffs fail to make these showings because the evidence in their Motion has no bearing on Defendants' requests here. It may be that Velador engaged in communications that are entitled to privilege protection in connection with their work on other matters, but any such discussions are outside the scope of what Defendants seek. Defendants are seeking evidence of Velador's

6

communications with putative class members about the facts that underly the claims *in this matter*. In their three declarations on this subject, Plaintiffs never claim that Velador's work seeking plaintiffs to advance the claims *in this case* was done at the direction of any law firms that had engaged them at that time, or that were working on behalf of any client. None of the firms that Plaintiffs' declarations list as employing Velador in the relevant period have appeared in this action. Indeed, Plaintiffs have previously represented that no plaintiff retained counsel in this case until years later. ECF No. 217 (asserting that Plaintiffs first retained counsel for this action in June 2021). Instead, Plaintiffs have repeatedly emphasized that Velador's work with law firms in 2018-2019 was *not* for this matter. ECF No. 261 (opposing production of Velador Emails because Velador's supposedly privileged work was for other, distinct claims).

Similarly, Plaintiffs' declarations offer no support for their work product claim because the work product doctrine only protects material prepared by a party or its representative. *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, 2008 WL 4452134, at *9 (S.D.N.Y. Oct. 2, 2008). But according to Plaintiffs, ███████████████████████████████ Ex. 3 (Edwards Tr.) at 83:8–14 ███████████████████████████████ ██████; *id.* at 142:3–6 ███████████████████████████. Indeed, Plaintiffs concede that "Plaintiffs are not asserting that Marney and Lloyd's investigative files from 2018 and 2019 are Plaintiff's counsel's *own* work product." ECF No. 371 at 23 n.17. Thus, any work that Velador did in 2018 and 2019 *on the issues in this case* was necessarily not at the direction of counsel and not protected by any privilege. Accordingly, Plaintiffs cannot claim that the information being sought would be protected from disclosure.

7

Plaintiffs have failed to establish any basis for attorney-client or work product privilege with respect to the discovery Defendants seek, let alone that the Court's prior decision was "manifestly unjust." The Court should not grant reconsideration.

### III. Defendants' Motion Was Timely and Plaintiffs Caused Any Alleged Delay.

Plaintiffs devote much of their Motion to arguing that Defendants' Letters Rogatory motion was untimely because Defendants supposedly had the evidence to bring it months ago. ECF No. 371 at 12-20. Not so. Defendants' efforts to probe the timeliness of Plaintiffs' claims have been stymied at every turn by Plaintiffs' improper privilege assertions and lack of candor about Velador's role.

Defendants were forced to challenge Plaintiffs' improper attorney-client privilege and work product assertions before Plaintiffs were finally compelled to produce the Velador Emails. The fact that the Velador Emails ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬—despite previous contrary representations by Plaintiffs—only came to light on October 7, when the Emails were finally produced. The Emails revealed that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Defendants filed their Letters Rogatory motion promptly thereafter.

That Defendants needed until October to obtain enough evidence to seek discovery of Velador is Plaintiffs' own doing. From the inception of this case, Plaintiffs have asserted that no Plaintiff knew of the claims in this case until shortly before it was filed. The original complaint alleges that Plaintiffs first learned of the allegations underlying their case when that information "was revealed recently by former insiders to Plaintiffs' counsel." ECF No. 1, ¶ 92.[4] When

---

[4] At that time, Irish and Edmar were the only Plaintiffs in this case, so there can be no confusion that Plaintiffs were pleading that this allegation referred to them specifically.

8

opposing Defendants' motion to reopen the Burrlock and Harmon depositions (so that Defendants could get answers to questions about pre-suit communications that Plaintiffs had improperly prohibited both witnesses from answering), Plaintiffs told this Court on September 4, 2025 that it was "undisputed" that Edwards did not interact with Velador regarding the allegations in this case until June 2021. ECF No. 225 at 2.[5] In opposing production of the Velador Emails, Plaintiffs claimed on September 22, 2025 that the Velador Emails were not about the claims in *this case*. ECF No. 261. None of these representations were true.

In an effort to distract from the delay caused by their own lack of candor, Plaintiffs advance a series of misleading characterizations of the discovery record. For instance, they count how many times the words "Marney," "Lloyd," or "Velador" appear in deposition transcripts as supposed evidence that Defendants knew the basis of their motion for months. ECF No. 371 at 7. What Plaintiffs omit, however, is that when Defendants attempted to question witnesses about their Velador interactions, they were obstructed by counsel's objections and instructions not to answer at every turn. *See, e.g.*, Ex. 3 (Edwards Tr.) at 71:3–8, 81:6–10 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ; Ex. 4 (Burrlock Tr.) at 46:19–49:21 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ; Ex. 5 (Harmon Tr.) at 23:8–25 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ; Ex. 6 (Mitchell Tr.) at 88:21–89:20 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆[6] The impropriety of these myriad

---

[5] Plaintiffs filed that letter in September 2025, five months after listing the Velador Emails, which contradict this representation, on their privilege log.

[6] Indeed, most deposition transcripts are replete with Plaintiffs' counsel's instructions that witnesses not answer questions about their interactions with Velador. *See* Ex. 6 (Mitchell Tr.) at 109:19–110:3 ▆▆▆▆▆▆▆▆▆▆▆ ; Ex. 7 (XTX 30(b)(6)) at 66:21–68:2 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ .

instructions not to answer is confirmed by Plaintiffs' belated confirmation in their reconsideration motion that they are *not* asserting *their own privilege*. ECF No. 317 at 23, n. 17. That overdue admission runs contrary to what Plaintiffs' counsel claimed when they instructed witnesses not to answer questions about their discussions with Velador. For instance:



Ex. 4 (Burrlock Tr.) at 113:24–114:6. And, of course, Defendants' ability to pursue those questions was further hampered by Plaintiffs' improper withholding of the Velador Emails. Plaintiffs argue, for instance, that Edwards testified he did not recall discussing "priorities" with Velador in 2018. ECF No. 371 at 10. But that testimony was given months before Plaintiffs produced the email showing that "priorities" claims were on the meeting agenda. Defendants, therefore, did not have the benefit of those improperly withheld documents when questioning Edwards.

Plaintiffs also note that on August 12, 2025, after Defendants' initial request to depose Marney, Plaintiffs represented that they would oppose any attempt to do so. ECF 371 at 8. What Plaintiffs fail to mention is that they opposed this deposition by representing that *all* of Marney's communications regarding this case were privileged. *See* Ex. 8 (August 13, 2025 email from Lepri to Beck). It was not until nearly two months later that Defendants could confirm that Marney did engage in non-privileged, relevant communications.

Finally, Plaintiffs could avoid the supposed delay they fear will result from the Letters Rogatory process by simply having Marney and Lloyd produce relevant documents and sit for a deposition. After all, *Plaintiffs now employ Velador*. Plaintiffs have not done so because, as their

filings make clear, their primary concern is avoiding discovery of evidence confirming that their case cannot proceed as a class action, if at all.

## IV. Defendants' Document Requests Are Proper.

Plaintiffs assert that the Court should rescind its Order permitting Defendants to seek documents from Marney and Lloyd on two grounds. Neither supports the relief they seek. First, Plaintiffs claim that "proper scope of discovery is with respect to *Plaintiffs'* own documents." ECF No. 371 at 23 (emphasis in original). Unsurprisingly, Plaintiffs cite no authority for this puzzling assertion, which appears to contend that document discovery of third parties is improper. Second, Plaintiffs argue that Defendants' requests are cumulative because, if Velador communicated with XTX or DSquare, those documents would already be in XTX's or DSquare's files. Yet again, this contention ignores the fact that Defendants are also seeking communications between Velador and *absent class members*. Because Plaintiffs have not disclosed who Velador contacted about the claims in this case, those documents are only obtainable from Velador. Moreover, Plaintiffs' contention is wrong where both XTX and DSquare have significant and unexplained gaps in their productions. For instance, XTX apparently destroyed the only copy of the email that would show ███████████████████████████████████████████████████████████████████████ ███ And DSquare's 30(b)(6) deponent confirmed that ███████████████████ ██████████████████████████████████████████████████████ Ex. 9 (DSquare 30(b)(6) Tr.) at 103:19–104:7; 108:16–109:14. Accordingly, there is every reason to believe that Marney and Lloyd may have additional responsive emails with XTX or DSquare that have not yet been produced.[7]

---

[7] Plaintiffs also claim that discovery into Mr. Marney and Mr. Lloyd's discussions with Jad Sarmo is unnecessary because "Defendants will shortly be deposing Sarmo himself." ECF No. 371 at 16. First, the fact that two people might have relevant information does not render one of them immune

11

## **CONCLUSION**

For the foregoing reasons, Defendants request that this Court deny Plaintiffs' Motion for Reconsideration.

DATED: November 7, 2025
New York, New York

| | |
|---|---|
| ROPES & GRAY LLP | KATTEN MUCHIN ROSENMAN LLP |
| /s/ *Alexander B. Simkin* | /s/ *Peter G. Wilson* |
| Gregg L. Weiner | Peter G. Wilson |
| Alexander B. Simkin | Elliott M. Bacon |
| 1211 Avenue of the Americas | 525 W Monroe Street |
| New York, New York 10036 | Chicago, IL 60661 |
| Telephone: (212) 596-5000 | Telephone: (312) 902-5200 |
| Facsimile: (212) 596-9090 | Email: peter.wilson@katten.com |
| Email: gregg.weiner@ropesgray.com | Email: elliott.bacon@katten.com |
| Email: alexander.simkin@ropesgray.com | |
| | *Counsel for Defendant HC Technologies, LLC* |
| Robert G. Jones (*pro hac vice*) | |
| 800 Boylston Street | |
| Boston, Massachusetts 02199 | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| Telephone: (617) 951 7000 | |
| Facsimile: (617) 951 7050 | |
| Email: robert.jones@ropesgray.com | /s/ *Carmine D Boccuzzi Jr.* |
| | Carmine D. Boccuzzi Jr. |
| Samer Musallam (*pro hac vice*) | Rishi N. Zutshi |
| 2099 Pennsylvania Avenue NW | One Liberty Plaza |
| Washington, DC 20006 | New York, NY 10006 |
| Telephone: (202) 508-4600 | Telephone: (212) 225-2000 |
| Facsimile: (202) 508-4650 | Email: cboccuzzi@cgsh.com |
| Email: samer.musallam@ropesgray.com | Email: rzutshi@cgsh.com |
| *Counsel for Defendants Currenex, Inc., State Street Bank and Trust Company, and State Street Global Markets International Limited* | *Counsel for Defendant Goldman Sachs & Co. LLC* |

---

from discovery. Second, Plaintiffs fail to disclose to the Court that there is no date for Mr. Sarmo's deposition, Plaintiffs continue to refuse to make him available, and they are reserving the right to oppose the pending application to the English court for an order directing his examination.

12

## **CERTIFICATION**

I hereby certify that this memorandum of law contains 3,499 words, exclusive of the caption, signature blocks, or any required certificates.

                                                   /s/ *Alexander B. Simkin*
                                                   Alexander B. Simkin

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 7, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

                                                            /s/ *Alexander B. Simkin*
                                                            Alexander B. Simkin