

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

November 21, 2025

Alexander B. Simkin
T +1 212 596 9744
alexander.simkin@ropesgray.com

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street, Court Room 21B
New York, NY 10007-1312

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

      We write on behalf of Defendants to respectfully request that the Court extend Defendants' deadline to oppose Plaintiffs' class certification motion by approximately one and a half months (from December 23, 2025 to February 6, 2026), and make the corresponding adjustments to the case schedule set forth in **Appendix A**.  Defendants recognize that the Court declined to extend the briefing schedule in its November 18, 2025 Memorandum Endorsement, which the parties received earlier today.  Defendants respectfully submit that the Court's decision addressing the briefing schedule was made without the benefit of argument by Defendants, as Plaintiffs only raised the issue in their reply on an unrelated motion.[1]  As explained below, Plaintiffs' class certification filings—filed earlier this week—demonstrate why a brief extension is warranted.  Even with Defendants' requested extension, Defendants' total time to oppose Plaintiffs' Rule 23 motion is shorter than the three-month period that was agreed by the parties and included in the stipulated case management schedule entered by the Court in August 2023.  ECF No. 98.[2]  Despite their prior agreement to a longer period of time to oppose, Plaintiffs now refuse to consent to the relief Defendants seek.

---

[1] Should the Court nonetheless choose to treat this letter as a request for reconsideration, this letter contains both new evidence that was not previously available (because it happened later) and an explanation of the manifest injustice that would occur from denying Defendants a reasonable opportunity to rebut expert reports that clearly distort the data.

[2] The stipulated schedule was modeled after the scheduling order in *Iowa Public Employees' Retirement System, et. al. v. Bank of America, et. al.*, an action that also involved significant volumes of trading data.  *See* Third Am. Civ. Case Mgmt. Plan and Sched. Order (ECF No. 293), No. 1:17-cv-06221-KPF (S.D.N.Y. Mar. 27, 2020) (110 days for class cert. opposition and supporting expert reports); *see also* Civ. Case Mgmt. Plan and Sched. Order (ECF No. 250), *In re Interest Rate Swaps Antitrust Litig.* No. 16-MD-2704 (S.D.N.Y. Aug. 28, 2017) (90 days for class cert. opposition and supporting expert reports); Am. Case Mgmt. Order (ECF No. 532), *Dennis et. al. v. JPMorgan Chase & Co. et. al.,* No. 16-CV-06496 (LAK) (S.D.N.Y. Feb. 1, 2022) (same).

ROPES & GRAY LLP

- 2 -                                                                                                November 21, 2025

As the Court's November 18, 2025 Memorandum Endorsement notes, extensive fact discovery in this case has meant that the class certification briefing schedule has been modified twice before to extend the date by which Plaintiffs' initial filings would be due. But the Court's most recent scheduling order differed from its prior orders in that it provided Defendants with two fewer months to respond to Plaintiffs' filings. Defendants were concerned that this shortened deadline would be impracticable, but worked diligently to accelerate and streamline their discovery and expert work. Despite these efforts, having now received Plaintiffs' class certification motion and two supporting expert reports, totaling over 150 pages and seeking over $2 billion in damages, it is clear that Defendants will be significantly prejudiced if the Court maintains the current, expedited deadline.

This is primarily because this case involves extensive and complex trading data, and Plaintiffs' recently-filed motion and expert reports implicate nearly all of it. Plaintiffs' expert reports are purportedly supported by nearly 2GB of backup materials that they produced for the first time the evening of November 18 and that are missing critical files and information Plaintiffs have yet to provide. Based upon the experience of counsel in matters of similar scale and complexity (and as evidenced by case schedules in comparable matters), a period of thirty days to complete data analyses, depose Plaintiffs' two experts, and prepare counter-reports in support of Defendants' opposition simply is too short. Plaintiffs' prior assent in earlier stipulations to a longer period of time for Defendants to respond to their motion confirms their own recognition of this plain reality. There is also no prejudice to Plaintiffs from a schedule that is faster than what they previously agreed to.[3]

I.   **There Is Good Cause to Modify the Case Management Schedule**

The Court may modify the schedule upon a showing of good cause. Fed. R. Civ. P. 16(b)(4). The Court's central focus in this inquiry is the diligence of the moving party, but it may consider other factors, including "prejudice to the party opposing the request." *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019). As set forth below, unpacking Plaintiffs' misinterpretation of the complex data produced in discovery constitutes good cause.

The Platform trading data produced in this case totals approximately 236 TBs—more data than a digital version of every book believed to have ever been published in human history. While

---

[3] Moreover, while the Court's last scheduling order contemplated that fact discovery would be completed by September 19, 2025, much discovery remains to be done. This includes (i) Plaintiffs' production of the Velador documents at issue in the Court's November 3 order; and (ii) six depositions for which the Court has issued letters rogatory and which the parties are pursuing in foreign courts that have yet to be scheduled, including Plaintiffs' supposed consulting witnesses who is referred to throughout Plaintiffs' motion and Dr. Pirrong's report. In addition, Plaintiff DSquare is continuing to produce documents relevant to Defendants' class certification arguments. *Earlier today*, it produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 (DSQ0409014).

ROPES & GRAY LLP

- 3 -                                                                November 21, 2025

Defendants have been working diligently to analyze this data, including in anticipation of class certification, Defendants did not know what analyses Plaintiffs had conducted during the nearly year-long period they had the trading data or what conclusions they had drawn before receiving Plaintiffs' experts' reports on Tuesday evening.  Indeed, Plaintiffs' corporate representatives declined to explain their own alleged injuries in their depositions, much less to describe Plaintiffs' proposed class-wide method for calculating damages.  *See, e.g.*, ECF No. 391 at Ex. 37 (Smart Aug. 28 Tr.) at 169:14–17 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  As a result, while Plaintiffs' experts had nearly a year to formulate their opinions, Defendants had *no information* about what they would say prior to November 18.

That evening, Plaintiffs produced nearly 2GBs of "backup" data files reflecting the analyses conducted by just one of their putative experts, Dr. Craig Pirrong.  These data files, which span 255 files, including 24,141 lines of code involving seven different programming languages, require Defendants' experts to construct a bespoke code and database infrastructure before they can run the code and begin to assess Dr. Pirrong's analyses.  That task is complicated by the fact that some of Dr. Pirrong's code is programmed in a language tied to proprietary database software.  Defendants' experts will either need to obtain a commercial license for that software, which typically takes several months, or translate the code to a different programming language before it can be run, which is expected to take at least four weeks.  Moreover, while Defendants' experts' review of Plaintiffs' reports and backup data files is ongoing, they have already identified significant gaps in the data.  For example, the code provided by Dr. Pirrong references files that were not included in Plaintiffs' production, leaving the programs in question unable to run.  In addition, Defendants' experts have determined that at least 19 individual files must be executed in a specific order to function properly.  However, neither Dr. Pirrong's report nor the materials included in the backup files explain this required order, forcing Defendants' experts to resort to trial and error.  Defendants have contacted Plaintiffs to request that they provide the missing files and ordering instructions.  As of this filing, Plaintiffs have not produced complete information and said they need more time to provide "guidance on the ordering of scripts."

Once those errors and omissions are corrected, Defendants' experts will need to review and analyze this substantial volume of backup data to assess and explain what appear to be clear errors in Dr. Pirrong's opinions.  And while Plaintiffs' other putative expert, Mr. David Woolcock, does not rely on the backup data, his report references, but does not attach, five separate sources of literature that Defendants will need to collect.  Defendants will then need to conduct the depositions of Plaintiffs' two experts (to be scheduled around the holidays), before the substance of that testimony can be accounted for in drafting rebuttal expert reports and preparing any *Daubert* challenges.

While Defendants' review remains in the early stages, it is clear even now that Plaintiffs' expert analyses in support of their Rule 23 motion is subject to multiple lines of attack, each requiring reasonable time to develop.  For example, it appears those analyses fail to address fundamental issues: (i) what impact, if any, did the tie-breaking rules (which only came into play in a small portion of trades) have on the pricing proposed class members received on the Currenex platform generally; (ii)

- 4 -    November 21, 2025

how could proposed class members have suffered a common injury when each saw different liquidity based on individualized preferences, each was potentially eligible to match against different counterparties (including one another), and each could choose to provide or take liquidity for any given transaction; and (iii) how could the Named Plaintiffs have been injured at all when they testified that they traded across numerous different venues to obtain the best pricing and execution available and when XTX itself received the very priority Plaintiffs complain of.

## II. The Short Requested Extension Will Not Prejudice Plaintiffs

Modifying the case schedule as proposed herein will not prejudice Plaintiffs. Plaintiffs *agreed* to an even longer response time when the parties jointly submitted the most-recent proposed revised schedule in May. Any objection from Plaintiffs now is an effort to preserve a perceived tactical advantage in holding Defendants to a shorter time than the Court earlier chose to impose (especially since Defendants have accommodated several of Plaintiffs' requests for extensions).

Even had Plaintiffs not previously agreed to a longer schedule, a brief 45-day extension in their quest to recover over $2 billion in damages will not prejudice them. This case does not involve any ongoing conduct. Plaintiffs do not seek injunctive relief; only money damages based on purported conduct that everyone agrees stopped more than 10 years ago. And Plaintiff DSquare stopped operating years ago and exists solely for the purpose of bringing this lawsuit. The modest adjustment Defendants now seek yields a shorter time to oppose the Rule 23 motion that the Court previously had in place in this case, which does not rise to the level of prejudice, let alone undue prejudice. *See Summerwind W. Condo. Owners Ass'n, Inc. v. Mt. Hawley Ins. Co.*, 2023 WL 8307561, at *7 (S.D.N.Y. Dec. 1, 2023) (finding no undue prejudice modifying scheduling "limited in scope and time"). Nor will the requested extension require Plaintiffs to expend additional resources, as the extension of Defendants' briefing deadline would impose no obligations on them whatsoever. In any event, "expending time, effort and money to litigate a matter, without more, does not constitute prejudice." *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 5504531, at *2 (S.D.N.Y. Nov. 15, 2017) (internal quotations omitted).

ROPES & GRAY LLP

Respectfully Submitted,

| ROPES & GRAY LLP | KATTEN MUCHIN ROSENMAN LLP |
|---|---|
| */s/ Alexander B. Simkin* | */s/ Peter G. Wilson* |
| Gregg L. Weiner | Peter G. Wilson |
| Alexander B. Simkin | Elliott M. Bacon |
| 1211 Avenue of the Americas | 525 W Monroe Street |
| New York, New York 10036 | Chicago, IL 60661 |
| Telephone: (212) 596-5000 | Telephone: (312) 902-5200 |
| Facsimile: (212) 596-9090 | Email: peter.wilson@katten.com |
| Email: gregg.weiner@ropesgray.com | Email: elliott.bacon@katten.com |
| Email: alexander.simkin@ropesgray.com | |
| | *Counsel for Defendant HC Technologies, LLC* |
| Robert G. Jones (*pro hac vice*) | |
| 800 Boylston Street | |
| Boston, Massachusetts 02199 | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| Telephone: (617) 951 7000 | |
| Facsimile: (617) 951 7050 | |
| Email: robert.jones@ropesgray.com | */s/ Carmine D. Boccuzzi Jr.* |
| | Carmine D. Boccuzzi Jr. |
| Samer Musallam (*pro hac vice*) | Rishi N. Zutshi |
| 2099 Pennsylvania Avenue NW | One Liberty Plaza |
| Washington, DC 20006 | New York, NY 10006 |
| Telephone: (202) 508-4600 | Telephone: (212) 225-2000 |
| Facsimile: (202) 508-4650 | Email: cboccuzzi@cgsh.com |
| Email: samer.musallam@ropesgray.com | Email: rzutshi@cgsh.com |
| | |
| *Counsel for Defendants Currenex, Inc., State Street Bank and Trust Company, and State Street Global Markets International Limited* | *Counsel for Defendant Goldman Sachs & Co. LLC* |

ROPES & GRAY LLP

- 6 -    November 21, 2025

## Appendix A

| Event | Current Schedule | Proposed Extension |
|---|---|---|
| Class certification opposition and supporting expert reports due, including all data and code relied upon by Defendants' experts. Any Daubert challenges to Plaintiffs' class certification experts due, including all data and code relied upon by Defendants' experts. | December 23, 2025 | February 6, 2026 |
| Class certification reply and any supporting reply expert reports due, including all data and code relied upon by Plaintiffs' experts. Plaintiffs' oppositions to any Daubert motions by Defendants due, including all data and code relied upon by Plaintiffs' experts. Any Daubert challenges to Defendants' class certification experts due, including all data and code relied upon by Plaintiffs' experts. | January 23, 2026 | March 6, 2026 |
| Defendants' replies in support of Defendants' Daubert motions due (including all data and code relied upon by Defendants' experts). Defendants' oppositions to Plaintiffs' Daubert motions due (including all data and code relied upon by Defendants' experts). | February 6, 2026 | March 20, 2026 |
| Plaintiffs' replies in support of Plaintiffs' Daubert motions due (including all data and code relied upon by Plaintiffs' experts). | February 13, 2026 | March 27, 2026 |
| Additional expert discovery. | Parties to confer and submit proposal by February 27, 2026 | Parties to confer and submit proposal by April 10, 2026 |
| Deadline for summary judgment motions. | The later of (a) the 45th day after February 13, 2026, and (b) the 45th day after the close of expert discovery. | The later of (a) the 45th day after March 27, 2026, and (b) the 45th day after the close of expert discovery. |

ROPES & GRAY LLP

- 7 -                                                                         November 21, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

/s/ *Alexander B. Simkin*
Alexander B. Simkin