quinn emanuel trial lawyers | new york

295 Fifth Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S EMAIL ADDRESS
**danbrockett@quinnemanuel.com**

November 23, 2025

<u>BY ECF</u>

The Honorable Lewis A. Kaplan
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Court Room 21D
New York, NY 10007

Re:   *Edmar Financial Company, LLC et al v. Currenex, Inc. et al*, Case No. 21-cv-06598

Dear Judge Kaplan:

Plaintiffs oppose Defendants' request to extend their time to respond (ECF 394) to the now-pending motion for class certification (ECF 390).  The relief Defendants seek would be manifestly unjust.  The schedule was set months ago; all parties—including Defendants—knew exactly what was required and when.  Plaintiffs, for their part, moved heaven and earth to meet the November 18 deadline, mobilizing substantial resources, working around the clock, and doing so while Defendants sought to derail the schedule with a barrage of last-minute discovery disputes.  It would be perverse to now reward Defendants—who had equal notice of the deadline but chose not to prepare—with relief not available to Plaintiffs.  Granting Defendants' motion would create a one-way rule:  strict compliance for Plaintiffs, special exemptions for Defendants, and a corresponding erosion of the Court's authority over its own orders.

Plaintiffs have been and will be prejudiced by still more delay.  Defendants' claim to the contrary defies reality.  The asymmetry itself is prejudice.  More basically, "justice delayed is justice denied."  Now in its fifth year, this case has dragged on long enough.  Discovery began August 2023 (ECF 98 at 4), yet Defendants did not begin producing emails until September *2024*, and Currenex's trading data was withheld until December 2024.  Plaintiffs began requesting depositions in February 2025; Defendants did not offer dates until May 2025, and several witnesses still were not produced until months later, some only a week before the September 19 discovery cutoff.  Defendants sandbagged to the very end—producing 11,000 emails on the *final day* of fact discovery, including documents showing their witnesses had testified falsely.  ECF 277.  They continued the tactic on November 18, producing yet more materials at *7:37 p.m.*, i.e., during the exact hours Plaintiffs were filing their certification papers,

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

thus preventing Plaintiffs from using the materials in those filings.  These games must end and the schedule must be adhered to.  This case—involving a massive fraud whose existence is not in dispute—is going to trial, and it should get there expeditiously.

The request for more time is also itself untimely.  Against a backdrop of Defendants' persistent delay, the Court twice extended the schedule.  ECF 143 at 2; ECF 161 at 2.  Defendants' motion comes six months after that schedule was crystalized, two months after Defendants attempted to leverage a medical emergency of Plaintiffs' counsel into extension (ECF 280 at 10-11), a month after Defendants falsely represented they would "promptly" seek relief from the schedule (ECF 299 at 4 n.2.), and mere hours after the Court reiterated that all parties must adhere to the schedule (Ex. 1 at 4).  The motion is, in effect, a request to *re-re*-litigate relief the Court has now already rejected twice—once six months ago, and a second time again two days ago.  Ex. 1 at 4 ("At both parties' request, the Court has extended the class-certification briefing schedule twice already.  It declines to do so again.").

Defendants demand reconsideration, saying the case involves terabytes of data.  But the data is *Defendants' own* data; they have had it for years, if not decades.  They produced it to Plaintiffs.  If volume were a legitimate basis for relief, it is Plaintiffs, not Defendants, who should have been entitled to more time.  Tellingly, the certification arguments Defendants preview (e.g., that ties rarely occurred, that each Platform user's experience and injuries were individualized, that XTX had priority) are not only wrong—they are the same arguments Defendants have been making for *years*,[1] all based on data they already controlled.  The motion is delay masked as complexity.

In reality, as Plaintiffs demonstrate in their motion, class certification here is not complicated.  Plaintiffs required only 40 pages—five above standard—to state their case.  Currenex employees secretly assigned priority numbers to Platform users, and those numbers determined tiebreak outcomes.  ECF 390 at 5-6.  Every claim turns on a uniform scheme; the issues are overwhelmingly common and will predominate.  *Id.* at 14-25.[2]  Defendants will of course disagree, but the question today is not how Defendants will argue—it is whether they must do so on the schedule set by the Court.  They must, just as Plaintiffs did.

Defendants' next argument, that "critical files" are "missing" from Plaintiffs' expert disclosures, is absurd.  Weeks ago, Defendants demanded that, contrary to normal practice, Plaintiffs produce expert "backup" materials the same day Plaintiffs filed their motion.  Plaintiffs complied.  When that eliminated the complaint Defendants hoped to make, they simply shifted ground.  At 11:14 a.m. on Friday, November 21, they demanded additional information; Plaintiffs responded six hours later.  Thus denied yet again of the grounds they hoped to use for this motion, at 10:28 p.m., Defendants sent a new set of questions.  A mere *20 minutes* later, they declared an impasse,

---

[1] *See, e.g.*, ECF 73 at 1 (arguing ties occurred only "in limited circumstances"); ECF 54 at 25 (arguing the nature of the Platform meant each user saw different information and interacted with different counterparties); ECF 134 at 2-4 (arguing Plaintiffs' trading on other platforms may have enabled them to profit from the alleged conduct); ECF 154 at 2-3 (arguing XTX "received some level of priority").

[2] *See, e.g.*, *Meredith Corp. v. SESAC LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015) ("The central issue . . . is whether [defendants] engaged in anti-competitive conduct proscribed by § 1 or § 2 of the Sherman Act.  Resolution of this issue 'will not vary among class members.'"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *38 (E.D.N.Y. Oct. 15, 2014) (core questions of liability are "indisputably common").

using that contrived dispute as a springboard for this motion. That timeline is not a good-faith discovery dispute—it is staging. If Defendants genuinely need discrete materials, they should request targeted relief. But a dispute manufactured over *hours* cannot justify a wholesale extension. Indeed, by the time the Court reads this letter, the issues will likely be resolved, despite Defendants' requests being meritless to begin with.[3]

Defendants next argue the fact that a few depositions remain outstanding justifies an extension. But any delay here is again one of Defendants' own making. For example, Defendants first requested the deposition of Caspar Marney *in August*, yet waited until late October to make a motion. ECF 372 at 8, 17-18. Plaintiffs called these actions out for what they were—blatantly strategic. *Id*. at 12-20. But the point here is not to re-argue the merits of those requests. It is to reiterate that it would be unjust to allow Defendants' slow-walking to be parlayed into one-way scheduling relief. The Court *expressly already agreed.* Ex. 1 at 4.

Finally, the asymmetric nature of Defendants' request exposes its true purpose. Should the Court consider granting any extension, Plaintiffs must be heard regarding corresponding adjustments to the remainder of the schedule. Defendants should not receive three months to prepare expert reports, Daubert motions, and an opposition brief while Plaintiffs are left with four weeks to review Defendants' models, depose their experts, prepare replies, and oppose Daubert motions. Such an imbalance would be untenable.

In sum, having failed to secure an extension through Plaintiffs' temporary medical emergency, through discovery skirmishes, and through last-minute document dumps, Defendants now pivot to fabricated expert disputes, declaring an impasse within 20 minutes, and racing to the Court. The pattern is unmistakable: delay by design.

The motion should be denied.

Respectfully submitted,

/s/ Daniel L. Brockett

Daniel L. Brockett

cc: Counsel of Record

---

[3] Consider a few of Defendants' other requests first made the same day they rushed to court. They demand that Plaintiffs provide backup calculations for the assertion that the class meets the numerosity requirement. But this is Currenex's Platform—Defendants know very well there are hundreds (if not thousands) of class members. To give another example, Defendants complain they will have to locate *five* pieces of "literature" cited by David Woolcock, one of Plaintiffs' experts—general industry materials such as the FX Global Code that Defendants, as industry participants, already know well. Defendants did not even attempt to request copies of these materials before moving the Court. Such demands exist not because Defendants actually need this assistance, or because Plaintiffs are required to engage in such hand-holding. The demands are mere pretext.