UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; XTX MARKETS LIMITED; and DSQUARE TRADING LIMITED,<br><br>            Plaintiffs,<br><br>      v.<br><br>CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5,<br><br>            Defendants. | No. 21 Civ. 6598 (LAK) |

**DEFENDANT GOLDMAN SACHS & CO. LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## TABLE OF CONTENTS

Preliminary Statement ...................................................................................................... 1

Statement of Facts ........................................................................................................... 3

I.   Goldman Obtained a Full Release of FX Spread and Pricing
     Claims ................................................................................................................... 3

II.  Goldman's Trading on the Currenex Platform ..................................................... 5

Argument .......................................................................................................................... 7

I.   Class Certification Should Be Denied in Light of the *Forex* and
     *Allianz* Settlements and Releases ........................................................................ 7

II.  Common Issues Do Not Predominate over Individual Questions
     Raised by Goldman's Trading on Currenex ......................................................... 8

Conclusion ...................................................................................................................... 10

CERTIFICATE OF SERVICE ....................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ................................................................................................ 7

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .............................................................................................. 7

*In re Aluminum Warehousing Antitrust Litig.*,
336 F.R.D. 5 (S.D.N.Y. 2020) ........................................................................................... 9

*In re Credit Default Swaps Antitrust Litig.*,
No. 24-635-cv (2d Cir. May 20, 2025) .............................................................................. 1

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*
No. 1:13-cv-07789-LGS (S.D.N.Y. 2019) ........................................................................ 9

*In re Digital Music Antitrust Litig.*,
321 F.R.D. 64 (S.D.N.Y. 2017) ......................................................................................... 7

*In re Indus. Diamond Antitrust Litig.*,
167 F.R.D. 374 (S.D.N.Y. 1996) ....................................................................................... 9

*In re Interest Rate Swaps Antitrust Litig.*,
2023 WL 8675625 (S.D.N.Y., Dec. 15, 2023) .................................................................. 9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018) ............................................................................... 2

**Rules and Statutes**

Fed. R. Civ. P. 23 ......................................................................................................... 1, 6

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... 2

**PRELIMINARY STATEMENT**

Beyond the reasons requiring denial of class certification in Defendants' Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (the "Joint Opposition"), which Defendant Goldman Sachs & Co. LLC ("Goldman") joins in full, Goldman submits this brief because two circumstances unique to Goldman raise additional impediments to certification of a class. These circumstances further demonstrate that Named Plaintiffs XTX Markets Limited and DSquare Trading Limited ("XTX" and "DSquare," and together, "Named Plaintiffs") cannot pursue their claims against Goldman as class representatives in this case.

*First*, where as here, the Named Plaintiffs' claims are encompassed by releases in a prior class action settlement, Plaintiffs cannot meet their burden of satisfying Rule 23's requirements of typicality, adequacy, and predominance. Goldman was a party to prior class and follow-on opt-out actions pertaining to FX trading that were settled years ago. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, Case No. 1:13-cv-07789-LGS (S.D.N.Y. 2019) ("*Forex*"); *Allianz Glob. Investors GmbH v. Bank of America Corp.*, 1:18-cv-10364-LGS-SDA (S.D.N.Y. 2020) ("*Allianz*"). Plaintiffs' entire theory here—that Defendants manipulated prices and widened spreads through Currenex's tie-breaking rules—shares a "common factual predicate" with the *Forex* and *Allianz* cases, both of which also dealt with FX price manipulation in the same time period at issue in this case. *In re Credit Default Swaps Antitrust Litig.*, No. 24-635-cv, at 8 (2d Cir. May 20, 2025), ECF No. 146-1 (summary order). That conduct, i.e., the "manipulation, or use of the price, spread, or rate of any FX instrument or FX Exchange-Based Instrument" (Ex. A, *Forex* Settlement at 9–11), thus was explicitly included as an example of the "Released Claims," and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[1] on the Currenex platform to

---

[1] Ex. B, DSquare 30(b)(6) Witness Testimony, dated Oct. 14, 2025, 288:17–22.

the *Forex* claims administrator. Named Plaintiffs, who must contend with the release, simply are not typical or adequate class representatives. Other class members will likewise be subject to similar individualized inquiries as to whether they too released the claims asserted here, whether in *Forex* or *Allianz*, thus defeating Rule 23(b)(3)'s predominance requirement.

*Second*, setting aside the import of the prior Goldman releases, Goldman's trading on Currenex raises yet more individualized defenses that impede Plaintiffs' pursuit of class claims against Goldman. Plaintiffs offer no common class-wide methodology for establishing injury for claims before 2011, but the only evidence of priority rights Plaintiffs cite for Goldman involved two price streams that Goldman stopped operating in September 2008. Neither ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓,[2] again making them inadequate and atypical class representatives. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 459 (S.D.N.Y. 2018) ("[F]or every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant.") (internal citations omitted). And without common proof of injury, Plaintiffs necessarily must show who (if anyone) in the class was injured trading on those streams—a classic individualized inquiry.

Separately, Plaintiffs' expert testified that, from 2009 on, Goldman may have ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. C, Pirrong Deposition Tr. 434:15–435:13. Indeed, Goldman had priority settings equal or inferior to ▓▓▓▓▓▓▓▓▓▓▓▓ (and the vast majority of other liquidity providers), making ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for the class's claims against Goldman. Reiss Report ¶ 57. And the issue of Goldman's priority settings vis-à-vis any class member thus is an individualized issue, defeating the predominance requirement. Class certification must be denied as to

---

[2] Expert Report of Peter C. Reiss ("Reiss Report") ¶ 101, n.21 (ECF No. 421-1).

Goldman.

## STATEMENT OF FACTS

**I.  GOLDMAN OBTAINED A FULL RELEASE OF FX SPREAD AND PRICING CLAIMS**

Goldman, along with numerous other FX dealers, was a defendant in *Forex*, a class action alleging FX price manipulation and spread-widening. *Forex*, 407 F. Supp. 3d 422 (S.D.N.Y. 2019). In 2015, the *Forex* court approved a class-wide settlement of claims against Goldman and several other dealers, under which Goldman alone paid $134.5 million in exchange for a broad release by all class members of FX-related claims against Goldman. Accordingly, Goldman raised the existence of prior releases as an affirmative defense in its Answer in this case. *See* Goldman's Answer to Plaintiffs' Third Amended Complaint, at 41–42 (ECF No. 189).

The commonalities between *Forex* and the current litigation are apparent on the face of each operative complaint: both complaints explicitly describe a conspiracy to "artificially widen spreads" in FX transactions; both allege the same type of resulting harm, *i.e.,* artificially raised costs, to overlapping putative plaintiff classes; and both allege that defendants (including Goldman) effected these conspiracies by entering into "secret" agreements.[3] In the *Forex* Settlement, Released Claims accordingly are broadly defined to cover "any and all manner of claims … relating in any way to" FX trading by Goldman and the other *Forex* defendants. Ex. A, *Forex* Settlement at 9–11. Several specific categories of claims were also identified as representative of the kinds of claims being released, including claims relating in any way to "the establishment, calculation, communication, *manipulation, or use of the price, spread, or rate of any FX Instrument* or FX Exchange-Based Instrument." *Id*. (emphasis added). The period

---

[3] *Compare* Ex. D, *Forex* Second Amended Complaint ¶¶ 9, 368, 382 *with* Third Amended Complaint ¶¶ 172, 224 (ECF No. 184).

covered by the *Forex* release extended from January 1, 2003 through December 15, 2015, which encompasses the entirety of the January 1, 2005 to September 11, 2015 class period that Plaintiffs propose here (the "Class Period").

Named Plaintiff DSquare's conduct is illustrative of the clear overlap between *Forex* and the claims here. ██████████████████████████████████████████████ [4] DSquare's CEO, Damian Mitchell, ████████████████████████████████████ ██████████████████████████ during the Class Period here; DSquare has already ██████████████████████████████████████ ; and DSquare explicitly acknowledged that it was ██████████████████████████████████████████ ██████████████████████████ including Goldman.[5]  Similarly, while ████████ ██████████████████ , the trading data produced in this case shows ██ ████████ ██████████████████ [6] during the Class Period, and that it too is therefore a member of the *Forex* class, which was defined to include all persons who entered into an FX spot transaction with one of the *Forex* defendants during the broader *Forex* class period. Ex. A, *Forex* Settlement at 14.

Plaintiffs' current counsel, having lost a bid to serve as lead counsel in *Forex,* then led significant opt-out litigation in *Allianz* against Goldman and other dealers, which also resulted in settlement and ████████████████████ ("*Allianz* Settlement"). Specifically, the *Allianz* Settlement ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

[4] Ex. B, DSquare 30(b)(6) Witness Testimony, dated Oct. 14, 2025, 303:3–21.
[5] Ex. B, DSquare 30(b)(6) Witness Testimony, dated Oct. 14, 2025, 288:17–22, 308:16 – 309:5, 315:2 – 19.
[6] Reiss Report ¶ 217 (Exhibit 36).

-4-

[redacted] Ex. E, *Allianz* Settlement at 4–5. [redacted]

[redacted] [7] While the Named Plaintiffs were not parties to the *Allianz* action, putative class members here may have been among the 1,300 investment firms and entities that brought suit in, and later settled, *Allianz*.

## II. GOLDMAN'S TRADING ON THE CURRENEX PLATFORM

Plaintiffs' contentions that there is a common question with respect to Goldman's trading on Currenex, and that "[c]ommon evidence shows Goldman knew of, purchased, and profited from queue priority," relate entirely to just two of the many dozens[8] of price streams that Goldman used on Currenex during the Class Period. Mot. at 19. What Plaintiffs do not say outright, but is indisputable from the record, is that those two streams—the CNXPriority and CNXCME streams—only operated from 2006 to September 2008 [redacted]

[redacted] Ex. F, Goldman Sachs 30(b)(6) Witness Testimony, dated Sep. 16, 2025, 114:10–23. During that time, the only Named Plaintiff that traded with Goldman [redacted], and none of its trades with Goldman were executed on the CNXPriority or CNXCME streams. Reiss Report ¶ 101 n.221. As to the alleged prioritization of those streams, Currenex in 2008 reported that [redacted]

[redacted] [9] Finally, whether any

---

[7] For example, the *Allianz* complaint alleged that defendants, including Goldman, "manipulat[ed] FX prices" and "colluded to artificially raise the price for currency trades." Ex. G, Allianz Third Amended Complaint ¶¶ 2, 9.
[8] Reiss Report ¶ 102, n.220.
[9] Ex. H, [redacted]

given purported class member traded with Goldman on the CNXPriority or CNXCME streams depended on the unique configuration of each class member's liquidity package. *See* Joint Opp. (ECF No. 420 at 4–6).

There is also no evidence in the discovery record to show that Goldman ever received preferential priority designations on any other price streams or during any other portion of the Class Period.[10] As is clear from the trading data produced by Currenex, which conclusively shows all priority designations that existed on the platform from at least 2011 onwards, Goldman's priority settings were equal to or less favorable ▇▇▇, as well as the settings of most purported class members' price streams. Reiss Report ¶¶ 57, 101 n.220. For example, ▇▇▇ than Goldman's trades did over the same period.[11] The incredibly narrow scope of Plaintiffs' allegations against Goldman demonstrate the absence of any cohesive class-wide injury based on Goldman's supposed involvement in the alleged conspiracy. And the fact that Goldman did nearly 26.3% of its trading on Currenex as a *price-taker* reflects that Goldman did not believe that users of the Currenex platform were disadvantaged. Reiss Report ¶ 39, n.72.

---

[10] The supposed "common evidence" of Goldman's involvement in the alleged scheme that Plaintiffs cite consists almost entirely of a handful of documents from 2006 to 2008 that relate to the CNXPriority and CNXCME price streams. Mot. at 1, 5, 19-20. The only post-2008 document Plaintiffs cite in that regard is a single internal email from 2012, but it does not, as Plaintiffs hope, suggest in any way that Goldman was receiving favorable priority designations on Currenex. To the contrary, in that email, ▇▇▇ *See* Ex. 1, Schonberg Dep. Tr. 76:11–77:5, 79:14–25, 202:1–11.

[11] ▇▇▇, while Goldman received the same priority designation for only 83% of its trades, with the remaining 17% of trades being at a worse priority. Reiss Report ¶ 101.

## ARGUMENT

### I. CLASS CERTIFICATION SHOULD BE DENIED IN LIGHT OF THE *FOREX* AND *ALLIANZ* SETTLEMENTS AND RELEASES

The *Forex* and *Allianz* settlements and releases raise issues under the adequacy, typicality, and predominance requirements of Rule 23 that are fatal to class certification.

DSquare and XTX are plainly inadequate class representatives, as they fall squarely ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ and therefore ultimately will be barred from suing Goldman.[12] *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) ("Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."). Having released their claims in a prior settlement, the Named Plaintiffs cannot now purport to represent a class in pursuing those claims. After all, the Named Plaintiffs will no longer have an "interest in vigorously pursuing" their claims against Goldman once it is established that the *Forex* Settlement prevents them from recovering any damages in the present litigation. And insofar as Named Plaintiffs were not parties in *Allianz*, ▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉, they have no incentive to marshal whatever arguments could be raised to try to circumvent that particular release on behalf of absent class members who were parties to it.

Moreover, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ makes it an atypical class representative given Goldman's unique defenses against it. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (affirming denial of motion to intervene as class representative on typicality and adequacy grounds, noting that "class certification is

---

[12] The Court need not decide the scope and effect of the *Forex* release at this stage of the proceedings, as "the defendant need not show at the certification stage that [a] unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense." *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 97 (S.D.N.Y. 2017) (quoting *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008)).

inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation") (internal citations omitted). DSquare's admissions around ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉ will become the focus of this litigation, thereby swallowing other issues that might pertain to the class.

Finally, beyond the issues of adequacy and typicality, the *Forex* Settlement represents yet another marker of the individualized issues that predominate over any common ones in this case. If Plaintiffs intend to argue that purported class members are outside the scope of the *Forex* release, this Court would necessarily have to make individualized inquiries into whether each putative class member traded with Goldman or any of the other *Forex* defendants during the *Forex* class period (January 1, 2003 to December 15, 2015) and was thus a member of the *Forex* settlement class that was certified and whose claims against Goldman have been released. The Court would further have to delve into whether class members who opted out of the *Forex* class participated in subsequent opt-out litigation, such as *Allianz*, and whether settlement releases in those cases apply here. Even accepting a narrower interpretation of the *Forex* Settlement, a separate individualized inquiry would need to be made as to each class member concerning whether they have already recovered in *Forex* or *Allianz*, as at a minimum that recovery would need to be factored into whether they are barred from obtaining double recovery in this case.

## II. COMMON ISSUES DO NOT PREDOMINATE OVER INDIVIDUAL QUESTIONS RAISED BY GOLDMAN'S TRADING ON CURRENEX.

As demonstrated in the Joint Opposition, the Currenex platform did not work in the way that Plaintiffs' theory assumes. Rather than each Currenex user trading with every other user in a single central limit order book, each user had its own individualized liquidity package and only traded with the other users within that package. Because each member's experience with the

platform was the product of its individual choices, which informed who would be included in or excluded from its package, any superficial common questions among class members are outweighed by distinct, substantive questions about how each class member's bespoke liquidity package was configured and what trading it conducted within that package. Where plaintiffs cannot establish class-wide injury through common proof, an individualized inquiry is necessary, and the predominance requirement is not met. *See In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 43–44 (S.D.N.Y. 2020).

Here, not only are Named Plaintiffs plainly inadequate because they never traded on the two Goldman streams that Plaintiffs alleged had improper "priority" during the 2006-2008 period when those streams were in operation,[13] but Plaintiffs have also failed to offer any expert model that could identify injured trades on a class-wide basis during that period, let alone with respect to those two Goldman price streams.[14] It is therefore plain that individualized inquiries are required to determine which participants on the Currenex platform traded on the two relevant Goldman price streams, and further individualized assessments are required to resolve whether such trades involved Goldman "jumping in line" based on its priority designations. That analysis will be critical because Defendants' expert's sample analysis shows such "jumping in line" by Goldman occurred in only ~0.02% of trades, *i.e.*, almost never).[15] Without such individualized analysis for each class member and each trade, Goldman could wrongly be deemed liable for alleged losses on transactions in which it had zero involvement. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 434 (S.D.N.Y. 2019) ("[A]bsent an individualized examination of class members, Defendants could be held liable for losses they did

---

[13] Reiss Report ¶ 101, n.221.
[14] Expert Report of Craig Pirrong, ¶ 195 (confirming that Pirrong's analysis was limited to post-2009 period) (ECF No. 391-1).
[15] Reiss Report ¶ 107, n.234.

not cause. This issue must be considered in the predominance analysis."); *In re Interest Rate Swaps Antitrust Litig.*, 2023 WL 8675625 (S.D.N.Y., Dec. 15, 2023) (denying class certification on predominance grounds where determining the existence of injury required examination of the spread for every relevant trade); *In re Indus. Diamond Antitrust Litig.*, 167 F.R.D. 374, 384 (S.D.N.Y. 1996) (rejecting showing of predominance because the court "would be required to scrutinize each transaction to ascertain whether the purchaser paid a supracompetitive price"). And as for the 2011-2014 period that Plaintiffs' expert analyzes, during that time Goldman's priority settings were equal to or less favorable ▮▮▮▮, *see* Statement of Facts, Section B, *supra*, ▮▮▮▮ is an inadequate plaintiff to lead a class against Goldman, since it has no basis, or interest, in establishing that conduct in which it itself engaged caused compensable injury to others.

## CONCLUSION

In light of the foregoing, Goldman respectfully requests that the Court deny the motion for class certification.

Dated: January 13, 2026
    New York, New York

Respectfully submitted,

*/s/ Carmine D. Boccuzzi Jr.*
Carmine D. Boccuzzi Jr.
Rishi N. Zutshi
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Email: cboccuzi@cgsh.com
Email: rzutshi@cgsh.com

*Counsel for Defendant Goldman Sachs & Co. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused the foregoing document in unsealed form to be served to the individuals listed below by email on January 13, 2026:

ZIGLER LAW GROUP, LLC
Aaron Zigler
308 S. Jefferson
Suite 333
Chicago, IL, 60661
Telephone: (312) 673-8427
Email: aaron@ziglerlawgroup.com

RUDDY GREGORY, PLLC
Mark Ruddy
1225 15th Street NW
Washington, DC 20005
Telephone: (202) 797-0762
Facsimile: (202) 318-0543
Email: mruddy@ruddylaw.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Daniel L. Brockett
Jonathan S. Becker
David D. LeRay
Thomas J. Lepri
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: danbrockett@quinnemanuel.com
Email: sebastianbecker@quinnemanuel.com
Email: davidleray@quinnemanuel.com
Email: thomaslepri@quinnemanuel.com

Jeremy D. Andersen
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: jeremyandersen@quinnemanuel.com

*/s/ Carmine D. Boccuzzi Jr.*
Carmine D. Boccuzzi Jr.
