**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EDMAR FINANCIAL COMPANY, LLC; IRISH BLUE & GOLD, INC.; XTX MARKETS LIMITED; and DSQUARE TRADING LIMITED,

Plaintiffs,

vs.

CURRENEX, INC.; GOLDMAN SACHS & CO. LLC; HC TECHNOLOGIES, LLC; STATE STREET BANK AND TRUST COMPANY; STATE STREET GLOBAL MARKETS INTERNATIONAL LIMITED; and JOHN DOE DEFENDANTS 1-5,

Defendants.

Case No. 21-cv-06598

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF MICHAEL MELVIN, PH.D.**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....1

ARGUMENT ....2

I. PROF. MELVIN'S DISCLOSURE OPINION DOES NOT ADDRESS THE RELEVANT SCENARIO ....2

A. Prof. Melvin's Opinion Assumes "Disclosure" Only After the Challenged Practices Were in Use ....2

B. Prof. Melvin Also Assumes a Partial, Still-Misleading Disclosure ....4

II. PROF. MELVIN'S TAKER-INDIFFERENCE OPINION RESTS ON A PREMISE DEFENDANTS NOW DISCLAIM ....5

CONCLUSION ....6

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Edmar Fin. Co., LLC v. Currenex, Inc.*,
2026 WL 1693853 (S.D.N.Y. June 11, 2026) ....................3

*Feliciano v. CoreLogic Saferent, LLC*,
2020 WL 6205689 (S.D.N.Y. June 11, 2020) ....................4

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015)....................4

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
2012 WL 2568972 (S.D.N.Y. July 3, 2012)....................4

## PRELIMINARY STATEMENT

Defendants defend opinions Prof. Melvin does not give while failing to establish the relevance or reliability of those he does.[1] His disclosure opinion predicts users' reactions to a belated, still-misleading account of Currenex's practices—not the timely, truthful disclosure at issue here. His opinion that takers would not care about tiebreaking rests on a categorical premise—that tiebreaking does not affect their outcomes—that Defendants now disclaim. Neither defect is cured by calling his testimony "rebuttal" or rewriting his opinions in an opposition brief.

*First*, Prof. Melvin should be barred from opining that Currenex would not "collapse" following a "disclosure." Defendants do not dispute that Prof. Melvin considered disclosure only after the challenged practices were already in use. Nor do they dispute that he assumed disclosure that would leave users believing that priority settings reflected user preferences, rather than employee discretion or pay-to-play arrangements.

Defendants never explain how that opinion would assist the jury. Instead, they attribute its limitations to supposed ambiguities in Mr. Woolcock's opening report. But admissibility turns on whether Prof. Melvin's testimony addresses the issues the jury will decide, not why he selected his assumptions. Mr. Woolcock addresses users' reactions to truthful disclosure before the challenged practices began. Prof. Melvin addresses their reactions to an incomplete disclosure after they had already traded under those practices. His opinion does not answer Mr. Woolcock's, and labeling it "rebuttal" does not supply the missing fit.

[1] Citations to "Mot." and "Opp." refer to Plaintiffs' opening memorandum, ECF No. 491, and Defendants' opposition, ECF No. 518. Citations to "Ex." refer to the exhibits to the Declaration of Daniel L. Brockett, ECF No. 493, filed with Plaintiffs' opening motion.

*Second*, Prof. Melvin should be barred from opining that "takers would not generally be concerned about the tiebreaking system." Defendants deny that he opined that tiebreaking cannot affect taker outcomes. Yet that is precisely the premise his report states and the sole basis he offers for his conclusion that takers would be indifferent. Defendants cannot disavow the premise while preserving the conclusion that depends on it.

## ARGUMENT

### I. PROF. MELVIN'S DISCLOSURE OPINION DOES NOT ADDRESS THE RELEVANT SCENARIO

#### A. Prof. Melvin's Opinion Assumes "Disclosure" Only After the Challenged Practices Were in Use

Defendants principally argue that Prof. Melvin's "disclosure" opinion is admissible as rebuttal because Mr. Woolcock used the word "collapse" first.[2] That argument substitutes a shared word for an examination of what the two experts actually analyzed.

Defendants do not dispute that Prof. Melvin's challenged opinions—that not all users would necessarily leave the first day of a "disclosure"—assume disclosure *after* Currenex had long been using the challenged tiebreaking and password-sharing practices. He expressly limited his opinion to that scenario. Mot. 6-7. This limitation is no deposition "gotcha." Rather, his reasoning depends on users having already traded on the platform while those practices were concealed. *Id*. Thus, Defendants' concession that Prof. Melvin is giving an "after-the-fact" disclosure opinion is a concession that Prof. Melvin is giving an "after-the-*fraud*" disclosure opinion.

[2] *See* Opp. 1 ("Dr. Melvin directly rebuts the scenario that Plaintiffs … have presented"), 4 ("[a]dopting Mr. Woolcock's but-for world…"), 5 (framing issue as "wrong 'but-for world'"), 6 ("Mr. Woolcock's opinions hinge on the same after-the-fact disclosure"), 7 ("Mr. Woolcock is not alone in assuming an after-the-fact disclosure"), 8 ("Dr. Melvin's disclosure scenario is a direct rebuttal…").

Plaintiffs' theory, by contrast, is that Currenex should have disclosed the challenged practices before implementing them. The relevant inquiry is how rational actors would have reacted to a truthful disclosure of those practices before trading under them. Whether some users would remain after years of trading on a platform that concealed these practices is a different question.

Defendants offer no explanation of how Prof. Melvin's answer to that different question would assist the jury. Instead, they argue that Mr. Woolcock's use of "collapse" "presupposes an operating platform with an existing user base." Opp. 1. But the flaw is not Prof. Melvin's assumption that *Currenex* existed before the hypothetical disclosure. It is his assumption that the challenged practices were already in use before disclosure.[3]

Defendants also emphasize that Mr. Woolcock did not "specif[y] the precise … timing" of the hypothetical disclosure. Opp. 9. His opening report, however, expressly addressed the antecedent decision whether to use the platform in the first place. *See, e.g.*, Ex. 2 (Woolcock Rep.) ¶48 ("[B]efore a particular trader can even consider where to place a trade based on 'price,' there must be an earlier, macro-level decision to plug into a given platform in the first place . . . . No rational trader would establish a relationship with a platform that had an un-level, changing playing field in the first place.").[4]

---

[3] Defendants observe that Plaintiffs' damages expert, Dr. Pirrong, used Currenex's data from the time period when the challenged systems were in place in order to model damages. Opp. 7. But of course he did—that is the *dirty* period when Plaintiffs were being *overcharged*. Regardless, Prof. Melvin's opinion is expressly limited to rebutting Mr. Woolcock, not Dr. Pirrong, Ex. 1 (Melvin Rep.) ¶11, and the Court recognized Dr. Pirrong was forced to use Currenex's data because Currenex never actually disclosed the systems at issue, *Edmar Fin. Co., LLC v. Currenex, Inc.*, 2026 WL 1693853, at *12 (S.D.N.Y. June 11, 2026). What Dr. Pirrong did to estimate damages does not change the fact that Prof. Melvin's opinions about network effects (Ex. 8 (Melvin Dep.) at 37:10-12) are only relevant if a user has connected to a platform—no network effects exist if the user chooses not to join Currenex. *See* Mot. 7-8.

[4] *See also* Ex. 2 (Woolcock Rep.) ¶39 ("No rational trader would engage with a platform that allowed its employees to secretly give tiebreaking advantages. Traders would very much care to learn Currenex was operating an unfair platform."); *id.* ¶¶20, 21, 33, 37, 40.

In any event, a claimed misunderstanding of the opening report does not establish that Prof. Melvin's testimony will assist the jury. Mr. Woolcock's reply removes any doubt about the scenario he addresses: "Plaintiffs allege Currenex should have disclosed the use of these systems *at the beginning*, not midway through the alleged fraud." Ex. 3 (Woolcock Reply Rep.) ¶31. Prof. Melvin's opinion does not rebut that testimony.

There is therefore not merely a dispute over the strength of competing predictions. Even if Prof. Melvin correctly predicted users' reactions to a belated disclosure, his prediction would not answer how they would have reacted to a disclosure before the challenged practices began.[5] Defendants have not established the relevance of the opinion he actually offers.[6]

**B. Prof. Melvin Also Assumes a Partial, Still-Misleading Disclosure**

Prof. Melvin's disclosure opinion should be excluded for the independent reason that his hypothetical "disclosure" would continue to conceal the nature of Currenex's practices. Mot. 8-10. Defendants respond that Mr. Woolcock did not specify "the precise disclosure language," and that "Dr. Melvin cannot be faulted for failing to predict assumptions Plaintiffs failed to supply in the first instance." Opp. 9-10. But Mr. Woolcock's premise was straightforward: disclosure of the full truth about the challenged systems. *See, e.g.*, Ex. 2 (Woolcock Rep.) ¶2.

[5] Plaintiffs do not think either side should present the issue of scale following an after-the-fraud "disclosure" to the jury. But if Plaintiffs' motion is denied and Prof. Melvin's testimony is allowed, of course Plaintiffs will need to rebut it. For that reason, Mr. Woolcock's reply report addresses the flaws with Prof. Melvin's after-the-fraud disclosure opinion. *See* Ex. 3 (Woolcock Reply Rep.) ¶¶30-35. That does not mean Plaintiffs view the after-the-fraud question as relevant.

[6] This is seen not just on the face of the opposition brief, but also in the cases Defendants cite. *See, e.g.*, *Feliciano v. CoreLogic Saferent, LLC*, 2020 WL 6205689, at *2-3 (S.D.N.Y. June 11, 2020) (in a case about failure to verify data, rebuttal expert could opine as to "reasonableness" of defendant's practices); *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *12 (S.D.N.Y. Sept. 16, 2015) (report was "a standard rebuttal report of the type the Court would expect to see" on the issue of damages; criticizing plaintiffs' expert's calculations as a matter of good accounting practices was "appropriate"); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, at *16 (S.D.N.Y. July 3, 2012) (dispute over robustness of opinion as to value of notes as of particular dates).

No particular wording was necessary to distinguish truthful disclosure from a description that preserved the central deception.

This motion does not concern the precise wording of a hypothetical disclosure. It concerns the substantive limitations Prof. Melvin imposed on his own opinions. Defendants say he analyzed a world "in which Currenex disclosed its use of a priority-based tiebreaking rule." Opp. 11. That description omits the critical point: Prof. Melvin assumed users would still believe that priorities reflected users' preferences and that firm liquidity received priority over last-look liquidity. Mot. 8-9 (gathering cites). But those assumptions did not reflect how the system actually operated. His hypothetical thus leaves the central deception intact.

Defendants assert that Prof. Melvin's "core conclusion does not turn on the precise content of the disclosure," because users supposedly care more about other platform features than tiebreakers. Opp. 10. But Prof. Melvin expressly confined his conclusions to the limited "disclosures" he considered. Counsel cannot broaden his opinion beyond those limits by asserting that similar reasoning would apply to a truthful disclosure. Indeed, Prof. Melvin refused to consider disclosure of the full truth, because "no platform would ever" admit to what Currenex was actually doing. Ex. 8 (Melvin Dep.) at 30:12-17; *see also id*. at 84:14-21. Defendants cannot defend his testimony by attributing to him an opinion he expressly refused to give.

## II. <u>PROF. MELVIN'S TAKER-INDIFFERENCE OPINION RESTS ON A PREMISE DEFENDANTS NOW DISCLAIM</u>

Defendants likewise fail to establish a valid basis to admit Prof. Melvin's opinion that "takers would not generally be concerned about the tiebreaking system." Mot. 11-14. Here too, their defense depends on recasting his actual opinion.

Defendants insist that "Dr. Melvin's conclusion is not that *no* scenario exists where outcomes could differ." Opp. 12. His report, however, states that the "outcome from the taker's perspective *is not affected* by the priority order in which the makers evaluate their last look rights." Ex. 1 (Melvin Rep.) ¶¶47, 49. He does not say that outcomes are rarely affected or that the effects are too small to matter. He grounds his conclusion that takers would be indifferent on the categorical premise that priority does not affect taker outcomes. *Id.*

Defendants now defend a different proposition: that tiebreaking may affect taker outcomes, but not often enough to concern takers. But that is not the opinion Prof. Melvin gave, and Defendants identify no analysis supporting it. Their retreat from Prof. Melvin's categorical premise leaves his taker-indifference conclusion without its stated foundation.

## CONCLUSION

For these reasons and those in Plaintiffs' motion, Prof. Melvin should be barred from opining that Currenex would not "collapse" following a "disclosure." His opinion addresses only the immediate response to a *partial* disclosure made *after the systems had already been in use*, not the response to a fully truthful disclosure before those practices began.

Prof. Melvin should also be barred from opining that "takers would not generally be concerned about the tiebreaking system," because that opinion rests solely on the demonstrably false premise that tiebreaking does not affect taker outcomes.

DATED: October 26, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Daniel L. Brockett*

Daniel L. Brockett
Thomas J. Lepri
J. Sebastian Becker
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: danbrockett@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: jeremyandersen@quinnemanuel.com

RUDDY GREGORY, PLLC

*/s/ Mark Ruddy*
Mark Ruddy
1225 15th Street NW
Washington, DC 20005
Telephone: (202) 797-0762
Facsimile: (202) 318-0543
Email: mruddy@ruddylaw.com

ZIGLER LAW GROUP, LLC
*/s/ Aaron Zigler*
Aaron Zigler
308 S. Jefferson Street
Suite 333
Chicago, Illinois 60661
Telephone: (312) 673-8427
Email: aaron@ziglerlawgroup.com

*Counsel for Plaintiffs and the Class*